**WILENTZ, GOLDMAN & SPITZER, P.A.**
900 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095-0958
(732) 636-8000

RECEIVED-CLERK
U.S. DISTRICT COURT

2007 JUL 30  P 4: 34

**POMERANTZ HAUDEK BLOCK GROSSMAN**
**& GROSS LLP**
100 Park Avenue
New York, New York 10017
(212) 661-1100
(Additional Counsel Listed on Signature Page)
Counsel for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHELE COOPER, individually and on behalf of all others similarly situated, | : | 07-3541 (FSH) |
| Plaintiffs, | : | |
| -against- | : | **CLASS COMPLAINT** |
| AETNA HEALTH INC. PA, CORP., AETNA HEALTH MANAGEMENT, LLC, AETNA LIFE INSURANCE  COMPANY AETNA HEALTH and LIFE INSURANCE COMPANY, AETNA HEALTH INC. and AETNA INSURANCE COMPANY OF CONNECTICUT, | : | **JURY TRIAL FOR ALL CLAIMS SO TRIABLE** |
| Defendants. | : | |

Plaintiff Michele Cooper, residing in Short Hills, New Jersey, alleges upon personal knowledge as to herself individually and upon information and belief as to other matters, based upon, *inter alia*, the investigation made by and through her attorneys, the allegations which appear below on behalf of herself and a putative class of similarly situated individuals.

#3821534.06

## THE PARTIES

1.     Plaintiff Michele Cooper was a member of two group health plans fully insured and administered by the named Aetna Defendants from May 2001 through September 2005.  She was a participant in a New York group health plan (Xanboo, Inc.) from May 2001 until November 2003, and a beneficiary in her husband's New Jersey group health plan from November 2003 through September 30, 2005 (Rosenberg & Associates).    Aetna defines a member as a subscriber or dependent enrolled in a health care plan.  Plaintiff was no longer a member in an Aetna group health plan after September 30, 2005.

2.     Plaintiff alleges that she and her husband Justin Cooper were at all relevant times entitled to seek medical care from out-of-network, or Nonparticipating ("Nonpar") providers pursuant to their group health plan contract with Aetna.  (Aetna sometimes refers to Nonpar providers as "non preferred care providers.")  Aetna issues an Evidence of Coverage ("EOC") to its members that sets forth benefits that Aetna promises to pay its members.

3.     Defendants Aetna Health Inc. PA, Corp., Aetna Health Management, LLC, Aetna Life Insurance Company, Aetna Health and Life Insurance Company, Aetna Health, Inc. and Aetna Insurance Company of Connecticut (collectively "Aetna") offer, insure, underwrite  and administer commercial health benefits, including those of Plaintiff Michele Cooper.  Several of the Defendants, including Aetna Health, Inc. and Aetna Life Insurance Company have offices in Cranbury, New Jersey, and are licensed to do business in New Jersey.

4.     Aetna is a brand name used for products and services provided by one or more of the Aetna group of subsidiaries that offer, underwrite or administer benefits.  This Complaint refers to all Aetna subsidiaries owned and controlled by any of the named Defendants whose

#3821534.06                                        2

activities are intertwined and interrelated with them. Due to the manner in which they function, all of the Aetna Defendants are functional ERISA fiduciaries, and must comply with fiduciary standards. In this Complaint, Aetna refers to all named Defendants and all predecessors, successors and subsidiaries to which these allegations pertain.

## THE APPLICABLE HEALTH CARE PLANS

5.      For some plans, such as Plaintiff's Point of Service ("POS") plan, Aetna Members have an express right to use Nonpar providers at any time. For other plans, including Health Maintenance Organization ("HMO") plans, Aetna Members can use Nonpar providers in emergencies, when they are out of the area, or when no participating provider is qualified or available to perform the necessary service. When Aetna Members receive Nonpar services, Aetna reimburses the Nonpar providers based on the lesser of the billed charge or the usual, customary and reasonable ("UCR") amount for that service in the geographic area in which it was performed. Aetna uses the terms UCR and "reasonable and customary" interchangeably.

## SUMMARY OF THE ALLEGATIONS

6.      Plaintiff Michele Cooper alleges she and her husband received adverse benefit determinations which improperly resulted in reduced health insurance benefits from July 30, 2001 through the present ("Class Period") as a result of Aetna's improper calculation of UCR for all types of services rendered by Nonpar providers, including *inter alia* all medical, surgical, dental, pharmaceutical and other services, products and supplies.

7.      Plaintiff Michele Cooper seeks to represent a class of Aetna members in group health plans subject to ERISA (collectively "Plaintiffs" or "Members") who have received improper UCR adverse benefit determinations during the Class Period. Adverse Benefit Determination is an ERISA term used when an insurance payor such as Aetna makes a decision

to deny, reduce, terminate or not pay for all or part of a health benefit. It acts as an exclusion from coverage. As the entity excluding benefits when it renders an improper adverse benefit determination (hereinafter "UCR Benefit Reductions"), Aetna has the burden to demonstrate that its exclusion of benefits complies with its contractual obligations to its Members.

8.      Although Plaintiff and the Class were entitled by their plans with Aetna, often referred to as an Evidence of Coverage ("EOC"), to choose Nonpar providers, Aetna discouraged the use of Nonpar providers in numerous ways that lowered Nonpar reimbursement for Aetna Members. Even in plans without a Point of Service benefit, Aetna Members are legally entitled to use nonpar providers in the event of an emergency and in certain other circumstances (including where no par provider is available to perform the service).

9.      Aetna often refers to UCR as the "amount allowed." Aetna makes clear in both verbal and written communications with its Members that the Member is financially responsible for the difference between UCR (amount allowed) and the provider's billed charge for Nonpar services. The difference between UCR and the billed charge is often referred to in Aetna's Explanation of Benefits ("EOB") to its Members as "excluded expenses." Excluded expenses are not credited toward its Members' annual deductible for Nonpar services, nor the annual out-of-pocket limit for Nonpar services.

10.     Aetna's EOCs state that its Members are financially responsible for any part of the Nonpar provider's billed charge above the UCR determined by Aetna. The method by which Aetna determines UCR is thus a critical component of its Members' health benefits.

11.    Plaintiff and the Class state claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), and they allege that Aetna's improper UCR Benefit Reductions violated ERISA requirements.

12.    Through this action, Plaintiff and the Class challenge Aetna's systematic and improper reductions of Nonpar reimbursement that breached the terms of Aetna's EOCs, in violation of ERISA, federal common law and other applicable laws.

13.    On July 23, 2007, the state of New Jersey Department of Banking and Insurance ("NJDOBI") ordered Aetna to pay nearly $10 million for systematic unfair business practices relating to Aetna's determination of UCR for out-of-network services rendered to New Jersey Aetna members by using a percentage of Medicare rates.  For example, Aetna determined UCR for certain services (including lab and durable medical equipment) at 75% of the Medicare rate. For other services, Aetna determined UCR at 125% of the Medicare rate.  Aetna's undisclosed and unauthorized use of Medicare rates to determine UCR for its Members left them with large unpaid balances owed to their medical providers for which they were financially responsible. Plaintiffs are owed unpaid benefits for Aetna's UCR Benefit Reductions in violation of its contractual and legal obligations.

14.    The practices sanctioned by NJDOBI resulting in a fine were not limited to New Jersey but rather were used by Aetna nationwide.  To date, Aetna has not been penalized for such practices in any state other than New Jersey.

15.    During the Class Period, Aetna has at times determined UCR by using databases owned and operated by an independent third party, Ingenix, Inc. ("Ingenix").  Ingenix is a wholly owned subsidiary of United Healthcare.  These databases are known as the Prevailing Healthcare

Charges System ("PHCS") and Medical Data Research ("MDR") (collectively, "Ingenix databases"). In 1998, Ingenix purchased the PHCS database from the Health Insurance Association of America ("HIAA"). Within the industry, the Ingenix PHCS database is often still referred to by the acronym "HIAA."

16. At various times during the Class Period Aetna contributed data to Ingenix for use in the Ingenix databases.

17. At various times during the Class period, Ingenix pre-edited the data prior to contributing it to Ingenix to eliminate high charge data. The flawed contribution practices and the invalidity of the data are detailed below.

18. Aetna breached its obligations under the EOC and federal law by using the Ingenix databases to make UCR Benefit Reductions. Aetna uses the Ingenix databases to price UCR even though the databases are inherently flawed and invalid for UCR and skew UCR amounts downward. Certain flaws of the Ingenix databases are alleged with more particularity herein.

19. During the Class Period, Aetna instructed its claims personnel to use Ingenix data even though Aetna knew that such data is incomplete and invalid. As the single largest data contributor to Ingenix, Aetna knew that the data submitted to Ingenix is pre-edited by data contributors, with the result that high charges were eliminated and not contributed to Ingenix. The pre-editing by data contributors, including but not limited to Aetna, renders the Ingenix databases invalid *per se*.

20.      Plaintiff and the Class seek to restrain and enjoin Aetna's UCR Benefit Reductions, and to compel Aetna to fully reimburse its Members whose UCR was determined by use of invalid Ingenix data, Medicare rates or other invalid means.

21.      In addition to invalid UCR Benefit Reductions, Plaintiff and the Class also challenge other Nonpar reimbursement practices that result in Nonpar Benefit Reductions, including by use of the following methods:   use of defaults (such as pricing based on a percentage of billed charges); participating provider fee schedules; discounted fee schedules; use of undisclosed maximum and global units;   multiple surgical reductions ("MSR");   assistant surgeon and co-surgeon reductions; use of technical/professional splits for radiology codes; reductions on surgical tray lists; failing to pay appropriately for ER services; failing to properly credit deductible amounts and out-of-pocket maximums, failing to pay required interest, and other improper practices.

22.      As shown herein, Aetna's UCR and Nonpar Benefit Reductions to Plaintiff and the Class violated Aetna's legal obligations, and were made without the required disclosures to Aetna Members.   Plaintiff and the Class seek payment of unpaid amounts caused by Aetna's UCR and Nonpar Benefit Reductions for the Class Period, together with interest dating from the date of the original Nonpar Benefit Reductions, and other appropriate equitable relief to remedy Aetna's breach of its health care plans and violation of its fiduciary duties under ERISA, including its removal as a fiduciary and other steps to protect the interests of Aetna Members.

## JURISDICTION AND VENUE

23.      The rights and duties of insurance companies and Aetna Members with employer sponsored health care plans are governed by 29 U.S.C. § 1132.  Plaintiffs assert jurisdiction in

the federal courts under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) for ERISA claims.

24.     Venue is appropriately established in this Court for Plaintiffs' ERISA claims under 28 U.S.C. § 1391 because (i) Aetna resides, is found, has an agent, and transacts business in this district; and (ii) Aetna conducts a substantial amount of business in this district and insures and administers group health plans both inside and outside this State, including from offices located in New Jersey. This complaint is filed as related to existing litigation, *McCoy v. Health Net, et al*, 03 cv 1801 (FSH)(PS), *Wachtel v. Health Net,, Inc.,  et al*, 01 cv 4183 (FSH)(PS); *Scharfman, et al v. Health Net, et al* 05 cv 301 (FSH)(PS), and *Franco v. Connecticut General Life Insurance Co.,*  04 cv 1318 (FSH) (PS).

## MICHELE COOPER'S GROUP HEALTH PLANS

25.     Justin and Michele Cooper were members of a fully insured New Jersey group health plan (Rosenberg & Associates), which paid premiums to Aetna in return for which Aetna provided health insurance benefits.  Justin Cooper was a participant of this plan from 2002 through September 30, 2005.  Michele Cooper was a beneficiary of this plan from November 2003 (after her marriage to Justin Cooper) through September 30, 2005.  She was also a participant of a New York employer group health plan fully insured and administered by Aetna (Xanboo, Inc.) from May 2001 until November 2003.  Thus, from 2001 through 2005, Plaintiff Cooper's group health plans with Aetna were fully insured and governed by ERISA.

26.     Plaintiff Cooper's group health plans permitted her to choose Nonpar doctors.

27.     Aetna made numerous UCR and other Nonpar Benefit Reductions for  Michele and Justin Cooper based on many, if not all, of the practices challenged herein, including

determinations of UCR based on Ingenix databases and Medicare rates. The Coopers and other Aetna Members are financially responsible for the unpaid amounts left by Aetna's UCR and other Nonpar Benefit Reductions.

28.     Under her New Jersey group health plan, Michele Cooper had an individual $1,000 annual deductible for Nonpar services. Her individual annual out-of-pocket limit was $3,000 for Nonpar services. Under the plan, the Coopers' annual family deductible for Nonpar Services was $2,000, while their family out-of-pocket limit of $6,000. The Coopers' coinsurance for Nonpar services (once the deductible was met) was 30% of the UCR. If and when the Coopers satisfied the individual or family out-of-pocket limit, Aetna was contractually required to pay 100% of the UCR. During the Class Period, Plaintiff and the Class were financially responsible for unpaid amounts in excess of the UCR determined by Aetna.

29.     During the Class Period, Aetna failed to properly credit deductibles and out-of-pocket maximums in violation of Plaintiff's EOCs. By failing to properly credit deductible amounts, Aetna subsequently underpaid the Coopers for other Nonpar services. Despite appeals by Ms. Cooper regarding overpaid deductibles, Aetna did not correct or remedy its underpayments.

**MICHELE COOPER'S UCR BENEFIT REDUCTIONS**

30.     Throughout the Class Period, Plaintiff Michele Cooper and her husband Justin received UCR and Nonpar Benefit Reductions.

31.     In EOBs dated June 1, 2005 and June 15, 2005, Aetna issued UCR Benefit Reductions with respect to the charges for medical services rendered by Michele's Nonpar provider, Dr. Rubenstein. Aetna referred to "note 0120" to indicate unpaid benefits resulting

from UCR Benefit Reductions. Note 0120 states: "This portion of this expense which is greater than the reasonable and customary charge is not covered under your plan."

32.     In an EOB dated May 13, 2005, Aetna made a UCR Benefit Reduction for a heart image performed by Manhattan Nuclear Cardiology for Justin Cooper, using Note 0120.

33.     The EOBS sent by Aetna to Michele and Justin Cooper reflecting UCR Benefit Reductions did not adequately disclose the basis for, nor the reasons behind, the UCR Benefit Reductions. Aetna did not disclose whether it used a particular database, or Medicare rates, or some other methodology, or the required information about how the Coopers might successfully appeal the UCR Benefit Reductions. They fail to provide the specific reasons regarding unpaid Nonpar benefits, fail to impart necessary  information about the appeals process, and fail to provide other information required under ERISA. Michele and Justin Cooper (along with other Aetna Members) received non-compliant EOBs on numerous occasions.

## AETNA'S BREACH OF CONTRACT AND VIOLATION OF FIDUCIARY DUTIES

34.     Plaintiff and the Class received EOCs and Schedule of Benefits from Aetna. The EOC sets forth the benefits they are entitled to receive. Aetna's Schedule of Benefits is intended to be used as a Summary Plan Description ("SPD") by its Members, as that term is defined under ERISA. In Aetna's practice and in this Complaint, Schedule of Benefits and SPD are used interchangeably.

35.     Aetna breached Members' EOCs and SPDs when it made UCR and Nonpar Benefit Reductions

36.     Aetna is obligated to adhere to the specific provisions of Members' group health plans under ERISA and federal common law.

37.     Aetna may not apply UCR or other Nonpar Benefit Reductions if they are not authorized or disclosed in an Aetna Members' EOCs and SPDs.

38.     As an ERISA fiduciary, Aetna is and was obligated to fully inform Aetna Members of material facts related to their benefits and must comply with federal regulations governing claims procedures both as to initial claim denials and appeals.

39.     Aetna failed to provide a "full and fair review" to Plaintiffs, such that Aetna's appeals process violated and continues to violate applicable law.

40.     Plaintiffs challenge Aetna's systematic application of rules and policies in making UCR and other Nonpar Benefit Reductions that are not authorized by Aetna Members' EOCs and SPDs; its routine violation of its fiduciary duties; and its failure to comply with ERISA, federal claims procedure regulations, federal common law and other applicable law.

41.     The EOBs sent to Plaintiffs about Aetna's UCR and other Nonpar Benefit Reductions do not comply with legal requirements, including federal claims procedure regulations.  The EOBs failed to advise Plaintiffs of the specific reasons for the denial, the specific plan provisions, and their appeal rights. Aetna's EOBs reflecting UCR determinations failed to advise Plaintiffs of the data Aetna used to calculate UCR.  Examples of Aetna's omissions of required disclosure on EOBs include the following:

•     Absent or inadequate Notes describing Aetna's benefit reductions and the reasons therefore;

•     The particular fee schedule or data used to determine UCR;

•     Incomplete recital of appeal rights; and

- Aetna's use of certain Medicare rates that reduced benefits and left its Members financially exposed.

42.     Under federal claim procedure regulations, these and other deficiencies require a finding of "deemed exhaustion" for Plaintiff and the Class.

## UCR AND THE INGENIX DATABASES

43.     For certain Nonpar claims decided during the class period, Aetna relied on the Ingenix databases to make UCR Benefit Reductions. Aetna purchased UCR data from Ingenix, a wholly owned subsidiary of United Health Group, loaded it onto its internal claims platforms, which claims processors accessed automatically in a process called auto-adjudication.

44.     Ingenix produces two cycles of Ingenix data a year that include medical, surgical, anesthesia, and HCFA's common procedure coding system services ("HCPCS"). HCPCS includes pharmaceuticals, injections, blood, medical equipment, ambulance transport, medical screenings and the like.

45.     The Ingenix databases are purportedly designed to collect and report actual charge data by providers for Nonpar health care services, which are then used to calculate UCR amounts. For some services, the Ingenix databases reflect derived data. Both derived and actual data improperly average charges. Derived data uses relative values and conversion factors, combining charges for dissimilar procedures.

46.     The Ingenix databases are based on charge data contributed to Ingenix by Data Contributors. Data Contributors include Aetna, CIGNA and United Healthcare. Aetna has usually contributed more data to Ingenix (or its predecessors) than any other single data contributor.

47.    Ingenix extensively edited the charge data contributed by Data Contributors, skewing the data downward.  Data Contributors (including Aetna) also extensively pre-edited the charge data before sending its incomplete data to Ingenix, causing further skewing of the data.

48.    Ingenix informed its data users (such as Aetna) that it was not endorsing, approving or recommending the use of Ingenix data for UCR.  Ingenix data is produced with the following disclaimer:

> The Ingenix data, whether charge data or conversion factor data, are provided to subscribers for informational purposes only. Ingenix, Inc. disclaims any endorsements, approval, or recommendation or particular uses of the data.  There is neither a stated nor an implied 'reasonable and customary' charge (either actual or derived)."

49.    Ingenix also informed data users (including Aetna) that they cannot "represent" the Ingenix data other than as described in the disclaimer.  In violation of the Ingenix disclaimer, Aetna misrepresented the nature, accuracy and source of the data to its Members.  During the Class period, Aetna was aware of the disclaimer but failed to disclose the existence or substance of the Ingenix disclaimer to its Members.

50.    The conversion factor data referred to in the disclaimer is often referred to as "derived" data, whereas charge data is often referred to as "actual" data.  For any medical or surgical service for which PHCS Ingenix data ended up with fewer than nine charges and for all MDR Ingenix data, Ingenix created a derived charge, using relative values and conversion factors.

51.    Ingenix used and continues to use derived data to publish UCR amounts for the majority of medical and surgical services nationwide during the Class Period.

52.    The Ingenix databases do not (i) determine the number of physicians or other providers in a given geographic region; (ii) determine whether the data comes from physicians or non-physicians; or (iii) determine the place of service (i.e., hospital, clinic, physician office, nursing home, patient's home).

53.    The Ingenix databases may reflect only the charges of a *single* provider, who may not be a medical doctor.

54.    The complexity or severity of a Member's specific treatment is not determined or accounted for in the Ingenix databases.  Ingenix edits out all charges submitted with a modifier designed to indicate increased complexity or severity.

55.    Whenever Aetna used the Ingenix databases as the method to determine UCR, it gave no consideration to the increased severity or complexity of a specific service.

56.    Aetna knew that the Ingenix databases did not account for a provider's training and experience, nor account for a patient's age or health status, nor capture information that one would need to know in order to be able to accurately price UCR for that procedure.  This information was not disclosed to Aetna Members, providers or state regulators.  Aetna did not change its methodology to compensate for the known deficiencies of the data it used on to make UCR Benefit Reductions.

57.    By systematically making UCR Benefit Reductions using flawed and invalid data, Aetna violated its EOCs and SPDs during the Class Period.

## OTHER INVALID AND UNDISCLOSED NONPAR BENEFIT REDUCTIONS

58.    Aetna automatically reduced payment for multiple procedure codes billed on the same day or during the same session, even when the procedure codes were part of a single

surgery.  By so doing, Aetna's UCR Benefit Reductions dramatically reduced payment for additional procedure codes inconsistent with Aetna Members' EOCs and SPDs.

59.     Aetna further reduced reimbursement by, for example, applying uniform reductions to the charges of assistant surgeons, co-surgeons, and bilateral procedures.  Aetna did not adequately disclose to Aetna Members that reimbursement would be reduced for the services of assistant surgeons, co-surgeons, bilateral or multiple surgeries.

60.     Aetna used arbitrary percentages to reimburse services (such as radiology) that have two components, technical and professional.  Aetna reimbursed many radiological procedures by applying a particular "split," that is, paying the technical component at a percentage of the combined ("global") fee and the professional component at another percentage of the global fee. Aetna did not disclose its use of such "splits" to Aetna Members, even when Aetna used such splits to make UCR Benefit Reductions.

## AETNA'S FAILURE TO PROVIDE
## ACCURATE AND COMPREHENSIVE ERISA PLAN DOCUMENTS

61.     Aetna is obligated to provide accurate and comprehensive plan documents to its Aetna Members, including in EOCs and SPDs.

62.     Aetna provided EOCs and a plan document it refers to as a Schedule of Benefits to its Members.   The Schedule of Benefits functions as an SPD but is inadequate and noncompliant with ERISA and state laws governing SPDs.

63.     Aetna failed to advise its Members and employers that its Schedule of Benefits is not a compliant SPD, and failed to ensure that an appropriate SPD was prepared.

#3821534.06

15

64.    As Aetna knows, employers lack the necessary information about Aetna's UCR and Nonpar Benefit Reductions, and so were unable to produce an accurate or legally complaint SPD.

## AETNA'S EMERGENCY ROOM REIMBURSEMENT

65.    In all of the states in which Aetna operates, it is obligated to fully reimburse Aetna Members for out-of-network emergency services that satisfy a prudent layperson standard regardless of the type of insurance plan they have (*e.g.* POS, PPO, HMO).

66.    Under the prudent layperson standard, Aetna must fully pay for ER services, even if they subsequently are determined not to constitute an emergency, so long as the Aetna Member reasonably believed the condition to be emergent at the time the Member sought ER care. The standard precludes reliance on a medical professional's diagnostic conclusion at the time of discharge, since the medical professional is not a prudent layperson and has information unavailable to the prudent layperson at the time ER care was sought.

67.    For many Aetna Members, Aetna denied reimbursement for ER services that were properly considered emergent under the prudent layperson standard.

68.    Aetna EOBs failed to disclose material information to Aetna Members when Aetna denied or reduced ER payment.

## CLASS ACTION ALLEGATIONS

69.    Plaintiff Michele Cooper brings this action on her own behalf and on behalf of a class defined as:

> All persons in the United States who are, or were, from July 30, 2001 through the present members in any employer health care plan insured or administered by Aetna, subject to ERISA, who received medical services or supplies (including, *inter alia*, surgery, anesthesia, and the like) from an out-of-network provider

for which Aetna (or any third party under contract with Aetna)
allowed an amount less than the provider's billed charge.

70.    Plaintiff Michele Cooper brings ERISA claims against Aetna on her own behalf

and on behalf of the Class for the following: to recover unpaid benefits due under their plans, and

to enforce and clarify their rights under 29 U.S.C. § 1132(a)(1)(B); and to remedy Aetna's failure

to accurately disclose information in plan materials and otherwise, and its failure to provide a

"full and fair review" of the decisions denying claims under 29 U.S.C. § 1133. Further, Plaintiffs

allege that Aetna is a fiduciary which has violated its fiduciary duties of loyalty and care under 29

U.S.C. §§ 1104 and 1106, by relying, *inter alia*, on Ingenix databases and Medicare rates that are

invalid for the purpose of making UCR Benefit Reductions that systematically reduced

reimbursement without disclosure or contractual authority and by failing to provide required data

and other information to Aetna Members.

71.    Aetna violated and continues to violate federal claims procedure regulations. *See,*

*e.g.,* 29 C.F.R. § 2560.503-1.

72.    Aetna violated and continues to violate its fiduciary duties of care and loyalty to

its Aetna Members by using undisclosed reimbursement rules that are unauthorized by Aetna

Members' EOCs and SPDs. Aetna made misstatements to its Members that were intended to, or

did in practice, discourage them from understanding the basis used by Aetna to make its UCR

and Nonpar Benefit Reductions.

73.    Aetna acted and continues to act as an adversary to its Aetna Members in

violation of its fiduciary obligations. For example, Aetna violated New Jersey laws governing

Nonpar reimbursement and liability for ER services, and exposed its Members to greater

financial responsibility for Nonpar services than authorized by law and its EOCs.

74.     Aetna discouraged appeals, by providing insufficient information about its Nonpar Benefit Reductions and by failing to tell its Members about their appeal rights.   Aetna has systemically violated applicable regarding Member appeals.

## COMMON CLASS CLAIMS, ISSUES AND DEFENSES FOR THE CLASS

75.     The following common class claims, issues and defenses for Plaintiff and the Class arise for the Class Period of July 30, 2001 through the present:

(1.)     Whether Aetna's use of Ingenix data, Medicare rates or other data to calculate usual, customary, or reasonable ("UCR") charges in determining out-of-network ("Nonpar") reimbursement violated the Employee Retirement Income Security Act ("ERISA"), or other applicable law;

(2.)     Whether Aetna's Nonpar Benefit Reductions violated ERISA, or other applicable law;

(3.)     Whether ERISA requires each Class member to prove exhaustion or futility;

(4.)     Whether Aetna's alleged fiduciary violations, if proved, justify appointment of a monitor under ERISA § 502(a)(3) or other injunctive relief;

(5.)     Whether Class members (including those who assigned claims) may recover benefits;

(6.)     Whether the claim for failure to provide accurate Summary Plan Descriptions ("SPDs") and other information upon request entitles Class members to any relief;

(7.)     Whether interest should be added to the payment of unpaid benefits under ERISA;

(8.)     Whether Aetna's claims review procedures complied with ERISA;

(9.)     The standard of review applicable to review Aetna's adverse benefit determinations;

(10.)     The identity and scope of the ERISA plans subject to the Complaint;

(11.)     Whether the contractual terms of the relevant plans permit Aetna's reimbursement practices for Nonpar claims;

(12.)     Whether Aetna violated its fiduciary duties owed to its Members when it made its UCR and other Nonpar Benefit Reductions or engaged in the other conduct alleged in the Complaint;

(13.)     Whether Aetna's failure to properly disclose the specific reason for UCR and Nonpar Benefit Reductions in its Explanation of Benefits (EOBs") and/or that Members could request supporting evidence upon request, violated ERISA;

(14.)   Whether the Court's interpretation of the ERISA plans must be guided by the state regulators' interpretation of such plans;

(15.)   What the applicable statute of limitations periods are for the claims of Class members;

(16.)   Whether Aetna's failure to pay interest, (a) when claims were not timely paid and (b) when the UCR was increased on appeal, violated ERISA;

(17.)   Whether Aetna violated the New Jersey Regulation for all ERISA small employer plans in New Jersey.

## ADDITIONAL CLASS ALLEGATIONS

76.   The members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of millions of Aetna Members in commercial group health plans insured, offered or administered by Aetna.  The precise number of members in the Class are within Aetna's custody and control.  Based on reasonable estimates, the numerosity requirement of Rule 23 is easily satisfied for the Class.  For example, there are over 500,000 Aetna Members in New Jersey alone.  Nationwide, there are tens of millions of Aetna Members in group health plans subject to the allegations of this Complaint.

77.   Common questions of law and fact exist as to all Class members and predominate over any questions affecting solely individual members of the Class, including the class claims, issues and defenses listed above.

78.   The named Plaintiff's claims are typical of the claims of the Class members because, as a result of the conduct alleged herein, Aetna has breached its statutory and contractual obligations to the named Plaintiff and the Class through and by a uniform pattern or practice as described above.

79.     The named Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class litigation and has no interests antagonistic to or in conflict with those of the Class.   For these reasons, the named Plaintiff is an adequate class representative.

80.     The prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Aetna as to the Class.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, because the unpaid benefits denied Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them.   Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

COUNT I

BREACH OF CONTRACT TO PAY BENEFITS<br>UNDER ERISA § 501(a)(1)(B)

82.     The allegations contained in this complaint are realleged and incorporated by reference as if fully set forth therein.

83.     Aetna is liable for a breach of its obligation to pay benefits to Aetna Members that are insured by, funded by or administered by Aetna pursuant to the terms of their group health plans. Aetna breached its Members' EOCs by the means described herein including contributing invalid data and using flawed and invalid Ingenix databases, Medicare rates or other invalid data

to calculate UCR and is liable to such Members whenever Aetna (or its third party vendors) made UCR Benefit Reductions.

84.      Aetna violated Plaintiffs' contractual rights each time it made UCR or other Nonpar Benefit Reductions discussed in this Complaint.

85.      Aetna's lack of disclosure to Aetna Members violated its contractual obligations as well as applicable law.

86.      Aetna violated its contractual obligations each time it engaged in conduct which discouraged or penalized Aetna Members' use of Nonpar providers, such as by making UCR Benefit Reductions.

87.      Plaintiff and the Class are owed interest back to the date their claim was originally submitted for all UCR and other Nonpar Benefit Reductions.

88.      Plaintiff and the Class are entitled to unpaid benefits from Aetna, as well as declaratory and injunctive relief related to enforcement of the plan terms, and to clarify future benefits.  In particular, Aetna is liable to Plaintiff and the Class for unpaid benefits, recalculated deductible and coinsurance amounts, interest, attorneys' fees, and other penalties as this Court deems just, under 29 U.S.C. § 1132(a)(1)(B).  In addition, Plaintiff and the Class seek counsel fees, costs, prejudgment interest and other appropriate relief against Aetna.

## COUNT II

### FAILURE TO PROVIDE FULL & FAIR REVIEW
### AS REQUIRED BY ERISA

89.      The allegations contained in this complaint are realleged and incorporated by reference as if fully set forth herein.

90.     Aetna functioned and continues to function as the "plan administrator" within the meaning of such term under ERISA for Plaintiffs.  Plaintiff and the Class were and are entitled to receive a "full and fair review" of all claims denied by Aetna, and entitled to assert a claim under 29 U.S.C. § 1132(a)(3) for failure to comply with these requirements.

91.     Although Aetna was obligated to do so, Aetna failed to provide a "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133 (and the regulations promulgated thereunder) for Plaintiffs by making UCR and Nonpar Benefit Reductions that are inconsistent with or unauthorized by the terms of Plaintiffs' EOCs and SPDs, as well as by failing to disclose data, its methodology and other critical information relating to its UCR and Nonpar Benefit Reductions.

92.     The law and implementing regulations set forth minimum standards for claim procedures, appeals, notice to Members, and the like.  In engaging in the conduct described herein, including systematic reimbursement reductions without disclosure or contractual authorization, Aetna failed to comply with the law, federal regulations and federal common law.

93.     As a result, Aetna failed to provide a "full and fair review," failed to provide reasonable claims procedures, and failed to make required disclosures.

94.     Appeals for Plaintiff and the Class should be deemed exhausted by virtue, *inter alia*, of the invalid database and Aetna's failure to provide reasonable claims procedures.  Any appeals would have been futile, and are deemed futile.

95.     Plaintiff and the Class have been harmed by Aetna's failure to provide a "full and fair review" of appeals submitted by Plaintiffs under 29 U.S.C. § 1133, and by Aetna's failure to disclose information relevant to Members' benefits in violation of ERISA and the federal

#3821534.06                                          22

common law.  Plaintiff and the Class are entitled to statutory penalties, and injunctive and declaratory relief to remedy Aetna's continuing violation of these provisions.

**COUNT III**

**FAILURE TO PROVIDE AN ACCURATE
EOC AND SPD TO MAKE REQUIRED DISCLOSURES**

96.     The allegations contained in this complaint are realleged and incorporated by reference as if fully set forth herein.

97.     Aetna's disclosure obligations under ERISA include furnishing accurate materials summarizing its group health plans, known as SPD materials, under 29 U.S.C. § 1022, and supplying additional information to Members, under 29 U.S.C. § 1024(b)(4).

98.     Aetna's failure to supply accurate SPDs and requested information is redressable under 29 U.S.C. § 1132(c).

99.     Aetna's failure to disclose material information about its UCR and Nonpar Benefit Reductions; its contribution of flawed data to Ingenix and its use of such data; and its material changes in reimbursement policy violated ERISA, federal regulations and federal common law which obligated Aetna to provide such information to Aetna Members.

100.    Plaintiff and the Class have been proximately harmed by Aetna's failure to comply with 29 U.S.C. § 1022 and 29 U.S.C. § 1024(b)(4), federal regulations, and federal common law, in an amount to be determined at trial, and are also entitled to injunctive and declaratory relief to remedy Aetna's continuing violation of these provisions.

## COUNT IV

## VIOLATION OF FIDUCIARY DUTIES OF LOYALTY AND DUE CARE

101.    The allegations contained in this complaint are realleged and incorporated by reference as if fully set forth herein.

102.    Aetna acted as a fiduciary to Plaintiffs in connection with Aetna Members' group health plans, as such term is understood under 29 U.S.C. § 1002(21)(A).

103.    As a fiduciary of group health plans under ERISA, Aetna owed and owes Plaintiffs in such plans a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent administrator would use in the conduct of an enterprise of like character.  Further, fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan.  29 U.S.C. § 1104(a)(1)(B) and (D).  In failing to act prudently, and in failing to act in accordance with the documents and instruments governing the plan, Aetna violated its fiduciary duty of care.

104.    As a fiduciary of a group health plans under ERISA, Aetna owed and owes Plaintiffs a duty of loyalty, defined as an obligation to make decisions in the interest of its Members, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of Aetna Members under 29 U.S.C. § 1106.  Aetna cannot, for example, make benefit determinations for the purpose of saving money at the expense of its Members.

105.    Aetna violated its fiduciary duty of loyalty by, *inter alia*, making Nonpar Benefit Reductions that were unauthorized by EOCs and SPDs and which benefited Aetna at the expense of Aetna Members; by failing to inform Aetna Members of flaws in the Ingenix databases that make their use inappropriate to calculate UCR reimbursement; by making untrue representations

about UCR and Nonpar Benefit Reductions; failing to pay interest; by changing reimbursement practices without disclosure to Members; failing to properly credit deductible and Out of pocket limits; violating ER laws; and failing to remedy violations of law.

106.    Aetna also violated its fiduciary duty to Plaintiffs by using noncompliant Schedule of Benefits as the SPDs required by federal law.  Aetna knew and intended that its "Schedule of Benefits" would be considered by employers and Aetna Members as an SPD.

107.    Aetna itself treated the Schedule of Benefits as an SPD and is estopped from denying that it is an SPD.

108.    Aetna's EOBs are in violation of federal law and breach its fiduciary duty.

109.    Plaintiffs are entitled to assert a claim for relief for Aetna's violation of its fiduciary duties under 29 U.S.C. § 1132(a)(3), including restitution, injunctive and declaratory relief, and its removal as a breaching fiduciary.

**COUNT V**

**VIOLATION OF CLAIMS PROCEDURE PROVISIONS**

110.    The allegations contained in this complaint are realleged and incorporated as if fully set forth herein.

111.    Aetna is an insurance company subject to regulation under the insurance laws of more than one state.  Aetna must therefore comply with claims procedures defined by federal law (e.g., 29 C.F.R. § 2560.503-1).  Plaintiff and the Class are entitled to judicial relief for Aetna's failure to comply with federal law.

112.    Aetna breached its obligations to Plaintiff and the Class to process claims fairly by, *inter alia*, making UCR and other Nonpar Benefit Reductions without complying with the

federal regulation requirements concerning EOCs, Schedule of Benefits, SPDs, EOBs, appeals or disclosure generally.

113.    As a proximate cause of its violation of such regulations, Plaintiff and the Class have been harmed by Aetna, and are entitled to declaratory and injunctive relief, as well as other equitable relief, including Aetna's removal as a fiduciary.

114.    As a consequence of violating such regulations and otherwise engaging in the conduct herein alleged, administrative remedies are deemed futile as a matter of law, and exhaustion provides no legal defense.

**WHEREFORE**, Plaintiff demands judgment in their favor against Defendants as follows:

A.     Certifying a Class as set forth in this Complaint and appointing named Plaintiff as the class representative;

B.     Declaring that Defendants have breached the terms of their EOCs and SPDs  and awarding unpaid benefits to Plaintiff and the Class, as well as awarding injunctive and declaratory relief to prevent Aetna's continuing UCR and Nonpar Benefit Reductions that are undisclosed and unauthorized by EOCs and SPDs;

C.     Declaring that Defendants have violated their fiduciary duties including the duties of loyalty and care to Plaintiff and the Class, and awarding appropriate relief, including unpaid benefits, restitution, interest, declaratory and injunctive relief to Plaintiff and the Class, and removing Defendants as fiduciaries;

D.     Enjoining Defendants from violating applicable law and ordering remedial relief for its past violations of applicable law, including regarding ER and Medicare rates for UCR;

E.      Enjoining Defendants' use of EOBs which violate applicable law;

F.      Declaring that Defendants have failed to provide a "full and fair review" to Plaintiff and the Class under 29 U.S.C. § 1133, and awarding compensatory, injunctive, declaratory and other equitable relief to Plaintiff and the Class to ensure compliance with ERISA and ERISA regulations;

G.      Declaring that Defendants have violated their disclosure obligations under ERISA and the federal common law, including under 29 U.S.C. § 1024(b)(4) and 29 U.S.C. § 1022, for which Plaintiff and the Class are entitled to statutory penalties, injunctive, declaratory and other equitable relief;

H.      Declaring that Defendants have violated federal claims procedures, and awarding Plaintiff and the Class declaratory and injunctive relief to remedy such violations;

I.      Preliminarily and permanently enjoining Defendants from using the Ingenix databases, or from making UCR determinations in the absence of valid and reliable data substantiating its UCR Benefit Reductions;

J.      Preliminarily and permanently enjoining Defendants from making UCR and Nonpar Benefit Reductions where Members' EOCs and SPDs do not disclose or authorize them;

K.      Preliminarily and permanently enjoining Defendants from discouraging appeals and/or deciding appeals in a manner inconsistent with applicable law;

L.      Preliminary and permanently enjoining Defendants from discouraging Nonpar services or placing undisclosed obstacles in the path of Aetna Members seeking to access Nonpar care, including in the ER;

M.     Awarding Plaintiff and the Class the costs, disbursements and expenses of this action, including reasonable counsel fees, in amounts to be determined by the Court;

N.     Ordering Defendants to recalculate its payment of subsequent payments which were underpaid as a result of Defendants' UCR and Nonpar Benefit Reductions;

O.     Awarding interest from date of initial UCR and other Nonpar Benefit Reductions for Plaintiff and the Class on all unpaid amounts;

P.     Awarding prejudgment interest; and

Q.     Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated:   July 30, 2007

Respectfully submitted,

**WILENTZ, GOLDMAN & SPITZER, P.A.**

Barry M. Epstein, Esq.
Lynne Kizis, Esq.
Barbara Gail Quackenbos, Esq.
90 Woodbridge Center Drive
Suite 900
Woodbridge, New Jersey 07095
(732) 636-8000

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**

Stanley M. Grossman, Esq.
D. Brian Hufford, Esq.
Robert J. Axelrod, Esq.
100 Park Avenue

#3821534.06                              28

New York, NY 10017
(212) 661-1100

**THE ALPERT LAW FIRM, P.A.**
Jonathan Alpert, Esq.
5920 River Terrace
Tampa, Florida 33604-6526
(813) 223-4131

**SIEGEL BRILL GREUPNER DUFFY &
   FOSTER P.A.**
Wood R. Foster, Jr., Esq.
Jordan Lewis, Esq.
1300 Washington Ave S
Minneapolis, MN 55401
(612) 337-6100

**Counsel for Plaintiff Michele Cooper and the
Putative Class**

#3821534.06