## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MICHELE COOPER, individually, and
MICHELE WERNER, individually and on
behalf of her minor child, and DARLERY
FRANCO, on behalf of all others similarly
situated,

*FILED ELECTRONICALLY*

          *Plaintiffs,*

Civil Action No. 07-cv-3541 (FSH)

   v.

AETNA HEALTH INC. PA, CORP.,
AETNA HEALTH MANAGEMENT, LLC,
AETNA LIFE INSURANCE COMPANY,
AETNA HEALTH and LIFE INSURANCE
COMPANY, AETNA HEALTH INC. and
AETNA INSURANCE COMPANY OF
CONNECTICUT,
          *Defendants.*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Liza M. Walsh
Michael X. McBride
Tricia B. O'Reilly
Patricia Lee
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068-1765
(973) 535-0500

Richard J. Doren
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000

Geoffrey M. Sigler
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

*Counsel for Aetna*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

PROCEDURAL HISTORY ................................................................................... 5

ARGUMENT.......................................................................................................... 6

**I.    PLAINTIFFS LACK STANDING TO PURSUE ANY OF THE RELIEF SOUGHT IN THE COMPLAINT.** ...................................................... 7

    A.    Plaintiffs Lack Standing Under RICO Because They Have Not Alleged An Injury To "Business Or Property" (Counts VII & VIII).................................... 7

    B.    Plaintiffs Lack Standing Under ERISA Because They Cannot Establish Injury-In-Fact Or Redressability (Counts I–VI). ..................................... 10

        1.    The Failure To Plead An Out-Of-Pocket Loss Dooms Plaintiffs' Claims For Monetary Relief Under ERISA. .......................... 11

        2.    Plaintiffs' ERISA Claims Also Are Not Redressable By Any Aetna Defendant............................................................... 12

**II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER RICO (COUNTS VII & VIII).** ......................................................................................... 16

    A.    Plaintiffs' Assertion Of An "Aetna-Ingenix Enterprise" Rests On Conclusory Allegations That Suggest Nothing More Than An Ordinary Business-Vendor Relationship And Not The Separate Decision-Making Structure Necessary Under RICO.......................................................................... 16

    B.    The Complaint Fails To Plead Any Facts Suggesting Aetna Directed The Conduct Of The Alleged Enterprise. .......................................... 20

    C.    Plaintiffs Cannot Plead Fraud Or Any Other RICO Predicate Acts With Sufficient Particularity............................................................... 22

**III.    PLAINTIFFS' ERISA CLAIMS ALSO MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.** ..................................................... 26

    A.    Plaintiffs Cannot State A Claim Under Section 503 Or Related Claims Procedure Regulations, Because The Only Available Relief Would Be Remand To The Plan Administrator (Counts III & VI). .................... 26

    B.    Section 102 And 104 Do Not Impose Any Obligations On Aetna (Count IV)...27

    C.    Plaintiffs Fail To State A Cognizable Claim Against Aetna For Breach Of Fiduciary Duty (Count V)...................................................... 29

        1.    *Varity Corp. v. Howe* Forecloses Plaintiffs' Claims For Breach Of Fiduciary Duty Under ERISA Section 502(a)(3). ................. 29

        2.    Plaintiffs Cannot Recover "Restitution" Under ERISA Section 502(a)(3). .................................................................. 31

3.     Plaintiffs Allege No Facts To Support A Claim That Aetna Engaged In A "Prohibited Transaction" In Violation Of ERISA Section 406 ....... 32

D.     Plaintiffs' "Claims For Unpaid Benefits" Under Section 502(a)(1)(B) Must Be Dismissed To The Extent They Failed To Exhaust Administrative Appeals (Counts I–VI)............................................................................... 32

IV.     **COOPER'S NEWFOUND STATE-LAW CLAIM PLAINLY IS PREEMPTED BY ERISA, EVEN IF A CLAIM EXISTED (COUNT I).** ........................................ 35

CONCLUSION .................................................................................................................... 39

# TABLE OF AUTHORITIES

**Cases**

*Abram v. Cargill, Inc.*,
   395 F.3d 882 (8th Cir. 2005) ............................................................27

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ...........................................................4, 26, 33, 38

*AMA v. United Healthcare Corp.*,
   No. 00 Civ. 2800(LMM), 2007 WL 2457358 (S.D.N.Y. Aug. 23, 2007)................33

*Angstadt v. Midd-West Sch. Dist.*,
   377 F.3d 338 (3d Cir. 2004) ..............................................................14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ............................................................6, 22

*Ballentine v. United States*,
   486 F.3d 806 (3d Cir. 2007) ...............................................................7

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007)........................................................6, 15, 17, 18

*Bennett v. Spear*,
   520 U.S. 154 (1997) ......................................................................10

*Berg v. First State Ins. Co.*,
   915 F.2d 460 (9th Cir. 1990) .............................................................10

*Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. and Research
   Found.*,
   334 F.3d 365 (3d Cir. 2003) ..............................................................31

*Chaney v. Comcast Cable Commc'ns, Inc.*,
   No. Civ. A. 02-8769, 2003 WL 21973325 (E.D. Pa. June 10, 2003)....................29

*Chapman v. ChoiceCare Long Island Term Disability Plan*,
   288 F.3d 506 (2d Cir. 2002) ..............................................................14

*Charles v. Lawyers Title Ins. Corp.*,
   Civ. A. No. 06-2361(JAG), 2007 WL 1959253 (D.N.J. July 3, 2007) .................37

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983) .......................................................................12

*Clark v. Robert W. Baird Co.*,
   142 F. Supp. 2d 1065 (N.D. Ill. 2001)....................................................24

*Colin v. Marconi Commerce Sys. Employees' Ret. Plan*,
   335 F. Supp. 2d 590 (M.D.N.C. 2004) ....................................................16

*D'Amico v. CBS Corp.*,
   297 F.3d 287 (3d Cir. 2002) ..............................................................35

*Daly v. Castro Llanes*,
   30 F. Supp. 2d 407 (S.D.N.Y. 1998) .....................................................25

*Davis v. Liberty Mut. Ins. Co.*,
   871 F.2d 1134 (D.C. Cir. 1989) ..........................................................28

*Doe v. Mamsi Life & Health Ins. Co.*,
   471 F. Supp. 2d 139 (D.D.C. 2007)........................................................27

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989) .......................................................................1

*Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*,
  491 F.3d 1180 (10th Cir. 2007) .................................................................. 27
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................................... 10
*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990) ..................................................................................... 7
*Gallo v. Amoco Corp.*,
  102 F.3d 918 (7th Cir. 1996) ...................................................................... 27
*Garofalo v. Empire Blue Cross & Blue Shield*,
  67 F. Supp. 2d 343 (S.D.N.Y. 1999) .......................................................... 11
*Goddard v. Citibank, NA*,
  No. 04CV5317(NGG)(LB), 2006 WL 842925 (E.D.N.Y. Mar. 27, 2006) .......... 25
*Grace v. Am. Cent. Ins. Co.*,
  109 U.S. 278 (1883) ..................................................................................... 7
*Graden v. Conexant Sys. Inc.*,
  496 F.3d 291 (3d Cir. 2007) ....................................................................... 14
*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ............................................................................. 31, 32
*Hall v. LHACO, Inc.*,
  140 F.3d 1190 (8th Cir. 1998) .................................................... 13, 14, 15, 16
*Harrow v. Prudential Ins. Co. of Am.*,
  279 F.3d 244 (3d Cir. 2002) ........................................................ 5, 29, 33, 35
*Harry Miller Corp. v. Mancuso Chems. Ltd.*,
  468 F. Supp. 2d 708 (E.D. Pa. 2006) ......................................................... 18
*Holmes v. SIPC*,
  503 U.S. 258 (1992) ..................................................................................... 8
*Horvath v. Keystone Health Plan East, Inc.*,
  333 F.3d 450 (3d Cir. 2003) ................................................................. 12, 32
*ICD Holdings S.A. v. Frankel*,
  976 F. Supp. 234 (S.D.N.Y. 1997) ............................................................. 25
*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999) .................................................................. 6, 22
*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
  MDL No. 1712, 2006 WL 1531152 (E.D. Pa. June 2, 2006) ....................... 19
*In re Ins. Brokerage Antitrust Litig.*,
  MDL No. 1663, 2007 WL 1062980 (D.N.J. Apr. 5, 2007)
  (*Ins. Brokerage II*) ............................................................................. passim
*In re Ins. Brokerage Antitrust Litig.*,
  MDL No. 1663, 2006 WL 2850607 (D.N.J. Oct. 3, 2006)
  (*Ins. Brokerage I*) .......................................................................... 17, 18, 25
*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
  399 F.3d 248 (3d Cir. 2005) ........................................................................ 7
*Investor Prot. Corp. v. Stratton Oakmont, Inc.*,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999) ........................................................ 25
*Kaelin v. Tenet Employee Benefit Plan*,
  Civ. A. No. 04-2871, 2006 WL 2382005 (E.D. Aug. 16, Pa. 2006) ............. 27

*Kansas v. Titus,*
    452 F. Supp. 2d 1136 (D. Kan. 2006)..................................................27

*Klosterman v. W. Gen. Mgmt., Inc.,*
    32 F.3d 1119 (7th Cir. 1994)..........................................................28

*Krauss v. Oxford Health Plans, Inc.,*
    418 F. Supp. 2d 416 (2005)..............................................................1

*Lewis v. Casey,*
    516 U.S. 804 (1996)......................................................................12

*Livingston v. Shore Slurry Seal, Inc.,*
    98 F. Supp. 2d 594 (D.N.J. 2000)....................................................24

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)......................................................................10

*Lum v. Bank of Am.,*
    361 F.3d 217 (3d Cir. 2004) ...............................................6, 16, 22

*Maio v. Aetna, Inc.,*
    221 F.3d 472 (3d Cir. 2000) ...................................................passim

*Mansfield C. & L.M.Ry. Co. v. Swan,*
    111 U.S. 379 (1884) .......................................................................7

*Marcano v. Nw. Chrysler-Plymouth Sales, Inc.,*
    550 F. Supp. 595 (N.D. Ill. 1982).....................................................25

*Marks v. Independence Blue Cross,*
    71 F. Supp. 2d 432 (E.D. Pa. 1999)..................................................32

*Mass. Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985)......................................................................28

*Massachusetts Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985)......................................................................33

*Med. Soc'y of N.J. v. AmeriHealth HMO, Inc.,*
    868 A.2d 1162 (N.J. Super. Ct. App. Div. 2005) ................................36

*Metro. Life Ins. Co. v. Price,*
    501 F.3d 271 (3d Cir. 2007) ...........................................................33

*Moran v. Aetna Life Ins. Co.,*
    872 F.2d 296 (9th Cir. 1989)..........................................................28

*Nechis v. Oxford Health Plans, Inc.,*
    421 F.3d 96 (2d Cir. 2005)............................................................28

*Nichols v. Verizon Commc'ns, Inc.,*
    No. Civ. 01-0497(JBS), 2002 WL 31477114 (D.N.J. Aug. 16, 2002)............29

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) .....................................................................12

*O'Brien v. Nat'l Prop. Analysts Partners,*
    936 F.2d 674 (2d Cir. 1991) ...........................................................25

*Oscar v. Univ. Students Coop. Ass'n,*
    1965 F.2d 783 (9th Cir. 1992)........................................................10

*Owen v. Regence BlueCross BlueShield of Utah,*
    388 F. Supp. 2d 1318 (D. Utah 2005) ................................................9

*Pilot Life Ins. Co. v. Dedeaux,*
    481 U.S. 41 (1987) ................................................................passim

*Pryor v. Nat'l Collegiate Athletic Ass'n,*
   288 F.3d 548 (3d Cir. 2002) ...................................................................10

*Pryzbowski v. U.S. Healthcare, Inc.,*
   245 F.3d 266 (3d Cir. 2001) ...................................................................38

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,*
   773 A.2d 1132 (N.J. 2001) .....................................................................36

*Reilly v. Keystone Health Plan East, Inc.,*
   No. 98-CV1648, 1998 WL 422037 (E.D. Pa. July 27, 1998)................16

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993) ....................................................................3, 20, 21

*Rush Prudential HMO, Inc. v. Moran,*
   536 U.S. 355 (2002) .........................................................................14, 26

*Salinas v. United States,*
   522 U.S. 52 (1997) ................................................................................16

*Sanchez v. Triple-S Mgmt. Corp.,*
   492 F.3d 1 (1st Cir. 2007)................................................................22, 24

*Sedima, S.P.R.L. v. Imrex Co.,*
   473 U.S. 479 (1985) ................................................................................7

*Sereboff v. Mid Atlantic Medical Services, Inc.,*
   126 S. Ct. 1869 (2006 ..........................................................................31

*Smith v. Sydnor,*
   184 F.3d 356 (4th Cir. 1999) ..............................................................31

*Sponaugle v. First Union Mortgage Corp.,*
   No. 01-3325, 2002 WL 1723894 (3d Cir. July 25, 2002) ......................8

*Stachon v. United Consumers Club, Inc.,*
   229 F.3d 673 (7th Cir. 2000) .................................................................19

*Steele v. Hosp. Corp. of Am.,*
   36 F.3d 69 (9th Cir. 1994) .....................................................................10

*Stevens v. Union Planters Corp.,*
   No. Civ.A. 00-CV-1695, 2000 WL 33128256 (E.D. Pa. Aug. 22, 2000) ...........37

*Stevenson v. Tyco Int'l (US) Inc. Supplemental Executive Ret. Plan,*
   No.04-CV-4037, 2006 WL 2827635 (S.D.N.Y. Sept. 29, 2006) ..........13

*Syed v. Hercules Inc.,*
   214 F.3d 155 (3d Cir. 2000) ..................................................................27

*Taffet v. So. Co.,*
   967 F.2d 1483 (11th Cir. 1992) .............................................................37

*Thomas v. Aetna Life Ins. Co.,*
   No. 3:99-CV-1163-M, 2000 WL 1239129 (N.D. Tex. Aug. 31, 2000) .....16

*U.S. Steel Corp. v. Lumbermens Mut. Cas. Co.,*
   No. Civ.A. 02-2108, 2005 WL 2106580 (W.D. Pa. Aug. 31, 2005)........37

*Union Underwear Co. v. Wilson,*
   No. 1:05 CV 128 M, 2005 WL 3307098 (W.D. Ky. Dec. 1, 2005) .........25

*United States v. D'Amato,*
   39 F.3d 1249 (2d Cir. 1994) ..................................................................22

*United States v. Irizarry,*
   341 F.3d 273 (3d Cir. 2003) ..................................................................17

*United States v. Korando,*
   29 F.3d 1114 (7th Cir. 1994) ............................................................20
*United States v. Kreimer,*
   609 F.2d 126 (5th Cir. 1980) ............................................................22
*United States v. Riccobene,*
   709 F.2d 214 (3d Cir. 1983) ........................................................3, 17, 20
*United States v. Turkette,*
   452 U.S. 576 (1981) ..................................................................3, 17, 20
*United States v. Urban,*
   404 F.3d 754 (3d Cir. 2005) ........................................................17, 21
*Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.,*
   996 F.2d 1534 (3d Cir. 1993) ......................................................20, 22
*Varity Corp. v. Howe,*
   516 U.S. 489 (1996) ....................................................................4
*Warter v. Boston Sec., S.A.,*
   No. 03-81026-CIV/RYSKAMP, 2004 WL 691787 (S.D. Fla. Mar. 22, 2004) ............25
*Warth v. Seldin,*
   422 U.S. 490 (1975) ....................................................................7
*Wegoland Ltd. v. NYNEX Corp.,*
   27 F.3d 17 (2d Cir. 1994) ..........................................................36, 37
*West v. Health Net of the Northeast,*
   217 F.R.D. 163 (D.N.J. 2003) ......................................................11, 12
*Wirth v. Aetna U.S. Healthcare,*
   469 F.3d 305 (3d Cir. 2006) ............................................................38

**Statutes**
18 U.S.C. § 1341 ..........................................................................22
18 U.S.C. § 1343 ..........................................................................22
18 U.S.C. § 1962(c) ......................................................................20
18 U.S.C. § 1964(c) ......................................................................7
18 U.S.C. § 664 ..........................................................................22
29 U.S.C. § 1002(16)(A)(i)-(iii) ........................................................14
29 U.S.C. § 1021(a)(1) ..................................................................28
29 U.S.C. § 1024(b)(4) ..................................................................28
29 U.S.C. § 1132(a)(3) ................................................................4, 31
N.J. ADMIN CODE § 11.21-7:13(a) ........................................................36
N.J. STAT. ANN. § 17:27A-17 *et seq.* ................................................36
N.J. STAT. ANN. § 17B:27A-41 ............................................................36
N.J. STAT. ANN. § 17B:27A-43 ............................................................36

**Regulations**
29 C.F.R. § 2560.503-1 ............................................................4, 26, 27

**Court Filings**
Pls.' Position Re Injunctive Relief (Dkt. Entry 90),
   *Franco v. Conn. Gen. Life Ins. Co.,* No. 04cv1318 (FSH) (PS) (D.N.J. Dec. 7, 2007) ............13

## INTRODUCTION

Plaintiffs in this case—Michele Cooper, Michele Werner, and Darlery Franco ("Plaintiffs")—are each *former* members of employer-sponsored health benefits plans that were insured by Aetna affiliates (collectively "Aetna").[1]  Plaintiffs challenge the sufficiency of payments received from Aetna for claims related to services rendered by non-contracted or out-of-network providers while Plaintiffs were enrolled in Aetna-insured plans.   Specifically, Plaintiffs allege that Aetna based payments on incorrect determinations of the "usual, customary, and reasonable" ("UCR") prevailing charges for the medical services they received.

Plaintiffs do not contend that they were entitled to more than the UCR amount for those services, nor can they.  Under the express terms of their respective plan documents, coverage for services by out-of-network providers plainly was limited to UCR, as determined by Aetna.  Nor do Plaintiffs allege in their Complaint that Aetna abused its discretion in applying the language of Plaintiffs' plans concerning UCR determinations.  *See Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416 (S.D.N.Y. 2005) (holding that health plan was entitled to deferential abuse of discretion standard and that plan's UCR determinations were not "arbitrary and capricious" under the plaintiffs' plans) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)).

Rather, Plaintiffs allege generally that Aetna's UCR determinations were based on "flawed" and "invalid" data supplied to Aetna by a third party, Ingenix, Inc. ("Ingenix").  Plaintiffs allege that Aetna and Ingenix each separately "scrubbed" the data on which the UCR pay-

---

[1]   The following Aetna entities are named in the complaint:  Aetna Health Inc. PA, Corp.; Aetna Health Management, LLC; Aetna Life Insurance Co.; Aetna Health and Life Insurance Co.; Aetna Health Inc.; and Aetna Insurance Co. of Connecticut.  Plaintiffs do not specify which Aetna entities insured their plans or otherwise explain why they sued these particular Aetna entities.

ments were based——Aetna, before contributing its payment data to Ingenix, and Ingenix when compiling the data contributed by Aetna and others in its database. Plaintiffs allege this was done to eliminate "valid high charges" and to decrease the resulting UCR rates.

Plaintiffs' claims against Aetna include two counts seeking damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts VII & VIII), five counts seeking to recover past benefits, an injunction, and other relief under the Employee Retirement Income Security Act ("ERISA") (Counts II–VI), and one count asserted under "New Jersey law" (Count I).

Plaintiffs' Second Amended Complaint ("Complaint") should be dismissed in its entirety. *First*, Plaintiffs lack standing to assert any of the claims alleged. None of the Plaintiffs has alleged an out-of-pocket loss suffered as a result of the allegedly improper UCR determinations. Though Plaintiffs allege they were "billed" by out-of-network providers for the difference between the providers' billed charges and Aetna's UCR payments, none of the Plaintiffs allege that they actually ***paid*** any additional sums to a provider that were attributable to Aetna's allegedly incorrect determinations of UCR. Without an out-of-pocket loss or other concrete injury, Plaintiffs lack the injury-in-fact essential to constitutional standing, much less standing under the more stringent requirements of ERISA and RICO. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).

Further, even had Plaintiffs alleged an injury-in-fact, as ***former*** members of health benefits plans insured by Aetna, they lack standing to seek prospective relief from Aetna, even though they purport to seek prospective relief under each of their ERISA counts. Additionally, because Aetna was only the insurer of Plaintiffs' employer-sponsored plans——and is not the plan itself or the current plan administrator for any of the plans——Aetna cannot change the level of benefits available under those plans or provide any other relief that they seek under ERISA; thus,

Plaintiffs lack standing to assert their other ERISA claims for the additional reason that they are not redressable by Aetna.

*Second*, separate and apart from a lack of standing, Plaintiffs cannot state a claim under RICO. Plaintiffs' RICO claim hinges on allegations of a purported "Aetna-Ingenix Enterprise." The Complaint, however, contains no allegations sufficient to establish the requisite "ascertainable structure" of a RICO enterprise separate and apart from the challenged conduct, or that Aetna "directed" such an enterprise. *See United States v. Turkette*, 452 U.S. 576, 583 (1981); *United States v. Riccobene*, 709 F.2d 214, 222 (3d Cir. 1983); *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663., 2007 WL 1062980, at *10 (D.N.J. Apr. 5, 2007) (hereinafter "*Ins. Brokerage II*"). Indeed, the Complaint only alleges one instance in which Aetna and Ingenix had discussions concerning possible changes to the Ingenix databases, and those allegations do nothing more than reflect an ordinary business relationship between two companies.

Plaintiffs' RICO claims also fail because the "fraud" alleged as a RICO predicate act is premised entirely on vague allegations that Aetna and Ingenix "scrubbed" the Ingenix data without disclosing these practices to plan members—allegations wholly lacking in the particularity required under Federal Rule of Civil Procedure Rule 9(b) as to the "who, what, where, when, and why/how" of any allegedly fraudulent acts.

*Third*, Plaintiffs' ERISA claims also fail. Within ERISA's comprehensive statutory regime, the civil enforcement provisions in Section 502 represent the ***exclusive*** mechanisms by which plan members may seek to enforce the terms of their plans or other ERISA requirements. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987). Section 502(a)(1)(B), in particular, is the exclusive avenue for the relief that Plaintiffs seek here—namely, challenging the level of

benefits paid out under their plans.  *See id*; *see also Aetna Health Inc. v. Davila*, 542 U.S. 200

(2004).[2]  Plaintiffs, however, purport to seek relief under other ERISA provisions that provide no

basis for any separate cause of action:

    (a) Plaintiffs' claims seeking an injunction or "other appropriate equitable relief" under Section 502(a)(3) are precluded by *Varity Corp. v. Howe*, 516 U.S. 489 (1996), and its progeny, because they seek the same relief that would be available under Section 502(a)(1)(B) (Count V);[3]

    (b) Plaintiffs cannot plead any violation of the "full and fair review" provision under Section 503 or the "claims procedure" provisions (29 C.F.R. § 2560.503-1), and in any event the only possible remedy would be remand to the plan administrator, relief that Plaintiffs do not seek (Count III); and

    (c) The disclosure requirements of Sections 102 and 104 do not extend to Aetna, which is not the designated ERISA "administrator" (Count IV).

None of these claims purporting to seek relief under ERISA provisions other than Section

502(a)(1)(B) is viable as an independent cause of action, and thus Plaintiffs must pursue their

claims for benefits—if they had standing, and if a claim existed—under Section 502(a)(1)(B).

    *Finally*, although Plaintiffs assert two counts seeking "unpaid benefits" (Counts I & II)—

presumably intending to invoke Section 502(a)(1)(B) of ERISA—one of the Plaintiffs, Cooper,

failed to exhaust her administrative remedies on any of the claims in the Complaint, a strict pre-

---

[2]   Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides:

    (a)  Persons empowered to bring a civil action.  A civil action may be brought . . . (1) by a participant or beneficiary . . . (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . .

[3]   Section 502(a)(3), 29 U.S.C. § 1132(a)(3), provides:

    (a)  Persons empowered to bring a civil action.  A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

requisite for such claims. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002). Further, to the extent Cooper (or any other Plaintiff) attempts to circumvent this requirement by asserting a separate "claim for unpaid benefits" under "New Jersey law" (Count I)—or any other state-law theory, for that matter—that claim is preempted. *Pilot Life Ins. Co.*, 481 U.S. at 52.

For all of these reasons, as set forth more fully below, Aetna respectfully asks that the Complaint be dismissed with prejudice.

### PROCEDURAL HISTORY

Michele Cooper ("Cooper") filed the original complaint in this putative class-action suit against the six Aetna defendants on July 30, 2007. After Cooper filed the original complaint, Aetna filed a motion with the Judicial Panel on Multidistrict Litigation to transfer the case to the United States District Court for the Southern District of Florida, where a number of other similar actions have already been consolidated. The MDL Panel denied Aetna's motion to transfer on December 17, 2007.

While Aetna's motion to transfer was pending in front of the MDL Panel, an amended complaint was filed, adding Michele Werner ("Werner") as a plaintiff, as well as RICO claims. As part of an order entering the parties' agreed briefing schedule on Aetna's anticipated motion to dismiss, this Court ordered the parties to exchange documents relating to anticipated arguments relating to standing and exhaustion. After the parties exchanged documents relating to Cooper and Werner, and as the due date for Aetna's motion to dismiss approached, Plaintiffs sought to amend their complaint yet again. The Second Amended Complaint added Darlery Franco ("Franco") as a Plaintiff and also a new count for Cooper—the Plaintiff who originally filed the lawsuit—alleging violations of unspecified "New Jersey law." The parties exchanged documents relating to standing and exhaustion for the new Plaintiff on December 11, 2007.

## ARGUMENT

To survive a motion to dismiss, a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). In considering a complaint's allegations, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (citation omitted); *see also id.* at 1965 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.").

Here, Plaintiffs fail to satisfy even the most basic pleading standard under *Twombly*, much less the more stringent pleading standard under Rule 9(b) applicable to the fraud elements of their two RICO counts. It is well-established that "plaintiffs must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *See Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004) (internal quotations omitted). To plead the circumstances adequately, plaintiffs must plead (1) "the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud,'" (2) "who made a misrepresentation to whom," and (3) "the general content of the misrepresentation." *Id.* at 224; *see also In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (fraud claims must specify the "'who, what, when, where, and how'" of the fraud); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (allegations must explain "why the statements were fraudulent").

The current Complaint represents the ***third*** version of the Complaint in this action. Furthermore, Plaintiffs have had the benefit of over 1,700 pages of documents produced by Aetna relating to Aetna's standing and exhaustion arguments, and still have been unable to state a

claim. Thus, any leave to amend would be futile, and Plaintiffs' claims should be dismissed with prejudice.

## I.  PLAINTIFFS LACK STANDING TO PURSUE ANY OF THE RELIEF SOUGHT IN THE COMPLAINT.

"Standing is a threshold jurisdictional requirement" that must be satisfied before turning to the merits. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005) (internal quotation marks omitted); *see also Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("standing is a jurisdictional matter"). "On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Ballentine*, 486 F.3d at 810 (citations and internal quotations omitted).

"It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quoting *Grace v. Am. Cent. Ins. Co.*, 109 U.S. 278, 284 (1883), and *Mansfield C. & L.M.Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). It is the burden of the party invoking federal jurisdiction "'clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

### A.  Plaintiffs Lack Standing Under RICO Because They Have Not Alleged An Injury To "Business Or Property" (Counts VII & VIII).

Under RICO, a plaintiff "'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation [of RICO].'" *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also* 18 U.S.C. § 1964(c) ("Any person injured in his

business or property by reason of a violation of section 1962 of this chapter may sue therefor
. . . .").  To establish standing to assert a RICO claim, "a showing of injury requires proof of a
concrete financial loss" such as "actual monetary loss, *i.e.*, an out-of-pocket loss."  *Maio*, 221
F.3d at 483 (internal quotation marks omitted).  Plaintiffs must also allege that any harm was
proximately caused by the alleged RICO violations.  *See Holmes v. SIPC*, 503 U.S. 258 (1992).

Here, Plaintiffs allege that Aetna violated RICO through "intentional underpayment of
Aetna Members" by using "flawed and invalid data for its UCR determination."  Compl. ¶ 258.
But nowhere in the 79-page Complaint is there an allegation that any of the Plaintiffs actually
were required to make out-of-pocket payments (or that they suffered any other injury to their
"business or property") as a result of Aetna's alleged miscalculation of UCR.  Plaintiffs allege
only that providers ***billed*** them for the amounts in excess of the UCR payment, not that Plaintiffs
actually ***paid*** any additional amounts based on the UCR determinations.  *See, e.g.*, Compl. ¶ 31
(provider billed Cooper in January 2005), ¶ 38 (provider billed Cooper in November 2005),
¶¶ 125–27 (provider billed Franco in February or March 2004), ¶ 73 (provider billed Werner in
February 2006), ¶ 77 (provider billed Werner in September or October 2006).  Similarly, Plain-
tiffs allege that Aetna improperly calculated deductibles, but they never allege these calculations
caused them out-of-pocket losses; instead, they merely allege in conclusory fashion that they
were underpaid by Aetna.  *See, e.g., id.* ¶¶ 45, 60.

Merely alleging that the Plaintiffs were billed additional amounts by providers plainly is
insufficient to establish RICO standing, because receiving a bill does not injure one's "business
or property."  *See Sponaugle v. First Union Mortgage Corp.*, No. 01-3325, 2002 WL 1723894, at
*1 (3d Cir. July 25, 2002) (finding asserted injury to be, "at best, hypothetical and conjectural"
and insufficient to establish standing where plaintiff had never paid fee and debt-collection ef-

forts had ceased).  Indeed, as courts repeatedly have recognized in cases involving the healthcare industry, providers often bill for amounts far in excess of what they expect to receive or normally would receive for particular services, and often those providers never attempt to collect any additional amounts from members.  *See, e.g.*, *Owen v. Regence BlueCross BlueShield of Utah*, 388 F. Supp. 2d 1318, 1326 (D. Utah 2005) (ERISA plaintiff lacked standing to sue where there was "no evidence that [out-of-network provider] has ever, in fact, attempted to collect on the debt").  In some cases, rather than pursuing additional amounts from the member, the provider submits an appeal to the managed care company—just as some of the providers who treated Plaintiffs did here, *see* Compl. ¶¶ 34–36, 87.

Similarly, Plaintiffs' allegations concerning other types of "Nonpar Benefit Reductions" that they purport to challenge—such as Aetna's overpayment collection practices, Compl. ¶ 22, and Aetna's alleged denials of emergency room claims, Compl. ¶¶ 183–86—are unsupported by any factual allegations sufficient to establish RICO or even constitutional standing.  Plaintiffs do not allege a single emergency room claim that was denied by Aetna; nor do Plaintiffs allege that they ever made any additional payments in response to Aetna's overpayment collection efforts. *See* Compl. ¶ 104.  In short, there are no allegations of concrete injuries to business or property associated with these claims.

In the absence of any allegation that Plaintiffs paid any out-of-pocket expenses or suffered any other concrete injury as a result of the challenged conduct, their RICO claims must fail. *See Maio*, 221 F.3d at 483.  In *Maio*, for example, subscribers alleged that Aetna's nondisclosure of cost-saving practices had induced them to pay more for "inferior" insurance coverage than the coverage was actually worth.  *Id.* at 484.  Because the plaintiffs did not allege that they had suffered any actual out-of-pocket losses, the *Maio* court concluded that the plaintiffs failed to satisfy

the "financial loss" element of their RICO claims. *Id.*; *see also id.* at 487–88.[4]  Plaintiffs' claims

in the present case suffer from the same failure to allege any concrete financial loss and therefore

must be dismissed for lack of RICO standing.

**B.      Plaintiffs Lack Standing Under ERISA Because They Cannot Establish Injury-In-Fact Or Redressability (Counts I–VI).**

Plaintiffs' six ERISA counts (including Plaintiffs' state-law claim that is preempted by

ERISA, *see infra*) must also be dismissed because Plaintiffs lack standing to assert them.  When

seeking relief under ERISA, as with any other claim, a plaintiff must establish (1) that she suf-

fered an injury in fact, (2) that the injury was caused by the named defendants or at least "'trace-

able to the challenged action of the defendant,'" and (3) that a favorable decision by the court

would likely redress her injury.  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 561 (3d

Cir. 2002) (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)); *see also Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992) (describing these "three elements" as necessary to establish

"the irreducible constitutional minimum of standing").  A "plaintiff must demonstrate standing

separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

*(TOC), Inc.*, 528 U.S. 167, 185 (2000), and Plaintiffs have not done so here.

---

[4]      The Third Circuit in *Maio* also cited with approval a string of Ninth Circuit cases in which similarly conjectural harms failed to establish RICO standing.  221 F.3d at 483–84 ("*See Steele* [*v. Hosp. Corp. of Am.*], 36 F.3d [69,] 70 [(9th Cir. 1994)] (stating that plaintiffs have not suffered a financial loss under RICO if they have paid none of the allegedly excessive charges out of their own pockets); *Oscar v. [Univ.] Students [Coop.] Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc) (injuries to property are not actionable under RICO unless they result in tangible financial loss to plaintiff); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (holding that plaintiffs suffered no damages under RICO because it was un-disputed that they did not incur any out-of-pocket expenses as a result of defendants' con-duct).").

1.    **The Failure To Plead An Out-Of-Pocket Loss Dooms Plaintiffs' Claims For Monetary Relief Under ERISA.**

Plaintiffs' claims seeking monetary relief under ERISA—which include their claims for "unpaid benefits" under Section 502(a)(1)(B) (Counts I & II), "failure to provide a full and fair review" under Section 503 (Count III), "failure to provide an accurate SPD" under Sections 102 and 104 (Count IV), "violation of fiduciary duties of loyalty and due care" under Section 502(a)(3) (Count V), and "violation of claims procedure provisions" under 29 C.F.R. § 2560.503-1 (Count VII)—fail for the same reason that their RICO claims fail: none of the Plaintiffs has alleged any out-of-pocket loss (*see supra*).  These claims purport to seek various forms of monetary relief, including "unpaid benefits, recalculated deductible and coinsurance amounts and interest back to the date their claims were originally submitted to Aetna," Compl. ¶ 221; *see also id.* ¶¶ 227, 235, 240, 252.

Courts have repeatedly held in ERISA cases that a plaintiff has suffered no "injury in fact"—and therefore lacks standing to seek monetary relief—where no out-of-pocket loss has been suffered.  *See Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003) (rejecting plaintiff's claim for restitution and disgorgement where plaintiff suffered no personal loss as a result of HMO's cost-control measures); *Sponaugle*, 2002 WL 1723894, at *1; *West v. Health Net of the Ne.*, 217 F.R.D. 163, 173 (D.N.J. 2003) (dismissing claim for compensatory relief under ERISA for lack of standing where plaintiffs "never paid monies"); *Garofalo v. Empire Blue Cross & Blue Shield,* 67 F. Supp. 2d 343, 346–47 (S.D.N.Y. 1999) (dismissing claim under ERISA for benefits because plaintiff "suffered no actual out-of-pocket loss").  Thus, like Plaintiffs' RICO claims, Plaintiffs' ERISA claims seeking monetary relief under ERISA must be dismissed for lack of standing.

**2.    Plaintiffs' ERISA Claims Also Are Not Redressable By Any Aetna Defendant.**

Plaintiffs' ERISA claims must be dismissed for the additional reason that even if Plaintiffs were to plead an injury-in-fact, they still would not be able to allege that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision"—a necessary requirement for standing. *Horvath*, 333 F.3d at 455.

Here, Plaintiffs have no current connection to the plans under which they seek relief: Plaintiffs ceased being members before the Complaint in this action was filed. *See* Compl. ¶ 30 (Cooper was not covered by the Rosenberg & Associates' plan after September 30, 2005); *id.* ¶ 71 ("Werner *was* a member of a fully insured group plan.") (emphasis added); *id.* ¶ 120 ("Franco *was* an Aetna member in a New Jersey large employer health plan through her employer.") (emphasis added).

In the absence of allegations demonstrating any current connection to the plans, Plaintiffs plainly lack standing to seek any ***prospective*** relief under those plans, including "injunctive and declaratory relief," "removal as a breaching fiduciary," or an order "to clarify future benefits" under those plans. *See* Compl. ¶¶ 221, 227, 235, 240, 248, 252. *See also City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983) (finding plaintiff lacked standing to pursue injunctive relief against police department, because there was no evidence of any continuing effects on the plaintiff from the challenged conduct); *West*, 217 F.R.D. at 175–78 (holding that claims for injunctive relief under ERISA became moot when defendant ceased the conduct at issue); *see also Lewis v. Casey*, 516 U.S. 804 (1996) (holding that the standing requirements apply with no less force to class actions than respect to other suits); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (holding that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case

or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

Indeed, after a recent hearing before this Court on a motion to dismiss in another action, Plaintiff Franco voluntarily withdrew "her claims for injunctive relief inasmuch as she is not a current member of a CIGNA health insurance plan." Pls.' Position Re Injunctive Relief (Dkt. Entry 90), *Franco v. Conn. Gen. Life Ins. Co.*, No. 04cv1318 (FSH) (PS) (D.N.J. Dec. 7, 2007). Plaintiffs' claims for injunctive relief and other prospective relief should be dismissed here as well.

Furthermore, Plaintiffs' claims seeking to recover ***monetary relief*** under those plans also should be dismissed to the extent Aetna is not the current plan administrator for any of the plans under which Plaintiffs seek relief—cannot change the level of benefits available under Plaintiffs' plans. *See Hall v. LHACO, Inc.,* 140 F.3d 1190, 1196 (8th Cir. 1998); *see also Stevenson v. Tyco Int'l (US) Inc. Supplemental Executive Ret. Plan,* No. 04-CV-4037 (KMK), 2006 WL 2827635, at *4 (S.D.N.Y. Sept. 29, 2006). Plaintiffs Cooper and Franco correctly allege that Aetna ceased to insure or to provide any administrative services to the plans under which they seek relief before this lawsuit was filed. *See* Compl. ¶¶ 1, 3 (alleging that each of their plans "*was* fully insured and administered by Aetna." (emphasis added)). Further, although Aetna still insures the plan under which Werner seeks relief, Aetna is not the "plan administrator," and thus is not a proper defendant in an action seeking benefits from the plan itself.[5] *See* Ex. D to Goodrich Aff.

_____

[5]    ERISA defines the term "administrator" as follows:

(i)  the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii)  if an administrator is not so designated, the plan sponsor; or

[Footnote continued on next page]

(stating at page 5 that the "American Psychiatric Association" is the "plan administrator"); *see also* Exs. A–C, E (plan documents for Cooper and Franco).[6]

Section 502(a)(1)(B) of ERISA is the *exclusive* avenue for civil actions seeking to recover benefits under the terms of an ERISA-governed plan. *See Pilot Life*, 481 U.S. at 52; *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002). "In a § 1132(a)(1)(B) claim, the defendant is the plan itself (or plan administrators in their official capacities only)." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509–10 (2d Cir. 2002)). Consistent with this rule, in *Hall,* the Court of Appeals for the Eighth Circuit affirmed the district court's dismissal of a putative class action for benefits and injunctive relief by an ERISA plan member against a *former* plan administrator, because the former plan administrator "no longer had any connection with the plan." *Hall*, 140 F.3d at 1192.

Like Plaintiffs here, the plaintiff in *Hall* asserted claims seeking relief under Section 502(a)(1)(B) and Section 502(a)(3) of ERISA. With respect to claims seeking payment of benefits under Section 502(a)(1)(B), the Eighth Circuit in *Hall* reasoned that "[the former plan administrator] is in no position, where it is no longer associated with the Plan, to pay out benefits to

---

[Footnote continued from previous page]

> (iii)  in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A)(i)–(iii).

[6]  The Court may consider these plan documents as part of Aetna's motion to dismiss because Plaintiffs rely specifically upon their plan documents in the Complaint, *see, e.g.*, Compl. ¶¶ 217, 282.  *See Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) ("[D]ocument[s] integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation marks omitted).

Hall, even if those benefits should have been paid sooner . . . [because] [o]nly the Plan and the current plan administrator can pay out benefits to Hall." *Id.* at 1196.

The plaintiff in *Hall* also lacked standing to assert his claims against the former plan administrator for other forms of relief under Section 502(a)(1)(B) or Section 502(a)(3), such as enforcement of the terms of the plan, a clarification of the plaintiff's rights to future benefits, or an injunction requiring payment of plan benefits. The Eighth Circuit held that "[t]he terms of Hall's Plan would necessarily have to be enforced against the Plan itself and the *present* administrator" and "'a clarif[ication] of [Hall's] rights to *future* benefits under the terms of the plan,' necessarily cannot be had against [the former plan administrator], because [the former plan administrator] has nothing to do with Hall's future benefits." *Id.* (some alterations in original; citation omitted). Further, "no injunction against [the former plan administrator] would have any effect whatsoever on Hall, because [it] is no longer associated with the Plan." *Id.* at 1197.

Similarly, here, Plaintiffs' claims under their former health benefits plans would not be redressable by Aetna. Plaintiffs allege in conclusory fashion that "Aetna functioned and continues to function as the 'plan administrator' within the meaning of such term under ERISA for Plaintiffs," Compl. ¶ 229, but this allegation is a legal conclusion masquerading as a factual one, *Twombly*, 127 S. Ct. at 1965, and it is belied both by the plan documents themselves, *see* Exs. A–E to Goodrich Aff., and by Plaintiffs' factual allegations elsewhere in the Complaint that Plaintiffs lack any current connection to the plans, *see* Compl. ¶¶ 1–3, 30, 71, 120. Even if Aetna may have "once exercised control over the plan" and provided administrative services to the plan "when Plaintiffs' claims for benefits were denied," that is of no moment once those services have ended. *Colin v. Marconi Commerce Sys. Employees' Ret. Plan*, 335 F. Supp. 2d 590, 597

(M.D.N.C. 2004).[7]  Plaintiffs' remedy, if any, is against their respective plans and the current administrators of those plans—not against Aetna.  *Hall,* 140 F.3d at 1196 ("[o]nly the Plan and the current plan administrator can pay out benefits to [plaintiff]").

## II.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER RICO (COUNTS VII & VIII).

In order to state a claim under RICO, 18 U.S.C. § 1962(c), Plaintiffs must allege "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity."  *Salinas v. United States*, 522 U.S. 52, 62 (1997); *see also Lum*, 361 F.3d at 223.  Plaintiffs fail to allege sufficient facts to clear any—let alone all three—of these hurdles: they fail to allege facts sufficient to support the existence of a RICO enterprise; they fail to allege facts sufficient to establish that Aetna conducted or participated in the affairs of an enterprise; and, they fail to allege with sufficient particularity the purported fraudulent conduct offered as the predicate acts of a pattern of racketeering activity.

### A.  Plaintiffs' Assertion Of An "Aetna-Ingenix Enterprise" Rests On Conclusory Allegations That Suggest Nothing More Than An Ordinary Business-Vendor Relationship And Not The Separate Decision-Making Structure Necessary Under RICO.

Plaintiffs claim that Aetna "carried out its underpayment scheme to Aetna Members in connection with the conduct of an association-in-fact 'enterprise[]' . . . comprised of Aetna and Ingenix (the 'Aetna-Ingenix Enterprise' or the 'Enterprise')."  Compl. ¶ 256.  To qualify as a RICO enterprise, however, an entity must have "an ongoing organization, formal or informal"

---

[7]  *See also, e.g., Colin*, 335 F. Supp. 2d at 598 ("[s]ince [the former administrator] currently has no control or discretion regarding Plaintiffs' benefits, it cannot provide redress of Plaintiffs' claims under § 502(a)(1)"); *Thomas v. Aetna Life Ins. Co.*, No. Civ. A. 3:99-CV-1163-M, 2000 WL 1239129, at *2 (N.D. Tex. Aug. 31, 2000) (dismissing benefits claim against former claims administrator for lack of standing); *Reilly v. Keystone Health Plan E., Inc.,* No. Civ. A. 98-CV-1648, 1998 WL 422037, at *5 (E.D. Pa. July 27, 1998).

and must consist of "various associates function[ing] as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Regular business interactions are not sufficient to establish this organization. *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2006 WL 2850607, at *16 (D.N.J. Oct. 3, 2006) (hereinafter "*Ins. Brokerage I*") (noting that "Plaintiffs have not alleged . . . that the members of the enterprises have established any kind of decision-making structure, independent from their regular business practices"). Rather, "[t]he 'ongoing organization' requirement relates to the superstructure or framework of the group" and necessitates allegations "that some sort of structure exists within the group for the making of decisions, whether it be hierarchical or consensual." *United States v. Riccobene*, 709 F.2d 214, 222 (3d Cir. 1983); *see also United States v. Urban*, 404 F.3d 754, 770 (3d Cir. 2005); *United States v. Irizarry*, 341 F.3d 273, 286 (3d Cir. 2003).

The allegations must assert "some mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis." *Riccobene*, 709 F.2d at 222. "The Court of Appeals unambiguously taught that a RICO plaintiff choosing to allege the existence of a 'superstructure' must plead facts indicating the presence of an umbrella 'structure . . . for the making of decisions.'" *Ins. Brokerage II*, 2007 WL 1062980, at *10 (quoting *Riccobene*, 709 F.2d at 222–23).

Plaintiffs' conclusory "enterprise" allegations here fall woefully short of the pleading standard for such claims. The Complaint alleges simply that "the Aetna-Ingenix Enterprise has and continues to have an ascertainable structure and function separate and apart from the pattern of racketeering activity in which Aetna has engaged." Compl. ¶ 258. This "'legal conclusion couched as a factual allegation'" is exactly the type of "formulaic recitation of the elements of a cause of action [that] will not do" to state a claim. *Twombly*, 127 S. Ct. at 1965; *see also Ins.*

*Brokerage II*, 2007 WL 1062980, at *11 ("[A] bare repetition of the terms 'hierarchical' or 'consensual' . . ., without any explanation of how such hierarchy was organized or the continuous consensus obtained, is insufficient.").

Moreover, the Complaint does not present any ***factual*** allegations addressing what an "ascertainable structure" involving Aetna and Ingenix might look like, nor does it allege any facts from which the decision-making structure of the alleged enterprise could be inferred. *See Ins. Brokerage I*, 2006 WL 2850607, at *16 (explaining that plaintiffs must "provide details about [the enterprise's] structure"). For example, while the Complaint alleges that Aetna "pre-edit[ed]" charge data "to remove valid high charges" before submitting that data to Ingenix, Compl. ¶ 161, and that "Ingenix also edited ('scrubbed') all charge data to remove certain valid high charges," *id.* ¶ 164, it never alleges that these purported acts were anything other than ***independent acts*** in furtherance of independent aims by Aetna and by Ingenix. *Cf. Twombly*, 127 S. Ct. at 1964 ("The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market."); *Ins. Brokerage I*, 2006 WL 2850607, at *16 ("[M]ere allegations that the Defendants did business with one another or contracted together does not suffice to establish the existence of an enterprise."). Allegations of individual conduct do nothing to describe "how the defendants 'would have worked together to make decisions or resolve disputes.'" *Harry Miller Corp. v. Mancuso Chems. Ltd.*, 468 F. Supp. 2d 708, 717 (E.D. Pa. 2006).

Indeed, the Complaint contains only two allegations concerning any interactions between Aetna and Ingenix, and both of those interactions demonstrate nothing more than an ordinary business-vendor relationship. First, Plaintiffs allege that "Aetna and Ingenix (as did HIAA) dis-

cussed expanding the Ingenix data to include additional data points." *Id.* ¶ 151. This allegation that one business entity (Aetna) "discussed" possible changes to a product that it purchased from another business entity (Ingenix) hardly establishes a "superstructure"; rather, these discussions, assuming they occurred, would have been wholly consistent with the existence of an ordinary, arms-length business relationship between a vendor and its customer. Second, Plaintiffs allege that Aetna and Ingenix exchanged data, along with "data contribution forms," which allegedly included "false and misleading" certifications by Aetna to Ingenix. Compl. ¶¶ 162–63. But again, the contribution of data by Aetna to Ingenix, as alleged in the Complaint, was simply inherent to their contractual relationship, by which Ingenix would assemble a charge database based on data provided by its paying contributors. *See Ins. Brokerage II*, 2007 WL 1062980 at *11 (allegations that a "group had business dealings with one another over many years" fail to establish "structure" (citing *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000)).

Nor does Plaintiffs' allegation that Aetna and Ingenix both knew of the "inherent flaws in the Ingenix Databases," Compl. ¶ 262, satisfy Plaintiffs' pleading obligation. Allegations of mere knowledge of (alleged) conduct by another party does not show the existence of an enterprise. *See In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, MDL No. 1712, 2006 WL 1531152, at *7–8 (E.D. Pa. June 2, 2006) (explaining that "the complaints do not permit an inference that any organizational structure connected or controlled the various defendants" despite allegations that "the defendants played particular roles and were aware of each other's actions").

Similarly, allegations of purported fraud or other assertions of improper conduct do nothing to establish the existence of a RICO enterprise. The Third Circuit has instructed that "the

enterprise must be shown to have an existence 'separate and apart from the pattern of activity in which it engages.'" *Riccobene*, 709 F.2d at 221 (quoting *Turkette*, 452 U.S. at 583). This Court and others have explained that "permitting proof of the enterprise to be inferred from the pattern of racketeering activity would essentially make a circular argument allowing 'every pattern of racketeering activity to [become] an enterprise whose affairs are conducted through the pattern of racketeering.'" *Ins. Brokerage II*, 2007 WL 1062980, at *12 (alteration in original); *see also United States v. Korando*, 29 F.3d 1114, 1117 (7th Cir. 1994) ("[T]he enterprise needs to be something more than just the pattern of racketeering activity. Otherwise two statutory elements—enterprise and pattern—would be collapsed into one.") (internal quotations omitted).

Because Plaintiffs fail to make any factual allegations demonstrating that the alleged "Aetna-Ingenix Enterprise" had any structure, any method of decision-making, or any mechanism for ongoing control of the alleged enterprise, *see Riccobene*, 709 F.2d at 222, Plaintiffs' RICO claims must be dismissed.

**B.    The Complaint Fails To Plead Any Facts Suggesting Aetna Directed The Conduct Of The Alleged Enterprise.**

Plaintiffs also fail to allege facts supporting another necessary element of their RICO claim: that Aetna "conduct[ed] or participate[d]" in the enterprise's affairs. 18 U.S.C. § 1962(c). The Supreme Court held in *Reves v. Ernst & Young* that this requirement could only be satisfied if a defendant "participate[s] in the operation or management of the enterprise itself." 507 U.S. at 185. "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in ***directing*** those affairs." *Id.* at 179 (emphasis added); *see also Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993).

Liability under Section 1962(c), moreover, "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves*, 507 U.S. at 185; *see also Urban*, 404 F.3d at 769; *Ins. Brokerage II*, 2007 WL 1062980, at \*12. The "operation and management" requirement is a central, essential requirement of a cognizable RICO claim. *See, e.g.*, *Reves*, 507 U.S. at 183 (emphasizing that this requirement was designed to assuage fears that RICO racketeering had been "defined so broadly" as to be effectively without limit).

Although the Complaint parrots the language from Section 1962(c), Compl. ¶ 266, it offers *no factual allegations* in support of that conclusory legal assertion. *Ins. Brokerage II*, 2007 WL 1062980 at \*29 ("Rule 8(a) does not allow a RICO plaintiff to plead conjecture instead of actual facts."). The Complaint never alleges that Aetna *directed* Ingenix or the "Aetna-Ingenix Enterprise" to do anything. Rather, Plaintiffs merely allege a series of acts undertaken by Aetna and Ingenix in pursuit of their own, independent interests:

    (a) Plaintiffs allege that Aetna provided Ingenix with charge data, Compl. ¶¶ 21, 141, 196;

    (b) Plaintiffs allege that Ingenix used Aetna's charge data to create provider charge databases that in turn were made available for a fee to Aetna and others; *id.* ¶ 179 ("Ingenix . . . needed Aetna's data to allow the Ingenix Databases to be sold.");

    (c) Plaintiffs allege that Aetna "submitted false certifications" to Ingenix about the data Aetna submitted to Ingenix, *id.* ¶ 264;

    (d) Plaintiffs allege that Aetna used the provider charge data from the Ingenix database contrary to a disclaimer from Ingenix, *id.* ¶ 168; and

    (e) Plaintiffs allege that Aetna sent its members Explanations of Benefits ("EOBs") that did not sufficiently disclose the use of Ingenix data, *see, e.g.*, *id.* ¶¶ 187, 263.

The complete absence of *any* allegations that Aetna directed the affairs of the alleged enterprise, and not just its own affairs, requires dismissal of Plaintiffs' RICO claims. *See Peat,*

*Marwick*, 996 F.2d at 1539 (dismissing RICO claims where complaint "nowhere averred that [the defendant] had any part in operating or managing the affairs of [the  enterprise]" in spite of the fact that the plaintiffs stressed "how important and indispensable" the defendant's services were to the enterprise).

### C.    Plaintiffs Cannot Plead Fraud Or Any Other RICO Predicate Acts With Sufficient Particularity.

Plaintiffs purport to plead predicate acts of "fraud" (18 U.S.C. § 1341 and § 1343) and "[t]heft or embezzlement from [an] employee benefit plan" (18 U.S.C. § 664) in support of their RICO claims.  As with the other elements of Plaintiffs' RICO claims, however, the Complaint lacks the factual allegations to satisfy the elements of these claims—let alone with the requisite specificity required under Rule 9(b).  To satisfy Rule 9(b), plaintiffs must plead (1) "the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud,'" (2) "who made a misrepresentation to whom," and (3) "the general content of the misrepresentation."  *Lum*, 361 F.3d at 224; *see also In re Advanta Corp. Sec. Litig.*, 180 F.3d at 534; *ATSI Commc'ns, Inc.*, 493 F.3d at 99.

First, Plaintiffs' allegations of wire and mail fraud (18 U.S.C. § 1341 and § 1343) rest on the same vague allegations regarding Aetna's purported use of "flawed" data pleaded in support of Plaintiffs' ERISA claims.  Compl. ¶¶ 187–202.  Even if Plaintiffs were correct that the manner in which Aetna supplied and used Ingenix data violated the terms of Plaintiffs plans, a "breach of contract itself [does not] constitute a scheme to defraud."  *Sanchez v. Triple-S Mgmt. Corp.*, 492 F.3d 1, 12 (1st Cir. 2007) (alteration in original and internal quotations omitted); *see also, e.g., United States v. D'Amato*, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994) ("A breach of contract does not amount to mail fraud."); *United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980) ("[T]he

[mail fraud] statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract.").

The meaning of the phrase "usual, customary, and reasonable" is, as the Complaint itself makes clear, defined by the plan language (and in some cases, as in New Jersey, by a regulation that is incorporated into the plan language). *See, e.g.*, Compl. ¶ 7 (rights defined under health plans are "defined by the benefit contract"), ¶ 12 (referring to Aetna's "definitions of UCR in its plans"), ¶ 17 ("Aetna is obligated to pay accurate UCR to its Members for Nonpar services consistent with the UCR definition."), ¶ 65, ¶ 85.

Thus, for all of the Complaint's repetition of the words "fraudulent," "misleading," and "deceptive," *see, e.g., id.* ¶ 187, its allegations contending that Aetna committed fraud by failing to pay UCR charges depend not on any specific disclosures by Aetna that Plaintiffs contend should have stated anything differently, but on Plaintiffs' contention that Aetna misapplied its plan benefit language by the manner in which it used Ingenix data. *See, e.g., id.* ¶ 18 ("Aetna fails to comply with its own UCR definition by failing to pay benefits based on accurate UCR rates . . . ."); ¶ 191 (alleging that Aetna's EOBs were "false and misleading" because "its method for setting reimbursement levels for Nonpar providers was fatally flawed and did not properly determine valid UCR levels"); ¶ 193 (contending Aetna's EOBs "misrepresented that the UCR reduction was based on the 'prevailing charge level' for services 'in the geographic area where it is provided'"); ¶ 197 ("[T]he data Aetna relied upon . . . do not fall within the description provided by Aetna in its various EOBs."); ¶ 199 (alleging that the EOBs "did not adequately disclose" the reasons for UCR benefit reductions).

In another case where this Court considered a contract to pay "prevailing" rates, the plaintiffs also "claim[ed] that they were paid less than the 'prevailing wage'" for their work.

*Livingston v. Shore Slurry Seal, Inc.*, 98 F. Supp. 2d 594, 596 (D.N.J. 2000) (explaining that certain statutes required payment of "the locally prevailing wage rate"). This Court concluded that the complaint's lack of "specific allegations of fraud or deceit" prevented the plaintiffs from "transform[ing] their claims," when the complaint "[a]t its core" alleged simply that "defendants paid plaintiffs less than the prevailing wage," "into a federal RICO claim through the creative invocation of the wire and mail fraud statutes." *Id.* at 600. The same is true here. There is nothing "fraudulent" about determining prevailing charges by using a third-party database of charge data, including data "derived" to estimate prevailing charges where the sample size was small, *see* Compl. ¶ 202.

Nor does Plaintiffs' allegation that Aetna "'cooked the books'" by deleting "valid high charges" from the data it contributed to Ingenix, Compl. ¶ 21, present *any* specifics concerning these alleged deletions—and this despite the fact that this allegation is the foundation for all of Plaintiffs' claims that Aetna's "manipulation" of data caused its statements about its UCR determinations to be false and misleading, *see, e.g., id.* ¶¶ 197, 268–69. Accordingly, the allegations contending that Aetna's EOBs were fraudulent and misleading, *id.* ¶¶ 187–88, 190, 192–93, 195, fail to satisfy the Rule 9(b) standard for pleading a fraud claim. *See, e.g., Sanchez*, 492 F.3d at 12. Further, the Complaint's allegations of wire fraud, *see id.* ¶ 202, contain no facts at all describing with particularity *when* the alleged representations were made or any other facts sufficient to meet the Rule 9(b) standard. *Clark v. Robert W. Baird Co.*, 142 F. Supp. 2d 1065, 1072 (N.D. Ill. 2001) ("For the 'when,' it is not enough to merely allege a period of months or years, or the duration of the activity.").

The second type of RICO predicate act on which Plaintiffs purport to rely is "theft or embezzlement from an employee benefit plan." Compl. ¶¶ 279–97. Because claims under this pro-

vision also depend on allegations of fraud, *see* Compl. ¶¶ 288–89, 292, Plaintiffs must also plead

the elements with particularity. *See, e.g., O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d

674, 676 (2d Cir. 1991) ("Because plaintiffs premise these claims, in large part, on defendants'

alleged fraudulent conduct, plaintiffs must comply with Rule 9(b)."); *see also Ins. Brokerage I*,

2006 WL 2850607, at *11 ("Plaintiffs' conspiracy claims are predicated on fraud, and thus, are

subject to [Rule 9(b)].").[8]

These claims therefore fail for the same reason that Plaintiffs cannot plead the existence

of mail and wire fraud with particularity. Plaintiffs allege that "plan documents, insurance poli-

cies, summary plan descriptions, certificates of coverage, claim forms, reimbursement checks,

EOBs describing UCR fee determinations, appeal determinations, overpayment actions, preau-

thorization decisions, referrals to collection agencies, representations to regulators, and other ma-

---

[8]   *See also, e.g., Goddard v. Citibank, NA*, No. 04CV5317(NGG)(LB), 2006 WL 842925, at *7 (E.D.N.Y. Mar. 27, 2006) ("In assessing Plaintiff's conversion claim, her allegation that Defendants employed fraud in the procurement of the judgment of foreclosure triggers heightened pleading standards" of Rule 9(b).); *Union Underwear Co. v. Wilson*, No. 1:05 CV 128 M, 2005 WL 3307098, at *4 (W.D. Ky. Dec. 1, 2005) ("Similarly, the Plaintiff fails to meet the requirements of F.R.C.P. 9(b) in their claim of common law fraud and conversion."); *Warter v. Boston Sec., S.A.*, No. 03-81026-CIV/RYSKAMP, 2004 WL 691787, at *13–14 (S.D. Fla. Mar. 22, 2004) (dismissing fraudulent conversion claim for failure to plead with particularity); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) ("Rule 9(b) does not apply only to claims under RICO and common law fraud, but also to elements of other claims that are premised on fraud. Plaintiff's claim of conversion . . . rests on an allegation of fraudulent taking, and is therefore subject to the pleading requirements of Rule 9(b).") (citation omitted); *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 311 (Bankr. S.D.N.Y. 1999) ("[W]here the complaint incorporates by reference prior allegations of fraud into other claims traditionally not perceived to be grounded in fraud, those claims must then be pleaded according to F.R.C.P. 9(b)."); *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 246 n.53 (S.D.N.Y. 1997) ("[Plaintiff], however, has specifically incorporated its allegations of deliberate fraud in both claims. . . . Rule 9(b) applies in such circumstances."); *Marcano v. Nw. Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595, 603 (N.D. Ill. 1982) (recognizing that acts of conversion relying on allegations specifically relating to fraud are subject to Rule 9(b) particularity requirements).

terials" all "contained false and fraudulent misrepresentations and omissions of material facts." Compl. ¶¶ 288–89. But the Complaint contains no details about which specific individual documents were mailed or transmitted, to whom they were sent, when they were sent, what specific misrepresentations or omissions of material fact allegedly occurred, or how those unspecified misrepresentations were false. With these critical elements missing, the RICO Section 664 allegations, like Plaintiffs' other fraud allegations, fail to meet the requirements of Rule 9(b).

## III.    PLAINTIFFS' ERISA CLAIMS ALSO MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Apart from Plaintiffs' lack of standing, Plaintiffs' ERISA claims also suffer from other independent defects and must be dismissed as a matter of law. Plaintiffs purport to seek relief under a variety of ERISA provisions—Sections 503, 102, 104, and 29 C.F.R. § 2560.503-1—but only Section 502(a), ERISA's civil enforcement provision, authorizes claims by plan members to enforce the terms of their ERISA plans or other provisions. *See Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004); *Pilot Life*, 481 U.S. at 52; *Rush Prudential*, 536 U.S. at 379. Thus, Plaintiffs must satisfy the pleading standards for claims under Section 502(a), and they cannot do so.

### A.    Plaintiffs Cannot State A Claim Under Section 503 Or Related Claims Procedure Regulations, Because The Only Available Relief Would Be Remand To The Plan Administrator (Counts III & VI).

Plaintiffs allege that Aetna violated their rights under Section 503 by failing to provide them with "'full and fair review'" of their denied claims, Compl. ¶ 230, and that Aetna failed to comply with procedural standards governing "claim procedures, appeals, notice to Members and the like," *id.* ¶ 231. They claim that they are, as a result, entitled to statutory penalties and to injunctive and declaratory relief. *Id.* ¶ 235.

But the Third Circuit has held that statutory penalties under Section 502(c) are not available to private plaintiffs as a result of violations of Section 503, and in fact the only remedy for a

violation of Section 503 and related regulations (29 C.F.R. § 2560.503-1) is remand to the plan administrator—relief that Plaintiffs do not seek here. As then-Judge Alito explained in *Syed v. Hercules Inc.*, 214 F.3d 155 (3d Cir. 2000), "the remedy for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review." *Id.* at 162. Here, Aetna is not the plan administrator for any of Plaintiffs' plans (*see supra* at Section I.B.2), and Plaintiffs cannot seek this relief from Aetna, so the claim must be dismissed with prejudice. *See Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1194 (10th Cir. 2007) ("If the plan administrator . . . failed to adequately explain the grounds for the decision, then the proper remedy is to remand the case for further findings or additional explanation.").[9]

## B.    Section 102 And 104 Do Not Impose Any Obligations On Aetna (Count IV).

For similar reasons, Plaintiffs' claims that Aetna violated disclosure duties under Sections 102 and 104 must be dismissed. Plaintiffs again challenge the Ingenix data under the guise of a "disclosure" claim, by alleging that Aetna "fail[ed] to disclose material information about its Nonpar Benefit Reductions[,] its contribution of flawed data to Ingenix and its use of such data, and its material changes in benefit policy, including by UCR tiering and use of Medicare rates." Compl. ¶ 239.

---

[9]    *See also Abram v. Cargill, Inc.*, 395 F.3d 882, 887 (8th Cir. 2005) ("A reviewing court must remand a case when the court or agency fails to . . . explain the rationale for its decision. This remedy is appropriate in ERISA cases.") (citation omitted); *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996) (Posner, J.); *Doe v. Mamsi Life & Health Ins. Co.*, 471 F. Supp. 2d 139, 149 (D.D.C. 2007); *Kansas v. Titus*, 452 F. Supp. 2d 1136, 1149 (D. Kan. 2006); *Kaelin v. Tenet Employee Benefit Plan*, Civ. A. No. 04-2871, 2006 WL 2382005, at *4 (E.D. Aug. 16, Pa. 2006).

Even if these statutory provisions did require disclosure of the type of information Plain-tiffs seek, only a plan administrator is bound by the duties imposed by Sections 102 and 104(b)(4)—and again, Aetna is not the plan administrator for any of Plaintiffs' plans (*see supra* at Section I.B.2).   Section 104(b)(4) plainly states that it is "[t]he administrator" who shall fur-nish the types of information governed by that section, 29 U.S.C. § 1024(b)(4), and Section 101 similarly provides that it is "[t]he administrator" who "shall cause to be furnished . . . a summary plan description described in [Section 102(a)]," *id.* § 1021(a)(1).   *See also* Ex. D to Goodrich Aff. (American Psychiatric Association Summary of Coverage, stating at page 6 that plan infor-mation may be sought "upon written request to the Plan Administrator").

Consistent with these provisions and with the Supreme Court's admonishment that courts should be "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA," *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985), a number of cir-cuit courts have held that duties under Sections 102 and 104(b)(4) also apply only to administra-tors, not to third parties.   *See, e.g.*, *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104 (2d Cir. 2005) (dismissing claims under Sections 102 and 104(b)(4) because the defendant was "not the plan administrator, and therefore does not have the disclosure obligations alleged") (footnote omitted).[10]

---

[10] *See also Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994) ("Congress has explicitly provided that the responsibility for complying with [the] statutory requirements [of Section 102(b)] falls on the plan administrator."); *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1138 (D.C. Cir. 1989) ("[I]t is manifest that Liberty Mutual cannot be the target of such a claim [for failure to supply a summary plan description] because . . . it is not the plan 'administrator' within the meaning of ERISA."); *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299–300 (9th Cir. 1989).

A number of Third Circuit district courts, including this one, have reached the same conclusion. *See, e.g., Chaney v. Comcast Cable Commc'ns, Inc.*, No. Civ. A. 02-8769, 2003 WL 21973325, at *3 (E.D. Pa. June 10, 2003) (dismissing claim for statutory penalties for alleged disclosure violations because the defendants were "not plan administrators within the meaning of that term"); *Nichols v. Verizon Commc'ns, Inc.*, No. Civ. 01-0497(JBS), 2002 WL 31477114, at *14 (D.N.J. Aug. 16, 2002) (same).

### C.     Plaintiffs Fail To State A Cognizable Claim Against Aetna For Breach Of Fiduciary Duty (Count V).

Plaintiffs' various claims against Aetna for breach of fiduciary duty arising out of its use of the Ingenix database fail for a similar reason: not only have Plaintiffs failed to allege a breach of fiduciary duty by Aetna, but the ERISA provision through which such a claim may be sought—Section 502(a)(3)—does not provide Plaintiffs with the relief they seek.

### 1.     *Varity Corp. v. Howe* Forecloses Plaintiffs' Claims For Breach Of Fiduciary Duty Under ERISA Section 502(a)(3).

Plaintiffs' claims for breach of fiduciary duty under ERISA Section 502(a)(3) are completely foreclosed by *Varity Corp. v. Howe*, because these claims merely duplicate Plaintiffs' claims for benefits under Section 502(a)(1)(B). *Varity* teaches that Section 502(a)(3) is a "catchall" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." 516 U.S. at 512. Where Congress has elsewhere provided adequate relief for a plaintiff's injury, there is no need for further relief, and an action under Section 502(a)(3) "would not be 'appropriate'" equitable relief. *Id.* at 515.

As the Third Circuit has held, "[a] claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ***ERISA-regulated plan*** rather than upon an interpretation and application of ERISA." *Harrow*,

279 F.3d at 254 (emphasis added) (internal quotes omitted).  Here, there can be no doubt that Plaintiffs have simply recast their benefit claims, which rest upon the interpretation and application of the respective plans, as breach-of-fiduciary-duty claims.  In Count V, Plaintiffs assert claims for breach of fiduciary duty against Aetna that include the following:

- "In failing to act prudently, and in *failing to act in accordance with the documents and instruments governing the plan,* Aetna violated its fiduciary duty of care." Compl. ¶ 243 (emphasis added).

- "Aetna violated its fiduciary duties of loyalty and due care by, *inter alia, making Nonpar Benefit Reductions that were unauthorized by EOCs and SPDs* and which benefited Aetna at the expense of Aetna Members." *Id.* ¶ 245 (emphasis added).)

Count V is a benefits claim draped in fiduciary language. The fundamental question underlying the claim is whether Aetna's UCR determinations were consistent with the terms of the relevant ERISA plan provisions—in particular, the stated criteria for determining UCR for out-of-network services. This claim does not require an analysis or interpretation of ERISA for its resolution.  Rather, Plaintiffs' "fiduciary duty" claim rises and falls (just like their "fraud" claims) upon the interpretation of "usual, customary, and reasonable" and, specifically, whether the use of Ingenix data comported with that term as defined in the benefits plans at issue in Plaintiffs' claims.

The same is true of Plaintiffs' allegation that Aetna breached its duty of loyalty by using a "flaw[ed]" database to determine UCR rates for out-of-network reimbursements and their allegation regarding other out-of-network reimbursement determinations, such as calculations of deductibles and out-of-pocket maximums.[11]  *Id.*  A claim for breach of fiduciary duty is actually a

---

[11]  In addition, the Complaint nowhere alleges that Plaintiffs relied upon any "misrepresentation" by Aetna. *See Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ.*

[Footnote continued on next page]

claim for benefits "where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant *closely related* to the plaintiff's claim for benefits . . . ." *Smith v. Sydnor,* 184 F.3d 356, 362 (4th Cir. 1999) (emphasis added). Here, Plaintiffs' complaints regarding the adequacy of the Ingenix data and the propriety of the other out-of-network reimbursement practices are *closely related* to their claim that Aetna inappropriately calculated their benefits— indeed, the relief sought is substantively identical, even if characterized differently in the Complaint. As such, Plaintiffs have an adequate remedy under Section 502(a)(1)(B), and their claims for breach of fiduciary duty are foreclosed by *Varity.*

### 2.    Plaintiffs Cannot Recover "Restitution" Under ERISA Section 502(a)(3).

Plaintiffs seek to recover "restitution" under ERISA Section 502(a)(3) for an alleged breach of Aetna's fiduciary duties. Compl. ¶¶ 248, 297(C). Plaintiffs' claim for monetary relief under Section 502(a)(3), however, is expressly foreclosed by *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002), and *Sereboff v. Mid Atlantic Medical Services, Inc.,* 126 S. Ct. 1869 (2006), because Plaintiffs do not seek to impose a constructive trust on any identifiable funds, and absent such allegations their claims for restitution do not constitute "appropriate *equitable* relief." 29 U.S.C. § 1132(a)(3) (emphasis added).

In *Great-West,* for example, the Supreme Court held that restitution, in the form of "'a judgment imposing a merely personal liability upon the defendant to pay a sum of money,'" is not "equitable" relief, and thus is not recoverable under Section 502(a)(3). *Great-West,* 534 U.S. at 213. Much like the *Great-West* petitioners, "[t]he kind of restitution that [Plaintiffs] seek . . .

---

[Footnote continued from previous page]
    & *Research Found.,* 334 F.3d 365, 384 (3d Cir. 2003) (ERISA plaintiff alleging breach of fiduciary duty must allege "detrimental reliance by the plaintiff on the misrepresentation").

is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for . . . benefits . . . ." *Id.* at 214.

> **3.    Plaintiffs Allege No Facts To Support A Claim That Aetna Engaged In A "Prohibited Transaction" In Violation Of ERISA Section 406.**

Plaintiffs allege that Aetna made "Nonpar Benefit Reductions . . . [that] benefited Aetna at the expense of Aetna Members" in violation of ERISA Section 406. Compl. ¶¶ 244–45. Section 406 prohibits specific transactions between fiduciaries and parties-in-interest to an ERISA plan. 29 U.S.C. § 1106. The term "party-in-interest" describes a person providing services to the plan. *Marks v. Independence Blue Cross,* 71 F. Supp. 2d 432, 438 (E.D. Pa. 1999). The Complaint identifies no specific transaction or "sweetheart deal" that is actionable under Section 406. Moreover, it is clear that the application of cost-control measures by an ERISA plan does not, of itself, constitute a breach of fiduciary duty under ERISA. *See Horvath,* 333 F.3d at 450, 452, 454 (observing that HMOs "routinely utilize financial incentives to encourage physicians to ration care in a cost-effective manner" and that "the existence of such interests in no way affects the legitimacy of the HMO structure"). Accordingly, the Complaint fails to state a claim against Aetna under Section 406, even if Plaintiffs could articulate relief that would otherwise be available to them under Section 502(a).

> **D.    Plaintiffs' "Claims For Unpaid Benefits" Under Section 502(a)(1)(B) Must Be Dismissed To The Extent They Failed To Exhaust Administrative Appeals (Counts I–VI).**

Plaintiffs' exclusive avenue for a challenge to the quantum of benefits available for out-of-network services available under their former ERISA plans, including any UCR payments, is through Section 502(a)(1)(B) of ERISA. As the Supreme Court held in *Davila,* "if an individual, *at some point in time*, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent duty that is implicated by a defendant's actions, then the individ-

ual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. 200, 210 (2004) (emphasis added); *see also Pilot Life*, 481 U.S. at 54 ("The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" (quoting *Massachusetts Mut. Life Ins. Co.* v. *Russell,* 473 U.S. 134, 146 (1985)).

Here, if Plaintiffs were to establish standing, they still would need to meet the pleading requirements for a claim under Section 502(a)(1)(B), including the strict requirement that Plaintiffs must exhaust their administrative remedies. *See, e.g., Harrow*, 279 F.3d at 249 ("'Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.'"); *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 278–80 (3d Cir. 2007) (although ERISA exhaustion is a "nonjurisdictional affirmative defense" and not an issue of subject-matter jurisdiction, it is "an important legal rule" that serves a number of significant interests); *see also AMA v. United Healthcare Corp.*, No. 00 Civ. 2800(LMM), 2007 WL 2457358, at *1 (S.D.N.Y. Aug. 23, 2007) (after granting reconsideration, adhering to original ruling that plaintiffs should have exhausted appeals before bringing a lawsuit challenging UCR determinations). Here, to the extent Plaintiffs have not exhausted their administrative appeals, their claims must be dismissed.

Plaintiffs' allegations with respect to exhaustion—and the underlying facts evidenced by the documents referred to in the Complaint—vary from Plaintiff to Plaintiff and from claim to claim. A chart summarizing Plaintiffs' appeal allegations is attached hereto as Exhibit A to the attached Sigler Affidavit. Werner alleges that she "fully exhausted" all available levels of Aetna's member appeal process, by appealing Aetna's tiered behavioral health payments for ser-

vices rendered from November 1, 2006 to December 27, 2006. Compl. ¶¶ 80–119 ("Werner's Exhaustion of Administrative Remedies"). Franco alleges that her providers appealed Aetna's payment for services rendered on February 2, 2004, and received an additional payment from Aetna of $466.02 (less than their billed charges) on top of the amounts already paid by Aetna. Compl. ¶¶ 129–30. These are the only claims in the Complaint for which any appeals were filed by or on behalf of Franco or Werner.

In contrast to the allegations by Werner and Franco of appeals filed relating to UCR payments, Cooper does not allege that she or her husband ever attempted to file an appeal on any of the claims referred to in the Complaint prior to filing this lawsuit. Moreover, Cooper's allegation concerning the appeal filed by her provider, Manhattan Nuclear Cardiology, tells an incomplete story. *See* Compl. ¶ 34 (alleging that Justin Cooper's provider "appealed" Aetna's UCR determination for services rendered on January 3, 2005). Aetna's records produced to Plaintiffs concerning this claim reflect that on April 2, 2007—before this lawsuit was filed—Aetna *paid the claim in full.* *See* Ex. F to Goodrich Aff. (record of a "CLAIM PAYMENT" of $3,209.80, the full balance of the provider's billed charges for services rendered on 1/3/05). Aetna's records further reflect that Cooper was informed about this payment when the payment was made, and state "ISSUE CLOSED." *See id.*[12]

---

[12] These documents may appropriately be considered by this Court as part of Aetna's motion to dismiss, because Plaintiffs specifically allege the existence and contents of the provider's appeal to Aetna concerning this claim, Compl. ¶¶ 34–36, and thus Aetna's records of the appeal and resolution of the claim at issue constitute "document[s] integral to or explicitly relied upon in the complaint [that] may be considered without converting the motion to dismiss into one for summary judgment." *See Angstadt*, 377 F.3d at 342 (internal quotation marks omitted).

Thus, Cooper cannot possibly rely on Manhattan Nuclear Cardiology's appeal to contend that her appeals were exhausted or that Aetna's appeal process "violates procedural safeguards," Compl. ¶ 37: Aetna's payment of this claim in full not only mooted any claim that Cooper could have under ERISA, it also demonstrates that the appeal process is not "futile," as Cooper alleges in conclusory fashion, *id.* at 63.  Further, Cooper has not alleged and cannot allege that any appeals were filed on any of the other claims referred to in the Complaint, *see* Compl. ¶ 41–44 (listing other alleged UCR determinations by Aetna that were never appealed), and thus her ERISA claims must be dismissed in their entirety.

The existence of an available appeal process for these claims, without any specific allegations of procedural deficiencies—Plaintiffs acknowledge in the Complaint that they were repeatedly told of their right to appeal in EOBs received from Aetna, Compl. ¶ 40—forecloses Plaintiffs' allegations of futility.  Indeed, Plaintiffs' only allegation in support of their contention that filing an appeal would be futile—Aetna's "vouching for its Nonpar Benefit Reductions [and] Aetna's conduct toward Plaintiffs and Class Members clearly demonstrate that appeals of Aetna's Nonpar Benefit Reductions are futile," *id.* ¶ 63—is wholly conclusory.  Plaintiffs completely fail to allege any procedural deficiencies that would support a "deemed exhaustion" finding.  Under these circumstances, they have not made the required "*clear and positive showing* of futility.*"  *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002) (emphasis added); *see also Harrow*, 279 F.3d at 249.  To the extent Plaintiffs failed to exhaust their administrative appeals, their claims must be dismissed.

## IV.   COOPER'S NEWFOUND STATE-LAW CLAIM PLAINLY IS PREEMPTED BY ERISA, EVEN IF A CLAIM EXISTED (COUNT I).

In the Second Amended Complaint, Cooper added for the first time a claim "under New Jersey Law."  Compl. ¶¶ 222–27.  This new count does not specify what "New Jersey Law"

Cooper intends to invoke, although Cooper presumably intends to rely on the New Jersey regulation cited elsewhere in the Complaint. *See id.* ¶ 51 (citing N.J. ADMIN CODE § 11.21-7:13(a)). This regulation provides that for small employer health benefits plans in New Jersey, "[t]he maximum allowable charge shall be based on the 80th percentile of the profile" for "health care providers not subject to capitated or negotiated fee arrangements."

This new count fails, for three reasons. First, the regulation on which Cooper relies was promulgated under the Small Employer Group Health Benefit Act, 1992 N.J. Sess. Law Serv. Ch. 162 (West) (codified at N.J. STAT. ANN. § 17:27A-17 *et seq.*), which provides for civil penalties to be enforced by the New Jersey Office of Banking and Insurance, N.J. STAT. ANN. § 17B:27A-41, -43, but does not provide a private right of action. New Jersey courts are "reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001). They "have generally declined to infer a private right of action in statutes where the statutory scheme contains civil penalty provisions." *Id.* at 1144. This is specifically the case "[i]n the context of insurance statutes." *Id.* at 1145; *see also Med. Soc'y of N.J. v. AmeriHealth HMO, Inc.*, 868 A.2d 1162, 1168 (N.J. Super. Ct. App. Div. 2005).

Second, there is no allegation that Aetna violated this regulation. Aetna's UCR rates and plan document language are filed with and approved by the New Jersey Small Employer Health Board. Under the filed-rate doctrine, where companies are required to file proposed rates or charges with a regulatory agency, any rate approved by the agency is "per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994). Allegations of fraud do not change this: "apart from [one] ruling, which was unanimously overturned *en banc*, every court that has considered the plaintiffs' ar-

gument" "that there should be an exception to the filed rate doctrine when there are allegations of fraud" "has rejected the notion." *Id.* at 20; *see also Taffet v. So. Co.*, 967 F.2d 1483, 1494 (11th Cir. 1992) (en banc). This Court and other courts in this circuit have applied this doctrine in insurance cases. *See, e.g., Charles v. Lawyers Title Ins. Corp.*, Civ. A. No. 06-2361(JAG), 2007 WL 1959253 (D.N.J. July 3, 2007); *U.S. Steel Corp. v. Lumbermens Mut. Cas. Co.*, No. Civ.A. 02-2108, 2005 WL 2106580 (W.D. Pa. Aug. 31, 2005); *Stevens v. Union Planters Corp.*, No. Civ.A. 00-CV-1695, 2000 WL 33128256 (E.D. Pa. Aug. 22, 2000).

In *Stevens*, for example, the court concluded that because the regulatory system governing the insurance at issue was "comprehensive, including filing, rate calculation, rate review, and enforcement of the rules," any "question regarding reasonable rates should be addressed to the [Pennsylvania] Department of Insurance"; because "the rate plaintiff was charged is *conclusively presumed reasonable* under the filed rate doctrine," the claims had to be dismissed. *Id.* at *3 (emphasis added). Here, as the Complaint acknowledges, Compl. ¶ 51, New Jersey requires Aetna to use certain Ingenix data to calculate UCR under Cooper's plan. The State's approval of this UCR methodology therefore conclusively demonstrates that it is reasonable. *Wegoland*, 27 F.3d at 18.

Third, regardless of what "New Jersey Law" Plaintiffs intend to invoke, this claim is preempted by ERISA because of the relief that Plaintiffs seek. Cooper cannot circumvent the exhaustion requirements for Section 502(a)(1)(B) merely by recasting her claim for benefits as a "state law" claim. "Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries" who assert claims "to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S.

41, 52, 53 (1987); *see also Davila*, 542 U.S. at 206 ("[S]tate causes of action that 'duplicat[e] or fal[l] within the scope of an ERISA § 502(a) remedy' are completely preempted.") (citation omitted).  Put another way, state-law "claims challenging the quantum of benefits due under an ERISA-regulated plan are completely preempted under § 502(a)'s civil enforcement scheme." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 272 (3d Cir. 2001); *see also Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 309 (3d Cir. 2006).

Cooper's claim under "New Jersey Law" purports to seek *exactly* the same relief that Cooper sought in her original complaint against Aetna under Section 502(a)—and that she still could seek, if she were to exhaust her administrative remedies and could otherwise state a claim. Cooper still alleges that the plan is governed by ERISA, Compl. ¶ 4, and the relief that she seeks would be available under Section 502: "unpaid benefits, recalculated deductible and coinsurance amounts," "interest," "declaratory and injunctive relief related to enforcement of the plan terms," and clarification of "future benefits." *Id.* ¶ 227; *cf. Pilot Life*, 481 U.S. at 53.  Indeed, Cooper directly challenges "the quantum of benefits due" under her plan in her claim under "New Jersey Law"—one of the most basic forms of relief available under Section 502(a).  *See Pryzbowski*, 245 F.3d at 272.  Because her state-law claims seek "only to rectify a wrongful denial of benefits promised under [an] ERISA-regulated plan[]," *Davila*, 542 U.S. at 214, they are completely pre-empted by ERISA.

38

## CONCLUSION

For the foregoing reasons, and because Plaintiffs have had multiple opportunities to plead their claims with assistance from documents provided by Aetna about those claims, the Complaint should be dismissed with prejudice for lack of standing and failure to state a claim.

Respectfully submitted,

Liza M. Walsh
Michael X. McBride
Tricia B. O'Reilly
Patricia Lee
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey  07068-1765
(973) 535-0500

Richard J. Doren
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000

Geoffrey M. Sigler
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

December 18, 2007