UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELE COOPER, MICHELE WERNER, DARLERY FRANCO, and DOREEN RIZOPOULOS, individually and all on behalf of all others similarly situated,<br><br>                        Plaintiffs,<br><br>vs.<br><br>AETNA HEALTH INC., PA, CORP., AETNA HEALTH MANAGEMENT, LLC, AETNA LIFE INSURANCE COMPANY, AETNA HEALTH AND LIFE INSURANCE COMPANY, AETNA HEALTH INC. and AETNA INSURANCE COMPANY OF CONNECTICUT,<br><br>                        Defendants. | Civil Action No. 07-3541 (FSH) (PS) |

-------------------------------------------------------------------------------------------------------------------

**MEMORANDUM OF LAW IN OPPOSITION TO THE
MOTION TO APPOINT WILENTZ, GOLDMAN & SPITZER, P.A.
INTERIM CLASS COUNSEL**

-------------------------------------------------------------------------------------------------------------------

                                                         Charles C. Carella
                                                         James E. Cecchi
                                                         Lindsey H. Taylor
                                                         CARELLA, BYRNE, BAIN, GILFILLAN,
                                                          CECCHI, STEWART & OLSTEIN, P.C.
                                                         5 Becker Farm Road
                                                         Roseland, New Jersey 07068
                                                         (973) 994-1700

                                                         Stanley M. Grossman
                                                         D. Brian Hufford
                                                         Robert J. Axelrod
                                                         POMERANTZ HAUDEK BLOCK
                                                         GROSSMAN & GROSS LLP
                                                         100 Park Avenue
                                                         New York, New York 10017
                                                         (212) 661-1100
                                                         Attorneys for Plaintiff and Proposed Class

#3857845


## TABLE OF CONTENTS

Table Of Authorities ................................................................................................................... i

Preliminary Statement ............................................................................................................. 1

Statement Of Facts .................................................................................................................. 1

The Pomerantz Firm ................................................................................................................ 7

Argument

The Court Should Deny Wilentz's Motion To Be Appointed
Interim Class Counsel And Pursue Court-Ordered Mediation ................................................. 10

Conclusion ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**
*Batas v. Prudential*, 281 A.D.2d 260, 724 N.Y.S.2d 3 (1st Dep't 2001) ........................................ 9
*Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997) ....................................................... 8
*McCoy v. Health Net., Inc.*, 2008 U.S. Dist. LEXIS 60446 (D.N.J. Aug. 8, 2008) ......................... 1

## PRELIMINARY STATEMENT

Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz") and Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein ("Carella") hereby file this memorandum of law in opposition to the Motion to Appoint Wiletnz, Goldman & Spitzer, P.A. ("Wilentz") Interim Class Counsel in the above-captioned litigation.[1]  For the reasons detailed herein, Pomerantz and Carella believe that appointment of Interim Class Counsel is premature. The Court should, instead, defer ruling on the pending motion.  New cases will shortly be filed in the Court on behalf of provider classes which are not currently being represented.  Moreover, Aetna has already indicated an interest in settlement, which the parties should consider, particularly in light of the events that have recently transpired with the creation of a new database to replace the databases developed by Ingenix, Inc. (the "Ingenix databases").  There is no prejudice to the Wilentz firm for this Court to wait to make decisions on class counsel, since Pomerantz and Carella are not interfering with Wilentz's litigation of the pending subscriber case.  Thus, the Court should not appoint Wilentz sole Interim Class Counsel under these circumstances.

## STATEMENT OF FACTS

For almost nine years, Pomerantz and Wilentz have been co-counsel in several litigations challenging the use of the Ingenix databases to make usual, customary and reasonable ("UCR") benefit determinations for out-of-network ("ONET") health care services.[2]  This includes the Health Net litigation, which settled before this Court, *see McCoy v. Health Net., Inc.*, 2008 U.S. Dist. LEXIS 60446 (D.N.J. Aug. 8, 2008) (upholding settlement), as well as the Oxford, CIGNA

---

[1] While Doreen Rizopoulos is currently still in the caption, a Notice of Voluntary Dismissal of her claims under Rule 41(a) has been filed on her behalf.

[2] Until two years ago, Pomerantz worked with Sills Cummis Epstein & Gross P.C.  When Barry Epstein and Barbara Quackenbos of Sills Cummis moved to Wilentz, Wilentz was substituted for Sills Cummis in the various litigations.

and Aetna cases, also pending before this Court, and *American Medical Association v. United Healthcare Corp.*, Master File No. 00 Civ. 2800 (LMM) (GWG), the first such filed case, which has been pending before Judge Lawrence McKenna in the Southern District of New York since 2000. Pomerantz and Sills Cummis were the designated co-lead counsel in the *AMA* litigation (Wilentz was substituted for Sills Cummis).

Until recently, Pomerantz has assumed a full-partnership role in all of the litigations, sharing the responsibilities equally with Wilentz. In the Health Net litigation, for example, Pomerantz was active throughout, as the Court knows. Not only did was Pomerantz fully active in all aspects of the case from inception to final settlement, but Pomerantz attorneys assumed such important roles as arguing the motion for class certification before this Court in 2004 (D. Brian Hufford), taking many important depositions (Mr. Hufford and Robert J. Axelrod), questioning many of the witnesses before this Court during the multi-day sanctions hearings (Mr. Hufford), and arguing the class certification appeal before the Third Circuit (Stanley M. Grossman). Similarly, in the Aetna litigation, Pomerantz has been active from the beginning, including full participation in drafting pleadings and motion papers.[3]

Pomerantz and Wilentz have unfortunately had a falling out due to irreconcilable differences over how the cases should be prosecuted. The difficulties arose over the handling of settlement negotiations in the *AMA* litigation pending in New York. In February 2008, United Healthcare approached plaintiffs about the possibility of entering into settlement negotiations in that case, shortly after the New York Attorney General ("NYAG") announced an investigation

---

[3]   Pomeranz has been similarly active in *Franco v. Connecticut General Life Ins. Co., et. al.*, 07-6039 (FSH) (PS). An application mirroring this one will also be filed in the *Franco* action.

#3857844                                                2

into the problems arising with the use of the Ingenix databases.[4]  Wilentz opposed any meetings, but ultimately was persuaded by Pomerantz to have preliminary discussions.  Nevertheless, Pomerantz and Wilentz were unable to agree on settlement strategy and the extent to which serious settlement discussions should be pursued.  Ultimately, Wilentz refused to participate in settlement discussions, and Pomerantz proceeded without them, based on its recognition under Rule 23 that it was in the best interests of the class to do so.

In June 2008, Pomerantz reached a general agreement in principle on the structure of a proposed settlement with United Healthcare, consisting of a $350 million settlement fund and the creation of a new and independent UCR database, to be implemented under the oversight of the NYAG.  Pomerantz only entered into this preliminary agreement after key plaintiffs in the *AMA* litigation, including the American Medical Association ("AMA"), the Medical Society of the State of New York ("MSSNY") and the Missouri State Medical Association ("MSMA"), expressed their preliminary support for the settlement.

Wilentz was fully aware of the negotiations leading up to that agreement and expressed its opposition.  While Pomerantz did not agree with Wilentz's position, it encouraged Wilentz to pursue its own settlement track in an effort to obtain more money for the Class.  This led United Healthcare's outside counsel to travel from Albany to New Jersey to meet with Barry M. Epstein of Wilentz to discuss settlement issues.  Other than expressing his general opposition to the settlement, however, Mr. Epstein never made any formal demand.[5]

---

[4]  The NYAG's investigation was initiated after meetings with Pomerantz and Wilentz, as well as the American Medical Association, one of the plaintiffs in the New York action.

[5]  Some time later, Mr. Epstein called United Healthcare to make a demand in the Oxford case, asking for $2 billion.  Pomerantz does not believe that this demand was realistic, and there was no follow up by Mr. Epstein.

Following the general agreement on the terms of the proposed settlement, Pomerantz engaged in months of detailed and intense negotiations with United Healthcare to work out the details of this very large and important settlement. Not only did Pomerantz work on the settlement papers themselves, but it also engaged in numerous discussions with the NYAG and the university-level school that was likely to be designated as the entity to own and operate the new UCR database to replace Ingenix[6] concerning the best process to be followed for the creation of such a database. Throughout the process, the medical associations were fully involved, including meeting with the school and communicating with the NYAG concerning their views on the case and the potential settlement.

Throughout this process, Pomerantz keep Wilentz apprised of the progress of the negotiations and provided timely drafts of the settlement agreement, soliciting any comments Wilentz might have. Until a few days before the final agreement was signed, Wilentz refused to provide any substantive comments at all, but continued to express its adamant opposition to the settlement on any terms. In early January 2009, Wilentz finally issued a suggestion by asking that the settlement agreement be revised to make clear that it was not intended to resolve any of the issues asserted in the Aetna or CIGNA litigations pending before this Court. Pomerantz persuaded United Healthcare to comply with that request, and those cases have been affirmatively excluded.[7]

---

[6]   Under the terms of the NYAG settlement and the proposed class settlement, the Ingenix database is to be discontinued.

[7]   There was, in fact, no need to specifically identify the Aetna and CIGNA cases. Pomerantz had already negotiated release language which made clear that the settlement would only release United Healthcare and any other third parties with respect to claims concerning ONET reimbursements *by United Healthcare plans*. In other words, United Healthcare class members could not sue Aetna or CIGNA for conspiring with United Healthcare to reduce their benefits, but Aetna and CIGNA could continue to be sued by their own members for ONET

The parties finally reached agreement on all terms, and a settlement agreement was signed on January 15, 2009, with a Motion for Preliminary Approval filed before Judge McKenna on January 16, 2009. The settlement provides, among other things, for the creation of a $350 million non-reversionary cash settlement fund (the largest settlement ever reached in a private health care litigation) and United Healthcare's commitment to enter into a process with the NYAG (with the key terms of that process incorporated into the settlement agreement) to create a new and independent UCR database under the control of a school to be designated by the NYAG. Plaintiffs have conducted due diligence on and agreed to the school that is currently in discussions with the NYAG. To the extent another school is selected, the settlement agreement permits Plaintiffs to conduct due diligence on that school. Importantly, United Healthcare has further agreed to pay $50 million to fund the creation of the new database. Because Oxford is a wholly-owned subsidiary of United Healthcare, and Oxford's members are part of the putative class in the *AMA* litigation, the proposed settlement, if approved, would have the effect of releasing the class claims in the pending Oxford case before this Court. The settlement is supported by the medical associations identified above, as well as by settling plaintiffs the New York State Unified Teachers ("NYSUT"), the Civil Service Employees Association ("CSEA"), the Organization of New York State Management/Confidential Employees ("OMCE") and the New York State Police Investigators Association ("NYSPIA"), each of whom retained Pomerantz in 2002 to intervene in the case on behalf of their members

---

benefits in Aetna and CIGNA plans. Nevertheless, Pomerantz accommodate the request by Wilentz and explicitly exempted those cases from the reach of the settlement.

#3857844                                               5

insured by United Healthcare plans, and a large number of individual subscribers who are also settling plaintiffs.[8]

The Wilentz firm has expressed its opposition to the settlement and its intent to oppose it. It has done so on behalf of a handful of individual subscribers and providers.[9] While the fairness of the settlement will be resolved by Judge McKenna in the *AMA* litigation, the disagreement between Pomerantz and Wilentz has, obviously, impacted the ongoing working relationship and our respective views on how best to serve the interests of the putative class in this matter, as well as the parallel Aetna action.

Aetna has approached both Wilentz and Pomerantz about the possibility of settling their respective litigations. As in the United Healthcare action, Wilentz has rebuffed any suggestion to engage in serious settlement talks, and has continued to pursue an aggressive and expansive discovery program. Pomerantz indicated to Aetna that it would not pursue settlement talks given the current situation with Wilentz.

Notwithstanding the fact that Pomerantz has not entered into settlement discussions with Aetna, Pomerantz now believes that such discussions would be in the best interests of the classes. The underlying claims in both cases relating to the validity of the Ingenix databases for making UCR determinations have been fully explored in both Health Net and the *AMA* litigation. Moreover, the issue of how to address the problems with the Ingenix databases, which this Court

---

[8] The proposed settlement of United Healthcare would also include certification of a class of out-of-network providers in Oxford, who would be entitled to make claims. Oxford providers are not currently part of the alleged class in Oxford and, absent the proposed settlement, would not be able to share in any relief. In addition, because the class period in the proposed settlement would extend back to 1994, both Oxford plan members and providers would be entitled to make claims for an extended period notwithstanding the expiration of the statute of limitations for those claims.

[9] Two solo attorneys, Jonathan L. Alpert and Paul M. Sod, both of whom have done little, if any, subsequent work on the cases, have agreed to join Wilentz in its opposition. Mr. Alpert represents two plaintiffs (a married couple) and Mr. Sod, one.

expressed substantial concern about in the Health Net litigation, has now been resolved with the process established through the proposed settlement of the *AMA* litigation and the parallel resolution of the NYAG's investigation to establish the new and independent UCR database and the elimination of the Ingenix Database.  In addition to the United Healthcare agreement to pay $50 million toward the funding of the new database, Aetna has recently settled with the NYAG as well, and will be paying an additional $20 million.

Under these circumstances, Pomerantz did not agree with the aggressive, wasteful, and ultimately, inefficient, litigation approach taken by Wilentz, but preferred to consider discussions with the defendants in an effort to negotiate a reasonable settlement.  It was in the context of that disagreement that Pomerantz issued a letter to Wilentz, following a meeting to discuss the United Healthcare settlement, stating that it did not intend to do further work on the pending Aetna case unless "necessary to protect the interests of our clients or the class."

## THE POMERANTZ FIRM

In seeking to be appointed Interim Class Counsel in this action, as well as in the CIGNA and Oxford litigations, Wilentz has challenged the validity of the steps taken by Pomerantz in reaching a settlement with United Healthcare.  In considering Wilentz's motion, the Court should be aware of Pomerantz's experience and stature in the class action bar, which lends credence to its conclusions with regard to the validity of the *AMA* settlement and its views concerning the best means by which the UCR cases in general should be litigated.

The Pomerantz firm is one of the nation's most preeminent class action law firms. (A Copy of the Pomeranz firm biography is annexed as Exhibit A to the Declaration of James E. Cecchi, dated January 23, 2009)  Its senior partner, Stanley M. Grossman, was actively involved in all aspects of the settlement negotiations in both the *AMA* and the Health Net litigations, and

Mr. Epstein specifically requested that Mr. Grossman argue the class certification appeal to the Third Circuit, due to Mr. Grossman's expertise and experience. Mr. Grossman's credentials have been well recognized, as he is one of the top class action litigators in the country. As a reflection of his stature, the late-Senior Judge Milton Pollack of the Southern District of New York appointed Mr. Grossman to the Executive Committee of counsel charged with allocating to claimants over a billion dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken. Mr. Grossman, who also served for several years on the Ethics Committee of the New York Bar Association, has negotiated numerous substantial settlements that have been approved by the courts. Moreover, Mr. Grossman has substantial trial experiences. Among his cases, Mr. Grossman was the senior trial counsel in one of the few ERISA class actions that have been brought to trial, before Judge Thomas C. Platt of the Eastern District of New York against Grumman Corp., settling on favorable terms before the judgment was issued. Because of his experience, Mr. Grossman has frequently been requested to lecture on class actions issues. For example, he lectured on Rule 23 and class actions before a class at University of Pennsylvania School of Law being jointly taught by Third Circuit Chief Judge Anthony Scirica and Geoffrey C. Hazzard, Jr.

In addition, Pomerantz's health care practice, including the cases before this Court, have been primarily overseen by partner D. Brian Hufford, an attorney who is a leader nationally in health care litigation. Mr. Hufford, who graduated from Yale Law School in 1985, brought some of the first health care class actions in the country beginning in the mid-1990's. Among other cases, Mr. Hufford successfully argued *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997), in which the court upheld the charge that the defendant breached fiduciary duties under ERISA by misrepresenting the financial incentives it paid providers to reduce medical

expenditures.  Further, Mr. Hufford successfully argued before the New York appellate court in *Batas v. Prudential*, 281 A.D.2d 260, 724 N.Y.S.2d 3 (1st Dep't 2001), in which the court upheld (by a 5-0 vote) claims that Prudential relied on improper procedures for the determination of medical necessity in its health insurance contracts. It was in part because of these successes that Mr. Epstein initially contacted Mr. Hufford about having his firm join forces with Pomerantz to pursue the UCR cases, and similarly led to Mr. Hufford's retention by the medical associations and the unions identified above in the *AMA* litigation.

Robert J. Axelrod is a partner at Pomerantz and a member of the firm's Healthcare Practice team.  He was on the successful trial team in *Addison v. American Medical Security* (Fla. Cir. Ct., Palm Beach Co.), and the settled actions *American Dental Ass'n v. Aetna, Inc.* (S.D. Fla.), *Steinberg v. Nationwide Mut. Ins. Co.* (E.D.N.Y.) (preliminary approval granted), and *Wachtel v. Health Net, Inc.*, and continues to litigate with Mr. Hufford *American Medical Ass'n v. United Healthcare Corp.* (preliminary approval motion filed), *American Dental Ass'n v. Wellpoint* (S.D. Fla.), *American Dental Ass'n v. Cigna Corp.* (S.D. Fla.).  Mr. Axelrod is also lead counsel in *Raffone v. First American Title Ins. Co.* (Fla. Cir. Ct., Nassau Co.), *Higgins v. Commonwealth Land Title Ins. Co.* (Fla. Cir. Ct., Nassau Co.), and *Chereskin v. Fidelity Title Ins. Co.* (Fla. Cir. Ct. Nassau Co.).

Pomeranz has a long working relationship with Carella and, due to recent developments in these cases, has brought Carella onto its team.  Carella has an extensive class-action practice and the partner in charge of working with Pomeranz on these cases, James E. Cecchi, has been involved in many of the most significant class action matters in the State in recent years. (A firm biography identifying many of these matters is annexed as Exhibit B to the Cecchi Declaration). At present, Mr. Cecchi serves in Court appointed leadership positions in numerous significant

class actions including, among others: *In Re: Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation*, MDL No. 1938 (DMC)(MDL involving fraudulent marketing and sale of cholesterol drug Vytorin); *Serio, et al. v. Wachovia Securities LLC*, Civil Action No. 06-4681(DMC)(ERISA class action pending final approval); *In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL No. 1969 (PLF)(MDL involving illegal price fixing by four largest railroads); *In re Mercedes-Benz Tele-Aid Contract Litigation*, MDL No. 1914(DRD)(Consumer Fraud MDL); *In Re: Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation*, MDL No. 1658 (SRC)*(*Securities Fraud arising out of sale of Vioxx painkiller); *In Re: Virgin Mobile USA IPO Litigation*, Lead Case No. 07-5619 (SDW)(securities fraud); *In Re: Schering-Plough/Enhance Securities Litigation*, Lead Case No. 08-397(DMC)(securities fraud in connection with the marketing and sale of Vytorin); *Genessee County Employees' Retirement System v. Merck & Co., Inc., et al*, Civil Action No. 08-2177 (DMC)(Securities Fraud); *Sampang, et al. v. AT&T Mobility LLC, et al.*, Civil Action No. 07-5324(JLL)(Consumer Fraud).

## ARGUMENT

### THE COURT SHOULD DENY WILENTZ'S MOTION TO BE APPOINTED INTERIM CLASS COUNSEL AND PERMIT PRIVATE MEDIATION

Wilentz seeks to be appointed Interim Class Counsel in order to ensure that it is able to maintain control of the pending UCR cases against Aetna. The Court should be aware, however, that Pomerantz and Carella (with other counsel) intend to shortly file new UCR cases before this Court on behalf of a putative class of ONET providers, who are not currently represented in these actions, which have only been brought on behalf of subscribers. To the extent Wilentz is appointed Interim Class Counsel for its subscriber case, that will not impact counsel in the soon-

to-be-filed provider case, but it would make sense to allow those cases to be filed before decisions are reached on a leadership structure.[10]

Under the circumstances of this case, Pomerantz and Carella also believe the time is ripe for considering whether the cases can be resolved in a manner that is fair and reasonable for the class (whether subscribers or providers).  The issue of the Ingenix database has been resolved, such that the only remaining question is whether Aetna (and other defendants) are liable for under-reimbursements in the past and, if so, how much they should pay.  Given that Aetna has expressed a willingness to discuss settlement, it would be in the best interest of the putative class, as well as this Court and the parties, to engage in discussions before further pursuit of an exhaustive and expensive discovery process.

Appointment of Wilentz as Interim Class Counsel would not facilitate this process, since it has already expressed its opposition to engaging in meaningful settlement talks.  The Court should therefore defer decision on Wilentz's motion to allow events to play out.  Significantly, there is no prejudice to Wilentz or the putative class in doing so.  Pomerantz and Carella are not interfering with Wilentz's prosecution of the pending cases.  Waiting to make decisions concerning Class Counsel and related issues is therefore in the best interests of the putative class, the Court and the parties.

---

[10]  The Court may also wish to consider that the Judicial Panel on Multidistrict Litigation will be determining whether to create an MDL litigation relating to subscriber UCR claims that have been alleged against Aetna.  *See In re Aetna, inc. Out-of-Network "UCR" Rates* Litigation, MDL No. 2020.

## CONCLUSION

For the reasons stated herein, Pomerantz and Carella respectfully request that the Court deny the pending motion to appoint Wilentz Interim Class Counsel.

                     CARELLA, BYRNE, BAIN, GILFILLAN,
                     CECCHI, STEWART & OLSTEIN
                     Attorneys for Plaintiff and Proposed Class

                     By:   /s/ James E. Cecchi
                          JAMES E. CECCHI

Dated:  January 23, 2009

Stanley M. Grossman
D. Brian Hufford
Robert J. Axelrod
POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP
100 Park Avenue
New York, New York 10017
(212) 661-1100

#3857844

12