**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: AETNA, INC. OUT OF NETWORK "UCR" RATES LITIGATION<br><br>*Cooper, et al. v. Aetna Health Inc., PA, Corp., et al.*, D. New Jersey, C.A. No. 2:07-3541 | Case No. MDL 2020<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM LEAD CLASS COUNSEL**<br><br>April 28, 2009 |

Plaintiff Jeffrey M. Weintraub ("Plaintiff")[1] respectfully submits this memorandum of law in support of his motion to have this Court appoint interim lead class counsel pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure. For the reasons set forth herein, this Court should grant Plaintiff's Motion and appoint Scott + Scott LLP as interim lead class counsel. Plaintiff likewise seeks to have his co-counsel in the *Weintraub* Action, the Lexington Law Group, appointed as co-lead counsel.[2]

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23(g)(3), Plaintiff respectfully moves to have Scott + Scott LLP appointed by this Court as interim lead class counsel for himself and the putative class in the cases pending before this Court concerning Aetna, Inc. ("Aetna") and its reimbursement for "out-of-network" services based on a usual and customary rate determined by

---

[1] "Plaintiff" shall refer to Plaintiff Jeffrey M. Weintraub, the named and Lead Plaintiff in the case entitled *Weintraub v. Ingenix, Inc. et al.* originated in the District of Connecticut before the Honorable Mark R. Kravitz ("Judge Kravitz") and bearing the civil action number 3:08-cv-00654 (the "*Weintraub* Action").

[2] On April 12, 2009, Plaintiffs in the various Aetna and related UCR cases met and reached agreement on certain issues including the need for separate tracks for subscriber and provider actions. While discussion continues over which firms will serve in a leadership capacity, we are hopeful that we will be able to work with other counsel to reach an agreement on a leadership structure and will advise the Court with any updated information.

Ingenix, Inc. At present, those cases include *Weintraub v. Aetna, et al.* (the "*Weintraub* Action") and *Cooper v. Aetna, et. al.*, 07-cv-3541(FSH)(PS) (the "*Cooper* Action") as well as two "tag-along" cases entitled *American Medical Association, et al. v. Aetna, et al.*, 09-cv-00579(FSH)(PS) and *Seney v. Aetna, Inc., et al.*, 09-cv-00468(FSH)(PS) (collectively, with any future "tag-along" actions against Aetna, the "*Aetna* Actions"). As discussed in detail below, Scott + Scott LLP and the Lexington Law Group have records of experience, knowledge, and accomplishments in antitrust and health care cases, as well as significant litigation experience in scores of antitrust, securities, ERISA, and consumer fraud cases. Scott + Scott LLP and the Lexington Law Group are nationally recognized firms known for dedication and success in achieving exceptional results on behalf of plaintiff classes. They are likewise the firms that have advanced the *Weintraub* Action from its inception and engaged in the most proactive discovery thus far. Moreover, Judge Kravitz has already appointed Scott + Scott LLP as interim lead counsel for a national subscriber class in the *Weintraub* Action.

## STATEMENT OF THE CASES AND PROCEDURAL HISTORY

The *Aetna* Actions concern the creation and use by Defendant Aetna Corp. ("Aetna") and its co-conspirators of a database maintained by Defendant Ingenix, Inc. ("Ingenix"), a wholly-owned subsidiary of Defendant UnitedHealth Group, Inc. ("UnitedHealth") (collectively, "Defendants"). In an effort to control their costs for out-of-network services, Defendants and their co-conspirators agreed to a scheme that operates to under-reimburse Plaintiff and the putative class for out-of-network visits by improperly reporting the usual, customary and reasonable ("UCR") charges for out-of-network physician services. ¶1.[3] The scheme thus

---

[3] All paragraph ("¶__" or "¶¶__") citations are to the Second Amended Class Action Complaint (the "Complaint"), filed in the *Weintraub* Action on October 24, 2008 (Docket ID #71).

centers around the Ingenix database – into which Aetna, UnitedHealth, Ingenix and their co-conspirators agreed to submit UCR physician-charge data and from which those same entities contract to purchase UCR rate data for calculating UCR rates to reimburse members under their policies. ¶4. Additionally, Defendants and their co-conspirators have agreed to manipulate the data that flows into the Ingenix database and to represent Ingenix's UCR output as accurate, and by such manipulation are able to radically underpay plan members in the form of under-reimbursement of claims for out-of-network services. ¶¶5-6.

The facts of these cases are therefore relatively straightforward and describe a conspiracy by Defendants and their co-conspirators to deprive individual health insurance customers of moneys owed to them. The Complaint alleges that Aetna, UnitedHealth and their co-conspirators entered into licensing agreements with Ingenix, a wholly-owned subsidiary of UnitedHealth, to provide reimbursement data to Ingenix, which in turn uses this data to create fee schedules to establish UCR payments. The Complaint further alleges that Defendants have conspired to ensure that the data from the Ingenix database is woefully deficient and incorrect in that it greatly diminishes the true cost for out-of-network services in a given area.

Plaintiff brought the *Weintraub* Action on April 29, 2008 (Doc. ID #1), and then filed a First Amended Complaint on August 15, 2008 (Doc. ID. #54). The scheduling order in the *Weintraub* Action provides for a class certification deadline of June 24, 2009; an end of discovery in October 2009; and a trial ready date in June 2010. Following Defendants' September 15, 2008 Motion to Dismiss (Doc. ID #62) and a telephonic status conference with Judge Kravtiz in the District of Connecticut, Plaintiff filed the Second Amended Complaint (Doc. ID # 71) on October 24, 2008. Defendants moved to dismiss the Complaint (Doc. ID #76) and Plaintiff timely responded to that motion (Doc. ID #86). A hearing before Judge Kravitz

3

was held on February 26, 2009. Following this hearing, and in response to discovery discussions between the parties, Judge Kravitz held a telephonic conference on March 19, 2009. During that conference concerning coordinating discovery in the *Weintraub* Action with the New Jersey *Aetna* Actions, Judge Kravitz granted Plaintiff's Motion to Appoint Scott + Scott LLP as Interim Lead Counsel dated February 16, 2009 and directed Scott + Scott LLP to facilitate coordination effects with Plaintiff's counsel in the other *Aetna* Actions.

Parallel to these litigation efforts, an MDL proceeding commenced. On December 8, 2008 Defendant Aetna moved to have the *Weintraub* Action transferred to the Judicial Panel for Multidistrict Litigation (the "Panel") and coordinated with the *Cooper* Action. Approximately two months later, on February 9, 2009, two "tag-along" cases were filed in this Court: *Seney v. Aetna, Inc.* and *American Medical Association, et al. v. Aetna*. A hearing before the Panel was held on March 26, 2009 and Aetna's motion to transfer was granted by the Panel on April 8, 2009. Therefore, before this Court for pre-trial purposes are the consolidated cases of *Weintraub* and *Cooper* as well as the tag-along actions against Aetna and potentially future cases yet to be brought.

## ARGUMENT

### A. Appointing Interim Lead Class Counsel Is Appropriate Under Rule 23(g) and Will Protect the Interests of the Putative Plaintiff Class

This Court is given the discretion to name "interim class counsel." Federal Rule of Civil Procedure 23(g)(3) provides the Court with the authority to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." This ability is especially important when, as here, there are multiple actions pending because appointment of interim class counsel "is necessary to protect the interest of class members" because it "clarifies the responsibility for protecting the interest of the class during

precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MANUAL FOR COMPLEX LITIGATION (FOURTH), §21.11 (2009).

> **B.     Proposed Interim Class Counsel Will Fairly and Adequately Represent the Interests of Plaintiff and the Putative Class**

Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56 (E.D.N.Y. 2006). In making the determination to appoint interim lead class counsel, the Court considers: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *In re Bear Stearns Cos., Inc. Securities, Derivative, and Employee Retirement Income*, 08 MDL No. 1963, 2009 WL 50132, at *4 (S.D.N.Y. Jan. 5, 2009). For the reasons set forth in more detail below, Scott + Scott LLP and the Lexington Law Group clearly meet each of these factors and will fairly and adequately represent the interests of Plaintiff and the putative class in the *Aetna* Actions.

> **1.     Proposed Interim Lead Class Counsel Has Investigated and Identified the Claims in This Action and Has Diligently Advanced This Litigation**

As stated above, the first consideration is the work that counsel has done to identify or to investigate the claims involved in the action. In this case, Scott + Scott LLP has taken significant steps to identify and to investigate Plaintiff's claims and has made every effort to

advance this litigation.  As set forth in the accompanying Declaration of Joseph P. Guglielmo ("Guglielmo Decl."), Scott + Scott LLP has performed extensive factual and legal research into the inception, development, maintenance, and use of the Ingenix Database, taken deposition and document discovery, reviewed documents and electronic information concerning the subject matter, contacted the New York State Attorney General's Office, researched and reviewed associated cases, and interviewed industry contacts as well as retained experts and consultants in the relevant field.  Guglielmo Decl., ¶2.

Scott + Scott LLP has demonstrated that it is capable of leading the litigation against Aetna.  Scott + Scott LLP negotiated a Rule 26(f) report as well as pre-trial and discovery plans and with Lexington Law Group drafted the relevant pleadings in the *Weintraub* Action, including responding to Defendants' motion to dismiss.  Scott + Scott LLP also argued the motion to dismiss before United States District Judge Mark Kravitz, successfully litigated a protective order, propounded discovery requests and obtained a number of documents, took four extensive depositions of Defendants' corporate designees and served subpoenas on certain non-parties concerning these issues.[4]  In fact, Scott + Scott LLP is the ***only*** firm to have taken any depositions in any of the *Aetna* Actions and advanced the case in a meaningful way.  Guglielmo Decl., ¶7.  In addition to those depositions, Scott + Scott LLP has already engaged in more substantial discovery in the *Weintraub* Action in that it issued the first set of merits document requests on all Defendants in March, responded to Defendants' responses/objections thereto, and had continued to "meet and confer" with Defendants on those requests.  Guglielmo Decl., ¶¶4-5.

---

[4]   These initial depositions were taken in late January and early February 2009.  On March 3, 2009, Scott + Scott LLP issued notices of depositions on each Defendant for another set of corporate designee depositions.  After the March 19, 2009 telephonic conference and pursuant to the request of Defendants, those depositions were stayed pending delivery of documents and resolution of the consolidation motion to the Panel.

Likewise, counsel from Scott + Scott LLP has participated in telephonic and in-person conferences with various counsel for the Defendants and, at five separate conferences before Judge Kravitz and two with this Court. Guglielmo Decl., ¶4.

Finally, Scott + Scott LLP has demonstrated its ability to lead all the *Aetna* Actions and to work cooperatively with other counsel. Scott + Scott LLP has led efforts to coordinate the various plaintiffs' counsel in the New Jersey actions even prior to Aetna's Motion before the Panel. In 2008, Scott + Scott LLP reached out a number of times to counsel in the *Cooper* Action to attempt to coordinate the two cases. Since that time, with the addition of the two additional Aetna cases pending in this Court, Scott + Scott LLP initiated contact with counsel to discuss coordinating discovery efforts and to work cooperatively and productively with such counsel. In fact, although, as discussed above, Scott + Scott LLP has served discovery requests, has already taken numerous depositions of all Defendants, and has retained experts and consultants knowledgeable about the Ingenix database and the UCR payment issues, including healthcare and economic experts, Scott + Scott LLP sought to include counsel for the competing Aetna in the discovery process ongoing in the *Weintraub* Action. Most recently, Scott + Scott LLP has requested that counsel coordinate on the 30(b)(6) depositions that Scott + Scott LLP had noticed and provided counsel with the deposition notices. Guglielmo Decl., ¶8. Scott + Scott LLP is also in the process of obtaining records from Attorney General Cuomo's investigation and will work with the other firms in the *Aetna* Actions to expedite this review and analysis.

Thus, there can be no question that Scott + Scott LLP satisfies the first criteria of Rule 23(g) for appointment as interim lead class counsel under Rule 23(g). Scott + Scott LLP has demonstrated that it has and will continue to devote resources to the litigation and diligently and aggressively pursue this case on behalf of Plaintiff and the putative Aetna class members.

Notably, Scott + Scott LLP has evidenced that it has and is willing to continue to work effectively and cooperatively with other counsel.

        **2.    Proposed Interim Lead Counsel Has Extensive Experience in Litigating Similar Class Actions and Is Knowledgeable in the Applicable Law**

Scott + Scott LLP and the Lexington Law Group also clearly satisfy the second and third inquiries into determining interim class counsel in that they are law firms with the background, experience and requisite legal knowledge to manage and prosecute this case and the claims asserted herein.  Scott + Scott LLP has served as lead or co-lead counsel in several large antitrust class actions, including, among others, *Dahl v. Bain Capital Partners*, No. 07-cv-12388 (D. Mass.) (market allocations by private equity firms), *Red Lion Medical Safety, Inc. v. Ohmeda, Inc.* (E.D. Cal.) (trying claims in medical device industry), and *In re Korean Airlines Antitrust Litig.*, MDL No. 1891 (C.D. Cal.).  Scott + Scott LLP is also playing a prominent risk in *Ross v. Bank of America, et al.*, MDL No. 1409 (S.D.N.Y.), *Ross v. American Express, et al.*, MDL No. 1409 (S.D.N.Y.), *In re Carbon Fiber Antitrust Litig.* No. 99-cv-07796 (C.D. Cal.).  The lawyers working on the case at Scott + Scott LLP include (among others) Christopher M. Burke and Joseph Guglielmo.

Mr. Burke has centered his practice on complex antitrust and unfair competition matters and served as co-lead counsel in *In re Currency Conversion Antitrust Litigation* ($336 million settlement) and was one of the trial counsel in *Schwartz v. Visa*, No. 822404-4 (Alameda County Sup. Ct.) ($800 million plaintiff verdict).  Prior to joining Scott + Scott, Mr. Burke was co-lead counsel in *In re Payment Card & Merchant Fee Antitrust Litig.*, 05-md-1720 (S.D.N.Y.), where he continues in a leadership role.  Mr. Guglielmo has worked on a number of significant antitrust and RICO cases concerning the insurance industry including *In re Managed Care Litig.*, MDL No. 1334 (S.D. Fla.) (settlements with Aetna, Cigna, Healthnet, Prudential, Humana and

Wellpoint on behalf of nationwide classes of physicians and medical societies resulting in billions of dollars of practice reforms and monetary relief to plaintiffs and class members), *Thomas v. Blue Cross Blue Shield Ass'n.* (S.D. Fla.) (settlements with approximately 90% of Blue Cross and Blue Shield Plans throughout the United States resulting in hundreds of millions of dollars of practice reforms and monetary relief to plaintiffs and class members), and *In re Insurance Brokerage Antitrust Litig.*, MDL No. 1897 (D.N.J.). A copy of the Scott + Scott LLP firm resumé is attached to the Guglielmo Decl. as Exhibit 1. These credentials demonstrate that Scott + Scott LLP has the requisite experience and knowledge to serve as interim class counsel in this antitrust case concerning health care insurance reimbursements.

Likewise, the Lexington Law Group ("LLG"), which Plaintiff seeks to have appointed as co-lead counsel, has extensive experience representing consumers in complex consumer protection lawsuits. LLG has been successfully pursuing cases on behalf of consumers and environmental groups for over a decade. LLG has represented numerous parties in civil actions of various types and degrees of complexity, including: *In re: Comcast Peer-to-Peer (P2P) Transmission Contract Litig.*, MDL No. 1992 (E.D. Pa.) (first in the nation class action against internet service provider for alleged breach of contract and false advertising); *Dervaes v. Blue Shield of California*, Case No. RG06262733 (Alameda County Sup. Ct. – Complex Department) (class counsel in case alleging breach of contract and false and misleading statements by health insurer Blue Shield of California); *In re Automobile Advertising Cases*, J.C.C.P. No. 4149 (San Francisco Sup. Ct.) (a large multi-party coordinated proceeding against hundreds of automobile dealerships regarding violations of the Truth in Lending Act); and *In re Tobacco Cases II*, J.C.C.P. No. 4042 (San Diego Sup. Ct.) (suit against major tobacco companies regarding failure

9

to warn about second-hand smoke in violation of California law). A copy of the Lexington Law Group firm resumé is attached to the Guglielmo Decl. as Exhibit 2.

        **3.    Proposed Interim Lead Counsel Has the Resources Necessary to Effectively Prosecute This Litigation**

The final factor to be considered by this Court under Fed. R. Civ. P. 23(g)(1)(C) is whether proposed counsel has the resources to devote to the case. There can be no question, as evidenced by the work performed thus far, that Scott + Scott LLP and the Lexington Law Group have substantial human and financial resources and the willingness necessary to prosecute this case. Previous cases litigated by Scott + Scott LLP and the Lexington Law Group show that the firms are dedicated to providing whatever resources are necessary to prosecute a case through to an ultimate decision. For example, Scott + Scott LLP tried to a plaintiffs' verdict the *In re Scrap Metal Antitrust Litigation* against the non-settling Defendant. Scott + Scott LLP has and will continue to devote the necessary attorneys to prosecute this action and will utilize the specific expertise of their personnel to litigate the case efficiently and effectively. Guglielmo Decl., ¶9. This evinces a resolve and an ability to devote resources to the diligent prosecution of an action. Furthermore, Scott + Scott LLP has a national presence with offices in Connecticut, New York, Cleveland, and San Diego. Guglielmo Decl., ¶10. Therefore, appointment of Scott + Scott LLP and the Lexington Law Group is warranted as the firms clearly have the necessary resources to prosecute this action.

        **C.    The District of Connecticut Has Already Approved Appointment of Scott + Scott LLP**

Finally, it should be noted that Judge Kravtiz determined that Scott + Scott LLP is fully capable of being lead counsel in that he appointed the firm interim lead counsel in the *Weintraub* Action on March 19, 2009. (March 19, 2009 Order attached as Exhibit 3 to the Guglielmo Decl.)

## **CONCLUSION**

For the reasons set forth herein, Plaintiff Jeffrey M. Weintraub believes that Scott + Scott LLP and the Lexington Law Group will fairly and adequately represent Plaintiff and the putative class. The firms have already demonstrated a commitment to the case, have the requisite experience to litigate the case, are knowledgeable in the areas of the law involved and Scott + Scott LLP was already preliminarily approved by the District of Connecticut. For all the foregoing reasons, Plaintiff respectfully requests that Scott + Scott LLP and the Lexington Law Group be appointed, pursuant to Federal Rule of Civil Procedure 23(g)(3), as interim lead class counsel for Plaintiff and the putative class in this litigation.

DATED: April 28, 2009

                                        SCOTT + SCOTT LLP


                                          /s/ Joseph P. Guglielmo
                                        JOSEPH P. GUGLIELMO
                                        29 West 57th Street, 14th Floor
                                        New York, NY 10019
                                        Phone: (212) 223-6444
                                        Fax: (212) 223-6334
                                        Email: jguglielmo@scott-scott.com

                                        DAVID R. SCOTT
                                        AMANDA F. LAWRENCE
                                        SCOTT + SCOTT LLP
                                        108 Norwich Ave.
                                        P.O. Box 192
                                        Colchester, CT 06415
                                        Phone: (860) 537-5537
                                        Fax: (860) 537-4432
                                        Email: drscott@scott-scott.com
                                                 alawrence@scott-scott.com

             SCOTT + SCOTT LLP
             CHRISTOPHER M. BURKE
             KRISTEN M. ANDERSON
             600 B Street, Suite 1500
             San Diego, CA 92101
             Phone: (619) 233-4565
             Fax: (619) 233-0508
             Email: cburke@scott-scott.com
                 kanderson@scott-scott.com

             LEXINGTON LAW GROUP, LLP
             MARK TODZO
             1627 Irving Street
             San Francisco, CA 94122
             Phone: (415) 759-4111
             Fax: (415) 759-4112
             Email: mtodzo@lexlawgroup.com

             ***Counsel to Plaintiff***

CERTIFICATE OF SERVICE

      I hereby certify that on April 28, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

      I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 28, 2009

      /s/ Joseph P. Guglielmo
JOSEPH P. GUGLIELMO
SCOTT + SCOTT LLP
29 West 57th Street, 14th Floor
New York, NY 10019
Phone: (212) 223-6444
Fax: (212) 223-6334
Email: jguglielmo@scott-scott.com