# CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN, P.C.

COUNSELLORS AT LAW

5 BECKER FARM ROAD
ROSELAND, N.J. 07068-1739
PHONE (973) 994-1700
FAX (973) 994-1744
www.carellabyrne.com

CHARLES C. CARELLA
BRENDAN T. BYRNE
JOHN N. BAIN
PETER G. STEWART
ELLIOT M. OLSTEIN
ARTHUR T. VANDERBILT, II
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI

JAMES T. BYERS
DONALD F. MICELI
A. RICHARD ROSS
KENNETH L. WINTERS
JEFFREY A. COOPER
CARL R. WOODWARD, III
MELISSA E. FLAX
DENNIS F. GLEASON
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
KHOREN BANDAZIAN
LINDSEY H. TAYLOR

JAMES D. CECCHI (1933-1995)

RICHARD K. MATANLE, II
FRANCIS C. HAND
AVRAM S. EULE
RAYMOND W. FISHER
DAVID J. REICH

OF COUNSEL

RAYMOND J. LILLIE
WILLIAM SQUIRE
ALAN J. GRANT°
MARC D. MICELI
RAYMOND E. STAUFFER°
JACOB A. KUBERT
STANLEY J. YELLIN
STEPHEN R. DANEK
ERIC MAGNELLI
DONALD A. ECKLUND
VINCENZO M. MOGAVERO
°MEMBER N.Y. BAR ONLY

April 29, 2009

## VIA ECF AND FEDERAL EXPRESS

Honorable Faith S. Hochberg
United States District Judge
United States District Court
United States Post Office & Courthouse Building
Newark, New Jersey 07101

Re:   **Aetna UCR Actions – MDL No. 20202**

*American Medical Association v. Aetna Health Inc. PA, Corp.* 09-579 (FSH)
*Cooper v. Aetna Health Inc. PA, Corp., et. al.* 07-3541(FSH)
*Seney v. Aetna Health Inc., PA, Corp.,* 09-468 (FSH)
*Cooper v. Aetna Health Inc., P.A., Corp.,* 07-3541(FSH)
*Weintraub v. Ingenix, Inc.,* 08-654 (D.Conn.)

**Cigna UCR Actions**

*Franco v. Connecticut General Life Insurance Co.,* 07-6039 (FSH)
*Chazen v. Connecticut General Life Insurance Co.,* 08-4106 (FSH)
*American Med. Ass. v. Connecticut General Life Insurance Co.,* 09-578 (FSH)

**Oxford UCR Action**

*Malchow v. Oxford Health Plans, Inc.,* 08-935 (FSH)

**WellPoint UCR Action**

*Samsell v. WellPoint,* 09-667 (FSH)

**Blue Cross/Blue Shield UCR Actions**

*Becker v. Horizon Blue Cross Blue Shield of New Jersey,* 09-1154 (FSH)
*McDonough v. Horizon Blue Cross Blue Shield of New Jersey,* 09-571 (FSH)

Honorable Faith S. Hochberg
April 28, 2009
Page 2

Dear Judge Hochberg:

This firm, along with Whatley, Drake & Kallas, LLC ("Whatley Drake"), and Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz"), represent the American Medical Association ("AMA"), along with other State Medical Associations, and Provider Plaintiffs, in connection with the Provider Actions identified above against Aetna Health Inc. PA, Corp. ("Aetna") and Connecticut General Life Insurance Co. ("CIGNA"). My firm, Seeger Weiss, LLP ("Seeger Weiss") and others are also counsel for Plaintiff John Seney in the subscriber action against Aetna.

I am writing to update Your Honor on our efforts to seek consensus among all counsel on the most efficient and effective way to organize these issue-related cases. Although I am pleased to report that agreement has been reached among plaintiffs' counsel on certain important case-management issues, one fundamental disagreement exists on the plaintiffs' side which prevents us from presenting a single, agreed-upon proposal. The area of disagreement concerns the role of the Wilentz firm in an agreed-upon Plaintiffs' management structure. While we have offered to work with Wilentz in a cooperative and co-equal manner, Wilentz has, to date, refused a structure that does not give it paramount authority over all subscriber UCR litigation. Given the changed litigation landscape, which is well documented in our prior submission to the Court, we cannot agree to a structure that confers ultimate, paramount authority to the Wilentz firm. As such, we believe that it will be necessary for Your Honor to exercise your discretion under Rule 23(g), and impose a leadership structure upon Plaintiffs so that these issue-related cases may move forward expeditiously toward conclusion.

In addition, Movants[1] have been engaging in meet and confers with certain of the defendants regarding an appropriate Case Management Order ("CMO") to govern all related cases and hope to be in a position to present an agreed upon CMO to the Court in the near future. The following discussion will highlight the areas of agreement among plaintiffs' counsel, as well as our proposal for an effective leadership structure for all UCR cases before the Court.

### 1. Aetna MDL 2020 Should Be Organized First

On April 8, 2009 the MDL panel transferred to this Court for coordinated pre-trial proceeding *Weintraub v. Aetna*. Given that the Aetna cases are the only true MDL cases relating to UCR before the Court, it is our belief that the parties and the Court should focus on adopting a leadership and case-management approach in these cases, that can then be followed in the remaining UCR cases.

---

[1] The law firms supporting the proposal made in this letter include Carella, Byrne, Whatley Drake, Pomeranz, Seeger Weiss, Scott + Scott, and Bonnett, Fairbourn, (hereinafter "Movants").

Honorable Faith S. Hochberg
April 28, 2009
Page 3

### A. There Is Agreement on A Two-Track Case Management Approach

Following a lengthy in-person meeting between all Plaintiffs' counsel on Friday, April 17, it was agreed that the most effective way of managing these cases is to create a two-track approach as was initially suggested in our Rule 23(g) filing. This approach would create a leadership structure for all provider and association cases, and a parallel leadership structure for subscriber cases.

### B. There Is No Objection to the Proposed Organization of the Provider Track

We understand that there is no objection to Pomerantz Haudek, and Whatley, Drake (subject, of course, to the Court's approval) serving as co-lead counsel for the Provider cases. The Provider cases include those brought by the Medical Associations. The two co-lead counsel would then further organize all other provider counsel to work with co-lead counsel to efficiently develop and prosecute the provider cases. All discovery to be performed in the Provider cases will be coordinated with the discovery to be performed in the Subscriber cases in order to achieve optimal efficiencies.

### C. An Executive Committee Should Be Appointed to Supervise the Aetna MDL Subscriber Track

While all counsel recognize the efforts of the Wilentz firm (and Pomerantz Haudek) in connection with prosecuting the *Health Net* action, we believe that the changed litigation landscape requires that the Aetna subscriber track be organized in a cooperative manner that gives all competent counsel a real voice in making decisions about the ultimate course of the litigation. Particularly in the context of a national MDL, giving one firm unilateral authority over the case does not serve this laudable objective. To the contrary, the MANUAL ON COMPLEX LITIGATION explains that it is the duty of the Court to appoint Interim Class Counsel who are fully capable and qualified to represent all parties on their side fairly and adequately. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2008); *see also Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 100 (M.D. Tenn. 2004) ("the primary responsibility of the class counsel, resulting from an appointment as such, is to represent the best interests of the class."); *In re Goodyear Tire & Rubber Co. ERISA Litig.*, 2004 U.S. Dist. LEXIS 26706, at *13 (N.D. Ohio Apr. 22, 2004) (order appointing lead counsel and noting that the designated counsel must be "qualified and responsible . . . [and] fairly and adequately represent all of the parties on their side"). A unilateralist approach runs directly afoul of these guiding principles.

Wilentz's rejection of the notion that counsel should work together in a co-equal way in Aetna is relevant to the Court's consideration of its adequacy under Rule 23. Put simply, if Wilentz is not willing to recognize the need for a cooperative and collegial approach, it should not be given unilateral authority to make ultimate decisions for the classes in question. In fact,

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
A PROFESSIONAL CORPORATION

Honorable Faith S. Hochberg
April 28, 2009
Page 4

given everyone's knowledge of the core liability issues in question, there is no need for scorched-earth litigation.[2]

In light of these facts, we believe the best and most inclusive means of managing the Aetna MDL Subscriber Track is to form a four-firm Executive Committee – consisting of Carella, Byrne, Seeger Weiss, Wilentz and Scott + Scott - with responsibility for directing and managing the Subscriber Track of the litigation.[3] Carella, Byrne would serve as Chair of the Aetna Subscriber Executive Committee. Such a structure is routine in MDL litigation and is entirely reflective of the talents, resources and skills of each proposed firm.

### D. The Two Tracks May Be Further Coordinated Through An Aetna UCR Coordinating Committee

Equally significant, and as will be reflected in a proposed Aetna MDL Case Management Order that we intend to submit within the next day or so, we suggest that the two tracks be coordinated by an Aetna UCR Coordinating Committee that would insure the smooth and effective development of the claims and issues that both subscribers and providers share. The Aetna UCR Coordinating Committee – consisting of the Provider Co-lead counsel and the Subscriber Chair – would coordinate the tracks and make cooperative decisions regarding the ultimate trial and/or settlement of the matter.

The proposed organizational structure described herein: (1) supports a cooperative approach amongst counsel; (2) takes into account both the need for separate representation of these distinct classes and coordination of these actions; (3) ensures that the respective proposed classes are directed by counsel who have extensive experience in litigating the issues at the heart of these actions; and (4) gives deference to the choice of counsel by significant organized medicine entities, including the AMA, MSNJ, MSNY, CSMS, TMA and NCMS, which have devoted countless hours and resources in dealing with these issues and which have brought claims on their own behalf and on behalf of their members against managed care entities. This proposed structure also takes advantage of the extensive experience and expertise in litigating cases in this area of all counsel, including Wilentz.

Movants respectfully submit that both the Federal Rules and precedent support their proposal. In complex nationwide class actions such as this, the Federal Rules of Civil Procedure envision that the Court should implement a leadership structure to ensure that the proceedings advance in an orderly, expeditious, and cost-effective manner. Indeed, the Advisory Committee's Notes to the recently amended Rule 23(g) stress that "the selection and activity of

---

[2]   The developments concerning the United Healthcare settlement are also, of course, relevant under Rule 23(g).

[3]   Scott + Scott prosecuted the *Weintraub* action in Connecticut. Our proposal puts aside our differences on venue which were decided adversely to Scott + Scott in the MDL proceeding, and seeks to fully integrate them into the MDL proceeding here.

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
A PROFESSIONAL CORPORATION

Honorable Faith S. Hochberg
April 28, 2009
Page 5

class counsel are often critically important to the successful handling of the class action." Fed. R. Civ. P. 23(g) (Notes of the Advisory Committee). Movants' proposed structure adequately addresses the concerns of Rule 23, as it seeks to appoint extremely well qualified law firms experienced at managing complex actions such as this.

### 2.  Organization of Other UCR Cases

#### A.  WellPoint

Certain of the Movants have filed UCR cases against WellPoint in California. Wilentz and the Havilland firm have filed a UCR case against WellPoint here. We expect filings to be made to the MDL soon. Although Movants are comfortable litigating the case in either venue (these cases were filed in California because there is venue in California), we believe that the best approach is to defer organizing WellPoint until the MDL panel has an opportunity to determine where these cases will be litigated. In the event the Court wishes to put in place a structure prior to the MDL ruling, we would be happy to submit a proposal addressing these cases as well.

#### B.  Horizon/Blue Cross

There are, at present two Horizon/Blue Cross subscriber cases. We propose that this UCR litigation also be managed by a Subscriber Executive Committee consisting of the same firms as in the Aetna MDL with the exception that Bruce Nagel would be a member of this committee and also serve as its chair. To the extent that additional Horizon/Blue Cross subscriber cases are filed, those cases can be integrated by the Horizon UCR Subscriber Executive Committee.

#### C.  CIGNA

Since the CIGNA case are divided, like the Aetna cases, between provider and subscriber cases, we would advocate that the same leadership structure outlined above for the Aetna MDL be adopted in the CIGNA case. However, given the more advanced stage of this litigation, we propose that Wilentz chair the subscriber-side CIGNA UCR Executive Committee with Carella, Byrne, Seeger Weiss, Scott + Scott and Nagel Rice serving as members.

It is also relevant to note that in CIGNA, the proposed Provider Track Co-Lead Counsel have been engaged in discussions with counsel for CIGNA to develop a plan to bring the Provider claims to the same point as the Subscriber claims in an expeditious manner, without significant delay to the Subscriber claims and will continue these efforts to finalize a joint CMO.

### D. Oxford

Movants propose that any decision regarding leadership and/or altered case-management in connection with the Oxford matter be deferred until Judge McKenna has issued a decision as to the United HealthCare settlement.

### E. Overall UCR Coordination

As there is significant overlap between each proposed UCR Subscriber Executive Committee and the same proposed Co-lead Counsel over all Provider Track UCR cases, Movants believe that they will be able to coordinate effectively all of the UCR cases in an efficient manner to avoid duplication and overlap. If necessary, Provider Track counsel and the Chairs of each Subscriber Track Committee can discuss the formation of a more formal UCR Coordinating Committee if it becomes necessary.

### 3. Conclusion

We hope that our proposal is helpful to the Court as it makes the important decision as to the organization and management of these UCR cases. As noted above, we are finalizing the terms of a CMO that will include a section addressing our organizational proposal for the Court's consideration. In addition, we will continue our meet and confer efforts with Defendants in the hope that we can reach agreement on a comprehensive plan for handling all matters and deadlines relating to these UCR actions to submit to your Honor. We are, of course, available at any time convenient to the Court to discuss our proposal.

Respectfully submitted,

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN

JAMES E. CECCHI

cc: All Counsel (via ECF and email)