NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: AETNA UCR LITIGATION | MDL. No. 2020 |
| | Master Case No.: 07-3541 |
| This Document Relates to: ALL CASES | **ORDER** |
| | Date: July 31, 2009 |

### CASE MANAGEMENT ORDER NO. 2
### LEADERSHIP STRUCTURE FOR PLAINTIFFS' COUNSEL

This matter comes before the Court upon the parties' submissions concerning the various proposals for the organization and duties of Plaintiffs' counsel; and

the Court having held a status conference on April 7, 2009 to discuss case management issues including the organization of Plaintiffs' counsel, and having given the parties a May 18, 2009 deadline for the submission of case management proposals; and

it appearing that on July 10, 2009, after months of failing to reach agreement, Plaintiffs' counsel submitted a purported private ordering of their internal organizational structure, which appears to be an effort to give every attorney a title with responsibility for something; but

the Court declining to adopt the entirety of Plaintiffs' proposal in the interest of ensuring that this matter is managed in a cooperative and streamlined way; and

to this end, the Court finding it important that there be a single law firm to serve as a point of contact for Defendants and the Court with authority to speak on behalf of Plaintiffs; and

the Court having considered for a leadership position those law firms that have submitted

an application;[1] and having evaluated the applications based on factors including apparent willingness and ability to work cooperatively with others in pursuit of a just and speedy resolution, professional experience in this type of litigation, knowledge of the applicable law, oral advocacy skill in presenting positions to the Court in a clear and concise manner so as to enable the Court to understand the positions being advocated, work done in investigating and identifying the claims, access to sufficient resources to advance the litigation in a timely manner, adequacy of representation of individual clients' and the putative classes' interests, and the respective positions of the law firms;[2] and having considered the case law that favors appointment of only as many lead law firms as necessary for efficient management of a case;[3]

**IT IS** on this 31st day of July 2009, hereby **ORDERED**:

1. The law firms of Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz"), Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, PC ("Carella Byrne"), Wilentz,

---

[1] This includes the applications of (1) Wilentz, Goldman & Spitzer P.A.; (2) Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, PC, on behalf of itself and Pomerantz Haudek Block Grossman & Gross LLP; Whatley Drake & Kallas LLC; and Seeger Weiss LLP; (3) Bonnett Fairbourn Friedman & Balint, P.C.; and (4) Scott + Scott LLP.

[2] *See* Fed. R. Civ. P. 23(g); Manual for Complex Litigation (Fourth) § 21.271; *In re Air Cargo Shipping Services Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006).

[3] *See, e.g.*, *In re Milestone Sci. Secs. Litig.*, 187 F.R.D. 165 (D.N.J. 1999) (stating that appointment of many firms to lead positions is unnecessary and may only make the litigation more expensive where one firm can fulfill the lead counsel role); *In re Nice Sys. Secs. Litig.*, 188 F.R.D. 206 (D.N.J. 1999) (asserting that the rationale of diverse representation is insufficient to justify appointment of multiple lead plaintiffs); *Vincelli v. Nat'l Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1318 (M.D. Fla. 2000) (warning against the appointment of too many lead firms because of "difficulty of arriving at decisions and monitoring the case"); Annotated Manual for Complex Litigation (Fourth) § 10.2 (stating that "courts are more aggressive about assessing what will serve the interests of the parties and the efficient administration of justice, and not what will advance the professional or personal interests of the lawyers").

Goldman & Spitzer P.A., Whatley Drake & Kallas LLC, Seeger Weiss LLP, Bonnett Fairbourn Friedman & Balint, P.C., and Scott + Scott LLP shall serve on the Aetna Plaintiffs' Executive Committee.  Members of the Aetna Plaintiffs' Executive Committee shall assist in managing the workload of Plaintiffs' pretrial activities and in planning for trial, and shall jointly:

  a.  prepare any pleadings to be filed on behalf of Plaintiffs;

  b.  host the document depository and monitor the review of documents to ensure proper performance and non-duplication of effort;

  c.  coordinate discovery on behalf of Plaintiffs consistent with the requirements of Fed. R. Civ. P. 26(b), including the preparation of joint interrogatories, requests for productions of documents, and examination of witnesses in depositions;

  d.  coordinate the selection and preparation of expert witnesses;

  e.  coordinate and allocate payment of joint costs and expenses; and

  f.  coordinate the provision of legal services to ensure compliance with Court orders, timetables, and assignments, and to avoid unnecessary expenditures of time and funds.

 2.  Pomerantz is designated as Chair of the Aetna Plaintiffs' Executive Committee (the "Chair").  Pomerantz shall be generally responsible for coordinating the activities of Plaintiffs during pretrial proceedings and shall:

  a.  determine (after regular consultation with other members of the Aetna Plaintiffs' Executive Committee and such other Plaintiffs' counsel as may be just and proper) the position of Plaintiffs on all matters during pretrial proceedings and present those positions to the

Court and opposing parties (personally or by designee) where appropriate;[4]

      b. enter into stipulations with opposing counsel as necessary for the conduct of the litigation; and

      c. coordinate workflow with other Plaintiffs' counsel in a manner to ensure that pretrial preparation for Plaintiffs is conducted expeditiously, efficiently, and fairly so as not to favor previously aligned counsel;[5] all attorneys shall be given the opportunity to contribute their work effort to the common good.

    3. Carella Byrne is designated as Settlement Liaison and shall be responsible for organizing and coordinating all settlement negotiations on behalf of Plaintiffs. All members of the Aetna Plaintiffs' Executive Committee shall be immediately advised of any communications with Defendants, including settlement overtures by any party or attorney in these consolidated actions.

    4. The Court recognizes that subclasses may be appropriate at a later date. The Court expects that counsel who brought actions on behalf of certain groups of plaintiffs (*i.e.*, medical associations or non-MD providers) will be vigilant about protecting their clients' individual interests, and will timely alert the Court to issues that uniquely impact their clients.

      a. Counsel for Plaintiffs who have such individual interests may conduct

---

[4] The Court similarly appointed Pomerantz to be Plaintiffs' spokesman to the Court in the *Health Net* litigation because the Court found D. Brian Hufford, Esq. to be the attorney most capable of presenting Plaintiffs' positions in a clear and concise manner.

[5] Groups of Plaintiffs' counsel that formed in order to advance the separate proposals for a leadership structure are now expected to put aside their differences and work together cooperatively on behalf of Plaintiffs with the utmost professionalism. Any side agreements that have been made (or are made in the future) between Plaintiffs' law firms shall be immediately disclosed to the Court.

examinations of deponents and otherwise act separately on behalf of their clients as appropriate, provided they do not repeat arguments or questions, interfere with actions of the Chair or the Settlement Liaison, unduly prolong the proceedings, or create unreasonable inefficiencies, and they act with knowledge that hours spent do not necessarily result in a greater portion of counsel fees.

b. Counsel for Plaintiffs who disagree with the Chair, Settlement Liaison, or the Aetna Plaintiffs' Executive Committee shall meet and confer with co-counsel in a good faith effort to attempt to resolve any disagreements *before* seeking the Court's intervention. As part of this process, counsel shall present to co-counsel a written statement outlining the disagreement. Only after attempts to work with and through co-counsel have failed may counsel present their position to the Court. All such submissions must be in writing and accompanied by a certification of counsel that all good faith efforts to resolve the disagreement have failed.

5. Counsel for Plaintiffs shall avoid unnecessary duplication of efforts and shall control fees and expenses in order to keep litigation costs reasonable. Any fees and expenses for which Court approval is sought in this matter will be evaluated in accordance with the following principles:

a. Counsel for Plaintiffs are encouraged to make reasonable choices regarding, *inter alia*, (I) the number of attorneys charging for time spent at depositions, court hearings, or conferences, (ii) the seniority of attorneys doing work perhaps suitable for more junior attorneys, and (iii) travel and expenses.

b. Given that the validity of the Ingenix databases has already been explored through the New York Attorney General's investigation and other matters, counsel for Plaintiffs

5

are advised that the Court will favor a prompt and fair resolution of this matter that achieves a timely benefit to injured putative class members.

        c. When evaluating any application for court-awarded attorneys' fees, the Court will consider the lower risk involved in pursuing this litigation in light of the government's investigation. *See In re Cendant*, 243 F.3d 722, 736 (3d Cir. 2001) (outlining factors the court should consider when setting a fee award, including the uncertainty of the outcome and risk of nonpayment); *In re First Database Antitrust Litig.*, 209 F. Supp. 2d 96, 97 (D.D.C. 2002) (recognizing that the government's investigation reduces the risk of class counsel).

        d. The Court will also consider the contributions by individual Plaintiffs' counsel in determining the allocation of court-awarded attorneys' fees. The results achieved and the benefits provided to the putative class will be of paramount interest to the Court.[6] The Court will give less weight to the number of hours billed. Membership on the Aetna Plaintiffs' Executive Committee, and any corresponding titles, are solely for organizational purposes, and should not be construed as cause to believe that the firm will be awarded a larger sum of attorneys' fees.

    6. Counsel who anticipate seeking an award of attorneys' fees from the Court shall:

        a. Keep a daily record of their time spent and expenses incurred in connection with this litigation, indicating with specificity the hours, location, and particular activity. The description of work done should be sufficient to demonstrate that it benefitted the putative class or contributed to the ultimate recovery of any common fund. The failure to maintain such records will be grounds for denying court-awarded attorneys' fees, as will an insufficient

---

[6] Counsel are reminded that under the canons of professional ethics, they have an obligation to act in the best interests of their clients and the putative class; their own interests in the generation of fees shall not take priority over the interests of the class.

description of activity.

   b. By the twentieth day of each month, beginning August 20, 2009, each firm that may seek an award or approval of a fee by the Court shall file with Carella Byrne a report summarizing, according to each separate activity, the time and expenses spent by its attorneys during the preceding month, the ordinary billing rates of such attorneys in effect during such month, and the accumulated total of the firm's time, hourly rates, and expenses to date. Carella Byrne shall file under seal with the Clerk by the last day of every third month, beginning November 30, 2009, a report summarizing for all participating counsel such time and expenses reports, arranged by activity.

 7. All requests for Court action will hereafter be in the form of a motion properly filed in accordance with all Local Rules. Dueling letters will not be considered. Time spent writing such correspondence will not count as time spent litigating the case, and counsel are on notice that the Court's time wasted on any side disputes may be used to reduce fees.

 8. In light of this Order, the pending motions for appointment as interim class counsel in *Cooper v. Aetna* (07-3541) [Docket Nos. 143, 153, 183] are administratively terminated as moot. The Court may make a final designation of class counsel at the time of class certification, as necessary.

          **/s/ Faith S. Hochberg**
          Hon. Faith S. Hochberg, U.S.D.J.