**Robert J. Axelrod**                                                                  100 Park Avenue
rjaxelrod@pomlaw.com                                                 New York, New York 10017
T: 212.661.1100  F: 212.661.1373

March 31, 2010

**BY EMAIL AND OVERNIGHT COURIER**

Honorable Patty Shwartz, U.S.M.J.
United States District Court
District of New Jersey — Newark
U.S.P.O. & Courthouse Bldg., Room 477
50 Walnut Street
Newark, New Jersey  07101

        **Re:**     **In re Aetna UCR Litigation, MDL 2020**
                      <u>**Master File No. 2:07-cv-3541 (FSH) (PS)**</u>

Dear Judge Shwartz:

        The parties submit the following discovery disputes pursuant to the joint letter protocol.

## I.     <u>AETNA'S POSITION</u>

        The parties have narrowed their disputes regarding class certification discovery to the following three:[1]  First, Aetna seeks billing and payment records for services provided by Heartcare Center to Subscriber Plaintiff Michele Cooper on January 26, 2004, consistent with Your Honor's March 31, 2009 order.  Second, Aetna seeks billing and payment records for claims put at issue by Provider Plaintiff Schorr.  Third, Aetna seeks documents that certain Subscriber Plaintiffs' counsel provided to Judge Hochberg in this case but which they refuse to produce to Aetna.

---

[1]     In a meet and confer on March 26, 2009, the parties were able to resolve other issues without prejudice for seeking further relief, if necessary.  As to Dr. Kavali, Plaintiffs have agreed to produce patient information forms and assignments of benefits  for four members, or confirm the forms do not exist, by April 2, 2010.  As to Dr. Tonrey, Plaintiffs have agreed to confirm that all responsive documents have been produced by April 2, 2010.  Plaintiffs have also agreed to produce Dr. Tonrey's agreement with Anesthesia Office Solutions, subject to confirmation that such an agreement exists, and other documents relevant to his claim for damages, or represent that Plaintiffs will not rely on unproduced documents for any calculation of purported damages, benefits due or other purposes.  As to the American Medical Association, Plaintiffs stated they would confirm that no responsive documents exist in response to Document Requests Nos. 27 and 53 from Aetna's First Set of Document Requests by April 2, 2010.

Honorable Patty Shwartz
Page 2
March 31, 2010

### A. Heartcare's Billing and Payment Records for Services Provided to Subscriber Plaintiff Cooper on January 26, 2004.

Aetna seeks billing and payment records that Subscriber Plaintiff Cooper has failed to produce for services provided to her by Heartcare Center on January 26, 2004.

Aetna previously sought to serve subpoenas on the Subscriber Plaintiffs' Providers, and Plaintiffs opposed the subpoenas, in part arguing that the information was available to the Subscriber Plaintiffs and they would contact their providers and produce the documents directly. (*See* Exh. A at 17 (Joint Letter Submission to M.J. Shwartz, dated March 23, 2009) ("providers' bills and information about amounts paid to the providers is within Plaintiffs' knowledge or can readily be obtained by Plaintiffs").) Your Honor's ruling stated that the Subscriber Plaintiffs "shall provide the defendants" with "documents embodying communications between the providers, the plaintiffs, and/or insurance company concerning a claim for payment." (Exh. B (Order on Informal Application, dated March 31, 2009).)

The March 31, 2009 order stated that the documents be produced by April 10, 2009, and Aetna agreed to numerous extensions of the initial deadline and repeatedly asked for billing and payment records for Heartcare Center and other Subscriber Plaintiffs' Providers. (*See* Exh. C at 1 (Letter from G. Evans to R. Axelrod, dated November 25, 2009); Exh. D at 1 (Letter from G. Evans to R. Axelrod, dated January 6, 2010); Exh. E at 1-2 (Letter from G. Evans to R. Axelrod, dated February 16, 2010).)

During the status conference on March 8, 2010, Aetna agreed to review its requests for documents related to the Subscriber Plaintiffs' providers. In a March 16, 2010 letter to Plaintiffs, Aetna narrowed its requests significantly. (*See* Exh. F at 1-2 (Letter from G. Evans to R. Axelrod, dated March 16, 2010).) Aetna has further limited its request to those services provided to Michele Cooper on just one date, January 26, 2004, by Heartcare Center.

Plaintiffs stated in their prior submission that "Plaintiff Cooper has fully complied with Aetna's discovery request as to Heartcare Center," noting documents Cooper produced relating to her claims. (*See* Exh. G at 2 (Letter from R. Axelrod to M.J. Shwartz, dated March 24, 2010).) However, the documents produced indicate Aetna paid the claims in full on August 22, 2005, which is consistent with Aetna's claim data. (*See* Exhs. H and I (Cooper AET 00130; Cooper AET 00246-48).) Nevertheless, Cooper has produced balance bills from Heartcare Center dated September 13, 2005 and November 9, 2005, after the date Aetna paid the claim. (*See* Exhs. J and K (Cooper AET 00304-05; Cooper AET 00339).) Consequently, Aetna needs Heartcare's billing and payment records relating to these claims to confirm whether they were in fact paid and who paid them.

Honorable Patty Shwartz
Page 3
March 31, 2010

Therefore, Aetna seeks the following relief: that Plaintiff Cooper obtain from Heartcare and produce to Aetna by April 8, 2010 all documents relating to billing, payment and collection regarding the services provided to Cooper on January 26, 2004 and, if Cooper fails to do so, that Aetna may serve a subpoena on Heartcare for its billing and payment records pertaining to services provided to Cooper on January 26, 2004, as permitted by the Court's March 31, 2009 order.[1]

### B.   Plaintiff Schorr's Electronic Billing and Payment Records

Aetna seeks billing and payment records for claims put at issue by Provider Plaintiff Schorr. In response to Aetna's document requests, Plaintiffs agreed to provide the full document trail for every claim put at issue, and Dr. Schorr testified that "most of the [billing-related] records are kept electronically." (*See* Exh. L at 16 (Letter from G. Evans to R. Axelrod, dated October 30, 2009); and Exh. M at 79 (Schorr Testimony Transcript).)

Plaintiffs refuse to produce documents from Dr. Schorr's computer system reflecting the billing, payment and collection history of each of the claims he is putting at issue in this case. Plaintiffs contend that (1) Dr. Schorr keeps a record of the same information that appears in his practice database in the form of handwritten notes on explanations of benefits ("EOBs"); (2) that they ran the parties' agreed upon search terms against the database and that is sufficient; and (3) that generating the information regarding each patient would "alter" the information and create "documents that don't exist."

Plaintiffs' assertions are meritless. Aetna is entitled to billing, payment and collection information stored on Dr. Schorr's practice management system regarding the claims Dr. Schorr has placed at issue. The handwritten notes on some EOBs that Schorr produced are cryptic, difficult to understand, and do not cover every claim he has put at issue. (S*ee, e.g.,* Exhs. N, O and P(Schorr AET 00307; Schorr AET 00402; Schorr AET 00536).) Even if the handwritten notes did not suffer from these faults, Schorr would be required to produce the billing, payment and collection information stored electronically, as Aetna is entitled to confirm whether the notes on the EOBs in fact contain a complete history.

---

[1]   Plaintiff Cooper's counsel did not participate in the April 26, 2009 meet and confer that Plaintiffs' counsel scheduled to discuss the issues in this submission. The Chair of Plaintiffs' Executive Committee proposed asking Plaintiff Cooper's counsel whether they would be willing to voluntarily seek the documents from Heartcare Center. Aetna considered this proposal, but as Cooper's counsel had agreed to do the same thing almost a year ago and still has not done so, Aetna ultimately declined this proposal.

Honorable Patty Shwartz
Page 4
March 31, 2010

Ever since the 2006 e-discovery amendments to the Federal Rules of Civil Procedure, Rule 34 has made clear that parties are required to produce electronically stored information, including data compilations.  (*See* Fed. R. Civ. P. 34(a)(1)(A).)

Plaintiffs' argument that the information does not reside in Dr. Schorr's system "in the same form" as would be required to display the information, *i.e.*, that it purportedly "does not exist" in the form sought (as Schorr's counsel stated in the recent meet and confer), is meritless.  Rule 34 makes clear that a party is required to produce electronically stored information that can be obtained "either directly or, if necessary, after translation by the responding party into a reasonably usable form."  (*See id.*)  Furthermore, the Advisory Committee notes to the 2006 amendments state that Rule 34 applies to "dynamic databases" and that the amended rule "clarifies that Rule 34 applies to . . . information that is stored in a medium from which it can be retrieved and examined."  Here, the information about the billing, payment and collection history of the claims Schorr has put at issue can be retrieved from his practice management system and must be produced.

Finally, Schorr cannot avoid his obligation to produce the document trail regarding the claims at issue by arguing that he applied the keyword search terms to the database pursuant to the Electronic Discovery Protocol ("EDP").  The EDP itself states:

> The purpose of the Keyword Screening Procedure is to assist the Producing Party in identifying potentially responsive documents *and shall in no way relieve the Producing Party of its obligation to produce responsive documents of which it is or becomes aware . . . .*

(*See* EDP ¶ B.1) (emphasis added).  Here, Schorr cannot hide behind the keyword screening procedure to avoid producing patient billing, payment and collection information that he knows can be retrieved through operation of his practice management system.

Accordingly, Aetna respectfully requests an order requiring Dr. Schorr to produce all electronically stored information regarding billing, payment and collection for the claims put at issue.

### C. Documents that Subscriber Plaintiffs' Counsel Sent To Judge Hochberg, But Plaintiffs Refuse To Produce To Aetna

Aetna seeks the production of documents that one of Subscriber Plaintiffs' counsel submitted to Judge Hochberg, but which they refuse to provide to Aetna—specifically, unredacted hearing transcripts and possibly other materials relating to the United Healthcare settlement that, by Plaintiffs' own admission, the Subscriber Plaintiffs'

Honorable Patty Shwartz
Page 6
March 31, 2010

counsel submitted to Judge Hochberg on at least four separate occasions.  Moreover, on at least three of those occasions, as indicated by the inclusion of the *Cooper* case in the subject lines of the transmittal letters, they did so expressly in this case (Aetna was only able to locate three transmittals to Judge Hochberg, two of which appear to relate to the same materials).  (*See* Exhs. Q, R, S (Wilentz transmittal letters dated April 7 and 9, 2009).)[2]  Following notice of the submission of sealed *United Healthcare* materials to Judge Hochberg under the *Cooper* caption, Aetna sent the Subscriber Plaintiffs' counsel a written request that it receive copies of all materials being submitted to the Court.

The relevant requests for these documents are contained within Aetna's RFP Nos. 6 and 7 to the Subscriber Plaintiffs and Nos. 4 and 5 to the Association Plaintiffs, which seek "[a]ll documents regarding the United Healthcare Settlement, including transcripts of and demonstrative exhibits used in the hearings regarding court approval of the same" and "[a]ll documents related to the Health Net Settlement."  (*See, e.g.,* Exh. T at 4-5 (Plaintiffs' Objections and Responses to Defendants' First Set of Requests for Production of Documents to Plaintiff American Medical Association); Exh. U at 5-6 (Plaintiffs' Objections and Responses to Defendants' Second Set of Document Requests to Plaintiff Michelle Werner, Request Nos. 6-7)).  Plaintiffs responded by asserting boilerplate objections that the Requests are purportedly overbroad, unduly burdensome, vague and ambiguous, and irrelevant.

At the parties' October 22 meet and confer, Aetna stated that it would defer these requests if Plaintiffs would agree to produce the same documents related to the *United Healthcare* settlement that Plaintiffs' counsel provided to Judge Hochberg.  The reason for this demand is simple—Aetna is entitled to documents submitted to the Court in this case.  Following our meet and confer, Plaintiffs confirmed that the Wilentz firm—counsel for the *Cooper* Subscriber Plaintiffs in this case and counsel for the objectors in the *United Healthcare* case—"on four separate occasions" sent materials regarding the *United Healthcare* settlement to Judge Hochberg and "on three occasions these materials appear to include unredacted or sealed documents." (*See* Exh. V at 1 (Letter from R. Axelrod to G. Evans, dated November 10, 2009); *see also*, *e.g.*, Exh. R (Letter from B. Quackenbos to the Honorable Faith S. Hochberg, dated April 9, 2009 (transmitting documents related to the *United Healthcare* settlement).)  Plaintiffs did not inform Aetna until December 2, 2009 that they were refusing to produce these documents to Aetna.  (*See, e.g.,* Exh. W at 4 (Letter from G. Evans to R. Axelrod, dated December 7, 2009).

---

[2]     Aetna's counsel apparently was not copied on all of the transmittal letters to Judge Hochberg with information from the *United Healthcare* proceeding, so Aetna does not know the full scope of what materials Wilentz submitted to Judge Hochberg, other than the itemized transcripts sent with the April 7th and two April 9th letters.

Honorable Patty Shwartz
Page 6
March 31, 2010

  Aetna subsequently sent its portion of a joint submission on this subject to Plaintiffs twice, on December 9, 2009 and January 12, 2010, but Plaintiffs did not provide their portion in response.  (*See* Exhs. X and Y, e-mails from G. Evans to R. Axelrod dated Dec. 9, 2009 and Jan. 10, 2010 and attached portions of joint submissions.)  The present application is the third time that Aetna has submitted its portion of a joint submission on this issue.

  Aetna is now the only party to this litigation without access to these documents, submitted to the Court in this litigation, by counsel for certain Plaintiffs in this litigation. The Plaintiffs' counsel deemed these documents significant enough and relevant enough to this litigation to submit to the Court, yet they refuse to provide them to the party against whom they have offered them.  Aetna is at a significant disadvantage by being the only party without access to these documents.  While we agree that Judge Hochberg is and will be impartial despite receiving the documents, this argument misses the point.  It is a matter of fundamental due process and American jurisprudence that Aetna be provided with all documents that plaintiffs' counsel in this case provided to the judge in this case on issues relating to claims in this case.  It is outrageous that Aetna finds itself in a position of having to make this request and raise the issue with the Court.  Indeed, it is commonplace that if a court learns that a party to the litigation was not given copies of submissions, the judge immediately orders their production.

  The only legal basis Plaintiffs have asserted for refusing the production is that Judge McKenna ordered portions of transcripts sealed from the general public.  Plaintiffs, however, cannot use Judge McKenna's sealing orders both as a sword and a shield.  The sealing of certain transcripts was not accomplished *sua sponte* by Judge McKenna, but appears to have been entered in response to the parties' requests to seal their own information presented during the hearing.  Thus, the sealing order in and of itself could not have been a blanket ruling that the information presented at the hearing could not otherwise be disclosed either voluntarily by the parties or pursuant to a discovery request or court order directed against the parties in any other litigation.  Indeed, it did not stop Wilentz from providing unredacted versions of the sealed transcripts to Judge Hochberg for consideration in the *Franco v. CIGNA*, *Cooper v. Aetna*, and *Malchow v. Oxford* matters, without first seeking relief from Judge McKenna.  Now that the proverbial bell has been rung it cannot be unrung.  To the extent that there are continuing concerns about the confidentiality of the information revealed during the *United Healthcare* hearing and provided to Judge Hochberg in this case, those concerns can be adequately addressed by the Confidentiality Order in this case, which is binding upon Plaintiffs, Aetna, United and Ingenix, and their respective counsel..

  Aetna therefore asks this Court to order Wilentz to produce to Aetna copies of all documents related to the *United Healthcare* settlement that it submitted to Judge

Honorable Patty Shwartz
Page 7
March 31, 2010

Hochberg in this litigation, and it they do so in the same form submitted to the Court— *e.g.*, documents submitted in unredacted form should be produced in unredacted form.

## II. PLAINTIFFS' POSITION

In its unilateral letter to this Court dated March 22, 2010, Aetna identified numerous purported discovery disputes, including those concerning Plaintiffs Werner, Kavali, Tonrey, and Kozma. The problem, as Plaintiffs' counsel pointed out, was that Aetna failed to meet and confer despite representing the exact opposite to the Court.[3] The Court, in receipt of two dueling letters from counsel for Defendants and Plaintiffs – precisely the opposite of what the Court intended by requiring a joint letter protocol for discovery disputes – and in the absence of evidence that Defendants met and conferred with Plaintiffs as required under the Federal Rules, properly rejected both letters.

In doing so, the Court ordered the parties to meet and confer and ordered Plaintiffs to "reassemble the entire joint submission so that it includes their contribution." Order on Informal Application, March 25, 2010, at 2. Significantly, the requirement that Aetna meet and confer with Plaintiffs before proceeding further had its intended consequence. As a result of a simple phone call during which Plaintiffs explained their positions with respect to a number of formerly disputed issues, Aetna noted that it would not, after all, include a large number of them in its amended position statement. That statement, included above, only deals with three issues, rather than the host of purported disputes it had attempted to bring before the Court in its March 22 unilateral letter.

### A. Heartcare's Billing and Payment Records

Defendants' dispute concerning the Subscriber Plaintiffs' provider documents – a significant aspect of their March 22, 2010 unilateral letter – is now limited to one minor issue: they seek billing and payment records from one of Plaintiff Cooper's medical providers for one date -- January 26, 2004. Plaintiffs noted that they had already produced documents relating to Heartcare Center: Cooper AET 00130, 00246-48, 00295, 00299, 00391, 00304-305, 00319-20, 00339, and 00442-44; *see also* AET 01355782-85.

During the meet and confer, Plaintiffs' counsel responded that Plaintiff Cooper had fully complied with Defendants' document requests, but that it would make further inquiry to Ms. Cooper's counsel to ensure that the January 22, 2004 records were produced (including by obtaining them from the provider). Defendants admit that Plaintiffs' counsel made this proposal to resolve the issue. However, Aetna's basis for

---

[3] As Plaintiffs noted in the March 24, 2010 letter to the Court, Aetna's statement that "[t]he parties have met and conferred on each of these topics over a prolonged period of time" is a serious misrepresentation.

Honorable Patty Shwartz
Page 8
March 31, 2010

bringing this manufactured dispute before the Court appears to be simply that it does not believe that Cooper's counsel would respond to this inquiry from the Chair of Plaintiffs' Executive Committee. Aetna's Position, n.2.

This is not an appropriate basis to seek relief from the Court. In fact, it is altogether frivolous. It was Aetna's counsel, not Plaintiffs' counsel, that misrepresented to the Court that the parties had met and conferred when they had not. Significantly, Aetna's counsel determined not to bring a large number of disputes here that it had sought to bring in its March 22, 2010 unilateral letter precisely because Plaintiffs' counsel stated that it would produce certain documents by an agreed date: "As to Dr. Kavali, Plaintiffs have agreed to produce patient information forms and assignment of benefits for four members, or confirm the forms do not exist, by April 2, 2010. As to Dr. Tonrey, Plaintiffs have agreed to confirm that all responsive documents have been produced by April 2, 2010." Aetna's Position, n.1. Defendants' purported dispute over the existence of 2004 documents that Plaintiffs' counsel said it would ask Cooper's counsel to obtain and produce is moot and Defendants' request for relief should be denied.

### B. Plaintiff Schorr's Billing and Payment Records

Plaintiffs' counsel agreed to produce the entire paper trail for each of Plaintiff Schorr's claims, and did so. All hard copies of Dr. Schorr's EOBs received from Aetna were searched for and produced. As a normal part of his office practice, handwritten notations are made on these EOBs concerning billing and payment information. All of these documents were produced to Aetna. In addition, and pursuant to the EDP, Plaintiffs' counsel retained an outside ESI vendor at significant expense and all of Dr. Schorr's indexable electronic files were searched, using the search terms agreed to by the parties, and all resulting documents identified through that search were produced in electronic form.[4]

Apparently dissatisfied with this full production of all responsive documents, Defendants state that "Plaintiffs refuse to produce documents from Dr. Schorr's computer system reflecting the billing, payment and collection history of each of the claims he is putting at issue in this case." Unfortunately, this is yet another misrepresentation made by Aetna to the Court. Plaintiffs did not "refuse to produce documents from Dr. Schorr's computer system" concerning the history of his claims. The precise opposite is, in fact, true. Plaintiffs *agreed* to produce all such documents that exist, *and did so*.

---

[4] This is identical to the procedure used for Plaintiff Antell, and Defendants apparently do not press any dispute concerning Dr. Antell's production of hard copy and electronic documents.

Honorable Patty Shwartz
Page 9
March 31, 2010

Dr. Schorr testified at his deposition that HCFAA/CMS 1500 billing forms are submitted electronically, but that after such submission they are not preserved electronically or in paper. (Schorr Tr. Rough Draft Part I at 24:22-25:1; Part II at 20:20-21:8). He testified that, other than electronic prescribing, his office does not maintain electronic files. (Schorr Tr. Rough Draft Part I at 24:20-21). Billing information is entered into his STI database and his office manager, Sarah Schorr, maintains other billing records in hard copy. (Schorr Tr. Rough Draft Part II at 13:8-14:19, 15:14-23). These billing records were produced.[5] In addition, balance bills to patients are preserved in hard copy, and these were also produced. As described above, EOBs with handwritten notes regarding balance billing and collection efforts were produced. In fact, Aetna introduced several balance bills produced by Dr. Schorr as exhibits in his deposition. Moreover, electronic EOBs identified through use of the agreed-upon search terms were produced.

The basis for Defendants' dispute appears to be that "[t]he handwritten notes on some EOBs that Schorr produced are cryptic, difficult to understand, and do not cover every claim he has put at issue." This is without merit. If Defendants believed the notes were all that difficult to understand, they could have asked Dr. Schorr to read and explain them at his deposition, as he identified that the notes were made by his wife, Sarah Schorr.

In order to resolve this purported discovery dispute, Plaintiffs' counsel at the meet and confer proposed to go back to Dr. Schorr's office and ensure that all responsive documents were produced. Aetna's counsel responded positively and Plaintiffs' counsel prepared to contact Dr. Schorr's office. A few minutes later, Defendants' counsel called to say that Defendants refused the proposal and as their sole rationale explained that they were entitled to test whether Plaintiffs' Counsel's representations were right.

This "explanation" – again, that Defendants' counsel simply declines to believe a statement made by opposing counsel in a meet and confer – is *not* a proper basis for a discovery dispute and represents a waste of this Court's time. Accordingly, Aetna's position -- that Dr. Schorr is "required to produce the billing, payment and collection information stored electronically," so that "Aetna is entitled to confirm whether the notes on the EOBs in fact contain a complete history" – should be rejected.

 The billing and payment history for Dr. Schorr's claims have been produced. All indexible electronic files, as well as .pdf and .tif files, were searched and all responsive documents were produced. Aetna apparently refuses to believe this fact. Plaintiffs' Counsel offered to go back and check once more, and if any document were to be found

---

[5] Of course, the billing records on the HCFAA/CMS 1500 forms were submitted *to Aetna*, which has them. Accordingly, this is yet another artificial dispute.

Honorable Patty Shwartz
Page 10
March 31, 2010

that had not somehow been produced to produce it immediately. Aetna's counsel refused this offer. Plaintiffs' Counsel make this offer again. Moreover, we will agree to query Dr. Schorr's STI database for patient account information, which we expect to produce any unique billing and collection notations entered into that system, and to provide all such resulting electronic information to Aetna.

To the extent that Aetna wishes unfettered access into Dr. Schorr's medical claims database in order to perform their own searches and create reports from the database that had never been created by Dr. Schorr or his office staff, this should also be rejected. In their March 22, 2010 unilateral letter Defendants made this same argument with respect to Dr. Kavali's practice management database. Plaintiffs' Counsel responded that this request is overbroad as it encompasses documents that never existed in the ordinary course of business, but that Aetna could create on their own. Apparently in agreement, Defendants' counsel does not press the issue here. The same rationale applies to Dr. Schorr's database. All responsive reports and documents in existence were produced.

An analogous example would be if Plaintiffs demanded Aetna's entire claims processing database and the proprietary software used so that Plaintiffs could run their own reports from the database and seek to admit as evidence documents that Aetna did not produce because they had not existed until Plaintiffs created them for this litigation. Defendants would legitimately oppose such a demand.

To the extent Aetna demands production of electronic documents that do not contain any of the numerous search terms agreed to by both parties for such production, this should also be rejected. Defendants appear to demand that Dr. Schorr produce all electronic information by manually sifting through his ESI. This is not the protocol set out in the EDP, and for good reason. Aetna produced ESI pursuant to the EDP, including by utilizing the parties' search terms. There is no good cause to jettison this protocol. Notwithstanding Defendants' rhetoric that "Schorr cannot hide behind the keyword screening procedure to avoid producing patient billing, payment and collection information that he knows can be retrieved through operation of his practice management system," there is no evidence put forward by Aetna that any such information *can* be retrieved, much less that Dr. Schorr *knows* that it can. Just the opposite is true. As described above, Dr. Schorr did not testify that the documents he submits to Aetna were preserved electronically. Accordingly, The HCFAA/CMS 1500 forms cannot be retrieved. Once submitted, they are in Aetna's electronic possession. He also testified that his office does not maintain electronic patient files, aside from prescription information irrelevant to this case.

This is an artificial discovery dispute, created in order to force a time-consuming and expensive manual search of electronic documents which the parties agreed should not have to be undertaken. Equity holds that if Dr. Schorr were required to do so Aetna

Honorable Patty Shwartz
Page 11
March 31, 2010

should be required to jettison its keyword search protocol in the EDP and identify all of its electronic documents, including email, and perform a manual search for responsive documents not produced through its use of keywords.

### C. Documents in the *United Healthcare* Action Submitted by the Non-Settling Plaintiffs to Judge Hochberg

Defendants seek confidential documents relating to the Preliminary Approval hearing in *American Med. Ass'n v. United Healthcare Corp.*, Case No. 00 cv 2800 (S.D.N.Y.) (McKenna, J.) (the *"United Healthcare* case"), sent to Judge Hochberg only by the Wilentz firm, which is also one of the Subscriber Plaintiffs' counsel in this action but which filed objections to the preliminary approval order entered by Judge McKenna ion the *United Healthcare* case. On April 9, 2009, Wilentz furnished to Judge Hochberg a courtesy copy of hearing transcripts in the *United Healthcare* case because Judge McKenna's preliminary approval order impacts the related matter against Oxford, a subsidiary of United Healthcare. Because portions of the transcript were sealed by ordeof Judge McKenna, Wilentz was not permitted to furnish Aetna (or any other non-party to the New York action) with a copy of the sealed portion. Instead, Wilentz provided Aetna with a copy of the unsealed portions of the transcripts.

Only counsel for the parties in the *United Healthcare* case have access to the sealed transcripts. Contrary to Aetna's assertion, it has not been singled out or disadvantaged in any way. The same unsealed portions of the transcripts were also sent by Wilentz to CIGNA and Wellpoint. Wilentz did not provide Aetna with the sealed portions of the transcripts for one reason: a court Order prevents it from doing so. If Aetna wishes to gain access to the sealed transcript, its remedy is to petition Judge McKenna for relief.

Aetna concedes that Judge Hochberg "is and will be impartial despite receiving the documents," but fails to understand that this concession determines the outcome of this "dispute." Its further assertions are baseless. Although it states that it is "at a significant disadvantage by being the only party without access to these documents," it fails to describe precisely how, considering that the same Order sealing portions of the transcripts also preclude their use in this litigation. It could only be disadvantaged if Judge Hochberg were not impartial, but Aetna concedes that Judge Hochberg is and will continue to be. "Fundamental due process" is hardly implicated by the existence of an order sealing portions of a transcript.

Aetna's purported rationale for not having moved to unseal portions of the transcript before Judge McKenna is to speculate on what the order means. This rationale is insufficient. Had Aetna truly wished to have access to the sealed portions of the transcript it inappropriately requests this Court to provide it, it could have at any time over the past year made the necessary application before the Southern District of New

Honorable Patty Shwartz
Page 12
March 31, 2010

York. It failed to do so. Its demand now, that this Court order the Wilentz firm to produce sealed material in violation of Judge McKenna's order, should be rejected.

  In sum, Defendants' requests for relief are infirm and should be denied.

  The parties very much appreciate Your Honor's courtesy and attention to this matter.

            Respectfully Submitted,

            */s/ Liza M. Walsh*

            _____

            Liza M. Walsh
            CONNELL FOLEY LLP
            85 Livingston Avenue
            Roseland, NJ 07068


            */s/ Robert J. Axelrod*

            _____

            D. Brian Hufford
            Robert J. Axelrod
            POMERANTZ HAUDEK GROSSMAN & GROSS LLP
            100 Park Avenue, 26th Floor
            New York, New York 10017

            *Chair of the Aetna Plaintiffs' Executive Committee*

            James E. Cecchi
            Lindsay H. Taylor
            CARELLA BYRNE BAIN GILFILLAN CECCHI STEWART & OLSTEIN, PC
            5 Becker Farm Road
            Roseland, NJ 07068
            973-994- 1700

Joe R. Whatley
Edith M. Kallas
W. Tucker Brown
Laurence J. Hasson
WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, NY 10036
212-447-7070


Barry M. Epstein
Kevin Peter Roddy
Lynne Kizis
Barbara Gail Quackenbos
WILENTZ, GOLDMAN & SPITZER P.A.
90 Woodbridge Center Drive
PO Box 10
Woodbridge, NJ 07095
732-636-8000

Kevin M. Berry
WILENTZ, GOLDMAN & SPITZER P.A.
110 William Street, 26th Floor
New York, NY 10038
212-267-3091

Stephen A. Weiss
Christopher A. Seeger
Jonathan Shub
SEEGER WEISS LLP
One William Street
New York, New York 10004
212-584-0700

Joseph P. Guglielmo
SCOTT + SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
212-223-6444

David R. Scott
Amanda F. Lawrence
SCOTT + SCOTT LLP
PO Box 192
108 Norwich Ave.

Colchester, CT 06415
860-537-5537

Christopher M. Burke
SCOTT + SCOTT LLP-CA
600 Street, Suite 1500
San Diego, CA 92101
619-233-4565

Andrew S. Friedman
Elaine A. Ryan
Kathryn A. Jann
BONNETT, FAIRBOURN, .FRIEDMAN &
BALINT, P.C.
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
602-274-1100

*Members of the Aetna Plaintiffs' Executive Committee*