UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE: AETNA UCR LITIGATION,

This Document Relates To: ALL CASES

*FILED ELECTRONICALLY*

MDL NO. 2020

MASTER FILE NO. 2:07-CV-3541 (FSH)

## DECLARATION OF WILLIAM R. JONES

I, William R. Jones, declare as follows:

1. I am employed by Aetna and work at its offices in Hartford Connecticut. I currently work as Aetna's head actuary for fully-insured plans in the Northeast Region. The Northeast Region includes Delaware, Pennsylvania, New York, New Jersey, Connecticut, New Hampshire, Massachusetts, Vermont, Rhode Island, and Maine. I have worked as an actuary at Aetna for 28 years.

2. I am familiar with the process by which Aetna calculates its rates for fully-insured health benefits plans—*i.e.*, the premiums that customers (employers, groups, and individuals) pay to enroll in Aetna's fully-insured plans. I supervise twenty-one employees who develop and file Aetna's rating methodologies every year for thousands of plans throughout the Northeast Region. I am also familiar with the process by which state regulators require Aetna to file its rating methodologies for approval.

3. Aetna's rate calculations for fully-insured plans can vary based on a number of factors, including the type of product or plan (*i.e.*, PPO, HMO, or any number of hybrid products sold by Aetna), the size of the plan (number of employees), the terms of the plan (*e.g.*,

deductibles, coinsurance, benefit maximums, and other plan terms), the particular market and cost of medical care in that market, inflation and other factors affecting medical cost trends, customer negotiations, and state regulations and taxes.

4. All of Aetna's rates are developed at the plan level. Even for plans that have a similar number of members in the same market and involve a similar benefit design, rates from plan to plan may vary depending on the demographics of the plan's members and other plan-specific factors.

5. Different states regulate Aetna's rating methodologies in different ways. Some states require Aetna to file its rating methodologies for approval, some states require a filing but do not provide a specific approval, and some states do not require a filing for certain product segments. Some states, such as New Jersey, also require Aetna to maintain a minimum "loss ratio" for small group plans—*i.e.*, to ensure that the ratio of medical costs incurred (claims paid) is no less than a certain percentage of premium revenue. In these states, Aetna's profit margins for these plans are indirectly regulated by the state, because of the way profit margins factor into the loss ratio and rate calculation.

6. While rate calculations vary across Aetna's plans, in general, the starting point for any rate calculation is actual claims experience—*i.e.*, payments by Aetna for covered services received by Aetna plan members during a specific period of time. In some instances, Aetna develops rates based on the specific plan's actual claims experience, and other instances Aetna develops rates based on state or market level experience. In the case of an employer-sponsored plan with a large number of employees, for example, Aetna might develop the employer's rates based on the employer's own claims experience. For other plans, typically plans for employers

with a small number of employees, Aetna's plans are priced based on Aetna's claims experience in a particular market or segment.

7. Because the starting point for any rating calculation is actual claims experience, actual or predicted increases in medical costs, including any increases in out-of-network claims payments, typically lead to increases in rates for customers. Likewise, any actual or predicted decreases in medical costs, including any decreases in out-of-network claims payments, can lead to lower rates for customers, because Aetna typically passes medical cost savings through to customers.

8. An example of this is attached as Exhibit A. This example is based on Aetna's rate calculation, effective May 1, 2010, for an actual Aetna customer, an employer with several hundred plan members in Northern New Jersey who are enrolled in a fully-insured Open Access Managed Choice (PPO-based) plan. As the attachment reflects, if Aetna's out-of-network payments in 2009 had been higher by 5% across the board, Aetna would have increased the customer's premiums per-member per-month by .58%.

9. For individual employees enrolled in the plan, this would mean an increase in annual premiums for 2010 of $46.30. For employees who enrolled their families in the plan, this would mean an annual increase in premiums for 2010 of $121.31. Across the entire plan, premiums for this employer would increase $21,890. This increase is specific to the hypothetical increase in out-of-network payments by 5% and would be on top of other increases in premiums due to inflation and other factors.

10. The example also shows that a decrease in out-of-network payments does not necessarily lead to an increase in Aetna's profits under this plan, and it may actually decrease Aetna's profits because of the way in which Aetna sets its rates and passes medical cost savings

3

through to customers. As shown by Exhibit B, if Aetna's out-of-network claims payments had been 5% lower in 2009 for this plan and if all other aspects of the calculation had remained the same, the customer's premiums per-member per month would be .58% lower. Specifically, Aetna's annual premium revenues for the plan would have been $21,890 lower and Aetna's annual profits would have been $1,313 lower for the plan in 2010.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on June 30, 2010

William R. Jones

# EXHIBIT A

Exhibit A

**ABC group**
**OAMC product**
**Effective 5/1/2010**

|  | 2009 OA MC claim split | | if increase OON claims by | |
|---|---|---|---|---|
|  | 0.875 | | | 5% |
|  | Claims INN | Claims OON | Claims INN | Claims OON |
|  | 389.01 | 55.57 | 389.01 | 58.35 |
| Experience period | Jan-09 to Dec-09 | | Jan-09 to Dec-09 | |
| Experience PMPM | 444.59 | | 447.36 | |
| Credibility | 73.39% | | 73.39% | |
| Baseline Claim PMPM | 466.49 | | 469.23 | |
| Blended PMPM | 450.41 | | 453.18 | |
| Fixed Retention | 25.80 | | 25.80 | |
| Profit / Negotiation | 6.00% | | 6.00% | |
| Taxes & Assessments | 2.10% | | 2.10% | |
| Commission | 2.75% | | 2.75% | |
| Prem PMPM | 534.17 | | 537.28 | |
| Increase in Prem | | | 0.58% | |

| NJ - North - POS Open Access | | | | | |
|---|---|---|---|---|---|
| Coverage Categories | Assumed Employees | Current Rates | Revised Rates | rate impact $ | annual impact |
| Emp Only | 106 | $663.56 | $667.42 | $3.86 | $46.30 |
| Emp + Family | 140 | $1,738.56 | $1,748.67 | $10.11 | $121.31 |
| TOTAL | 246 | $313,736.54 | $315,560.74 | $1,824.20 | $21,890 |

# EXHIBIT B

Exhibit B

**ABC group**
**OAMC product**
**Effective 5/1/2010**

|  | 2009 OA MC claim split | | if increase OON claims by | |
|---|---|---|---|---|
|  | **0.875** | | | **-5%** |
|  | Claims INN | Claims OON | Claims INN | Claims OON |
|  | 389.01 | 55.57 | 389.01 | 52.79 |
| Experience period | Jan-09 to Dec-09 | | Jan-09 to Dec-09 | |
| Experience PMPM | 444.59 | | 441.81 | |
| Credibility | 73.39% | | 73.39% | |
| Baseline Claim PMPM | 466.49 | | 463.75 | |
| Blended PMPM | 450.41 | | 447.65 | |
| Fixed Retention | 25.80 | | 25.80 | |
| Profit / Negotiation | 6.00% | | 6.00% | |
| Taxes & Assessments | 2.10% | | 2.10% | |
| Commission | 2.75% | | 2.75% | |
| Prem PMPM | 534.17 | | 531.07 | |
| Increase in Prem | | | **-0.58%** | |

| NJ - North - POS Open Access | | | | | |
|---|---|---|---|---|---|
| Coverage Categories | Assumed Employees | Current Rates | Revised Rates | rate impact $ | annual impact |
| Emp Only | 106 | $663.56 | $659.71 | ($3.86) | ($46.30) |
| Emp + Family | 140 | $1,738.56 | $1,728.45 | ($10.11) | ($121.31) |
| TOTAL | 246 | $313,736.54 | $311,912.34 | ($1,824.20) | ($21,890) |

Profit ($1,313)