# Exhibit A

SETTLEMENT AGREEMENT

dated as of

December 6, 2012

by and among

AETNA INC.

and

THE SETTLING PLAINTIFFS, BY AND THROUGH

CLASS COUNSEL

# TABLE OF CONTENTS

PAGE

1. DEFINITIONS. ................................................................................................. 3

2. THE ACTIONS AND CLASS COVERED BY THIS AGREEMENT. ................................ 13

3. COMMITMENT TO SUPPORT AND COMMUNICATIONS WITH SETTLEMENT CLASS MEMBERS. ....................................................................................... 13

4. PRELIMINARY APPROVAL OF SETTLEMENT. ............................................... 14

5. NOTICE TO SETTLEMENT CLASS MEMBERS; NOTICE TO PARTIES PURSUANT TO THIS AGREEMENT. ........................................................................... 16

   5.1 Notice to Settlement Class Members ........................................... 16

   5.2 Notice to Parties Pursuant to This Agreement ............................... 17

6. EFFECT OF DENIAL OF MOTION FOR PRELIMINARY APPROVAL. ..................... 20

7. PROCEDURE FOR FINAL APPROVAL, LIMITED WAIVER. ............................... 20

   7.1 Objection Rights and Timing. ................................................... 20

   7.2 Opt-Out Rights and Timing. ...................................................... 21

   7.3 Company's Right To Terminate Agreement Based on Opt-Outs .............. 22

   7.4 Setting the Settlement Hearing Date and Settlement Hearing Proceedings. ......... 22

8. OVERVIEW OF THE TOTAL SETTLEMENT AMOUNT. .................................... 23

9. GENERAL SETTLEMENT FUND. ................................................................. 24

   9.1 Nature and Establishment of General Settlement Fund ..................... 24

   9.2 Attorneys' Fees, Costs of Notice and Administration of Settlement Shall Be Paid from the General Settlement Fund ........................................... 24

   9.3 Settlement Class Member Eligibility for Payment from General Settlement Fund ..... 25

   9.4 Timing of Submissions for Payments from General Settlement Fund ........ 25

9.5 Amounts to be Paid to Settlement Class Members from the General Settlement Fund ................................................................................ 25

9.6 General Settlement Fund As Exclusive Remedy ......................................... 27

9.7 Treatment of any Remainder in General Settlement Fund .......................... 27

10. PROVE-UP FUNDS. ............................................................................. 27

10.1 Subscriber Prove-Up Fund ...................................................... 28

10.2 Provider Prove-Up Fund ......................................................... 33

11. ATTORNEYS' FEES AND COSTS ...................................................... 39

12. THE SETTLEMENT ADMINISTRATOR. ......................................... 39

12.1 Selection and Responsibilities of Settlement Administrator ..................... 39

12.2 No Liability ......................................................................... 40

12.3 No Claims ........................................................................... 40

12.4 Reporting Requirements Regarding Opt Outs................................... 40

12.5 Reporting Requirements Regarding Claim Submissions .................... 41

13. RELEASE; COVENANT NOT TO SUE. ............................................. 43

13.1 Release ............................................................................... 43

13.2 Covenant Not To Sue Or Continue Suit ........................................ 46

13.3 Irreparable Harm ................................................................. 46

14. APPLICATION TO FULLY-INSURED AND SELF-FUNDED PLANS.......... 46

15. STAY OF DISCOVERY, TERMINATION, AND EFFECTIVE DATE OF AGREEMENT. ................................................................................ 46

16. STAYS AND DISMISSALS. ............................................................... 48

17. FORCE MAJEURE. ........................................................................ 49

18. NOT EVIDENCE; NO ADMISSION OF LIABILITY. ........................... 49

19.   ENTIRE AGREEMENT. ..................................................................................... 50

20.   NO PRESUMPTION AGAINST DRAFTER ..................................................... 50

21.   CONTINUING JURISDICTION AND EXCLUSIVE VENUE. ......................... 50

    21.1  Continuing Jurisdiction. ......................................................................... 50

    21.2  Parties Shall Not Contest Jurisdiction. ................................................. 51

22.   COUNTERPARTS ............................................................................................. 51

23.   DIVISIONS AND HEADINGS. ......................................................................... 51

24.   WAIVER. ............................................................................................................ 52

25.   NO THIRD-PARTY BENEFICIARIES. ............................................................ 52

26.   GOVERNING LAW. ........................................................................................... 52

27.   ACKNOWLEDGEMENT .................................................................................... 52

28.   AUTHORITY ...................................................................................................... 52

List of Exhibits:


Exhibit A        Subscriber Claim Form
Exhibit B        Provider Claim Form
Exhibit C        List of Class Counsel
Exhibit D        Form of Preliminary Approval Order
Exhibit E        Form of Final Order and Judgment
Exhibit F        Form of Mailed Notice
Exhibit G        Form of Published Notice

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is made and entered into as of the date set forth on the signature pages hereto by and among the Company, and the Settling Plaintiffs (on behalf of themselves and each of the Settlement Class Members who have not validly and timely requested to Opt-Out of this Agreement), by and through their counsel of record in *In re Aetna UCR Litigation*, MDL Docket No. 2020 (the Settling Plaintiffs, the Settlement Class Members who have not validly and timely requested to Opt-Out of this Agreement, and the Company are herein collectively referred to as the "**Parties**").  The Parties intend this Agreement to resolve, discharge and settle the Released Claims, fully, finally and forever according to the terms and conditions set forth below.

## WITNESSETH:

WHEREAS, on July 30, 2007, the *Cooper v. Aetna Health Inc. PA* action, Civil Action No. 07-3541, was initiated in the United States District Court for the District of New Jersey, and asserts claims on behalf of various classes;

WHEREAS, on April 8, 2009, the Judicial Panel on Multidistrict Litigation issued an order consolidating the *Cooper* action with *Weintraub v. Ingenix, Inc.*, Case No. 2:09-cv-2027, which had been filed in the District of Connecticut, under MDL No. 2020 in the District of New Jersey;

WHEREAS, on June 15, 2009, *Seney v. Aetna Health Inc. PA*, Civil Action No. 09-468, *Am. Med. Ass'n v. Aetna Health Inc. PA*, Civil Action No. 09-579; *Tisko v. Aetna Health Inc. PA*, Case No. 09-1577; *Abraham I. Kozma, P.A. v. Aetna Health Inc. PA*, Civil Action No. 09-1972, were consolidated as part of  MDL No. 2020;

WHEREAS, various cases were added to MDL 2020 as tag-along actions, including *North Peninsula Surgical Center, L.P. v. Aetna Life Insurance Co.*, Civil Action No. 07-3972;

*American Surgical Assistants, Inc. v. Aetna Health Inc. PA*, Civil Action No. 09-4042; *Spinal Imaging, Inc. v. Aetna Health Management, LLC*, MA/1:09-cv-11873; *Silver v. Aetna Health Inc. PA,* Civil Action No. 10-143; *Ohai v. Aetna Life Insurance Co.*, Civil Action No. 09-2791; *Goel v. Aetna Life Insurance Co.*, Civil Action No. 11-2092; and *Orthopedic Specialists of S. Cal. v. Aetna Life Insurance Co.*, Civil Action No. 11-2470;

WHEREAS, plaintiffs in MDL 2020 filed a Second Joint Consolidated Amended Class Action Complaint ("Complaint"), which the Company moved to dismiss;

WHEREAS, plaintiffs filed motions to certify both subscriber and provider classes and the Company filed oppositions to the motions to certify;

WHEREAS, the plaintiffs in MDL 2020 challenge, among other things, the way the Company determines reimbursement amounts for Covered Services or Supplies provided by out-of-network providers, out-of-network provider groups, and out-of-network facilities. Plaintiffs in MDL 2020 claim, among other things, that the Company provided inadequate reimbursement to subscribers or their providers for out-of-network Covered Services or Supplies through the use of the Ingenix Databases, as well as other reimbursement methodologies and out-of-network reimbursement policies;

WHEREAS, the Company denies the material factual allegations and legal claims asserted in MDL 2020 and has numerous defenses to the claims that the Company believes are meritorious. Nonetheless, the Company has a desire to further improve its relationships with members of the Settlement Class and concludes that further litigation would be protracted and expensive, and that it is desirable that the Released Claims, including all claims asserted by the Settling Plaintiffs in the Complaint, be fully and finally settled in the matter and upon the terms and conditions set forth in this Agreement;

WHEREAS, Settling Plaintiffs and Class Counsel believe that the claims asserted in the Complaint have merit, but Settling Plaintiffs and Class Counsel recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute these claims through trial and appeals;

WHEREAS, Settling Plaintiffs and Class Counsel also have taken into account the uncertain outcome and the risk of any class action, especially in complex actions such as this one, as well as the difficulties and delays inherent in such actions, and Settling Plaintiffs and Class Counsel believe that the settlement set forth in this Agreement confers substantial benefits upon the Settlement Class Members;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Settling Plaintiffs (for themselves and all Settlement Class Members who have not validly and timely requested to Opt-Out of this Agreement), by and through Class Counsel, and the Company, that, subject to the approval of the Court, the Actions and the Released Claims shall be finally and fully resolved, compromised, discharged and settled under the following terms and conditions:

## 1.    <u>Definitions</u>

As used in this Agreement, the following terms have the meanings specified below:

1.1    "**Actions"** means *In re Aetna UCR Litigation*, MDL No. 2020, *Cooper v. Aetna Health Inc., et al.*, Master File No. 07-3541, including all individual tag-along actions and other cases that were consolidated for pre-trial purposes as part of this multi-district proceeding.

1.2    "**Affiliate**" means with respect to any Person, any other Person controlling, controlled by or under common control with such first Person. The term "control" (including without limitation, with correlative meaning, the terms "controlled by" "under common control with"), as used with respect to any Person, means the possession, directly or indirectly, of the

3

power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or otherwise.

1.3     "**Agreement**" shall have the meaning assigned to that term in the preamble of this Agreement.

1.4     "**Allowed Amount**" means the amount determined by the Company pursuant to the Plan Member's health plan to be eligible for reimbursement for a Plan Member's Covered Services or Supplies billed by a provider, before the application of co-insurance, deductibles, and coordination of benefits for coverage under another Plan.

1.5     "**Assignment**" means a patient's election to allow his or her Plan to remit payment directly to a provider.

1.6     "**Attorneys' Fees**" means the funds for attorneys' fees and expenses that may be awarded by the Court to Settlement Class Counsel.

1.7     "**Balance Bill**" means a written bill, invoice, or other demand for payment from a provider or provider's representative seeking payment from a Plan Member for the difference between a provider's billed charge and the Company's Allowed Amount for a Covered Service or Supply.  A Balance Bill does not include a bill for any other amounts, such as Denied Claims, co-insurance, deductibles, and coordination of benefits.  Under this Agreement, a Balance Bill includes any written bill for this amount regardless of when or how it is presented to the Plan Member, including a bill for the entire billed charge that the provider presented to the Plan Member in person at the time of the Covered Service or Supply, as well as a bill that the provider sent to the Plan Member by mail or other means after reimbursement of the Allowed Amount for the Covered Service or Supply by Company.

1.8     "**Business Day**" means any day on which commercial banks are open for business in New York City.

1.9     "**Claim Submission Deadline**" shall have the meaning assigned to that term in Section 9.4 of this Agreement.

1.10    "**Class Counsel**" means those Persons set forth on Exhibit C attached hereto. "Settlement Class Counsel" means James E. Cecchi.

1.11    "**Company**" means Aetna Inc. and each of its current and former Subsidiaries, Affiliates, predecessors, and successors, including but not limited to all of the Aetna entities named as defendants in the Actions.  "Company" does not include Coventry Health Care, Inc.

1.12    "**Complaint**" means the Second Joint Consolidated Amended Class Action Complaint in MDL 2020.

1.13    "**Court**" means the United States District Court for the District of New Jersey.

1.14    "**Covered Services or Supplies**" means those health care services and supplies for which a Plan Member is entitled to receive coverage under the terms and conditions of his or her Plan.

1.15    "**Day**" means a calendar day, unless otherwise noted herein.  When a period is stated in days, the period is calculated by excluding the day of the event that triggers the period and counting every subsequent day.  The last day of the period is included, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

1.16    "**Denied Claim**" means any claim line for which the Allowed Amount equaled $0.  Without limitation of the foregoing, and by way of example only, if a provider's request for reimbursement from the Company reflects several CPT codes or services that the Company

5

"bundles" in connection with reimbursement – *e.g.*, a particular CPT code or service is not reimbursed separately because it is deemed by the Company to be incidental to or included in another service that the Company reimburses – the CPT code or service that is not reimbursed separately by the Company is considered a Denied Claim.

      1.17    "**Effective Date**" shall have the meaning assigned to that term in Section 15.3 of this Agreement.

      1.18    "**Execution Date**" means the later of (i) the date on which the signature of the Company has been delivered to Settlement Class Counsel; and (ii) the date on which the signatures of Class Counsel have been delivered to the Company.

      1.19    "**Final Order and Judgment**" means the order and form of judgment approving this Agreement and dismissing the Company with prejudice, in each case included in the Actions in the form attached hereto as Exhibit E.

      1.20    "**Ingenix Databases**" means the Prevailing Healthcare Charges System Database ("PHCS") and/or the MDR Payment System, including all releases and modules of these databases.

      1.21    "**Mailed Notice**" means the form of notice attached hereto as Exhibit F.

      1.22    "**Notice Date**" shall have the meaning assigned to that term in Section 5.1 of this Agreement.

      1.23    "**Opt-Out**" shall have the meaning assigned to that term in Section 7.2 of this Agreement.

      1.24    "**Opt-Out Deadline**" shall have the meaning assigned to that term in Section 7.2 of this Agreement.

1.25    "**Out-of-Network Facility**" means any facility which has provided Covered Services or Supplies to Plan Members that did not have a valid written contract with the Company to provide Covered Services or Supplies to Plan Members when the facility provided those Covered Services or Supplies.  Without limiting the foregoing, "facility" includes any and all hospitals, ambulatory surgery centers, and skilled nursing facilities, subject to the limitation set forth in Section 1.27 below.

1.26    "**Out-Of-Network Health Care Provider**" (or "**Non-Participating Health Care Provider**") means any health care provider who did not have a valid written contract with the Company to provide Covered Services or Supplies to Plan Members when the  health care provider provided Covered Services or Supplies to a Plan Member.  For each Provider Class Member and Provider Class Representative, the Released Claims only include claims that arose while each of those Provider Class Members and Provider Class Representatives was an "Out-Of-Network Health Care Provider" (or "Non-Participating Health Care Provider") or an "Out-Of-Network Health Care Provider Group" (or "Non-Participating Health Care Provider Group").  Without limiting the foregoing, "provider" includes any and all of the following: physician, podiatrist, chiropractor, orthodontist, psychologist, psychiatrist, physical or occupational therapist, acupuncturist, laboratory technician, optometrist, social worker, physician assistant, nurse, midwife, nurse practitioner, nurse anesthetist, nutritionist, orthotist, prosthetist, audiologist, dentist, dental hygienist, oral surgeon, counselor, therapist, durable medical equipment provider, laboratory, pharmacist, pharmacy, respiratory therapist, surgical assistant, speech or hearing specialist, or speech pathologist.

1.27    "**Out-Of-Network Health Care Provider Group**" (or "**Non-Participating Health Care Provider Group**") means a corporation, partnership, or other distinct legal entity

that did not have a valid written contract with the Company to provide Covered Services or Supplies to Plan Members when it provided or billed for Covered Services or Supplies to a Plan Member. An Out-Of-Network Facility shall also be considered an Out-Of-Network Health Care Provider Group under this Agreement, but only to the extent that: (a) the bills were submitted by the Out-Of-Network Facility for Covered Services or Supplies provided by an Out-Of-Network Health Care Provider; or (b) (i) the Allowed Amount for the Out-of-Network Facility's fees or charges for specific Covered Services or Supplies was based on the Ingenix Databases and (ii) those Covered Services or Supplies were provided to a Plan Member whose Plan was sitused or based in the State of New Jersey.

1.28   "**Partially Allowed Claim**" means any claim line for a Covered Service or Supply provided to a Plan Member that is not a Denied Claim and for which the Allowed Amount is less than the amount billed by the provider. Partially Allowed Claims must relate to services provided to a Plan Member by an Out-Of-Network Provider or an Out-Of-Network Provider Group.

1.29   "**Parties**" shall have the meaning assigned to that term in the preamble of this Agreement.

1.30   "**Person**" and "**Persons**" means all persons and entities (including without limitation natural persons, firms, corporations, limited liability companies, joint ventures, joint stock companies, unincorporated organizations, agencies, bodies, governments, political subdivisions, governmental agencies and authorities, associations, partnerships, limited liability partnerships, trusts, and their predecessors, successors, administrators, executors, heirs and assigns).

1.31    "**Plan**" means a Plan Member's health care benefits as set forth in the Plan Member's summary plan description, certificate of coverage or other applicable coverage document.

1.32    "**Plan Member**" means an individual enrolled in or covered by a Plan insured or administered by the Company.

1.33    "**Preliminary Approval Date**" means the date the Preliminary Approval Order is entered by the Court.

1.34    "**Preliminary Approval Hearing**" shall have the meaning assigned to that term in Section 4 of this Agreement.

1.35    "**Preliminary Approval Order**" means the preliminary approval order, in substantially the form attached hereto as Exhibit D.

1.36    "**Proof of Claim Form**" means a document in substantially the form attached hereto as Exhibits A and B.

1.37    "**Provider Class Members**" means Persons who, at any time from June 3, 2003 through the Preliminary Approval Date, (i) were Out-of-Network Health Care Providers or Out-of-Network Health Care Provider Groups; (ii) provided Covered Services or Supplies to Plan Members; and (iii) whose resulting claims for reimbursement included Partially Allowed Claims.

1.38    "**Provider Prove-Up Claim**" shall have the meaning assigned to that term in Section 10.2 of this Agreement.

1.39    "**Provider Prove-Up Fund**" shall have the meaning assigned to that term in Section 10.2 of this Agreement.

1.40    "**Published Notice**" means the form of notice in substantially the form attached hereto as Exhibit G.

9

1.41    "**Released Persons**" means: (a) the Company and each of its present and former parents, present and former Subsidiaries, present and former divisions and Affiliates and each of their respective current or former officers, directors, employees, and attorneys (and the predecessors, heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing); (b) any third-party administrators or other third parties contracted to provide services or products to the Company in connection with the processing of Released Claims or the administration of any Plan under which reimbursement for Released Claims was sought; and (c) any third-party health benefit plans or their plan sponsors (including, without limitation, any self-funded plans and any employers sponsoring them), whether sponsored by employers or other organizations, for which benefits were insured or administered by the Company.  Notwithstanding the above, "Released Persons" does not include Ingenix or United Healthcare Company.

1.42    "**Released Claims**" means any and all manner of claims, actions, causes of action, arbitrations, damages, debts, demands, duties, judgments, liabilities, losses, obligations, penalties, liquidated damages, proceedings, agreements, promises, controversies, costs, expenses, attorneys' fees, and suits of every nature and description whatsoever, whether based on federal, state, provincial, local, foreign, statutory, or common law or any other law, rule, or regulation, in the United States, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, known or unknown, foreseen or unforeseen, whether class or individual in nature, that each Settling Plaintiff and each Settlement Class Member, or any of them, have now or ever had against any Released Person that have been or could have been asserted by Settling Plaintiffs or Settlement Class Members, directly or derivatively, in the Actions, or any other forum, through and including the date of the entry of the Preliminary

10

Approval Order, and based on, or in any way relating to the conduct, events, facts, transactions, occurrences, acts, representations, omissions, or other matters set forth, alleged, embraced, or otherwise referred to or alleged in the Complaint up to and including the date of the entry of the Preliminary Approval Order.  Released Claims include, without limitation of the foregoing, any claims by Releasors challenging use of the Ingenix Databases, a percentage of Medicare, Fair Health, Inc., Average Wholesale Price ("AWP"), adjustments for assistant surgeon charges, adjustments for co-surgeon charges, adjustments based on multiple surgical procedures, and behavioral health tiering policies.  For each Provider Class Member and Provider Representative Plaintiff, the Released Claims only include claims related to services provided by those Provider Class Members and Provider Representative Plaintiffs when they were an "Out-Of-Network Health Care Provider" (or "Non-Participating Health Care Provider") or an "Out-Of-Network Health Care Provider Group" (or "Non-Participating Health Care Provider Group"), and does not include any claims arising under or relating to the terms of any contract an Out-of-Network Health Care Provider or Out-of-Network Health Care Provider Group had with a rental network.

1.43    "**Releasors**" shall have the meaning assigned to that term in Section 13.1 of this Agreement.

1.44    "**Representative Plaintiffs**" means: John Seney, Jeffrey M. Weintraub, Alan John Silver, Dr. Alan B. Schorr, M.D., Dr. Frank G. Tonrey, M.D., Dr. Carmen M. Kavali, M.D., and Brian Mullins, M.S., P.T.

1.45    "**Settlement Administrator**" shall have the meaning assigned to that term in Section 12.1 of this Agreement.

1.46    "**Settlement Classes**" means, collectively, the Subscriber Class Members and the Provider Class Members, and "**Settlement Class Members**" includes Subscriber Class Members and Provider Class Members.

1.47    "**Settlement Hearing**" means the hearing at which the Court shall consider and determine whether to enter the Final Order and Judgment and make such other orders as are contemplated by this Agreement.

1.48    "**Settlement Hearing Date**" shall have the meaning assigned to that term in Section 7.4 of this Agreement.

1.49    "**Settling Plaintiffs**" means the Representative Plaintiffs.

1.50    "**Subscriber Class Members**" means Persons who, at any time from March 1, 2001 through the Preliminary Approval Date, (i) were Plan Members; (ii) received a Covered Service or Supply from an Out-of-Network Health Care Provider or Out-of-Network Health Care Provider Group; and (iii) whose resulting claims for reimbursement included Partially Allowed Claims.

1.51    "**Subscriber Prove-Up Claims**" shall have the meaning assigned to that term in Section 10.1 of this Agreement.

1.52    "**Subscriber Prove-Up Fund**" shall have the meaning assigned to that term in Section 10.1 of this Agreement.

1.53    "**Subsidiary**" means any entity of which securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other persons performing similar functions are, as of the Effective Date, directly or indirectly owned by Aetna Inc.

1.54   **"Total Settlement Amount"** means $120 million, representing the maximum recovery of the Settlement Class Members from the General Settlement Fund, the Subscriber Prove-Up Fund, and the Provider Prove-Up Fund.

## 2.   The Actions and Class Covered by This Agreement

This Agreement sets forth the terms of a settlement agreement with respect to the Actions between the Company, Settling Plaintiffs, and all Settlement Class Members who have not validly and timely requested to Opt-Out of this Agreement.

### 2.1   Excluded Individuals and Entities

Excluded from the Settlement Class are: (1) The Company and its affiliates, assignees, and successors-in-interest, and their officers, directors, and employees; (2) Any Judge who presides or has presided over the Actions, together with his/her immediate family members and any other individual residing in the Judge's household; (3) Individuals and entities that opt-out of the Settlement in accordance with the procedures approved by the Court; and (4) the United States and/or State governments and their agencies and departments.

## 3.   Commitment to Support and Communications with Settlement Class Members

The Parties agree that it is in their best interests to: (i) consummate this Agreement and all the terms and conditions contained herein; (ii) cooperate with each other; (iii) take all actions reasonably necessary to obtain Court approval of this Agreement and entry of the orders of the Court that are required to implement its provisions; and (iv) support this Agreement in accordance with, and subject to, the provisions of this Agreement.

Class Counsel and Settling Plaintiffs will provide truthful information to class members but will take no steps to discourage Settlement Class Members from participating in this Agreement or encourage them to Opt-Out pursuant to Section 7.2 of this Agreement.

Settling Plaintiffs, Class Counsel and the Company agree that the Company may communicate with Settlement Class Members regarding the provisions of this Agreement, so long as such communications are not inconsistent with the Mailed Notice or other agreed upon communications concerning the Agreement.  The Parties agree that from the Notice Date until the Effective Date, the Company shall make reasonable efforts to refer all Settlement Class Member inquiries concerning the Settlement to the Settlement Administrator identified in the Mailed Notice and Published Notice.  Nothing contained herein, however, shall prevent the Company from communicating with Settlement Class Members in the ordinary course of the Company's business.

## 4.      **Preliminary Approval of Settlement**

The hearing in which the Court considers and determines whether to enter the Preliminary Approval Order and approve the Mailed Notice, the Published Notice and the Proof of Claim Form shall be referred to as the "**Preliminary Approval Hearing**."  The Parties agree to request the Court to set the date for the Preliminary Approval Hearing at its earliest convenience.

The Parties shall jointly submit the documents attached hereto as Exhibits A-G to the Court, which, among other things, ask the Court to:

(a)      Conditionally certify the Settlement Classes (solely for the purpose of certifying the Settlement Classes for settlement, Company agrees not to present or pursue any of their individualized defenses to the claims in any of the complaints Settling Plaintiffs filed in the Actions);

(b)      Find that Settling Plaintiffs who are Representative Plaintiffs as set forth in the Preliminary Approval Order fairly and adequately represent the interests of the

Settlement Class and have claims typical of Settlement Class Members and provisionally designate them as representatives for the Settlement Class (solely for the purpose of certifying the Settlement Class for settlement, Company agrees not to present or pursue any of their individualized defenses to the claims in any of the complaints Settling Plaintiffs filed in the Actions);

(c)     Find preliminarily that Class Counsel fairly and adequately represent the interests of the Settlement Class, and provisionally designate Class Counsel;

(d)     Find that the terms of the settlement contemplated by this Agreement fall within the range of possible approval, and therefore order that the Agreement be preliminarily approved;

(e)     Schedule a Final Settlement Hearing to determine the fairness of the Agreement;

(f)     Approve the Mailed Notice and the Published Notice, which the Parties agree is appropriate settlement notice and is reasonably calculated to apprise Settlement Class Members of the pendency of the Action, the Agreement, and their rights under the Agreement;

(g)     Direct the Parties to designate a Settlement Administrator to the Court pursuant to Section 12 of the Agreement, within 14 days of Preliminary Approval, and direct that the Settlement Administrator perform the functions described in this Agreement;

(h)     Direct Class Counsel through the Settlement Administrator to mail, via first class postage, to the last-known address of all Settling Plaintiffs and Settlement Class Members, the Mailed Notice within one hundred twenty (120) days of the Preliminary Approval Date;

(i)     Direct Class Counsel through the Settlement Administrator to publish the Published Notice no more than three (3) times in the legal notices section in *USA Today*, and/or other media as directed by Class Counsel, within thirty (30) days of the Notice Date and approve the process by which all reasonable costs and expenses associated with disseminating the Mailed Notice or the Published Notice shall be credited against and paid solely from the General Settlement Fund; and

(j)     Enter an order to the effect that should any Person desire any discovery incident to (or which the Person contends is necessary to) the approval of this Agreement, the Person must first obtain an order from the Court that permits such discovery.

**5.      Notice to Settlement Class Members; Notice to Parties Pursuant to This Agreement**

**5.1     Notice to Settlement Class Members**

After the Court has entered the Preliminary Approval Order and approved the Mailed Notice, the Published Notice and the Proof of Claim Form, notice to Settlement Class Members shall be disseminated in such form as the Court shall direct; provided that the forms of notice are substantially similar to the Mailed Notice and the Published Notice.  A copy of the Proof of Claim Form shall be included with the Mailed Notice.

Class Counsel and the Company shall be jointly responsible for identifying names and addresses of Settlement Class Members and shall cooperate with each other and the Settlement Administrator to make such identifications and determinations.   The Company shall take reasonable steps to provide from its own records, at its own expense, information from which a list of potential Settlement Class Members can be identified for the Mailed Notice.

The Parties will jointly request an order requiring that the Mailed Notice and the Published Notice be disseminated no later than 120 days after the Preliminary Approval Date (the "**Notice Date**").

### 5.2    Notice to Parties Pursuant to This Agreement

All notices to Settlement Class Members and the Company required under this Agreement shall be sent by first class U.S. Mail, by hand delivery, by facsimile, or by electronic mail, to the recipients designated in this Agreement.  Timeliness of all submissions and notices not otherwise specifically addressed in this Agreement shall be measured by the date of receipt, unless the addressee refuses or delays receipt.  By way of example of specific timeliness requirements that supersede the standard set forth in the preceding sentence, timeliness of Mailed Notice or Published Notice shall be determined by compliance with the Notice Date and the procedures related to the mailing of the Mailed Notice or the publication of the Published Notice. The Persons designated to receive notices (other than Mailed Notice or Published Notice of this Agreement) under this Agreement are as follows, unless notification of any change to such designation is given to Class Counsel and the Company pursuant to this Section:

**Class Counsel (on behalf of themselves and on behalf of Settling Plaintiffs and Settlement Class Members):**

**Settlement Class Counsel**

James E. Cecchi
Lindsey Taylor
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone:  (973) 994-1700
Fax:    (973) 994-1744
email:  jcecchi@carellabyrne.com

**Provider Class Counsel:**

17

D. Brian Hufford
Robert J. Axelrod
POMERANTZ  GROSSMAN HUFFORD DAHLSTROM & GROSS LLP
600 Third  Avenue
New York, New York 10016
Telephone: (212) 661-1100
Fax:    (212) 661-1373
email:  dbhufford@pomlaw.com; rjaxelrod@pomlaw.com
Executive Committee Chair

Edith M. Kallas
Joe R. Whatley, Jr.
WHATLEY KALLAS, LLC
380 Madison Avenue, 23rd Floor
New York, NY 10017
Telephone:  (212) 447-7060
Fax:    ((800) 922-4851
email:  ekallas@whatleykallas.com; jwhatley@whatleykallas.com

Andrew S. Friedman
BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
2901 N. Central Avenue, Suite #1000
Phoenix, AZ 85012
Phone: (602) 274-1100
Fax: (602) 274-1199
email:  afriedman@bffb.com

Christopher P. Ridout
RIDOUT & LYON LLP
555 East Ocean Boulevard, Suite 500
Long Beach, California 90802
Phone:  (562) 216-7380
Fax:  (562) 216-7385
email: c.rideout@rideoutlyonlaw.com

**Subscriber Class Counsel:**

Stephen A. Weiss
Diogenes P. Kekatos
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, New York 10005
Telephone:  (212) 584-0700
Fax:  (212) 584-0799
email:  sweiss@seegerweiss.com

18

David R. Scott
Christopher M. Burke
Joseph P. Guglielmo
SCOTT + SCOTT LLP
405 Lexington Ave, 40th Floor
New York, New York 10010
Telephone:  (212) 223-6444
Fax :    (212) 223-6334
email :   jguglielmo@scott-scott.com

Raymond R. Boucher
KIESEL BOUCHER LARSON
8648 Wilshire Blvd.
Beverly Hills, California 90211
(310) 854-4444
boucher@kbla.com

H. Tim Hoffman
Hoffman & Lazear
180 Grand Avenue, Suite 1550
Oakland, California 94612
510-763-5700
hth@hoffmanandlazear.com

**Company:**

Office of the General Counsel
Aetna Inc.
151 Farmington Avenue
Hartford, Connecticut 06156
Telephone: 860-273-0123
Facsimile: 860-273-8340

With a copy to:

Richard J. Doren
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:  213-229-7038
Facsimile:  213-229-6038
e-mail: rdoren@gibsondunn.com

**6.**     **Effect of Denial of Motion for Preliminary Approval**

Other than to effectuate this Agreement, the Parties do not agree to the conditional certification of the Settlement Classes, the provisional designation of Class Counsel, or the provisional designation of Representative Plaintiffs as representatives of the Settlement Classes for any purpose.  If this Agreement is terminated pursuant to its terms, or if the Effective Date does not occur for any reason, then the conditional certification of the Settlement Classes and the provisional designation of Representative Plaintiffs and Class Counsel shall be automatically vacated, and the Actions shall proceed as though the Settlement Classes had never been conditionally certified and as though the provisional designations of Representative Plaintiffs and Class Counsel had not been made, without prejudice to Representative Plaintiffs' right to file a motion to certify a class or classes and to seek appointment of class representatives and class counsel, and without prejudice to the Company's right to assert any and all defenses to class certification, including, but not limited to, the propriety of a class or classes and/or the substantive allegations asserted by Representative Plaintiffs and the putative class or classes. This provision survives termination of this Agreement.

**7.**     **Procedure for Final Approval, Limited Waiver**

**7.1**     **Objection Rights and Timing**

Settlement Class Members shall have until the Objection Date to file, in the manner specified in the Mailed Notice, any objection or other response to this Agreement.   When

seeking Preliminary Approval of this Agreement, the Parties agree to request the Court to set the Objection Date 60 days after the Notice Date.

### 7.2 Opt-Out Rights and Timing

The Settlement Class Members may request exclusion from the Settlement Classes ("**Opt-Out**") by providing written notice, in the manner specified in the Published Notice and Mailed Notice, on or before a date set by the Court as the Opt-Out Deadline.  Representative Plaintiffs, Class Counsel and the Company agree to request the Court to set the Opt-Out Deadline for the date that is 60 Days after the Notice Date (the "**Opt-Out Deadline**").

Settlement Class Members who so timely request to Opt-Out shall be excluded from this Agreement and from the Settlement Classes.  Any Settlement Class Member who does not submit a request to Opt-Out by the Opt-Out Deadline or who does not otherwise comply with the agreed upon Opt-Out procedure approved by the Court shall be bound by the terms of this Agreement and the Final Order and Judgment.  Out-Of-Network Health Care Provider Groups, as distinct legal entities, and their individual Out-Of-Network Health Care Provider members, partners, shareholders, owners, or employees, must separately request exclusion from the Settlement Classes in order to Opt-Out.  Requests for exclusion by Out-Of-Network Health Care Provider Groups, as distinct legal entities, must be signed by individuals who attest that they have the authority to bind the Out-Of-Network Health Care Provider Group.

Any Settlement Class Member who files both an Objection and a request to Opt-Out shall be deemed to have opted-out.

Any Settlement Class Member who timely submits a request to Opt-Out shall have until the Settlement Hearing to deliver to Class Counsel and the Settlement Administrator a written

revocation of such Settlement Class Member's request to Opt-Out. Class Counsel shall timely apprise the Court of such revocations.

### 7.3 Company's Right to Terminate Agreement Based on Opt-Outs

Notwithstanding any other provisions in this Agreement, after reviewing said list and/or copies of Opt-Out requests and revocations, the Company reserves the right, in its sole and absolute discretion, to terminate this Agreement by delivering a notice of termination to Class Counsel, with a copy to the Court, prior to the commencement of the Settlement Hearing, if the Company determines that Opt-Out requests have been filed (i) relating to more than two percent (2%) of the Subscriber Class Members who were mailed the Mailed Notice; (ii) relating to more than one percent (1%) of the Provider Class Members who were mailed the Mailed Notice; or (iii) if the aggregate difference between charges billed for Covered Services or Supplies from Out-Of-Network Health Care Providers or to Subscriber Class Members who were mailed the Mailed Notice and submitted Opt-Out requests, and the corresponding Allowed Amount for those Covered Services or Supplies exceeds $20 million.

This Agreement shall terminate pursuant to this Section 7.3 upon Company's delivery of a notice of termination to Class Counsel (the "**Termination Date**"). Effective on the Termination Date, and except where expressly provided otherwise, the provisions of this Agreement shall thereafter become void and of no further force and effect and there shall be no liability under this Agreement on the part of any Party, except as to a claim for breach of this Agreement brought before the Termination Date.

### 7.4 Setting the Settlement Hearing Date and Settlement Hearing Proceedings

The Parties agree to request the Court to hold the Settlement Hearing on or about the date that is 75 days after the Notice Date (the "**Settlement Hearing Date**") and to work together to

identify and submit any evidence that may be required by the Court to satisfy the burden of proof for obtaining final approval of this Agreement and the orders of the Court that are necessary to effectuate the provisions of this Agreement, including, without limitation, the Final Order and Judgment and the provisions contained therein.   At the Settlement Hearing, the Parties shall present evidence necessary and appropriate to obtain the Court's approval of this Agreement, the Final Order and Judgment and the orders contained therein and shall meet and confer prior to the Settlement Hearing to coordinate their presentation to the Court in support of Court approval thereof.

**8.**      **Overview of the Total Settlement Amount**

The Total Settlement Amount is divided into three financial components (collectively, the "**Settlement Funds**").  The first is a General Settlement Fund against which both Provider Class Members and Subscriber Class Members can make claims for a pre-determined reimbursement amount.  The General Settlement Fund shall also be the exclusive source for payment of any and all expenses incurred in administering this Settlement, as well as any incentive payments to Representative Plaintiffs, Attorneys' Fees and costs awarded by the Court.  The second is a Subscriber Prove-Up Fund from which Subscriber Class Members can seek compensation related to individual Covered Services or Supplies that they received from an Out-of-Network Health Care Provider or Out-of-Network Provider Group and for which they received reimbursement based on an Allowed Amount that was less than the billed charge from March 1, 2001 to the Preliminary Approval Date.  The third is a Provider Prove-Up Fund from which Provider Class Members can seek compensation related to individual Covered Services or Supplies which they provided to Plan Members and for which they received reimbursement based on a Partially Allowed Claim from June 3, 2003 to the Preliminary Approval Date.

23

**9.      General Settlement Fund**

**9.1      Nature and Establishment of General Settlement Fund**

By no later than twenty-one (21) Business Days after the Effective Date, the Company shall cause to be delivered to an Escrow Account established by Settlement Class Counsel at a bank selected by Settlement Class Counsel and agreed to by the Company, the amount of $60 million (the "**General Settlement Fund**").   Reasonable costs incurred by the Settlement Administrator prior to the Effective Date shall be advanced by Aetna and deducted from the Company's $60 million funding obligation for the General Settlement Fund following the Effective Date.   All eligible Settlement Class Members are entitled to seek a payment from the General Settlement Fund based on the number of years during the relevant class period that they received or provided a Covered Service or Supply for which the Allowed Amount was less than the billed charge, without the need to submit supporting documentation for individual claims.

The escrow account shall be governed by the terms of an escrow agreement to be entered into between Settlement Class Counsel and the bank selected by Settlement Class Counsel and approved by the Company (the "Escrow Account").   Such payment shall be treated as a payment to a Qualified or Designated Settlement Fund under I.R.C. § 468B and the regulations or proposed regulations promulgated thereunder (including without limitation Treasury Reg. § 1.468B-1-5 or any successor regulation).

**9.2      Attorneys' Fees, Costs of Notice and Administration of Settlement Shall be Paid from the General Settlement Fund**

Any Attorneys' Fees awarded or costs reimbursed to Settlement Class Counsel in this matter, as well as any incentive payments to Representative Plaintiffs and all costs of notice and administration of this Agreement, including without limitation all fees and costs of the

24

Settlement Administrator, shall be paid exclusively out of the General Settlement Fund before the General Settlement Fund is used to reimburse Settlement Class Members.  In no event shall the Company bear any responsibility for any such fees, payments, costs or expenses beyond the establishment of the General Settlement Fund, nor shall the Company's payments to the General Settlement Fund in any event exceed a total of $60 million.

### 9.3 Settlement Class Member Eligibility for Payment from General Settlement Fund

Any Settlement Class Member may elect to participate in the General Settlement Fund. Each Settlement Class Member who makes this election must submit a claim form to the Settlement Administrator using the Proof of Claim Forms attached as Exhibits A and B hereto and in accordance with the instructions included in the Notice to have a right to payment from the General Settlement Fund.

### 9.4 Timing of Submissions for Payments from General Settlement Fund

A Settlement Class Member who elects to make a claim for reimbursement from the General Settlement Fund, must submit a completed Proof of Claim Form postmarked within 90 days of the Notice Date (the "**Claim Submission Deadline**").

### 9.5 Amounts to be Paid to Settlement Class Members from the General Settlement Fund

Each Settlement Class Member who submits a timely and complete Proof of Claim Form for reimbursement from the General Settlement Fund is eligible to receive a payment based on a per-year calculation, as follows: (a) each Subscriber Class Member will receive a maximum payment of $40, subject to *pro rata* reduction described below, for each calendar year or portion of calendar year during the period March 1, 2001 to the Preliminary Approval Date that he or she was a Plan Member and received Covered Services or Supplies from an Out-of-Network

Provider, or Out-of-Network Provider Group, which resulted in a Partially Allowed Claim; and (b) each Provider Class Member will receive a maximum payment of $40 for each calendar year or portion of calendar year during the period June 3, 2003 to the Preliminary Approval Date in which the Provider Class Member was an Out-of-Network Provider or Out-of-Network Provider Group and provided and billed Aetna for Covered Services or Supplies to a Plan Member which resulted in a Partially Allowed Claim.  For example, a Subscriber Class Member who certifies in the Proof of Claim Form that he was a Plan Member and received Covered Services or Supplies from an Out-of-Network Provider or Out-of-Network Provider Group for which the Allowed Amount was less than the billed charges in 2001, 2004, and 2007 would be entitled to a maximum payment of $120, subject to any *pro rata* reduction as described below.

For all Settlement Class Members entitled to receive a payment from the General Settlement Fund, in the event the value of the claims and other expenses and fees to be paid from the General Settlement Fund is large enough that the maximum payment cannot be made to each Settlement Class Member who submits a timely and complete Proof of Claim Form, the General Settlement Fund shall be distributed on a *pro rata* basis, after subtraction of all settlement administration costs, Attorneys' Fees, incentive payments to Representative Plaintiffs, and all other costs and any other appropriate adjustments.  The balance of the General Settlement Fund shall be allocated to Settlement Class Members who have submitted a timely and complete Proof of Claim Form based on a division of the General Settlement Fund by the total number of eligible years for which claims have been submitted.

The Settlement Administrator shall determine the total number of Settlement Class Members filing a timely and complete Proof of Claim Form against the General Settlement Fund and shall calculate the payment amounts to be made from the General Settlement Fund.

### 9.6     General Settlement Fund As Exclusive Remedy

Any Settlement Class Member who elects to submit a claim for payment from the General Settlement Fund has waived any rights to, and is ineligible for payments from, either the Subscriber Prove-Up Fund or the Provider Prove-Up Fund.

### 9.7     Treatment of any Remainder in General Settlement Fund

In the event that the General Settlement Fund is not exhausted after the payment of all fees, expenses and claims for reimbursement described in this Section 9, any funds remaining in the General Settlement Fund shall be allocated to the two Prove-Up Funds that are described in Section 10 below and shall be subject to all of the provisions governing the Prove-Up Funds. Any remainder in the General Settlement Fund shall be allocated equally between the Provider Prove-Up Fund and the Subscriber Prove-Up Fund, unless one Prove-Up Fund is under-subscribed and the other is over-subscribed based on claim submissions, and in that case all of the remainder will be allocated to the over-subscribed Prove-Up Fund.

## 10.    <u>Prove-Up Funds</u>

In addition to the General Settlement Fund, the Company will also make available funds for a Subscriber Prove-Up Fund and a Provider Prove-Up Fund, for a total pay-out from the combined Prove-Up Funds of up to $60 million, as described below.  A Settlement Class Member can elect to submit a claim for reimbursement from the Prove-Up Funds in lieu of, but not in addition to, a claim for reimbursement from the General Settlement Fund.  In the event that a Settlement Class Member submits a claim to both the General Settlement Fund and a Prove-Up Fund, that Settlement Class Member shall be deemed to have submitted a claim to the applicable Prove-Up Fund.  The Company will retain any funds not allocated to either Prove-Up Fund after the payment of all timely and valid claims.

A Settlement Class Member who elects to make a claim for reimbursement from the Subscriber Prove-Up Fund or the Provider Prove-Up Fund must submit a completed Proof of Claim Form postmarked by the Claim Submission Deadline, as well as all required supporting documentation.

The Company shall take reasonable steps to make its medical claims records that were produced in discovery in the Actions (and such other records from its ACAS and HMO claim systems necessary to cover the Settlement Class periods covered by this Agreement) available to the Settlement Administrator to facilitate the processing of claims submitted against the Prove-Up Funds.

### 10.1    Subscriber Prove-Up Fund

Company shall make available up to $40 million (plus (i) any allocation of any remainder from the General Settlement Fund by operation of Section 9.7, and (ii) any allocation of any remainder from the Provider Prove-Up Fund by operation of Section 10.2(g)) for a "**Subscriber Prove-Up Fund**" to be paid to Subscriber Class Members who submit timely and valid claims for reimbursement from the Subscriber Prove-Up Fund as described in this Section 10.1 ("**Subscriber Prove-Up Claims**").  The $40 million available to pay Subscriber Prove-Up Claims will not be submitted to the Escrow Account established for the General Settlement Fund, but rather will remain unsegregated and in the possession of the Company until the Parties submit the Settlement Administrator's final report to the Court as described in Section 12.5 below.  At the time required under Section 12.5 below, the Company will transfer to the Escrow Account those amounts that are necessary to pay valid Subscriber Prove-Up Claims submitted by Subscriber Class Members, up to the amount made available to the Subscriber Prove-Up Fund as described in this Section 10.1.

For a Subscriber Class Member to be eligible for payment under the Subscriber Prove-Up Fund, the Subscriber Class Member must establish that he or she satisfies each element of this Section 10.1.

### (a) Eligibility for the Subscriber Prove-Up Fund

Claims eligible for payment from the Subscriber Prove-Up Fund are Partially Allowed Claims for which the Subscriber Class Member received and paid a Balance Bill from March 1, 2001 to the Preliminary Approval Date, provided that (i) the Subscriber Class Member did not execute an Assignment of such claim(s) and (ii) the total Balance Bills the Subscriber Class Member actually paid for Covered Services or Supplies are equal to or exceed $200.  Subscriber Class Members who assigned a claim for Covered Services or Supplies or did not pay a Balance Bill are not eligible for the Subscriber Prove-Up Fund.  If claims are submitted by a Provider Class Member and a Subscriber Class Member on the same Partially Allowed Claims, and both claims are determined to have valid supporting documentation by the Settlement Administrator, only the Subscriber Class Member will receive payment on that Partially Allowed Claim and it will not be eligible for any payment from the Provider Prove-Up Fund nor will it be included in calculating whether the financial threshold for eligibility under Section 10.2(d) has been satisfied by a Provider Class Member.

### (b) Required Proof of Claim Form

The Subscriber Class Member must submit a completed Proof of Claim Form, in the form attached as Exhibit A and signed under penalty of perjury, to the Settlement Administrator by the Claim Submission Deadline in order to be eligible to receive and to receive payment from the Subscriber Prove-Up Fund.

The Proof of Claim Form requires, among other things, identifying information about the Subscriber Class Member, an address to which payments may be sent, the name of the Plan, and the years that the Subscriber Class Member has been a Plan Member.

For each Partially Allowed Claim for which a Subscriber Class Member submits a completed Proof of Claim Form, the Subscriber Class Member must also provide the following information: a description of the Covered Service or Supply that was partially allowed by the Company; the date of service or purchase of the Covered Service or Supply; the name of the applicable Out-Of-Network Health Care Provider, or Out-Of-Network Health Care Provider Group; the name of the patient; the original billed amount from the Provider for the Covered Service or Supply; the Allowed Amount for that Covered Service or Supply; and the amount paid by the Subscriber Class Member in response to a Balance Bill received for the Partially Allowed Claim.

If a Subscriber Class Member executed an Assignment for a Covered Service or Supply, or did not receive and pay a Balance Bill, that Subscriber Class Member may not request payment from the Subscriber Prove-Up Fund for the claim that is subject to such Assignment or for which no Balance Bill was received and paid.

The Subscriber Class Member must attest under penalty of perjury that he or she has not executed an Assignment for any of the Partially Allowed Claims listed on the Proof of Claim Form. Subscriber Class Members must also attest under penalty of perjury that the information provided in the Proof of Claim Form is true and correct. If the Proof of Claim Form is not completed or does not reflect that a Partially Allowed Claim is eligible for reimbursement from the Subscriber Prove-Up Fund, the Subscriber Class Member will not be entitled to payment from the Subscriber Prove-Up Fund.

### (c)        Supporting Documentation

In addition to completing the Proof of Claim Form, to be eligible to receive payment from the Subscriber Prove-Up Fund, each Subscriber Class Member must also provide supporting documentation for each Partially Allowed Claim listed on the Proof of Claim Form. The required supporting documentation includes the following:

      i.        a copy of the Balance Bill for the Partially Allowed Claim(s) together with a credit card statement or cancelled check showing the Subscriber Class Member's payment of the Balance Bill for the Partially Allowed Claim(s);

      ii.        a receipt showing payment of the Balance Bill(s) together with an "Explanation of Benefits" or other document showing the Company's reimbursement for the Partially Allowed Claim(s); or

      iii.        the Out-of-Network Health Care Provider's or Out-of-Network Health Care Provider Group's business records showing the issuance and the Subscriber Class Member's payment of a Balance Bill for a Partially Allowed Claim.

Documentation for outstanding bills for any amounts other than the difference between the Allowed Amount and the Billed Charge, such as a bill relating to Denied Claims, coinsurance, deductibles, or coordination of benefits, is not valid.  If a Subscriber Class Member fails to provide the Settlement Administrator with the required supporting documentation for a particular Partially Allowed Claim, no payments shall be made from the Subscriber Prove-Up Fund with respect to that Partially Allowed Claim, nor will that Partially Allowed Claim be included in the calculation of the aggregate out-of-pocket payments required under Section 10.1(d).

**(d)     Threshold**

The aggregate out-of-pocket payments for Balance Bills proven by a Subscriber Class Member in accordance with the foregoing provisions must be greater than $200 for a Subscriber Class Member's claim to be eligible for any payments from the Subscriber Prove-Up Fund.  Any submissions involving aggregate out-of-pocket payments by a Subscriber Class Member of $200 or less will be declared ineligible for reimbursement from the Subscriber Prove-Up Fund and no payment will be issued from the Subscriber Prove-Up Fund.  Submissions to the Subscriber Prove-Up Fund that are declared ineligible will be considered for eligibility under the General Settlement Fund.

**(e)     Calculation of Payments From The Subscriber Prove-Up Fund**

For each eligible and properly-documented Partially Allowed Claim submitted against the Subscriber Prove-Up Fund, as described above, the Settlement Administrator will make a payment to the Subscriber Class Member out of the Subscriber Prove-Up Fund.  For Partially Allowed Claims that were reimbursed by the Company from March 1, 2001 to August 19, 2011, the Settlement Administrator will pay an amount equal to the lesser of (i) the Balance Bill paid by the Subscriber Class Member for that Covered Service or Supply or (ii) 5% of the Allowed Amount for that Partially Allowed Claim.  For Partially Allowed Claims that were reimbursed by the Company from August 20, 2011 to the Preliminary Approval Date, the Settlement Administrator will pay an amount equal to the lesser of (i) the Balance Bill paid by the Subscriber Class Member or (ii) 3% of the Allowed Amount for that Partially Allowed Claim. In the event that reimbursement for all eligible claims for which valid Proof of Claim Forms and the required supporting documentation has been submitted would otherwise exceed the funds allocated to the Subscriber Prove-Up Fund, the reimbursement to be paid will be adjusted

downward on a *pro rata* basis (*i.e.*, each dollar that would otherwise have been paid based on the above calculation for all eligible Subscriber Prove-Up Claims will be reduced in a proportional amount across the entire population of eligible Subscriber Prove-Up Claims).

(f)    <b>Subscriber Prove-Up Fund As Exclusive Remedy</b>

Any Subscriber Class Member who elects to submit any claim for payment from the Subscriber Prove-Up Fund has waived any rights to and is ineligible for payments from the General Settlement Fund, except that claims against the Subscriber Prove-Up Fund that are ineligible in their entirety may be considered for eligibility under the General Settlement Fund.

(g)    <b>Treatment of Any Remaining Balance</b>

In the event that the Subscriber Prove-Up Fund is not exhausted after all claims have been paid under the methodology described in Section 10.1(e), and if the eligible claims submitted to the Provider Prove-Up Fund exceed the amount allocated to it described in Section 10.2, an amount equal to the lesser of (i) such excess or (ii) $5 million of such remainder in the Subscriber Prove-Up Fund will be credited to the Provider Prove-Up Fund.  Subject to this potential credit to the Provider Prove-Up Fund, the Company will retain any and all funds related to the Subscriber Prove-Up Fund after the payment of all timely and valid Subscriber Prove-Up Claims.

**10.2    Provider Prove-Up Fund**

Company shall make available up to $20 million (plus (i) any allocation of any remainder from the General Settlement Fund by operation of Section 9.7 and (ii) any allocation of any remainder from the Subscriber Prove-Up Fund by operation of Section 10.1(g)) for a "**Provider Prove-Up Fund**" to be paid to Provider Settlement Class Members who submit timely and valid prove-up claims for reimbursement as described in this Section ("**Provider Prove-Up Claims**").

The funds made available to pay Provider Prove-Up Claims will not be submitted to the Escrow Account established for the General Settlement Fund, but rather will remain unsegregated and in the possession of the Company until the Parties submit the Settlement Administrator's final report to the Court as described in Section 12.5.  At the time required under Section  12.5 below, the Company will transfer to the Escrow Account those amounts that are necessary to pay the valid Provider Prove-Up Claims submitted by Provider Class Members, up to the amount available to the Provider Prove-Up Fund as described in this Section 10.2.

(a)    <strong>Eligibility for the Provider Prove-Up Fund</strong>

Claims eligible for payment from the Provider Prove-Up Funds are Partially Allowed Claims from June 3, 2003 to the Preliminary Approval Date, provided that the Provider Class Member had an executed Assignment for such Partially Allowed Claims and (ii) the Provider Class Member presented or sent to the Plan Member a Balance Bill, and received no payment, or less than full payment, for the Balance Bill.

(b)    <strong>Required Proof of Claim Form</strong>

The Provider Class Member must submit a completed Proof of Claim Form, in the form attached as Exhibit B and signed under penalty of perjury, to the Settlement Administrator by the Claim Submission Deadline in order to be eligible to receive and to receive payment from the Provider Prove-Up Fund.  The Proof of Claim Form must be signed by the Out-Of-Network Health Care Provider, or Out-of-Network Health Care Provider Group or an authorized employee of the Out-Of-Network Health Care Provider or Out-Of-Network Health Care Provider Group.

The Proof of Claim Form requires a Provider Class Member to provide, among other things, identifying information about the Provider Class Member, an address to which payments

34

may be sent, and the years during which the Provider Class Member has provided Covered Services or Supplies to Plan Members without a valid written contract with the Company to provide Covered Services or Supplies to Plan Members.  In addition, for each Partially Allowed Claim for which the Provider Class Member seeks payment from the Provider Prove-Up Fund, the Provider Class Member must provide on the Proof of Claim Form the following information: a CPT code, HCPCS code, or other description of the Covered Service or Supply; the date of service or purchase of the Covered Service or Supply; the name of the patient; the original amount billed to the Company for the Covered Service or Supply; the Allowed Amount for the Covered Service or Supply; any payment amounts received for the Partially Allowed Claim and the source of each payment; whether a Balance Bill was presented or sent to the patient and the amount of that Balance Bill; and whether any payment on the Balance Bill was received.

Provider Class Members must certify under penalty of perjury that the information provided in the Proof of Claim Form is true and correct.  If the Proof of Claim Form is not completed or does not reflect that a Partially Allowed Claim is eligible for reimbursement from the Provider Prove-Up Fund, the Provider Class Member will not be entitled to any payments from the Provider Prove-Up Fund.

(c)     <b>Supporting Documentation</b>

In addition to the Proof of Claim Form, to be eligible to receive and to receive payment from the Provider Prove-Up Fund, each Provider Class Member who submits a Proof of Claim Form must provide each of the following supporting documents for each Partially Allowed Claim listed in the Proof of Claim Form:

i.     Supporting documentation showing that the Provider Class Member had an Assignment from a Plan Member.  The existence of an Assignment can be proven

35

either by (a) an attestation from the Provider Class Member that an Assignment exists in the manner set out on the Proof of Claim Form, as long as that attestation is supported by information contained in the Company's claim systems that will be made available to the Settlement Administrator; or (b) in the alternative, a copy of the Assignment itself from the Provider Class Member's records reflecting the Plan Member's signature.

ii.      Supporting documentation that demonstrates a Balance Bill was presented to or sent to the Plan Member prior to the Preliminary Approval Date relating to the Partially Allowed Claim.  Documentation showing bills for any amounts other than the difference between the Partially Allowed Amount and the billed charge, such as Denied Claims, coinsurance, deductibles, or coordination of benefits, is not valid.  In addition, documentation showing an unpaid amount that does not explicitly show that such unpaid amount was billed to the applicable Plan Member is not valid.

iii.      Supporting documentation demonstrating that the Balance Bill was not paid in whole or in part.  Valid supporting documentation is limited to documentation from the Provider Class Member's files (including records maintained for the benefit of the Provider Class Member by vendors or other professionals, including billing companies, Certified Public Accountants, and collection agencies), practice management system or accounting records showing that the Balance Bill remains unpaid. Documentation for outstanding bills for any amounts other than the difference between the Partially Allowed Amount and the billed charge, such as Denied Claims, coinsurance, deductibles, or coordination of benefits, is not valid.

**(d)      Threshold**

The aggregate amount outstanding for Balance Bills proven by an Out-Of-Network Health Care Provider in accordance with the foregoing provisions must be greater than $750 for such Provider Class Member's claim to be eligible for any payments from the Provider Prove-Up Fund.   Any submissions involving aggregate amounts outstanding for Balance Bills by a Provider Class Member of $750 or less will be ineligible for reimbursement from the Provider Prove-Up Fund and no payment from the Provider Prove-Up Fund will be issued.   The aggregate amount outstanding for Balance Bills proven by an Out-Of-Network Health Care Provider Group in accordance with the foregoing provisions must be greater than $1000 for the claim to be eligible for any payments under the Provider Prove-Up Fund.   Any submissions involving aggregate amounts outstanding for Balance Bills by a Provider Class Member of $1000 or less will be ineligible for reimbursement from the Provider Prove-Up Fund and no payment from the Provider Prove-Up Fund will be issued.   Submissions to the Provider Prove-Up Fund that are ineligible in their entirety pursuant to this Section 10.2(d) will be considered for eligibility under the General Settlement Fund.

**(e)      Calculation of Payments from The Provider Prove-Up Fund**

For each eligible and properly-documented Partially Allowed Claim submitted against the Provider Prove-Up Fund, the Settlement Administrator will make a payment to the Provider Class Member out of the Provider Prove-Up Fund.   For Partially Allowed Claims that were reimbursed by the Company from June 3, 2003 to August 19, 2011, the Settlement Administrator will pay an amount equal to the lesser of (i) the Balance Bill outstanding for that Covered Service or Supply or (ii)  5% of the Allowed Amount for that Partially Allowed Claim.     For Partially Allowed Claims that were reimbursed by the Company from August 20, 2011 to the

37

Preliminary Approval Date, the Settlement Administrator will pay an amount equal to the lesser of (i) the Balance Bill outstanding for that Covered Service or Supply or (ii) 3% of the Allowed Amount for that Partially Allowed Claim.  In the event that reimbursement for all eligible claims for which valid Proof of Claim Forms and supporting documentation have been submitted would otherwise exceed the amount attributed to the Provider Prove-Up Fund as described in this Section 10.2 the reimbursement to be paid will be adjusted downward on a *pro rata* basis (*i.e*., each dollar that would otherwise have been paid based on the above calculation for all eligible Provider Prove-Up Claims will be reduced in a proportional  amount across the entire population of eligible Provider Prove-Up Claims).

(f)      <strong>Provider Prove-Up Fund As Exclusive Remedy</strong>

Any Provider Class Member who elects to submit any claim for payment from the Provider Prove-Up Fund has waived any rights to and is ineligible for payments from the General Settlement Fund, except that claims against the Provider Prove-Up Fund that are ineligible in their entirety may be considered for eligibility in the General Settlement Fund.

(g)      <strong>Treatment of Any Remaining Balance</strong>

In the event that the Provider Prove-Up Fund is not exhausted after all claims have been paid under the methodology described in Section 10.2(e) and if the eligible claims submitted to the Subscriber Prove-Up Fund exceed the amount allocated to it described in Section 10.1, an amount equal to the lesser of (i) such excess or (ii) $5 million of any remainder in the Provider Prove-Up Fund will be credited to the Subscriber Prove-Up Fund.  Subject to this potential credit, the Company will retain any and all funds remaining related to the Provider Prove-Up Fund after the payment of all timely and valid Provider Prove-Up Claims.

11. **Attorneys' Fees And Costs**

Settlement Class Counsel shall make a Fee and Cost Application on behalf of all Class Counsel to be heard at the Settlement Hearing seeking an award of Attorneys' Fees plus out-of-pocket expenses and incentive payments for Representative Plaintiffs.  Attorneys' Fees and costs consistent with this paragraph that are approved by the Court shall be paid by the Settlement Administrator to Settlement Class Counsel out of the General Settlement Fund within ten (10) Business Days of the Effective Date.   Settlement Class Counsel shall allocate any such Attorneys' Fees and cost award in its sole discretion.

12. **The Settlement Administrator**

12.1     **Selection and Responsibilities of Settlement Administrator**

The settlement administrator that is mutually agreeable to the Company and Settlement Class Counsel or their designees, and supervised by Settlement Class Counsel (the "**Settlement Administrator**"), and subject to the supervision, direction and approval of the Court, shall be responsible for the administration of the Settlement Funds.  The responsibilities of the Settlement Administrator shall expressly include without limitation: (a) the determination of the eligibility of any Settlement Class Member to receive payment from the Settlement Funds and the amount of payment to be made to each Settlement Class Member, in accordance with the Agreement; (b) the filing of any tax returns necessary to report any income earned by the Settlement Funds and the payment from the Settlement Funds, as and when legally required, of any tax payments (including interest and penalties) due on income earned by the Settlement Funds and to request refunds, when and if appropriate, with any such tax refunds that are issued to become part of the Settlement Funds; and (c) the compliance by the Settlement Funds with any other applicable law.

**12.2      No Liability**

The Parties shall have no liability with respect to the investment or distribution of the General Settlement Fund or the distribution of the Prove-Up Funds, the determination or administration of taxes, or any losses incurred in connection with the General Settlement Fund.

**12.3      No Claims**

No Person shall have any claim against Settling Plaintiffs, Class Counsel, Plaintiffs' Counsel, the Company, Company's counsel, the Settlement Administrator, or the Escrow Agent, based on distributions from the Settlement Funds made substantially in accordance with this Agreement or further orders from the Court.

**12.4      Reporting Requirements Regarding Opt Outs**

On each Friday after the Notice Date and through the Opt-Out Deadline, the Settlement Administrator shall furnish to the Parties:  (a) a complete list in machine-readable form of all Opt-Out requests received by the Settlement Administrator by that date; and (b) to the extent not already provided, copies of each actual request to Opt-Out.  Within five (5) Business Days after the Opt-Out Deadline, the Settlement Administrator shall furnish the Parties with:  (a) a complete list in machine-readable form of all Opt-Out requests (including, at a minimum, the name and address for each Settlement Class Member who has filed a request to Opt-Out); (b) copies of each actual request to Opt-Out; and (c) a statement of the total number of Mailed Notices mailed and the total number of Opt-Out requests received.   At the same time, the Settlement Administrator shall furnish a sworn affidavit to the Parties providing a list of all Settlement Class Members to whom a Mailed Notice was sent, along with all mailing addresses and any other Settlement Class Member-identifying information that the Settlement Administrator used in mailing the Mailed Notices to the Settlement Class Members.

### 12.5        Reporting Requirements Regarding Claim Submissions

**(a)**        On each Friday after the Notice Date and through the Claim Submission Deadline, the Settlement Administrator shall furnish to the Parties a complete, running list in machine-readable form listing each Proof of Claim Form received to date by unique control number, the name and address for each Settlement Class Member who submitted a Proof of Claim Form, the total amount submitted on each Proof of Claim Form, and any determination made by the Settlement Administrator as to whether a particular claim has been approved as timely and valid.  The report shall also indicate if the submission is for the General Settlement Fund, the Subscriber Prove-Up Fund, or the Provider Prove-Up Fund.  For submissions for the Provider Prove-Up Fund, the report shall indicate if the Provider Class Member has submitted an attestation from the Provider Class Member that an Assignment exists or a copy of the Assignment itself.  In addition, at any Party's request, the Settlement Administrator shall also provide copies of the Proof of Claim Form and any supporting documentation for any particular claim or group of claims.

**(b)**        Within thirty (30) Days after the Claim Submission Deadline, subject to any reasonable extensions that the Parties may agree to as necessary to allow the Settlement Administrator to complete the process, the Settlement Administrator shall furnish the Parties with a complete list in machine-readable form listing all: (1) complete and validated General Settlement Fund claims (including, at a minimum, the name and address for each claimant, whether the claimant is a Subscriber Class Member or a Provider Class Member, the years claimed by the claimant, the amount submitted on the claim, and the Settlement Administrator's determination of the amount to be paid); (2) ineligible or deficient General Settlement Fund claims (including, at a minimum, the name and address for each claimant, whether the claimant

is a subscriber or provider, and the amount submitted on the claim); (3) complete and validated Subscriber Prove-Up Claims (including, at a minimum, the name and address for each claimant, a brief description of each Covered Service or Supply for which the Subscriber Class Member seeks payment, the amount submitted for each Covered Service or Supply, the date of the Balance Bill, the Settlement Administrator's determination of whether there is valid supporting documentation for that Covered Service or Supply, and the Settlement Administrator's determination of the amount to be paid); (4) complete and validated Provider Prove-Up Claims (including, at a minimum, the name and address for each claimant, a brief description of each Covered Service or Supply for which the Provider Class Member seeks payment, the amount submitted for each Covered Service or Supply, whether the Assignment support was provided by attestation or a copy of the Assignment itself, the date of the Balance Bill, the Settlement Administrator's determination of whether there is valid supporting documentation for that Covered Service or Supply, and the Settlement Administrator's determination of the amount to be paid); (5) ineligible or deficient Subscriber Prove-Up Claims (including, at a minimum, the name and address for each claimant, each Covered Service or Supply for which the Subscriber Class Member seeks payment, the amount submitted on the claim, and the Settlement Administrator's determination of whether there is valid supporting documentation for that Covered Service or Supply); and (6) ineligible or deficient Provider Prove-Up Claims (including, at a minimum, the name and address for each claimant, each Covered Service or Supply for which the Provider Class Member seeks payment, and the amount submitted on the claim).  The Settlement Administrator shall also make available, promptly upon request, copies of all supporting documentation.

(c)     The Parties shall have thirty (30) Days after the report required by Section 12.5(b) is furnished, subject to any reasonable extensions that the Parties may agree to as necessary to address any issues, to identify potential inaccuracies affecting the validity of any claims in such report.  In the event that any Party identifies a potential inaccuracy in such report, the Parties will work cooperatively to promptly address the potential inaccuracy.  The Settlement Administrator shall consider any information provided by any Party relevant to the validity of a claim.  Any submissions by a Party under this provision shall be strictly voluntary, and in no event shall any Party be required under this Section 12.5(c) to confirm the accuracy of the Settlement Administrator's reports or payments, or to provide any data, documentation, or information to support a claim.  In addition, neither the report required by Section 12.5(b) nor any review of the report by any Party shall be deemed a waiver in the event that statements in the Proof of Claim Form are later found to have been false or inaccurate.

(d)     After the process set forth in Sections 12.5(a), (b) and (c) has been completed, the Parties shall submit a joint report to the Court on the status of the claims received and determinations by the Settlement Administrator as to the completeness and validity of the claims, as well as the amounts to be paid.  The Company will transfer funds to pay the Subscriber Prove-Up Claims and Provider Prove-Up Claims specified in the joint report within twenty-one (21) Business Days after the later of: (a) the filing of the joint report with the Court and (b) the Effective Date.

## 13.     Release; Covenant Not to Sue

### 13.1     Release

(a)     Upon final approval of this Agreement by the Court, for good and valuable consideration received from the Company, the receipt and sufficiency of which are hereby

acknowledged, Settling Plaintiffs and each and every Settlement Class Member who does not Opt-Out of this Agreement pursuant to Section 7.2 of this Agreement, on behalf of themselves and each of their heirs, executors, administrators, legal representatives, successors, and assigns, and any Persons they represent, and each of their agents (including, but not limited to, any investment managers and advisors), representatives, officers, directors, executives, members, partners, participants, shareholders, investors, principals, employees, trustees, assigns, and attorneys of each of them to the extent those entities or individuals acted on behalf of, or are claiming through or by virtue of the claims of, any Settling Plaintiffs and/or Settlement Class Member (collectively, the "**Releasors**"), hereby unconditionally, fully, and finally release and forever discharge each of the Released Persons from the Released Claims.  In addition, any Provider Class Member who does not Opt-Out of this Agreement and submits a claim to the Provider Prove-Up Fund, agrees not to Balance Bill any Plan Member at any point for any such claim deemed eligible by the Settlement Administrator.  Further, all Provider Class Members shall be deemed to release all Subscriber Class Members from any and all liability with respect to any Provider Prove-Up Claim deemed eligible for payment under this Agreement by the Settlement Administrator.

**(b)** The Releasors further agree to abandon forever and discharge any and all claims that were or could have been alleged in the Actions against the Released Persons in connection with the Released Claims, whether any such claim was or could have been asserted by any Releasor on its own behalf or on behalf of other persons.  Nothing in this Agreement is intended to relieve any Person that is not a Released Person from responsibility for its own conduct or conduct of other Persons who are not Released Persons, or to preclude any Settling Plaintiff from

introducing any competent and admissible evidence in a court proceeding to the extent consistent with Section 18.

**(c)**    The Parties agree that Released Claims that are being released and discharged herein include claims that Releasors may not know or suspect to exist, in their favor at the time of this Agreement.  All Settling Plaintiffs and Settlement Class Members who do not Opt-Out of this Agreement waive any and all provisions, rights, and benefits conferred by California Civil Code § 1542, or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

**(d)**    Releasors are aware that they may, after the date of this Agreement, discover claims or facts in addition to or different from those they now know or believe to be true with respect to the Released Claims.  Nevertheless, it is the intention of the Parties to fully, finally, and forever settle and release all Released Claims, including those that are presently unknown or unanticipated, and each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon the entry of the Final Order and Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of this Section 13.1, whether or not concealed or hidden, without regard to the discovery or existence of such different or additional facts.

**(e)**    The Released Persons release any and all claims they may have against the Representative Plaintiffs, Class Counsel or Plaintiffs' Counsel for violations of Federal Rule of

Civil Procedure 11 or for malicious prosecution related to the institution, prosecution, or settlement of the Actions.

### 13.2  Covenant Not To Sue Or Continue Suit

Upon the Effective Date, each Releasor shall be deemed to have covenanted and agreed not to sue with respect to, or assert, against any Released Person, in any forum any Released Claim.

### 13.3  Irreparable Harm

The Parties agree that the Company shall suffer irreparable harm if a Releasor takes action inconsistent with Section 13.1 or Section 13.2 and that in that event, the Company may seek an injunction from the Court as to such action without a further showing of irreparable harm and without the need to post any bond (or, if a bond is required by controlling law, without the need to post anything more than a nominal bond).

## 14.  Application to Fully-Insured and Self-Funded Plans

The Release contained in Section 13 and the rights to and procedures for the submission of claims for reimbursement set forth in Sections 9 and 10 apply to all Settlement Class Members with respect to all Plans, regardless whether the Company's actions or the Partially Allowed Claims arose out of or related to a fully insured or self-funded Plan.   Without limitation of the foregoing, all aspects of this Agreement, including the Release set forth in Section 13, apply to both fully insured and self-funded Plans.

## 15.  Stay of Discovery, Termination, and Effective Date of Agreement

**15.1**   Until the Preliminary Approval Date, and issuance of an Order including a stay of discovery as to the Released Persons, the Settling Plaintiffs and Class Counsel covenant and agree that neither Settling Plaintiffs nor Class Counsel shall pursue any litigation proceedings

against the Released Persons; the Company shall not pursue litigation proceedings against the Releasors; and the Parties and their respective counsel shall not in any way subsequently argue that the Released Persons or Releasors have failed to comply with their litigation obligations in any respect by reason of the Released Persons' and Releasors' suspension of litigation efforts following the execution of this Agreement.  Upon entry of the Preliminary Approval Order, all proceedings in the Actions, other than the proceedings necessary to carry out the terms and conditions of this Agreement, shall be stayed and suspended until further notice of the Court. The Preliminary Approval Order also shall bar and enjoin all Settlement Class Members who have not Opted-Out of the Agreement pursuant to Section 7.2 from commencing, prosecuting, or assigning the right to do so, any action asserting any Released Claims against any Released Person.

15.2    In the event that:  (i) this Agreement, the Final Order and Judgment, and/or any order proposed jointly by the Parties relating thereto, are not approved by the Court substantially in the form submitted; (ii) the Company opts to terminate this Agreement pursuant to Section 7.3; or (iii) approval of this Agreement, the Final Order and Judgment, and/or such orders, are modified or reversed in any material respect by any appellate or other court (each being a "**Termination Event**"), the Parties that are adversely affected by the Termination Event shall have the right, in their sole and absolute discretion, to terminate this Agreement by providing written notice to Class Counsel or the Company's counsel, as applicable, within twenty-one (21) Days  after the Termination Event.  If this Agreement is so terminated, this Agreement, the Final Order and Judgment, and all orders entered in connection with it shall become null and void and of no further force and effect with respect to the Settling Plaintiffs, the Company, and the

Settlement Classes.  In the event of any Termination Event, the Parties shall be restored to their original positions, except as expressly provided herein.

15.3    If the Final Order and Judgment is entered by the Court and the time for appeal from all of such orders and judgment has elapsed (including without limitation any extension of time for the filing of any appeal that may result by operation of law or order of the Court) with no notice of appeal having been filed, the "**Effective Date**" shall be the eleventh (11th) Day after the last date on which notice of appeal could have been timely filed.  If the Final Order and Judgment is entered and an appeal is filed as to any of them, the "**Effective Date**" shall be the eleventh (11th) Day after the Final Order and Judgment is affirmed, all appeals are dismissed, and no further appeal to, or discretionary review in, any court remains.

15.4    An appeal of the Final Order and Judgment shall postpone the occurrence of the Effective Date.  If any Final Order and Judgment approving this Agreement is not affirmed in its entirety on any such appeal or discretionary review, the Company may, in its sole and absolute discretion, terminate this Agreement by delivering a notice of termination to Class Counsel within thirty (30) Days of such appellate or discretionary review determination.

## 16.    Stays and Dismissals

As to any action brought by or on behalf of Settling Plaintiffs or Settlement Class Members that asserts any claim that as of the Effective Date would constitute a Released Claim against the Company, the Parties shall cooperate to obtain an interim stay of all proceedings as to the Company in each such action pending entry of the Final Order and Judgment.  In addition, no later than fourteen (14) Days after the Effective Date, the Parties shall jointly apply for orders dismissing any such actions with prejudice as to the Company; provided that no such dismissal

order shall be sought with respect to any action by a named plaintiff who has timely submitted a request to Opt-Out.

**17.**    **Force Majeure**

The Parties shall not be liable for any delay or non-performance of their obligations under this Agreement arising from any act of God, governmental act, act of terrorism, war, fire, flood, earthquake, explosion, or civil commotion.  The performance of the Parties' obligations under this Agreement, to the extent affected by such delay, shall be suspended for the period during which the cause, or the Parties' substantial inability to perform arising from the cause, persists.

**18.**    **Not Evidence; No Admission of Liability**

The Parties agree that in no event shall this Agreement, in whole or in part, whether effective, terminated, or otherwise, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in the Actions, in any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement.  Without limiting the foregoing, neither this Agreement nor any related negotiations, statements or proceedings shall be construed as, offered as, received as, used as or deemed to be evidence, or an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of any of the Parties, or as a waiver by any of the Parties of any applicable defense, including without limitation any applicable statute of limitations.  None of the Parties waives or intends to waive any applicable attorney-client privilege or work product protection for any negotiations, statements or proceedings relating to this Agreement.  The Parties agree that this Section 18 shall survive the termination of this Agreement pursuant to the terms hereof.

**19.**   <u>**Entire Agreement**</u>

This Agreement, including its Exhibits, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties; it is not subject to any condition not provided for herein.   This Agreement supersedes any prior agreements or understandings, whether written or oral, between and among the Parties regarding the subject matter of the Action or this Agreement.  This Agreement shall not be modified in any respect except by a writing executed by all the Parties.

**20.**   <u>**No Presumption Against Drafter**</u>

None of the Parties shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.   This Agreement was drafted with substantial input by all Parties and their counsel, and no reliance was placed on any representations other than those contained herein.

**21.**   <u>**Continuing Jurisdiction and Exclusive Venue**</u>

**21.1   Continuing Jurisdiction**

Except as otherwise provided in this Agreement, it is expressly agreed and stipulated that the United States District Court for the District of New Jersey shall have exclusive jurisdiction and authority to consider, rule upon, and issue a final order with respect to suits, whether judicial, administrative or otherwise, which may be instituted by any Person, individually or derivatively, with respect to this Agreement.  This reservation of jurisdiction does not limit any other reservation of jurisdiction in this Agreement nor do any other such reservations limit the reservation in this Section 21.1.

Each Settlement Class Member who has not validly and timely requested to Opt-Out of this Agreement hereby irrevocably submits to the exclusive jurisdiction and venue of the United States District Court for the District of New Jersey for any suit, action, proceeding, case, controversy, or dispute relating to this Agreement and/or Exhibits hereto and negotiation, performance or breach of same.

### 21.2    Parties Shall Not Contest Jurisdiction

In the event of a case, controversy, or dispute arising out of the negotiation of, approval of, performance of, or breach of this Agreement, the Parties hereby agree to pay, and the Court is authorized to award, attorneys' fees and costs to the prevailing party.  Solely for purposes for such suit, action or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of such Court, or that such Court is in any way an improper venue or an inconvenient forum.

Furthermore, the Parties shall jointly request the Court to include the provisions of this Section in its order finally approving this Agreement.

## 22.    <u>Counterparts</u>

This Agreement may be executed in counterparts, each of which shall constitute an original.  Facsimile signatures shall be considered valid signatures as of the date hereof, although the original signature pages may thereafter be appended to this Agreement.

## 23.    <u>Divisions and Headings</u>

The division of this Agreement into sections and subsections and the use of captions and headings in connection herewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

24.   **Waiver**

The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving party.  The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

25.   **No Third-Party Beneficiaries**

Except as otherwise specified herein, nothing in this Agreement is intended, nor shall it in any way be construed, to create or convey any rights in or to any Person other than the Parties and the Settlement Class Members.

26.   **Governing Law**

The Parties agree that, with respect to disputes arising between and among the Parties with respect to this Agreement, this Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, without regard to the conflicts of law rules of such state.

27.   **Acknowledgement**

By the signature affixed hereto, each Party acknowledges that it, he, or she has read this Agreement, fully understands the agreements, representations, covenants, obligations, conditions, warranties, releases, and terms contained herein, and has had the advice of counsel pertaining thereto, prior to the time of execution.

28.   **Authority**

Each Person signing this Agreement on behalf of a Party represents and warrants that he or she has all requisite power and authority to enter into this Agreement and to implement the

transactions contemplated herein, and is duly authorized to execute this Agreement on behalf of that Party.

EXECUTED and DELIVERED
ATTORNEY SIGNATURE BLOCKS


_____
James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
On Behalf of Representative Plaintiff John Seney


Dated: _____12-6-12_____

EXECUTED and DELIVERED
ATTORNEY SIGNATURE BLOCKS


D. Brian Hufford
Robert J. Axelrod
POMERANTZ  GROSSMAN HUFFORD DAHLSTROM & GROSS LLP
On Behalf of Representative Plaintiff Dr. Alan B. Schorr, M.D.


Dated:   _12 - 6 - 12___

EXECUTED and DELIVERED
ATTORNEY SIGNATURE BLOCKS


Edith M. Kallas
Joe R. Whatley, Jr.
WHATLEY KALLAS, LLC
On Behalf of Representative Plaintiffs Frank G. Tonrey, M.D. and Carmen M. Kavali,
M.D.

Dated: 12/6/12

EXECUTED and DELIVERED
ATTORNEY SIGNATURE BLOCKS


_____
Andrew S. Friedman
BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
On Behalf of Representative Plaintiff Brian Mullins, M.S., P.T.


Dated: December 6, 2012

EXECUTED and DELIVERED
ATTORNEY SIGNATURE BLOCKS


Stephen A. Weiss
SEEGER WEISS LLP
On Behalf of Representative Plaintiff John Seney


Dated: ___12/6/12___

EXECUTED and DELIVERED
ATTORNEY SIGNATURE BLOCKS


_David R. Scott, by jsc_
David R. Scott
Christopher M. Burke
Joseph P. Guglielmo
SCOTT + SCOTT LLP
On Behalf of Representative Plaintiff Jeffrey M. Weintraub


Dated: _____12-6-12_____

EXECUTED and DELIVERED
ATTORNEY SIGNATURE BLOCKS


Raymond R. Boucher
KIESEL BOUCHER LARSON
On Behalf of Representative Plaintiff Alan John Silver


Dated:  12/6/12

EXECUTED and DELIVERED
ATTORNEY SIGNATURE BLOCKS


H. Tim Hoffman
Hoffman & Lazear
On Behalf of Representative Plaintiff Alan John Silver


Dated: _____12/6/12_____

EXECUTED and DELIVERED
ATTORNEY SIGNATURE BLOCKS


_____
Richard J. Doren
GIBSON, DUNN & CRUTCHER LLP
On Behalf of Aetna Inc.

Dated: _____12-6-12_____

# EXHIBIT A

| Must be Postmarked On or Before Xxxxxxxxx xx, 201x | *In re Aetna UCR Litigation* **Master Docket No. 07-3541(SRC)(PS))** <u>U.S. District Court for the District of New Jersey</u> | For Official Use Only |
|---|---|---|

# SUBSCRIBER CLAIM FORM

**You should read the Notice of Proposed Settlement of Class Action and Final Settlement Hearing before completing this form.**

If you wish to submit a claim as a Subscriber Class Member under the Settlement, complete this form and mail it to the address below.  Make sure to complete all required sections and sign the end of the claim form.  For more information about this Settlement, please consult the Settlement Agreement and/or Settlement Notice (both of which are available in the Court's file at www. _____.com).

<u>**Please mail your claim to:**</u>  *In re  Aetna UCR Litigation*
c/o XXXXXXXXXX
P.O. Box XXXXX
XXXXXXXXXXXXXXXXXXX

**A claimant may select only <u>one</u> of the following two options.  Please check <u>one</u> of the following boxes:**

☐   <u>**Option 1:**</u>  I would like to make a claim from the General Settlement Fund.

> If you check this box please complete Section A of the Claim Form. You do not need to complete Section B and you do not need to provide any Supporting Documentation. You are entitled to receive up to $40 for each year you received Covered Services or Supplies from an Out-of-Network Provider or Out-of-Network Provider Group which resulted in a Partially Allowed Claim, subject to a pro rata reduction under the terms of the Settlement Agreement.

☐   <u>**Option 2:**</u>  I would like to make a claim from the Subscriber Settlement Fund.

> If you check this box please complete all sections (Sections A and B) of the Claim Form and provide the Supporting Documentation, as discussed below.  You are entitled to receive up to 5% of the Allowed Amount (or up to 3% for certain claims) on each valid Partially Allowed Claim for which you provide the necessary Supporting

Documentation, as described below, subject to a pro rata reduction under the terms of the Settlement Agreement.

## Section A (Required for All Subscriber Claimants – Options 1 and 2)

Subscriber/Claimant's Name _____

Member ID or Social Security Number _____

Street Address (where payments should be sent): _____

City: _____ State: _____ Zip Code: _____

Telephone: _____ Fax: _____ E-Mail: _____

| Year | Check all years that you were an Aetna Plan Member | Provide the name of the Plan/employer for each year that you were an Aetna Plan Member | Check all years that (a) you received Covered Services or Supplies from an Out-of-Network Provider or Group and (b) those services resulted in a Partially Allowed Claim (*i.e.*, the Allowed Amount was less than the billed charge) |
|------|------|------|------|
| 2001 | | | |
| 2002 | | | |
| 2003 | | | |
| 2004 | | | |
| 2005 | | | |
| 2006 | | | |
| 2007 | | | |
| 2008 | | | |
| 2009 | | | |
| 2010 | | | |
| 2011 | | | |
| 2012 | | | |

**By executing this Claim Form, I confirm that I am bound by all provisions of the Settlement Agreement, including the Release contained in the Settlement Agreement.  In addition, I declare under penalty of perjury that the information that I provided in this claim form (including any attachments) is true and correct.**

Signature: _____          Date: _____

## <u>Section B</u> (Required Only For Persons Claiming Under Subscriber Settlement Fund – Option 2 Only)

Please complete the following chart and provide all required Supporting Documentation (see additional instructions regarding Supporting Documentation on the next page):

|  | Description Of Covered Service Or Supply That Was Partially Allowed By Aetna | Date Of Service Or Purchase Of Supply | Name Of Out-Of-Network Provider or Out-Of-Network Provider Group | Name Of Patient | Original Billed Amount For Covered Service Or Supply | Allowed Amount For Service Or Supply | Amount Paid By Subscriber In Response To Balance Bill |
|---|---|---|---|---|---|---|---|
| Partially Allowed Claim 1 |  |  |  |  |  |  |  |
| Partially Allowed Claim 2 |  |  |  |  |  |  |  |
| Partially Allowed Claim 3 |  |  |  |  |  |  |  |
| Partially Allowed Claim 4 |  |  |  |  |  |  |  |
| Partially Allowed Claim 5 |  |  |  |  |  |  |  |

You may attach additional sheets as necessary.

NOTE:  The aggregate amount of Balance Bill payments included in your claim against the Subscriber Settlement Fund must exceed $200.  Any submissions involving $200 or less will be declared ineligible for reimbursement from the Subscriber Settlement Fund and no payment will be issued.  Subscriber Settlement Claims declared ineligible will be considered for eligibility under the General Settlement Fund.

## Section B (continued)

**Supporting Documentation Required: For each Partially Allowed Claim that you list, please provide the necessary Supporting Documentation showing that you paid a Balance Bill for the claim.  Without the necessary Supporting Documentation, your claim will not be valid.**

Valid Supporting Documentation:

i.       a copy of the Balance Bill for the Partially Allowed Claim(s) from the Out-of-Network Health Care Provider or Out-of-Network Health Care Provider Group, together with a cancelled check or credit card statement showing the Subscriber Class Member's payment of the Balance Bill for the Partially Allowed Claim(s);

ii.      a receipt showing payment of the Balance Bill(s) together with an "Explanation of Benefits" or other document showing Aetna's reimbursement for the Partially Allowed Claim(s); or

iii.     the Out-of-Network Health Care Provider's or Out-of-Network Health Care Provider Group's business records showing the issuance and the Subscriber Class Member's payment of a Balance Bill for a Partially Allowed Claim.

"**Balance Bill**" as used in this Claim Form means, as defined in the Settlement, a written bill, invoice, or other demand for payment from a provider or provider's representative seeking payment from a Plan Member for the difference between a provider's billed charge and the Company's Allowed Amount for a Covered Service or Supply.  A Balance Bill does not include a bill for any other amounts, such as Denied Claims, co-insurance, deductibles, and coordination of benefits.  Under this Agreement, a Balance Bill includes any written bill for this amount regardless of when or how it is presented to the Plan Member, including a bill for the entire billed charge that the provider presented to the Plan Member in person at the time of the Covered Service or Supply, as well as a bill that the provider sent to the Plan Member by mail or other means after reimbursement of the Allowed Amount for the Covered Service or Supply by Company.

# EXHIBIT B

| | | |
|---|---|---|
| **Must be Postmarked On or Before Xxxxxxxxx xx, 201x** | ***In re Aetna UCR Litigation*** **Master Docket No. 07-3541(SRC)(PS))** <u>**U.S. District Court for the District of New Jersey**</u> | For Official Use Only |

## PROVIDER CLAIM FORM

**You should read the Notice of Proposed Settlement of Class Action and Final Settlement Hearing before completing this form.**

If you wish to submit a claim as a Provider Class Member under the Settlement, complete this form and mail it to the address below.  Make sure to complete all required sections and sign the end of the claim form.  For more information about this Settlement, please consult the Settlement Agreement and/or Settlement Notice (both of which are available in the Court's file or at www. _____.com).

<u>*Please mail your claim to:*</u>  *In re  Aetna UCR Litigation*
c/o XXXXXXXXXX
P.O. Box XXXXX
XXXXXXXXXXXXXXXXXXX

**A claimant may select <u>one</u> of the following two options.  Please check <u>one</u> of the following boxes:**

☐   <u>**Option 1**</u>:   I would like to make a claim from the General Settlement Fund.

If you check this box please complete Section A of the Claim Form. You do not need to complete Section B and you do not need to provide any Supporting Documentation. You are entitled to receive up to $40 for each year you provided Covered Services or Supplies as an Out-of-Network Provider or Out-of-Network Provider Group which resulted in a Partially Allowed Claim, subject to a pro rata reduction under the terms of the Settlement Agreement.

☐   <u>**Option 2**</u>:   I would like to make a claim from the Provider Settlement Fund.

If you check this box please complete all sections (Sections A and B) of the Claim Form and provide the Supporting Documentation, discussed below.   You are entitled to receive up to 5% of the Allowed Amount (or up to 3% for certain claims) on each valid Partially Allowed Claim for which you provide the necessary Supporting Documentation, as described below, subject to a pro rata reduction under the terms of the Settlement Agreement.

## <u>Section A (Required for All Provider Claimants – Options 1 and 2)</u>

Provider/Claimant's Name  _____

Provider/Claimant's Tax Identification Number _____

Street Address (where payments should be sent): _____

City: _____ State: _____ Zip Code: _____

Telephone: _____ Fax: _____

E-Mail: _____

Are you submitting a claim as (please check one of the following):

[ ]  An individual Out-of-Network Provider?  OR

[ ]  An Out-of-Network Provider Group?  If you are submitting on behalf of a group, please answer the following:

    (1)  Provide the name of the group here: _____

    (2)  Provide your title for the group here:  _____
    (by signing this form you represent that you have authority to submit this claim on behalf of the group)

2

## **Section A** (continued)

Circle all years that you were Out-Of-Network with Aetna and provided Covered Services Or Supplies to Aetna Plan Members, where those services resulted in a Partially Allowed Claim (*i.e.*, the Allowed Amount was less than the Billed Charge but more than $0).

2003

2004

2005

2006

2007

2008

2009

2010

2011

2012

**By executing this Claim Form, I confirm that Provider/Claimant is bound by all provisions of the Settlement Agreement, including the Release contained in the Settlement Agreement.  In addition, I declare under penalty of perjury that the information that I provided in this claim form (including any attachments) is true and correct.**

Signature: _____        Date: _____

3

<u>**Section B**</u> **(Required Only For Providers Claiming Under Provider Settlement Fund – Option 2 Only)**

**Please complete the following chart and provide all required Supporting Documentation (see additional instructions regarding Supporting Documentation on the next page):**

|  | CPT Code, HCPCS Code, Or Other Description Of The Covered Service Or Supply | Date Of Service Or Purchase Of Supply | Name Of Member | Original Billed Amount For Covered Service Or Supply | Allowed Amount For Service Or Supply | Attestation of Assignment from Member | Any Payment Amounts Received For The Partially Allowed Claim And The Source Of The Payment | Amount of Balance Bill Sent To The Member | Whether Any Payment Of Balance Bill Was Received Or Promised |
|---|---|---|---|---|---|---|---|---|---|
| **Partially Allowed Claim 1** |  |  |  |  |  |  |  |  |  |
| **Partially Allowed Claim 2** |  |  |  |  |  |  |  |  |  |
| **Partially Allowed Claim 3** |  |  |  |  |  |  |  |  |  |
| **Partially Allowed Claim 4** |  |  |  |  |  |  |  |  |  |
| **Partially Allowed Claim 5** |  |  |  |  |  |  |  |  |  |

You may attach additional sheets as necessary.

**NOTE:  The *aggregate* amount of Balance Bills included in your claim against the Provider Settlement Fund must exceed $750 for individual Out-of-Network Providers and $1000 for Out-of-Network Provider Groups.  Any submissions involving less than these amounts will not be considered eligible for reimbursement from the Provider Settlement Fund and no payment will be issued.  Provider Settlement Claims declared ineligible will be considered for eligibility under the General Settlement Fund.**

## <u>Section B</u> (continued)

**Supporting Documentation Required: For each Partially Allowed Claim that you list, please provide the necessary Supporting Documentation showing that you had an Assignment (as defined in the Settlement Agreement), that you sent a Balance Bill to the Member, and that you were not paid in full on the Balance Bill.  <u>Without the necessary Supporting Documentation, your claim will not be valid.</u>**

Valid Supporting Documentation

i.        Documentation showing that the Provider had an Assignment from an Aetna Plan Member.  The existence of an Assignment can be shown either by (a) an attestation under penalty of perjury from the Provider that an Assignment exists, as set forth in the table above, as long as that attestation is supported by information contained in the Company's claim systems that will be made available to the Settlement Administrator; or (b) in the alternative, a copy of the Assignment itself from the Provider's records reflecting the Aetna Plan Member's signature.

ii.       Documentation demonstrating that a Balance Bill was sent to the Aetna Plan Member prior to the Preliminary Approval Date relating to the Partially Allowed Claim.  Documentation showing bills for any amounts other than the difference between the Partially Allowed Amount and the Billed Charge, such as Denied Claims, coinsurance, deductibles, or coordination of benefits, is not valid.   In addition, documentation showing an unpaid amount, without also proving it was billed to the Plan Member, is not valid.

iii.      Documentation showing that the Balance Bill was not paid in whole or in part.  Valid supporting documentation includes documentation from practice management systems or accounting records showing that the Balance Bill remains unpaid.  Documentation for outstanding bills for any amounts other than the difference between the Partially Allowed Amount and the Billed Charge, such as Denied Claims, coinsurance, deductibles, or coordination of benefits, is not valid.

"**Balance Bill**" as used in this Claim Form means, as defined in the Settlement, a written bill, invoice, or other demand for payment from a Provider or Provider's representative seeking payment from a Plan Member for the difference between a Provider's billed charge and the Company's Allowed Amount for a Covered Service or Supply.  A Balance Bill does not include a bill for any other amounts, such as Denied Claims, co-insurance, deductibles, and coordination of benefits.  A Balance Bill includes any written bill for this amount regardless of when or how it is presented to the Plan Member, including a bill for the entire billed charge that the provider presented to the Plan Member in person at the time of the Covered Service or Supply, as well as a bill that the Provider sent to the Plan Member by mail or other means after reimbursement of the Allowed Amount for the Covered Service or Supply by Company.

# EXHIBIT C

**Settlement Class Counsel**

James E. Cecchi
Lindsey Taylor
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone:  (973) 994-1700
Fax:    (973) 994-1744
email:  jcecchi@carellabyrne.com

**Provider Class Counsel:**

D. Brian Hufford
Robert J. Axelrod
POMERANTZ  GROSSMAN HUFFORD DAHLSTROM & GROSS LLP
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Fax:    (212) 661-1373
email:  dbhufford@pomlaw.com; rjaxelrod@pomlaw.com
Executive Committee Chair

Edith M. Kallas
Joe R. Whatley, Jr.
WHATLEY KALLAS, LLC
380 Madison Avenue, 23rd Floor
New York, NY 10017
Telephone:  (212) 447-7060
Fax:    (800) 922-4851
email:  ekallas@whatleykallas.com; jwhatley@whatleykallas.com

Andrew S. Friedman
BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
2901 N. Central Avenue, Suite #1000
Phoenix, AZ 85012
Phone: (602) 274-1100
Fax: (602) 274-1199
email:  afriedman@bffb.com

Christopher P. Ridout
RIDOUT & LYON LLP
555 East Ocean Boulevard, Suite 500
Long Beach, California 90802
Phone:  (562) 216-7380

Fax:  (562) 216-7385
email: c.rideout@rideoutlyonlaw.com

**Subscriber Class Counsel:**

Stephen A. Weiss
Diogenes P. Kekatos
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, New York 10005
Telephone:  (212) 584-0700
Fax:  (212) 584-0799
email:  sweiss@seegerweiss.com

David R. Scott
Christopher M. Burke
Joseph P. Guglielmo
SCOTT + SCOTT LLP
405 Lexington Ave, 40th Floor
New York, New York 10010
Telephone:  (212) 223-6444
Fax :   (212) 223-6334
email :  jguglielmo@scott-scott.com

Raymond R. Boucher
KIESEL BOUCHER LARSON
8648 Wilshire Blvd.
Beverly Hills, California 90211
(310) 854-4444
boucher@kbla.com

H. Tim Hoffman
Hoffman & Lazear
180 Grand Avenue, Suite 1550
Oakland, California 94612
510-763-5700
hth@hoffmanandlazear.com

**EXHIBIT D**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: AETNA UCR LITIGATION, | Master File No. 07-3541(SRC)(PS) |
| | MDL NO. 2020 |
| This Document Relates To: ALL CASES | |
| | **ORDER  PRELIMINARILY CERTIFYING SETTLEMENT CLASSES, GRANTING PRELIMINARY APPROVAL OF SETTLEMENT, AND <u>APPROVING CLASS NOTICE</u>** |

THIS MATTER having been opened to the Court by Settlement Class Counsel (on behalf of the Representative Plaintiffs) and by the Company's Counsel (on behalf of the Company), by way of their joint motion for preliminary approval of the proposed Settlement in the above Actions;

WHEREAS, the Court having reviewed and considered the joint motion for preliminary approval and supporting materials filed by Settlement Class Counsel and the Company's Counsel, and having also reviewed the extensive Court file in this Action; and

WHEREAS, this Court has fully considered the record and the requirements of law; and good cause appearing;

IT IS THIS  ____  day of December, 2012

ORDERED that the Settlement (including all terms of the Settlement Agreement and exhibits thereto) is hereby PRELIMINARILY APPROVED.  The Court further finds and orders as follows.

1.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331, and venue is proper in this district.

2.      The Court has personal jurisdiction over the Representative Plaintiffs, Settlement Class Members, and the Company.

3.      The Settlement was the result of the parties' good-faith negotiations.  The Settlement was entered into by experienced counsel and only after extensive arm's-length negotiations with the aid of an experienced mediator.  The Settlement Agreement is not the result of collusion.

4.      The extensive proceedings that occurred before the Parties reached the Settlement Agreement gave counsel opportunity to adequately assess this case's strengths and weaknesses— and thus to structure the Settlement in a way that adequately accounts for those strengths and weaknesses.

5.      The Settlement falls well within the range of reason.  The Settlement has no obvious deficiencies.  The Proposed Settlement does not unreasonably favor the Representative Plaintiffs or any segment of either of the Settlement Classes.

6.      Because the Settlement meets the standards for preliminary approval, the Court preliminarily approves all terms of the Settlement, including the Settlement Agreement and all of its exhibits.

7.      The Court finds, for settlement purposes only, that all requirements of Fed. R. Civ. P. 23(a) and (b)(3) have been satisfied.  The Court certifies two Settlement Classes, as follows:

> All Persons and entities who, at any time from June 3, 2003 through the Preliminary Approval Date, (i) were Out-of-Network Health Care Providers[1] or Out-of-Network Health Care Provider Groups[2]; (ii) provided Covered Services or

---

[1]  All capitalized terms that are not defined in this Order are defined in the Settlement Agreement, and those definitions are adopted and apply herein.

[2]  "Out-Of-Network Health Care Provider Group" means a corporation, partnership, or other distinct legal entity that did not have a valid written contract with the Company to provide

Supplies to Plan Members; and (iii) whose resulting claims for reimbursement included Partially Allowed Claims (the "Provider Class")[3].

All Persons who, at any time from March 1, 2001 through the Preliminary Approval Date, (i) were Plan Members[4]; (ii) received a Covered Service or Supply from an Out-of-Network Health Care Provider or Out-of-Network Health Care Provider Group; and (iii) whose resulting claims for reimbursement included Partially Allowed Claims (the "Subscriber Class").

Excluded from the Settlement Classes are the Company and its affiliates, assignees, and successors-in-interest, and their officers, directors, and employees; any Judge who presides or has presided over this litigation and/or its constituent actions, together with his/her immediate family members and any other individual residing in the Judge's household; individuals and entities that opted-out of the Settlement in accordance with the procedures approved by this Court; and the United States and/or State governments and their agencies and departments.

8.      The Court conditionally certifies the proposed Settlement Classes, and finds that the requirements of Rule 23(a) are satisfied, for settlement purposes only, as follows:

(a)      Pursuant to Fed. R. Civ. P. 23(a)(1), the members of both Settlement Classes are so numerous that joinder of all members is impracticable.

---

Covered Services or Supplies to Plan Members when it provided or billed for Covered Services or Supplies to a Plan Member.  An Out-Of-Network Facility is also considered an Out-Of-Network Health Care Provider Group, but only to the extent that: (a) the bills were submitted by the Out-Of-Network Facility for Covered Services or Supplies provided by an Out-Of-Network Health Care Provider; or (b) (i) the Allowed Amount for the Out-Of-Network Facility's fees or charges for specific Covered Services or Supplies was based on the Ingenix Databases and (ii) those Covered Services or Supplies were provided to a Plan Member whose Plan was sitused or based in the State of New Jersey.

[3]  "Partially Allowed Claim" means any claim line for a Covered Service or Supply provided to a Plan Member that is not a Denied Claim and for which the Allowed Amount is less than the amount billed by the provider.  Partially Allowed Claims must relate to services provided to a Plan Member by an Out-Of-Network Provider or an Out-Of-Network Provider Group.

[4]  "Plan Member" means an individual enrolled in or covered by a Plan insured or administered by the Company.

(b)     Pursuant to Fed. R. Civ. P. 23(a)(2) and 23(c)(1)(B), the Court determines that there are common issues of law and fact for both Settlement Classes as follows:

i.      Whether Aetna's use of the Ingenix databases or its other challenged reimbursement practices with respect to out-of-network services and supplies resulted in artificially reduced payments to Settlement Class Members; and

ii.     Whether Aetna's use of the Ingenix databases or its other challenged reimbursement practices with respect to out-of-network services and supplies violated ERISA, RICO, or the Sherman Act.

(c)     Pursuant to Fed. R. Civ. P. 23(a)(3), the claims of the Representative Plaintiffs are typical of the claims of the Settlement Classes that they represent in that the Representative Plaintiffs allege that they were under-reimbursed or underpaid for out-of-network services and supplies because of the Company's use of Ingenix and other challenged reimbursement practices.

i.      The Court hereby appoints the following Representative Plaintiffs as class representatives for the Subscriber Settlement Class: _____

ii.     The Court hereby appoints the following Representative Plaintiffs as class representatives for the Provider Settlement Class: _____

(d)     Pursuant to Fed. R. Civ. P. 23(a)(4), the Representative Plaintiffs will fairly and adequately protect and represent the interests of all members of the Settlement Classes, and the interests of the Representative Plaintiffs are not antagonistic to those of

the Settlement Classes.  The Representative Plaintiffs are represented by counsel who are experienced and competent in the prosecution of complex class action litigation.

9.      The Court further finds that the requirements of Rule 23(b)(3) are satisfied, as follows:

(a)      Questions of law and fact common to the members of the Settlement Classes, as described above, predominate over questions that may affect only individual members; and

(b)      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

10.      The Court finds that the content of the Settlement Notices attached as Exhibits F and G to the Settlement Agreement, and the Claim Forms attached as Exhibits A and B to the Settlement Agreement, satisfy the requirements of Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(1), and due process and accordingly approves those Settlement Notices and Claim Forms.

11.      This Court further approves the proposed methods for giving notice of the Settlement to the Members of the Settlement Classes, as reflected in the Settlement Agreement and the joint motion for preliminary approval.  The Court has reviewed the notices attached as exhibits to the Settlement, and the notice procedures, and finds that the Members of the Settlement Classes will receive the best notice practicable under the circumstances.  The Court specifically approves the Parties' proposal to use reasonable diligence to identify potential class members and an associated address in the Company's records, and their proposal to direct the Settlement Administrator to use this information to mail absent class members notice via first class mail.  This Court also approves the Parties' proposal to publish the notice no more than three (3) times in the legal notices section in USA Today and any other sources identified by

5

class counsel and approved by this Court.  The Court also approves payment of notice costs as provided in the Settlement.  The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy the requirements of Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(1), and due process.

12.     The Court preliminarily finds that the following counsel fairly and adequately represent the interests of the Settlement Classes and hereby appoints James E. Cecchi as Settlement Class Counsel for both Settlement Classes pursuant to Rule 23(g).  The Court also appoints D. Brian Hufford and Robert J. Axelrod as Provider Class Counsel, along with Joe R. Whatley, Jr., Edith Kallas, Andrew S. Friedman, and Christopher P. Ridout.  The Court hereby appoints Stephen A. Weiss, Diogenes P. Kekatos, David R. Scott, Christopher M. Burke, Joseph P. Guglielmo, Raymond R. Boucher, and H. Tim Hoffman as Subscriber Class Counsel.

13.     The Court finds that the settlement fund escrows will be established pursuant to the Settlement Agreement (the "Settlement Funds") are "qualified settlement funds" as defined by Section 1.468B-1(a) of the Treasury Regulations in that they satisfy each of the following requirements: (a) the Settlement Funds are established pursuant to an order of this Court and are subject to the continuing jurisdiction of this Court; (b) the Settlement Funds are established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and (c) the assets of the Settlement Funds are segregated from other assets of the Company, the transferor, or payments to the Settlement Funds.

14.     In addition, under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that the Settlement Funds meet the above requirements of this Order approving the establishment of the Settlement Funds subject to the

continued jurisdiction of this Court, and the Company and Claims Administrator may jointly elect to treat the Settlement Funds as coming into existence as a "qualified settlement fund," on the later of (1) the date the Settlement Fund met the requirements of paragraph 13 of this Order or (2) January 1 of the calendar year in which all requirements of paragraph 13 of this Order are met. If such a relation-back election is made, the assets held by the Settlement Funds on such date shall be treated as having been transferred to the Settlement Funds on that date.

15.     The Court directs that pursuant to Fed. R. Civ. P. 23(e)(2) a hearing will be held on_____, to consider final approval of the Settlement (the "Final Approval Hearing" or "Fairness Hearing") including, but not limited to, the following issues:  (a) whether the Subscriber Class and Provider Class should be certified, for settlement purposes only; (b) the fairness, reasonableness, and adequacy of the Settlement; (c) Class Counsel's application for an award of attorneys' fees and costs; and (d) approval of an award of service payments to the Representative Plaintiffs.  The Final Approval Hearing may be adjourned by the Court and the Court may address the matters set out above, including final approval of the Settlement, without further notice to the Settlement Classes other than notice that may be posted at the Court and on the Court's and Claims Administrator's websites.

16.     Persons wishing to object to the proposed Settlement and/or be heard at the Fairness Hearing shall follow the following procedures:

(a)     To object, a member of the Settlement Classes, individually or through counsel, must file a written objection with the Clerk, and must also serve a copy thereof upon the following, by _____:

**Settlement Class Counsel**

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO

7

5 Becker Farm Road
Roseland, New Jersey 07068
Telephone:  (973) 994-1700
Fax:     (973) 994-1744
email:  jcecchi@carellabyrne.com

**Provider Class Counsel:**

D. Brian Hufford
Robert J. Axelrod
POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Fax:     (212) 661-1373
email:  dbhufford@pomlaw.com
          rjaxelrod@pomlaw.com

Edith M. Kallas
Joe R. Whatley, Jr.
WHATLEY KALLAS, LLC
380 Madison Avenue, 23rd Floor
New York, NY 10017
Telephone:  (212) 447-7060
Fax:     (212) 447-7077
email:  ekallas@whatleykallas.com
          jwhatley@whatleykallas.com

**Subscriber Class Counsel:**

Stephen A. Weiss
SEEGER WEISS LLP
One William Street
New York, New York 10004
Telephone:  (212) 584-0700
Fax:  (212) 584-0799
email:  sweiss@seegerweiss.com

Christopher Burke
Joseph P. Guglielmo
SCOTT + SCOTT LLP
29 West 57th Street
New York, New York 10019
Telephone:  (212) 223-6444
Fax :    (212) 223-6334
email :  jguglielmo@scott-scott.com

8

**Defendants**

Liza M. Walsh
CONNELL FOLEY
85 Livingston Avenue
Roseland, New Jersey 07068
Telephone:  (973) 535-0500
Fax:     (973) 535-9217
email:  lwalsh@connellfoley.com

Richard J. Doren
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:  213-229-7038
Facsimile:  213-229-6038

Geoffrey M. Sigler
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, D.C.  20036
Telephone:  202-955-8500
Facsimile:  202-530-9635

(b)     Any member of the Settlement Classes who files and serves a written objection by the deadline stated in paragraph 21 of this Order may also appear at the Fairness Hearing, to the extent permitted by the Court, either in person or through an attorney hired at the Settlement Class member's expense, to object to the fairness, reasonableness or adequacy of the proposed Settlement.  Any attorney representing a member of one of the Settlement Classes for the purpose of making objections must also file a Notice of Appearance with the Clerk, and must also serve copies by mail to the counsel listed above.

(c)     Members of the Settlement Classes or their attorneys intending to appear at the Fairness Hearing must, by _____, serve on Settlement Class Counsel and counsel for Defendants, and file with the Clerk, a notice of Intent to Object, which includes: (i) the name, address and telephone number of the Settlement Class member

9

and, if applicable, the name, address and telephone number of the Settlement Class member's attorney (who must file a Notice of Appearance); (ii) the objection, including any papers in support thereof; and (iii) the name and address of any witnesses to be presented at the Fairness Hearing, together with a statement as to the matters on which they wish to testify and a summary of the proposed testimony.

(d)     Any member of the Settlement Classes who does not timely file and serve a Notice of Intent to Object, and any witness not identified in the Notice of Intent to Object, shall not be permitted to appear at the Fairness hearing, except for good cause shown.

17.     The Court hereby directs the Parties to petition this Court for appointment of a Settlement Administrator within 14 days of the entry of this Order.

18.     Members of either Settlement Class who elect not to participate in the Settlement (i.e., "opt-out") must submit a written request for exclusion that is postmarked no later than ____, 201_.  The Settlement Administrator shall compile a list of all Opt-Outs to be filed with the Court no later than the Fairness Hearing.

19.     Any member of the Settlement Classes failing to properly and timely mail such a written notice of exclusion shall be automatically included in one of the Settlement Classes and shall be bound by all the terms and provisions of the Settlement Agreement and the Settlement, including the Release, and Order of Final Judgment.  The Court shall resolve any disputes concerning the Opt-Out provisions of the Settlement Agreement.

20.     In order to participate in the Settlement and receive a distribution from the Settlement Funds, members of the Settlement Classes must mail to the Settlement Administrator a properly executed Claim Form in substantially the form contained in Exhibits A or B to the

Settlement Agreement, as applicable.  To be effective, any such Claim Form must be postmarked

no later than  _____  , and must otherwise comply with the procedures and instructions set forth

in the Claim Form.

21.     The following are the deadlines for the following events:

**EVENT**                                                                                    **DATE**

Notice of Class Action Settlement and Claim Form
Mailed and Posted on Internet

Notice of Class Action Settlement to be
Published in National Media

Postmark/Filing Deadline for Requests for Exclusions,
and Objections

Service/Filing Notice of Appearance at Fairness Hearing

Affidavit of Compliance with Notice Requirements
and Report of Exclusions and Objections

Filing Motion for Final Approval, Attorney Fees,
Reimbursement of Expenses, and Service Awards
To be Filed by Class Counsel

Fairness Hearing

22.     To the extent not otherwise defined herein, all defined terms in this order shall

have the meaning assigned in the Settlement Agreement.

23.     In the event that the Settlement does not become effective for any reason, this

Preliminary Approval Order and Judgment shall be rendered null and shall be vacated, and all

orders entered and released delivered in connection herewith shall be null and void to the extent

provided by and in accordance with the Agreement.  If the Settlement does not become effective,

the Company and any other Released Persons shall have retained any and all of their current

defenses and arguments thereto (including but not limited to arguments that the requirements of

11

Fed. R. Civ. P. 23(a) and (b)(3) are not satisfied for purposes of continued litigation).  These actions shall thereupon revert immediately to their respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

24.     Nothing in this Preliminary Approval Order and Judgment, the Settlement Agreement, or any documents or statements related thereto, is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the Company, or an admission of the propriety of class certification for any purposes other than for purposes of the current proposed Settlement.

25.     All other proceedings in the Actions are hereby stayed until such time as the Court renders a final decision regarding approval of the proposed Settlement.  No discovery with regarding to any of these Actions, or with respect to this Settlement, shall be permitted other than as may be directed by the Court upon a proper showing by the party seeking such discovery by motion properly noticed and served in accordance with this Court's Local Rules.  In addition, pending a determination on final approval of the Settlement, all Settlement Class Members are hereby barred and enjoined from commencing or prosecuting any action involving any Released Claims.

26.     The Court shall retain continuing jurisdiction over the Action, the Parties and the Settlement Classes, and the administration, enforcement, and interpretation of the Settlement. Any disputes or controversies arising with respect to the Settlement shall be presented by motion to the Court, provided, however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights under Paragraphs 23 and 25 above.

_____

STANLEY R. CHESLER, U.S.D.J.

**EXHIBIT E**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: AETNA UCR LITIGATION, | Master File No. 07-3541(SRC)(PS) |
| This Document Relates To: ALL CASES | MDL NO. 2020 |
| | **FINAL APPROVAL ORDER AND JUDGMENT** |

THIS MATTER having been opened to the Court by Settlement Class Counsel (on behalf of the Representative Plaintiffs) and by the Company's Counsel (on behalf of the Company), by way of their joint motion for final approval of the proposed Settlement in the above Actions;

WHEREAS, this Court having previously entered an order preliminarily certifying the proposed Settlement Classes and approving the proposed Settlement, and ordering that notices be sent to the Settlement Classes in accordance with the terms of the Settlement and this Court's preliminary approval order dated _____;

WHEREAS, the Court having reviewed and considered all submissions relating to the Settlement, including the joint motion for final approval and supporting materials filed by Settlement Class Counsel and the Company's Counsel, as well as all filings by other persons regarding the proposed Settlement, and having also reviewed the extensive Court file in the Actions; and

WHEREAS, this Court has fully considered the record and the requirements of law; and good cause appearing;

IT IS THIS _____ day of _____, 2013

ORDERED that the Settlement (including all terms of the Settlement Agreement and exhibits thereto) is hereby APPROVED as fair, reasonable, and adequate.  The Court further finds and orders as follows.

1.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331, and venue is proper in this district.

2.      The Court has personal jurisdiction over the Representative Plaintiffs, Settlement Class Members, and the Company.

3.      This Court previously reviewed and approved the proposed methods for giving notice of the Settlement to Settlement Class Members.  The Court has again reviewed the notice procedures and finds that Settlement Class Members received the best notice practicable under the circumstances.  The Court specifically finds that the Settlement Notices attached as Exhibits _____ to the Settlement Agreement, and the Claim Form attached as Exhibit ___ to the Settlement Agreement, satisfied the requirements of Rule 23(c)(2), Rule 23(e)(1), and due process.

4.      The Court finds, for settlement purposes only, that all requirements of Fed. R. Civ. P. 23(a) and (b)(3) have been satisfied.  The Court certifies two Settlement Classes, as follows:

> All Persons and entities who, at any time from June 3, 2003 through the Preliminary Approval Date, (i) were Out-of-Network Health Care Providers[1] or Out-of-Network Health Care Provider Groups[2]; (ii) provided Covered Services or

---

[1]  All capitalized terms that are not defined in this Order are defined in the Settlement Agreement, and those definitions are adopted and apply herein.

[2]  "Out-Of-Network Health Care Provider Group" means a corporation, partnership, or other distinct legal entity that did not have a valid written contract with the Company to provide Covered Services or Supplies to Plan Members when it provided or billed for Covered Services or Supplies to a Plan Member.  An Out-Of-Network Facility is also considered an Out-Of-Network Health Care Provider Group, but only to the extent that: (a) the bills were submitted by the Out-Of-Network Facility for Covered Services or Supplies provided by an Out-Of-Network Health Care Provider; or (b) (i) the Allowed Amount for the Out-Of-Network Facility's fees or charges for specific Covered Services or Supplies was based on the Ingenix Databases and (ii) those Covered Services or Supplies were provided to a Plan Member whose Plan was sitused or based in the State of New Jersey.

Supplies to Plan Members; and (iii) whose resulting claims for reimbursement included Partially Allowed Claims (the "Provider Class").[3]

All Persons who, at any time from March 1, 2001 through the Preliminary Approval Date, (i) were Plan Members[4]; (ii) received a Covered Service or Supply from an Out-of-Network Health Care Provider or Out-of-Network Health Care Provider Group; and (iii) whose resulting claims for reimbursement included Partially Allowed Claims (the "Subscriber Class").

Excluded from the Settlement Classes are the Company and its affiliates, assignees, and successors-in-interest, and their officers, directors, and employees; any Judge who presides or has presided over this litigation and/or its constituent actions, together with his/her immediate family members and any other individual residing in the Judge's household; individuals and entities that opted-out of the Settlement in accordance with the procedures approved by this Court; and the United States and/or State governments and their agencies and departments.

5.      The Court finds that the requirements of Rule 23(a) are satisfied for settlement purposes only, as follows:

(a)      Pursuant to Fed. R. Civ. P. 23(a)(1), the members of both Settlement Classes are so numerous that joinder of all members is impracticable.

(b)      Pursuant to Fed. R. Civ. P. 23(a)(2) and 23(c)(1)(B), the Court determines that there are common issues of law and fact for both Settlement Classes as follows:

i.      Whether Aetna's use of the Ingenix databases or its other challenged reimbursement practices with respect to out-of-network services and supplies resulted in artificially reduced payments to Settlement Class Members; and

---

[3]   "Partially Allowed Claim" means any claim line for a Covered Service or Supply provided to a Plan Member that is not a Denied Claim and for which the Allowed Amount is less than the amount billed by the provider. Partially Allowed Claims must relate to services provided to a Plan Member by an Out-Of-Network Provider or an Out-Of-Network Provider Group.

[4]   "Plan Member" means an individual enrolled in or covered by a Plan insured or administered by the Company.

3

ii.     Whether Aetna's use of the Ingenix databases or its other challenged reimbursement practices with respect to out-of-network services and supplies violated ERISA, RICO, or the Sherman Act.

(c)     Pursuant to Fed. R. Civ. P. 23(a)(3), the claims of the Representative Plaintiffs are typical of the claims of the Settlement Classes that they represent in that the Representative Plaintiffs allege that they were under-reimbursed or underpaid for out-of-network services and supplies because of the Company's use of Ingenix and other challenged reimbursement practices.

(d)     Pursuant to Fed. R. Civ. P. 23(a)(4), the Representative Plaintiffs will fairly and adequately protect and represent the interests of all members of the Settlement Classes, and the interests of the Representative Plaintiffs are not antagonistic to those of the Settlement Classes.  The Representative Plaintiffs are represented by counsel who are experienced and competent in the prosecution of complex class action litigation.

6.     The Court further finds that the requirements of Rule 23(b)(3) are satisfied, as follows:

(a)     Questions of law and fact common to the members of the Settlement Classes, as described above predominate over questions that may affect only individual members; and

(b)     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

7.     The Court appoints the following as class representatives of the Subscriber Class:

8.     The Court appoints the following as class representatives of the Provider Class:

9.     The Court hereby appoints James E. Cecchi as Settlement Class Counsel for both Settlement Classes pursuant to Rule 23(g).  The Court also appoints D. Brian Hufford and Robert

4

J. Axelrod as Chairs of Plaintiffs' Executive Committee and as Provider Class Counsel, along with Joe R. Whatley, Jr., Edith Kallas, Andrew S. Friedman, and Christopher Ridout. The Court hereby appoints Stephen A. Weiss, Diogenes P. Kekatos, David R. Scott, Christopher M. Burke, Joseph P. Guglielmo, Raymond R. Boucher, and H. Tim Hoffman as Subscriber Class Counsel. In making these appointments, the Court finds that each of these lawyers can, have and will fairly and adequately represent the interests of the putative Settlement Classes.

10. A list of those Settlement Class Members who have timely opted out of the Settlement and who therefore are not bound by the Settlement Agreement has been submitted to the Court as Exhibit __ to _____. That list is incorporated by reference herein. All other Settlement Class Members and Settling Plaintiffs are subject to all provisions of the Settlement and this Court's orders entering the Settlement.

11. The Court finds that the Settlement was entered into at arm's length by experienced counsel and only after extensive arm's-length negotiations. The Settlement Agreement is not the result of collusion.

12. The Court has assessed the Settlement under the nine factors identified in Third Circuit precedent. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257–58 (3d Cir. 2009). It has also examined the additional factors identified in *In re Prudential Insurance Co. of America Sales Practices Litigation*, 143 F.3d 283, 323 (3d Cir. 1998). The Court finds that each *Girsh* factor, and each applicable *Prudential Insurance* factor, supports approval of the Settlement.

a. The complexity, expense, and likely duration of the litigation. This case presents complex factual and legal questions—including complex economic theories and damages calculations—that, absent settlement, would have to be resolved through extensive

proceedings for which the outcome is uncertain, including the pending motions to dismiss, contested class certification proceedings involving experts and an extensive factual record, *Daubert* challenges, summary judgment briefing, and a complicated, lengthy trial of any claims that would survive summary judgment.  An appeal would almost certainly follow any ruling on class certification, summary judgment, and/or trial, whatever its outcome, thereby further delaying this case's final resolution for a period of months or even years.  In addition, some Representative Plaintiffs (and many putative class members) are currently enjoined from asserting claims in this case based on a settlement arising out of previous litigation brought against the Company by medical doctors, *Shane v. Humana*, in the United States District Court for the Southern District of Florida.  While the plaintiffs dispute that these claims are released, this ruling and the provisions that it involve from that previous settlement could eliminate or reduce the ability of many physician plaintiffs and putative class members to establish liability in the Actions.

    b. <u>The reaction of the class to the settlement</u>. _____

    c. <u>The stage of the proceedings and the amount of discovery completed</u>. In the several years that these Actions have been pending, there has been extensive discovery. Discovery has included numerous depositions of fact witnesses, reports from multiple experts, and production of numerous documents and large amounts of data.  These proceedings represent years of sustained advocacy by counsel, which gave them a proper understanding of the case's merits before they negotiated the Settlement.

    d. <u>The risks of establishing liability and the risks of establishing damages</u>. Although Plaintiffs have sought a greater amount in damages in litigating this case than they are receiving under this Settlement, their methods for determining and calculations of their alleged

damages are vigorously disputed by Defendants.  Plaintiffs' ability to establish both liability and damages hinges in large part on expert testimony, which is admissible only if it meets the requirements of the Federal Rules of Evidence and *Daubert*.  Defendants' experts have submitted reports disputing the opinions and methods of Plaintiffs' experts.  Accordingly, without a settlement, the Court must resolve a "battle of the experts" that could result in exclusion of the principal evidence supporting the Plaintiffs' claims.  Plaintiffs also face other challenges in establishing liability or proving damages, such as Defendants' argument that it did not under-reimburse anyone for any reason, each Plaintiff needs to prove payment of a Balance Bill, issues regarding Assignments to providers, the exhaustion requirement, and other disputes about individualized injury and application of particular plan terms.  These factors make Plaintiffs' likelihood of success far from certain and favor settlement.

> e.  <u>The risks of maintaining class action status through trial</u>.  If this Court certified a class or classes under Rules 23(a) and (b) and the case proceeded to trial, the Court would still retain the authority to decertify or modify the class (or classes) during trial if they became unmanageable or class certification was otherwise found to be inappropriate.  Here, Defendants have indicated that they would preserve their objections to class certification and would contest certification if the case proceeded to trial, raising the possibility that the complex facts here could lead the Court to modify or decertify the class (or classes).  This factor therefore weighs in favor of approving the Settlement.

> f.  <u>The ability of the Defendants to withstand a greater judgment</u>.  The Third Circuit has explained that the mere fact that Defendants "could afford to pay more" in a judgment than they are agreeing to pay in a settlement "does not mean that [Defendants are] obligated to pay any more than what [the] class members are entitled to under the theory of

liability that existed at the time the settlement was reached." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004).   Thus, regardless of whether Defendants could withstand a judgment greater than the amount of the Settlement, the proposed Settlement of $60 million in guaranteed payments and up to $120 million in total potential payments represents a fair, reasonable, and adequate payment under the Class Members' theories of liability.

   g.  The range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation.  To assess the last two *Girsh* factors, the Third Circuit requires a comparison of "the amount of the proposed settlement" with "the present value of damages plaintiffs would likely recover if successful, appropriately discounted for the risks of not prevailing." *Warfarin*, 391 F.3d at 538.  Reference points for this analysis include estimates of the recoverable damages submitted by the parties' experts, *see id.*, and the relief sought in the complaint, *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 810 (3d Cir. 1995), *cert. denied sub nom., Gen. Motors Corp. v. French*, 516 U.S. 824 (1995).  Here, Plaintiffs' experts estimated damages to be in the range of $2.1 billion to $3.1 billion.   Defendants' experts estimated that those models are flawed, and that even correcting errors in Plaintiffs' models reduce those calculations to a small fraction of what Plaintiffs claim.  Defendants also have numerous substantial challenges to the appropriateness of any class damages calculation in this case.  The Settlement Fund of $60 million in guaranteed payments and up to $120 million in total potential payments represents a substantial recovery, in light of the amounts sought by Plaintiffs and the challenges to those calculations and methodologies by Defendants. *See Cendant*, 264 F.3d at 241 (noting that securities class actions typically involve recoveries that range from 1.6% to 14%); *see also In re AT&T Corp.*, 455 F.3d at 169 (agreeing that "the fact that a proposed settlement may only amount to a fraction of the

potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved" (internal quotation marks omitted)).

h. Applicable *Prudential Insurance* factors. The Third Circuit has also instructed district courts to consider, "when appropriate," other factors. *See* 148 F.3d at 323. The *Prudential Insurance* factors applicable here also support finally approving the Settlement Agreement. As discussed above, "discovery on the merits," 148 F.3d at 323, has been extensive and establishes that the Settlement represents an appropriate "assess[ment of] the probable outcome of a trial on the merits of liability and individual damages," *id.* The Settlement Agreement also gave members of the Settlement Classes "the right to opt out of the settlement." *Id.* The Settlement Agreement's "provisions for attorneys' fees are reasonable." *Id.* And "the procedure for processing individual claims under the settlement is fair and reasonable" and, based on the evidence presented during the Final Settlement Hearing, has resulted in the proper payment of appropriate claims. *Id.*

13.     In light of its analysis of the *Girsh* and *Prudential Insurance* factors, the Court finds that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Classes. The Court fully approves all terms of the Settlement, including the Settlement Agreement and all of its exhibits.

14.     To the extent not otherwise defined herein, all defined terms in this order shall have the meaning assigned in the Settlement Agreement.

15.     The terms of the Settlement Agreement and this Final Approval Order and Judgment are binding on the Settling Plaintiffs and all Settlement Class Members, as well as their heirs, executors and administrators, successors, assigns, and all other persons to the fullest extent provide for in the Settlement Agreement.

16. The Release set forth in Section 13 of the Settlement Agreement (and all definitions and other provisions of the Settlement regarding that Release) are incorporated herein by reference, and all Representative Plaintiffs, Settlement Class Members, and other Releasors shall be fully subject to all of these provisions.

17. The Releasors (including Representative Plaintiffs and all Settlement Class Members) are hereby permanently enjoined from: (a) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise) or receiving any benefits from any lawsuit, administrative or regulatory proceeding or order in any jurisdiction based on any or all Released Claims against one or more Released Persons; (b) instituting, organizing class members in, joining with class members in, amending a pleading in or soliciting the participation of class members in, any action, including but not limited to a purported class action, in any court against one or more Released Persons based on, involving, or incorporating, directly or indirectly, any or all Released Claims, and (c) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise) or receiving any benefits from any lawsuit, administrative or regulatory proceeding or order in any jurisdiction based on an allegation that Company's compliance with the provisions of the Settlement Agreement violates any legal right of any Settlement Class Member.

18. The terms of the Settlement Agreement and this Final Approval Order and Judgment shall have *res judicata*, collateral estoppel and all other preclusive effect in any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interests, or expenses which are based on or in any way related to any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability,

10

damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interest, or expenses which were asserted in the Actions.

19.     All claims against the Company in the Actions (which include all tag-along and related actions that are consolidated as part of MDL 2020) are hereby dismissed on the merits and with prejudice, without fees or costs to any party except as provided below.

20.     The Parties and their counsel are ordered to implement and to consummate the Settlement Agreement according to its terms and provisions.

21.     The Parties are authorized, without further approval from the Court, to agree to and to adopt such amendments, modifications and expansions of the Settlement Agreement and all exhibits attached hereto as (i) are consistent with the Final Approval Order and Judgment, and (ii) which do not limit the rights of Settlement Class Members under the Agreement.

22.     The Court finds that the settlement fund escrows established pursuant to the Settlement Agreement (the "Settlement Funds") are "qualified settlement funds" as defined by Section 1.468B-1(a) of the Treasury Regulations in that they satisfy each of the following requirements: (a) the Settlement Funds are established pursuant to an order of this Court and are subject to the continuing jurisdiction of this Court; (b) the Settlement Funds are established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and (c) the assets of the Settlement Funds are segregated from other assets of the Company, the transferor or payments to the Settlement Funds.

23.     In addition, under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that the Settlement Funds met the above requirements of this Order approving the establishment of the Settlement Funds subject to the

continued jurisdiction of this Court, and the Company and Claims Administrator may jointly elect to treat the Settlement Funds as coming into existence as a "qualified settlement fund," on the later of the date the Settlement Fund met the requirements of paragraphs _____ of this Order or January 1 of the calendar year in which all requirements of paragraph        of this Order are met.  If such a relation-back election is made, the assets held by the Settlement Funds on such date shall be treated as having been transferred to the Settlement Funds on that date.

24.     The Court hereby grants Settlement Class Counsel's request for an award of reasonable attorneys' fees in the total amount of $_____, and expenses in the amount of $_____ _____.  In addition, the Court makes a Service Award for each Representative Plaintiff in the amount of $           , to be paid from the General Settlement Fund.

25.     Nothing in this Final Approval Order and Judgment, the Settlement Agreement, or any documents or statements related thereto, is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the Company.

26.     In the event that the Settlement does not become effective according to the terms of the Agreement, this Final Approval Order and Judgment shall be rendered null and void as provided by the Settlement Agreement, shall be vacated and, all orders entered and released delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

27.     Without affecting the finality of the Final Approval Order and Judgment, the Court shall retain continuing jurisdiction over the Action, the Parties and the Settlement Classes, and the administration, enforcement, and interpretation of the Settlement.  Any disputes or controversies arising with respect to the Settlement shall be presented by motion to the Court,

provided, however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights under Paragraphs    and    above.

28.    There being no just reason to delay, the Clerk is directed to enter this Final Approval Order and Judgment forthwith, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.


_____

STANLEY R. CHESLER, U.S.D.J.

**Exhibit F**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

----------------------------------------------------------------X

IN RE:  AETNA UCR LITIGATION

_____

This Document Relates to:    ALL CASES

MDL NO. 2020

MASTER DOCKET NO.
07-3541

----------------------------------------------------------------X

**NOTICE OF PROPOSED SETTLEMENT OF**
**CLASS ACTION AND FINAL SETTLEMENT HEARING**

**A CLASS ACTION SETTLEMENT INVOLVING AETNA INC. AND ITS SUBSIDIARIES**
**AND AFFILIATES WILL PROVIDE CASH PAYMENTS TO AETNA PLAN MEMBERS WHO RECEIVED**
**SERVICES AND SUPPLIES FROM OUT-OF-NETWORK HEALTH CARE PROVIDERS AND GROUPS; AND OUT-OF-**
**NETWORK HEALTH CARE PROVIDERS AND GROUPS WHO PROVIDED THOSE SERVICES OR SUPPLIES**

**YOUR LEGAL RIGHTS ARE AFFECTED WHETHER OR NOT YOU ACT.  PLEASE READ THIS NOTICE**
**CAREFULLY.**

*A court authorized this Notice.  This is not a solicitation from a lawyer.*

- If you were or are:

    A "Subscriber," meaning Persons who, at any time from March 1, 2001 through the Preliminary Approval Date (i)
    were Aetna Plan Members; (ii) received a Covered Service or Supply from an Out-of-Network Health Care Provider or
    Out-of-Network Health Care Provider Group; and (iii) whose resulting claims for reimbursement included Partially
    Allowed Claims OR

    A "Provider," meaning Persons or entities who, at any time from June 3, 2003 through the Preliminary Approval Date,
    (i) were Out-of-Network Health Care Providers or Out-of-Network Health Care Provider Groups; (ii) provided Covered
    Services or Supplies to Aetna Plan Members; and (iii) whose resulting claims for reimbursement included Partially
    Allowed Claims

    you are a member of the Settlement Classes and may be eligible for a payment if you qualify and submit a valid Claim Form.

- An Out-of-Network Facility (which includes hospitals, ambulatory surgical centers and skilled nursing facilities) is an Out-of-
  Network Provider Group under the Settlement *if and only to the extent* that it has (a) bills submitted by the Out-Of-Network
  Facility for Covered Services or Supplies provided by an Out-Of-Network Health Care Provider; or (b) the Allowed Amount for
  the Out-Of-Network Facility's fees or charges for specific claims was based on an Ingenix database under a Plan that is based in
  New Jersey.

- The Ingenix Databases are the Prevailing Healthcare Charges System ("PHCS") database and the MDR Payment System database.

- The Aetna subsidiaries and affiliates included in this Settlement do not include Coventry Health Care, Inc.

**YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT**

| | |
|---|---|
| **SUBMIT A PROOF OF CLAIM FORM** | The way to get a payment if you qualify.  You must fill out and return the attached Claim Form (with any necessary supporting documentation) by first class mail, postmarked no later than _____. |
| **ASK TO BE EXCLUDED** | Get no payment.  The only option that allows you to individually sue Aetna over the claims resolved by this Settlement. |

| OBJECT | Write to the Court about why you do not agree with the Settlement. |
|---|---|
| GO TO A HEARING | The Final Settlement Hearing will be held on _____ at ___ a.m./p.m. at which time the federal court judge will make a final decision as to whether the Settlement is fair to all members of the Settlement Classes. If you wish, you may attend the hearing and ask to speak in Court about the Settlement. |
| DO NOTHING | Get no payment and give up your rights to sue Aetna over the claims resolved by this Settlement. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Settlement will resolve all claims against the Company (also referred to herein as "Aetna") as explained in the Settlement Agreement.  The Court in charge of this case still has to decide whether to approve the Settlement.  Payments will only be made if the Court approves the Settlement and any appeals are resolved.  Please be patient.

**BASIC INFORMATION**

1.  **WHY DID I RECEIVE THIS NOTICE?**

The United States District Court for the District of New Jersey authorized this Notice because you have a right to know about a proposed Settlement of the Actions, including the right to claim money, and about all of your options, before the Court decides to give "final approval" to the Settlement.  If the Court approves the Settlement, payment will be made to everyone who submits a valid claim form and qualifies.  This Notice explains the Actions, the Settlement, your legal rights, what benefits are available, who may be eligible for them, and how to get them.

Your rights may be affected by a proposed Settlement in the class action lawsuits consolidated under the case caption *In re Aetna UCR Litigation*, pending in the United States District Court for the District of New Jersey, Master Docket No. 07-3541 (the "Actions").  The Representative Plaintiffs have agreed to settle all claims against Aetna in the Actions in exchange for a Settlement involving payments by Aetna of up to $120,000,000, including a General Settlement Fund of $60 million and up to $60 million in additional monies that may be paid out to Settlement Class Members who submit valid claims.  The Court did not decide in favor of either side.  Rather, both sides agreed to settle all claims that were or could have been asserted against Aetna in the Actions in exchange for monetary consideration.  That way, the parties avoid the uncertainties and cost of a trial and possible appeal, and the affected members of the Settlement Classes who qualify will receive compensation.

The Court has scheduled a hearing to consider the fairness, reasonableness, and adequacy of the Settlement, to be held on _____ at ___: 00 a.m./p.m. at the United States Courthouse, United States District for the District of New Jersey, Martin Luther King, Jr. Federal Building and U.S. Courthouse, Room 5083, 50 Walnut Street, Newark, New Jersey (the "Final Settlement Hearing").

You may elect to opt-out of the Settlement Classes and the Settlement, as explained below.  You also have a right to object to the Settlement or to the application for attorneys' fees that counsel for the Settlement Classes intends to make to the Court, but only if you comply with the procedures described in this notice.  If you do not opt out of the Settlement Classes and the Court approves the Settlement, you will be entitled to receive the benefits of the Settlement, and you will be bound by the Settlement's provisions, including the release of claims against Aetna.  **Because your right to pursue certain types of claims against Aetna may be affected by the Settlement, you should read this notice carefully.**

2.  **WHAT IS THIS LITIGATION ABOUT?**

The Actions were brought against Aetna by the individual Subscriber and Provider Class Representative Plaintiffs, as well as a number of Associations.   Plaintiffs allege that Defendants provided insufficient reimbursement for Covered Out-of-Network Services or Supplies, including by:

- Using the Ingenix Databases in determining reimbursement for Covered Out-of-Network health benefits;

- using certain Out-of-Network reimbursement policies to reduce reimbursement amounts improperly for Covered Out-of-Network health benefits; and

- inadequately disclosing the use of the Ingenix Databases and their Out-of-Network reimbursement policies in determining reimbursement amounts for Covered Out-of-Network health benefits.

The Out-of-Network reimbursement policies include utilizing a percentage of Medicare, Fair Health, Average Wholesale Price (AWP), adjustments for co-surgeon charges, adjustments for multiple surgical procedures, and behavioral health tiering policies.

2

Plaintiffs allege that Defendants violated various statutes, including the Employee Retirement Income Security Act ("ERISA"), the Racketeer Influenced and Corrupt Organizations ("RICO") Act, the Sherman Antitrust Act, and other laws.  Defendants deny all of Plaintiffs' allegations.  **To obtain further information about the claims asserted in the Actions, you may review a copy of the consolidated amended complaint filed in the Actions from the website _____ . Certain other filings and orders from the Court are also available to you on this website.**

### III.      WHAT IS A CLASS ACTION, AND WHY IS THIS CASE A CLASS ACTION?

In a class action, under the federal rules, one or more people, called Class Representatives, sue on behalf of others with similar legal claims. All of these people together are called a Class or Class Members. One court resolves the issues for all Class Members, except for those who specifically ask to be excluded from the Class, since the claims that are alleged by the Class Representatives apply similarly to all Class Members.

These Actions were filed as class actions because the Representative Plaintiffs believed that Aetna's method of making Out-of-Network reimbursement determinations resulted in a number of Subscribers and Providers receiving less than they were entitled to, in violation of ERISA, the Sherman Antitrust Act, RICO, and other laws.  The Court preliminarily ordered that whether all members of the Settlement Classes have been under-reimbursed by Aetna's use of the Ingenix Databases and its other reimbursement policies represents a claim that should be treated on a class basis.

### IV.      WHY IS THERE A SETTLEMENT?

The Court did not decide in favor of either side.  Rather, both sides agreed to settle all claims that were or could have been asserted against Aetna in the Actions in exchange for monetary consideration.  That way, the parties avoid the uncertainties and cost of a trial and possible appeal, and the affected members of the Settlement Classes who qualify will receive compensation.

### V.       WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

In the Settlement Agreement, the individual Representative Plaintiffs agreed to settle all claims that were or could have been asserted against Aetna in exchange for monetary consideration.  **The terms of the Settlement Agreement are summarized in this notice, and a copy of the entire Settlement Agreement, dated _____, may be reviewed on the websites www._____.com or www.[claims administrator].com.**

      a.        **Settlement Consideration**

If the Settlement is finally approved by the Court, the Settlement Agreement provides for monetary benefits to be provided by Aetna to members of the Settlement Classes who have *not* opted-out of the settlement.

**1.  The General Settlement Fund.**  The Settlement establishes a General Settlement Fund in the amount of $60,000,000.  If the Settlement is finally approved by the Court, members of the Settlement Classes who submit timely and valid claims under this fund will be entitled to payments from the General Settlement Fund as described in the Settlement Agreement and Claim Form.  Various expenses, such as the costs of notice, claims administration, and attorneys' fees and expenses for Settlement Class Counsel, as well as incentive payments to the individual Representative Plaintiffs, also will be paid out of the General Settlement Fund.

**2.  Subscriber Settlement Fund.**  The Settlement establishes a Subscriber Settlement Fund in the amount of up to $40,000,000 to be paid to Subscriber Class Members who submit timely and valid Claims for reimbursement as described in the Settlement Agreement and Claim Form.

**3.  Provider Settlement Fund.**  The Settlement establishes a Provider Settlement Fund in the Amount of up to $20,000,000 to be paid to Provider Class Members who submit timely and valid Claims for reimbursement as described in the Settlement Agreement and Claim Form.

**4.  Treatment of Balances Remaining in Funds.**  In the event the General Settlement Fund is not exhausted after the payment of all claims for reimbursement, fees, and expenses described above, any remaining funds shall be allocated equally to the Subscriber and Provider Settlement Funds. However, if one Settlement Fund is exhausted and the other is not, the remaining funds from the General Settlement Fund will be allocated to the exhausted Settlement Fund.  In the event the Subscriber Settlement Fund is not exhausted after all claims have been paid, and if the eligible claims submitted to the Provider Settlement Fund exceed the amount allocated to it, up to $5,000,000 from the Subscriber Settlement Fund will be allocated to the Provider Settlement Fund. In the event the Provider Settlement Fund is not exhausted after all claims have been paid, and if the eligible claims submitted to the Subscriber Settlement Fund exceed the amount allocated to it, up to $5,000,000 from the Provider Settlement Fund will be allocated to the Subscriber Settlement Fund. If the Subscriber and/or Provider

Settlement Fund is not exhausted after all claims have been made, any leftover amounts in that Fund shall remain with Aetna and will not be paid out under the Settlement.

> **b.      The Release and Dismissal with Prejudice**

If the Settlement Agreement is finally approved, the Actions will be dismissed with prejudice as to Aetna.  In addition, Aetna will be released and discharged of any and all claims, up through the entry of the Preliminary Approval Order in this case, that are, were, or could have been asserted against Aetna based on or arising from the factual allegations made by Plaintiffs.  Members of the Settlement Classes will be barred from suing Aetna and the other released persons for claims that are covered by the releases.

**The release and covenant not to sue provisions of the Settlement Agreement affect your legal rights and you should review these provisions carefully.**

## VI.     HOW WILL THE SETTLEMENT FUNDS BE ALLOCATED

There are several terms that appear frequently in this section:

"Allowed Amount" means the amount Aetna determined to be eligible for reimbursement for a Plan Member's Covered Services or Supplies billed by an Out-of-Network Health Care Provider or Provider Group, before the application of co-insurance, deductibles, and coordination of benefits for coverage under another plan.

"Assignment" means a Plan Member's election to permit an Out-of-Network Health Care Provider or Provider Group to bill and receive reimbursement from Aetna directly.

"Balance Bill" means a demand for payment from an Out-of-Network Health Care Provider or Provider Group to a Plan Member for the difference between the Billed Charge and the Allowed Amount for a Covered Service or Supply.  It does not include a bill for Denied Claims, co-insurance, or deductibles.

"Billed Charge" means the amount billed to Aetna for a Covered Service or Supply by an Out-of-Network Health Care Provider or Provider Group.

"Denied Claim" means any claim line for which the Allowed Amount equals $0.  Denied Claims are not included in this Settlement.

"Out-Of-Network Health Care Provider" means any health care provider who did not have a valid written contract with Aetna to provide Covered Services or Supplies to Aetna Plan Members when the health care provider provided Covered Services or Supplies to a Plan Member.

"Out-Of-Network Health Care Provider Group" means a corporation, partnership, or other legal entity that did not have a valid written contract with Aetna to provide Covered Services or Supplies to Aetna Plan Members when it provided or billed for Covered Services or Supplies.  An Out-of-Network Facility is an Out-Of-Network Health Care Provider Group only when it (a) submitted bills for Covered Services or Supplies provided by an Out-Of-Network Health Care Provider; or when (b) the Allowed Amount for its fees or charges for specific claims was based on the Ingenix Databases under a Plan that was based in New Jersey.

"Partially Allowed Claims" mean any claim line for a Covered Service or Supply that is not a Denied Claim for which the Allowed Amount is less than the Billed Amount.  Partially Allowed Claims are the only claims eligible for reimbursement in this Settlement.

All members of the Settlement Classes must submit a Claim Form to be eligible to share in the Settlement Fund.  You may submit a Claim Form for Covered Out-of-Network Services or Supplies received or furnished up through the Preliminary Approval Date.

There are two types of Settlement Class members – Subscriber Class Members and Provider Class Members.  The options available to Subscribers under the Settlement are different than those available to Providers and Provider Groups.  The options for Subscribers are set out in the Subscriber Claim Form. The options for Providers are listed in the Provider Claim Form.   A copy of the Claim Forms is attached to this Notice.

**Options for Subscribers**

**Option 1 – Simplified Claim Form for Subscribers.**  You may complete the Subscriber Claim Form requesting Option 1, and you are only required to provide certain information, including the number of years, during the period from March 1, 2001 to [Preliminary

4

Approval Date], that you were a Aetna Plan Member and received Covered Services or Supplies from an Out-of-Network Provider or Provider Group.  This information is in Section A of the Claim Form.

If you select this option and your claim is eligible for payment, you are entitled to receive up to $40 for each year you received Covered Services or Supplies from an Out-of-Network Provider or Out-of-Network Provider Group that resulted in a Partially Allowed Claim.  Your total settlement payment may be reduced on a *pro rata* basis.

**Option 2 – Claim for Subscribers.**  You are eligible to participate as a claimant in Option 2 *only* if you **paid** to your Provider some portion of a Balance Bill for Partially Allowed Claims for Covered Out-of-Network Services or Supplies.  If you select this option and your claim is eligible for payment, you are entitled to receive up to 5% of the Allowed Amount (or up to 3% for certain claims) on each valid Partially Allowed Claim for which you provide the necessary Supporting Documentation, as described in the Subscriber Claim Form. Your total settlement payment from the Subscriber Settlement Fund may be reduced on a *pro rata* basis.  The aggregate amount of Balance Bill payments constituting your claim against the Subscriber Prove-Up Fund must exceed $200.  Any submissions involving $200 or less will be declared ineligible for reimbursement from the Subscriber Settlement Fund and no payment will be issued.  Subscriber Claims declared ineligible will be considered for eligibility under the General Settlement Fund.

**Options for Providers and Provider Groups**

**Option 1 – Simplified Claim Form for Providers.**  You may complete the Provider Claim Form requesting Option 1, and you are only required to provide certain information, including the number of years, during the period from June 3, 2003 to [Preliminary Approval Date], that you provided and billed for Covered Services or Supplies to an Aetna Plan Member.  This information is in Section A of the Claim Form.

If you select this option and your claim is found to be  eligible for payment, you are entitled to receive up to $40 for each year you provided Covered Services or Supplies as an Out-of-Network Provider or Out-of-Network Provider Group and you received a Partially Allowed Claim.  Your total settlement payment may be reduced on a *pro rata* basis.

**Option 2 –  Claim for Providers.**  You are eligible to participate as a claimant in Option 2 *only* if you (1) received an Assignment from an Aetna Plan Member, and (2) sent the Aetna Plan Member a Balance Bill for Partially Allowed Claims and did not receive full payment of such bill.  If you select this option and your claim is found to be eligible for payment, you are entitled to receive up to 5% of the Allowed Amount (or up to 3% for certain claims) on each valid Partially Allowed Claim for which you provide the necessary Supporting Documentation, as described in the Provider Claim Form.  Your total settlement payment from the Provider fund may be reduced on a *pro rata* basis.  The aggregate amount of Balance Bills constituting your claim against the Provider Settlement Fund must exceed $750 for individual Out-of-Network Providers and $1000 for Out-of-Network Provider Groups.  Any submissions involving less than these amounts will be declared ineligible for reimbursement from the Provider Settlement Fund and no payment will be issued. Provider Claims declared ineligible will be considered for eligibility under the General Settlement Fund.

**Important information.**  In order to assist Subscribers and Providers in filing their Option 1 and 2 claims, Aetna has made available to the Claims Administrator certain claims information within the class periods.  You may request such information from the Claims Administrator and use it to complete your claim form.  Should this information not be available for your claim, you must provide this information from other sources.

**VII**.    **WHAT WILL HAPPEN AT THE FINAL SETTLEMENT HEARING?**

The Final Settlement Hearing will be held on _____ at _____ _.m. at the United States Courthouse, United States District for the District of New Jersey, Martin Luther King, Jr. Federal Building and U.S. Courthouse, Room 5083, 50 Walnut Street, Newark, New Jersey. The hearing, however, may be adjourned by the Court without additional notice to the Settlement Classes, other than an announcement in open court. Members of the Settlement Classes who support the Settlement do not need to be present at the hearing or take any action to indicate their approval, as Class Counsel for the Settlement Classes will be present to address any questions or concerns raised by the Court.

At the Final Settlement Hearing, the Court will consider:

(1) whether the Settlement of the Action that is reflected in the Settlement Agreement is fair, reasonable, and adequate to the members of the Settlement Classes;

(2) whether the Court should unconditionally certify the Settlement Classes in accordance with Federal Rule of Civil Procedure 23;

(3) whether to approve payment of service fees to the Representative Plaintiffs; and

(4) what attorneys' fees and expenses should be paid to Settlement Class Counsel from the Settlement Fund.

**VIII.    MAY I PARTICIPATE IN THE FINAL SETTLEMENT HEARING?**

      Any Settlement Class Member who objects to the Settlement, the Settlement Agreement, the application for attorneys' fees and expenses, or the other matters to be considered at the Final Settlement Hearing may appear and present such objections.  You may also appear by counsel, if you wish. In order to be permitted to do so, however, you must, on or before _____:

- File with the Court a notice of your intention to appear, together with a statement setting forth your objections, if any, to the matters to be considered and the basis for those objections, along with any documentation that you intend to rely upon at the Final Settlement Hearing; and

- Serve copies of all such materials, either by hand delivery or by first-class mail, postage prepaid, upon the following counsel:

| Counsel for the Settlement Class | Defense Counsel |
|---|---|
| James E. Cecchi<br>CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO<br>5 Becker Farm Road<br>Roseland, New Jersey 07068 | Richard J. Doren<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, California 90071 |
| D. Brian Hufford<br>Robert J. Axelrod<br>POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP<br>600 third Avenue<br>New York, NY 10016 | Geoffrey M. Sigler<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Ave., NW<br>Washington, DC  20036 |
| Joe R. Whatley, Jr.<br>Edith M. Kallas<br>WHATLEY KALLAS<br>380 Madison Avenue, 23rd floor<br>New York, New York 10017 | |
| Stephen A. Weiss<br>SEEGER WEISS LLP<br>77 Water Street, 26th floor<br>New York, New York 10005 | |
| Christopher M. Burke<br>Joseph P. Guglielmo<br>SCOTT + SCOTT LLP<br>405 Lexington Ave, 40th Floor<br>New York, New York 10010 | |

      If you do not comply with the foregoing procedures and deadlines for submitting written objections and/or appearing at the Final Settlement Hearing, you may lose substantial legal rights, including, but not limited to:  (i) the right to appear and be heard at the Final Settlement Hearing; (ii) the right to contest approval of the proposed Settlement or the application for an award of attorneys' fees and expenses; and (iii) the right to contest any other orders or judgments of the Court entered in connection with the Settlement.

      You cannot both request exclusion from the Settlement Classes and object to the Settlement.  Only members of the Settlement Class may object to the Settlement.  You should consult the Court's Preliminary Approval Order for additional information on the requirements for objecting to the proposed Settlement or participating in the Final Settlement Hearing.  **A copy of the Order may be reviewed on the websites _____com or www.[claims administrator].com.**

**IX.      HOW DO I FILE A CLAIM FOR PAYMENT?**

The Settlement provides for payments to members of the Settlement Classes who qualify and timely submit Claim Forms to the Claims Administrator.  In order to qualify for a settlement payment, you must complete the enclosed Claim Form, sign it, and mail it to:

Aetna Class Action Litigation
c/o _____

**YOUR CLAIM FORM MUST BE POSTMARKED NO LATER THAN _____.**

Whether or not you mail in a Claim Form, if you are a member of the Settlement Classes you will be bound by all orders and judgments entered in connection with the Settlement and Settlement Agreement, including the release, covenant not to sue, and dismissal with prejudice provisions described above, unless you exclude yourself from the Settlement Class.

**X.       WHAT IF I DO NOT WANT TO BE PART OF THE SETTLEMENT?**

If you do not want to be a Settlement Class Member and participate in the Settlement (including being eligible to receive monetary payments), then you must send a signed Request for Exclusion by mail stating: (1) your name, address, and federal Social Security Number or Tax Identification Number, and (2) a statement that you wish to be excluded from the Settlement Class.  Requests for Exclusion must be mailed to the following:

Aetna Class Action Litigation – Exclusion Requests
c/o _____

**YOUR REQUEST FOR EXCLUSION MUST BE POSTMARKED NO LATER THAN _____.**

By requesting to be excluded from the Settlement Class, you will not share in the Settlement, and you may maintain any claim you believe you have against the Defendants by filing your own lawsuit at your own expense.

**XI.      DO I HAVE A LAWYER IN THIS CASE?**

The Court has appointed _____ as Settlement Class Counsel for settlement purposes to represent you and other members of the Settlement Classes.

You do not have to pay Settlement Class Counsel.  If you want to have your own lawyer, and have that lawyer appear in court for you in this case, you must hire one at your own expense.

**XII.     HOW WILL THE LAWYERS BE PAID?**

Since the beginning of this litigation in 2007, Class Counsel have not received any payment for their services in prosecuting the Action or to reimburse them for out-of-pocket expenses.  If the Court approves the proposed Settlement, Settlement Class Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 33 1/3% of the Settlement Fund and reimbursement of expenses not to exceed $3,000,000.   Any attorneys' fees and expenses awarded by the Court will be paid from the General Settlement Fund.  In addition, Settlement Class Counsel may apply to the Court for the approval of a service fee to each of the Representative Plaintiffs not to exceed $20,000 each.

**XIII.    WHAT IF I DO NOTHING AT ALL?**

If you do nothing, you will get no money from the Settlement.  But unless you exclude yourself from the Settlement Class, you will be bound by the release and covenant not to sue provisions of the Settlement Agreement described above.

**XIV.     HOW DO I GET MORE INFORMATION?**

This Notice is a summary and does not describe all details of the Settlement.  Complete copies of the Settlement Agreement, the complaints filed in the Actions, the Preliminary Approval Order, and certain other court orders in this case, except for those filed under seal, may be examined and copied during regular office hours, and subject to customary copying fees, at the Clerk of the Court's Office, United States District Court, District of New Jersey. Certain of these documents  may also be obtained on the website _____**com**.

**DO NOT CALL OR WRITE THE COURT OR THE CLERK OF THE COURT FOR INFORMATION OR LEGAL ADVICE.**

Dated: _____

BY ORDER OF
THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Exhibit G**

**Members of Healthcare Plans Insured or Administered by Aetna; and Out-of-Network Health Care Providers and Provider Groups Who Furnished Covered Services or Supplies to Such Members:**

*A Proposed Class Action Settlement May Affect Your Rights.*

A Settlement has been preliminarily approved in a class action lawsuit that alleges that Aetna provided insufficient reimbursement for Covered Out-of-Network healthcare benefits by using the Ingenix Databases and certain other policies to make reimbursement determinations.

If you were or are:

> A "Subscriber," meaning Persons who, at any time from March 1, 2001 through the Preliminary Approval Date (i) were Aetna Plan Members; (ii) received a Covered Service or Supply from an Out-of-Network Health Care Provider or Out-of-Network Health Care Provider Group; and (iii) whose resulting claims for reimbursement included Partially Allowed Claims OR

> A "Provider," meaning Persons or entities who, at any time from June 3, 2003 through the Preliminary Approval Date (i) were Out-of-Network Health Care Providers or Out-of-Network Health Care Provider Groups; (ii) provided Covered Services or Supplies to Aetna  Plan Members; and (iii) whose resulting claims for reimbursement included Partially Allowed Claims

you are a member of the Settlement Classes and may be eligible for a payment if you qualify and submit a valid Claim Form.

Your rights may be affected by a proposed Settlement in the class action lawsuits consolidated under the case caption *In re Aetna UCR Litigation*, pending in the United States District Court for the District of New Jersey, Master Docket No. 07-3541 (the "Actions").  Plaintiffs allege that Defendants violated various statutes, including the Employee Retirement Income Security Act ("ERISA"), the Racketeer Influenced and Corrupt Organizations ("RICO") Act, the Sherman Antitrust Act, and other laws.  Defendants deny all of Plaintiffs' allegations.

The Representative Plaintiffs have agreed to settle all claims against Aetna in the Actions in exchange for a Settlement involving payments by Aetna of up to $120,000,000, including a General Settlement Fund of $60 million and up to $60 million in additional monies that may be paid out to Settlement Class Members who submit valid claims.  The Court did not decide in favor of either side. Rather, both sides agreed to settle all claims that were or could have been asserted against Aetna in the Actions in exchange for monetary consideration.  That way, the parties avoid the uncertainties and cost

of a trial and possible appeal, and the affected members of the Settlement Classes who qualify will receive compensation.

The Court has scheduled a hearing to consider the fairness, reasonableness, and adequacy of the Settlement, to be held on _____ at ___: 00 a.m./p.m. at the United States Courthouse, United States District for the District of New Jersey, Martin Luther King, Jr. Federal Building and U.S. Courthouse, Room 5083, 50 Walnut Street, Newark, New Jersey (the "Final Settlement Hearing").

This notice is a summary of your rights under the Settlement. To obtain a copy of the complaints filed in the Actions, the Settlement Agreement and Amendment to the Settlement Agreement, and  the full Notice and claim form (which includes a description of how the money provided by the Settlement will be allocated among members of the Settlement Class), visit www_____.com or contact the Claims Administrator at _____.

**Who Are Counsel for the Classes?**

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068

D. Brian Hufford
Robert J. Axelrod
POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP
600 Third Avenue
New York, NY 10016

Joe R. Whatley, Jr.
Edith M. Kallas
WHATLEY KALLAS, LLC
380 Madison Avenue, 23rd floor
New York, New York 10017

Stephen A. Weiss
SEEGER WEISS LLP
77 Water Street, 26th floor
New York, New York 10005

Christopher M. Burke
Joseph P. Guglielmo
SCOTT + SCOTT LLP
405 Lexington Ave, 40th Floor
New York, New York 10010

**How Do I File a Claim?**

In order to be eligible for payment under the Settlement, you must complete, sign, and mail the Claim Form SO THAT IT IS POSTMARKED NO LATER THAN _____. A Claim Form is part of the full notice package you can request as described below.

**What Are My Rights?**

- If you wish to remain a member of the Settlement Class, you do not have to do anything. You will be bound by all the Court's orders with regard to the Settlement. This means you cannot sue any of the Defendants or other Released Persons for any of the Released Claims described in the Settlement Agreement.

- You can file a claim for monetary benefits if you remain in the Settlement Class. To make a claim you must complete a Claim Form and mail it to the Claims Administrator as explained in the full Notice. Your Claim Form must be postmarked by _____.

- If you do not wish to be a member of the Settlement Class and be bound by the Court's orders with regard to the Settlement, you must send a letter asking to be excluded from the Settlement Class, as explained in the full Notice. The letter must be postmarked no later than _____.

- If you do not exclude yourself from the Settlement Class, you or your lawyer can tell the Court if you do not like the Settlement or some part of it as explained in the full Notice. You must file your objection with the Court no later than _____.

**DO NOT CALL OR WRITE THE COURT OR THE CLERK OF THE COURT FOR INFORMATION OR LEGAL ADVICE.**

Dated: _____            BY ORDER OF
                                 THE UNITED STATES DISTRICT COURT
                                 DISTRICT OF NEW JERSEY