**HARVEY S. SHAPIRO**                                                **Attorney at Law**
50 Congress St., Suite 1000
Boston, MA 02109
Tel: 617-482-7250

January 21, 2014

Clerk, Civil
U.S. District Court
  for the District of New Jersey
50 Walnut St.
Newark, N.J. 07102

    Re:    In re Aetna UCR Litigation
           MDL No. 2020
           Master Docket No. 07-3541 (KSH)

Dear Clerk:

    Enclosed please find for filing "Objection to Proposed Settlement" in the above along with a Certificate of Service.

    Thank you.

Sincerely,

Harvey S. Shapiro
Attorney-at-Law

HSS:sjp
clkltr

cc:    **James E. Cecchi**                          **Christopher M. Burke**
       CARELLA, BYRNE, CECCHI,             **Joseph P. Guglieimo**
         OLSTEIN, BRODY & AGNELLO          SCOTT + SCOTT LLP

       **Joe R. Whately, Jr.**                         **Richard J. Doren**
       **Edith M. Kallas**                           GIBSON, DUNN & CRUTCHER LLP
       WHATLEY KALLAS, LLP

       **D. Brian Hufford**                         **Geoffrey M. Sigler**
       **Robert J. Axelrod**                       GIBSON, DUNN & CRUTCHER LLP
       POMERANTZ GROSSMAN HUFFORD
         DAHLSTROM & GROSS LLP

       **Stephen A. Weiss**
       SEEGER WEISS LLP

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

In re: Aetna UCR LITIGATION            MDL NO. 2020
                                                      MASTER DOCKET NO. 07-3541

**OBJECTION TO PROPOSED SETTLEMENT**

        The undersigned, a putative *subscriber* class member, submits this objection to the proposed settlement of the above litigation as communicated by Notice dated December 28, 2013.

        I.      From the perspective of a (consumer) subscriber class member, the settling parties' placement of the burden on the claimant of producing the particular information called for by the Proof of Claim -- even under the terms of the "Simplified Claim Form" -- is unreasonable and will likely render illusory the supposed benefit of the settlement for many of those class members in this action. This is particularly the case where the Defendants, highly sophisticated businesses with, no doubt, cutting edge computer software applications, are in a far better position than the claimants to identify the particulars called for by the Simplified Claim Form for purposes of applying the settlement distribution formula.

        The statement in the Notice, at p. 4 (Part VI, last para.), that Aetna has made available to the Settlement Administrator "certain claims information" to assist claimants, that may, in turn, be requested by claimants through another form, seems disingenuous at the very least. This is because it is inconceivable that, with respect to at least the information required of subscriber-claimants submitting a Simplified Claim Form under Option 1, the information is not *already* in Aetna's (if not also, now, the Settlement Administrator's) possession, with any suggestion otherwise simply not credible.

        The Simplified Claim Form for Subscribers thus requires:

    (i)    confirmation or certification as to status of a claimant as an Aetna Plan Member during one or more of the twelve (12) years in question;

    (ii)    the name of the Plan or Employer;

    (iii)    identification of those years during which services or supplies were received for the benefit of a claimant from an out-of-network provider; and

    (iv)    a determination of those years in which out-of-network charges resulted in a partially allowed claim,

How is it possible that the foregoing information is not already in Aetna's own records?[1]

Much like the foreign currency conversion litigation in <u>In Re Currency Conversion Fee Antitrust Litigation</u>, U.S.D.C. (S.D.N.Y.), MDL Docket No. 1409, where the undersigned was a class member and where the initial settlement agreements placed an unnecessary information-production burden on the consumer – and where the Defendant credit card companies themselves were, again, in a position to provide the same or comparable data relating to the foreign currency conversion charges being requested of the class members – the settling parties should provide as one option an *automatic* or presumptive entitlement to consumer class members who are unable to determine the particulars of their coverage going back twelve years or who choose not to expend the time necessary to investigate and extract such data as may entitle them to

---

[1] My unsolicited receipt of an individualized class action notice clearly attests that Aetna has identified me as a Plan Member and, I presume, likely class member, during at least one of the years in question, though I have no recollection as to whether I ever had a partially allowed claim for out-of-network benefits of some sort. (I have now made inquiry of the Settlement Administrator through the Notice form.).

In any event, it is unrealistic to expect that many consumers will have preserved the records for the many years in question – let alone be able to discern or recall whether they paid out-of-network charges during specific years. In this regard, it should probably be appreciated that out-of-network charges could include charges made by a lab or other third-party vendor from whom an in-net-worker provider obtained services during the course of treating the subscriber, without even first communicating with the subscriber. There are thus circumstances where out-of-network providers or vendors may have been used without any forethought or even knowledge of the subscriber until the receipt of a bill, a dynamic or circumstance that may not have been appreciated by the subscriber even at that point.

$40.00, if not less, for any of the years in question, <u>where Aetna already has the information</u>.[2]

Given the relatively small potential recoveries involved in the Simplified Claim process, the settlement must reflect that the subscribers' time is as valuable to them as the attorneys seem to think their time is worth to them (as made evident by their fee application for up to 1/3 of the $120,000,000 "Settlement Fund),[3] and either revise the settlement formula or the burden of producing information in a fashion that is consistent with assuring meaningful participation by consumers' and which does not gratuitously impose on them responsibilities more befitting a colony of worker-bees.

2. In a recent analysis prepared by Mayer Brown LLP and given prominence in a *Wall Street Journal* editorial on December 31, 2013, that looked at, *inter alia*, the structure of settlements and data (where available) relating to the actual distribution of benefits to participating class members, it was argued that "class actions provide far less benefit to individual class members than proponents of class actions assert."[4] The Mayer Brown study may be accessed on-line at <u>www.mayerbrown.com/Trial-Lawyer-Protection-Act-WSJ/</u>

One observation or finding of the Mayer Brown study relevant here is the small or sometimes "miniscule" percentage of the class participating in the distribution of benefits.

---

[2] It is the undersigned's recollection that the claim procedures in the currency conversion litigation were in fact substantially revised to facilitate presumptive claims in response to objections of the nature described here.

[3] The Notice at least is ambiguous as to what the relevant fund is, since Parts V and XIII states that fees will "paid out of" the $60,000.00 "General Settlement Fund," while the reference in Part XII to the manner of *calculating* the award appears to be to the composite $120,000,000 "Settlement Fund." What is interesting is that the attorneys' fees will apparently not be adjusted even if a significant amount of settlement funds are returned to Aetna as undistributed. See fn5, *infra*.

[4] According to the *Wall Street Journal*, the study was prepared by Mayer Brown LLP for the U.S, Chamber Institute for Legal Reform. While the undersigned believes that class actions are vital procedural mechanisms, and in no fashion subscribes to the "reform" agenda that Mayer Brown and its client apparently seek to further, certain of the subsidiary findings do suggest areas of needed reform, one of which is addressed through this objection.

3

I submit that an obvious explanation for this, at least in part, is attributable to the further finding, according to the analysis:

> Although some cases provide for automatic distribution of benefits to class members, automatic distribution almost is never used in consumer class actions – only one of 40 settled cases [in the Mayer Brown study] fell into this category.

Executive Summary at 2. In comparing the "claims-made" model of settlement to that of the "automatic distribution" format, the study further notes:

> *Thus, consumer class actions are almost always resolved on a claims-made basis, and the actual amount of money delivered to class members in such cases almost always is a miniscule percentage of the stated value of the settlement.* That is because, in practice, relatively few class members actually make claims in response to class settlements: many class members may not believe it is worth their while to request the (usually very modest) awards to which they might be entitled under a settlement. And the claim-filing process is often burdensome, requiring production of years-old bills or other data to corroborate entitlement to recovery.

*Id.*, at 6-7.[5]

If consumer class actions are to fulfill the public policies they are designed to promote, *e.g.*, the effective *private* enforcement of relatively small claims and deterrence of wrong doing under the myriad of laws that regulatory agencies themselves are not equipped to fully police, and such actions are not to serve primarily as a means of generating attorneys' fees, shields of immunity for corporate wrong-doers, and cynicism toward the process and those overseeing it, it is essential that an *automatic* or presumptive distribution option be employed within settlement schemes whenever it is feasible in view of the relative burdens of production in identifying claimants and entitlements.

---

[5] It should be noted that under the terms of the proposed settlement, if the $120,000,000 in the various Settlement Funds is ultimately not exhausted through the proposed scheme of distribution, "the leftover amounts in that Fund shall remain with Aetna and will not be paid out under the Settlement." Notice, at 3 (Part V(A)(4)).

Consistent with the foregoing, I would object to any class action settlement (i) that provides for unclaimed monies being returned to the Defendant insurer since that results in perverse incentives,[6] and (ii) that does not proportionately reduce the attorneys' fees payable to the Plaintiffs' attorneys where they have agreed to a distribution scheme that ultimately fails to deliver a significant proportion of the publicized benefit in those instances where automatic distribution is not fully feasible.

II.     The undersigned further objects to the proposed agreement on the procedural ground that the Notice of Proposed Settlement, at page 5, strongly suggests -- if it does not dictate -- that one must *actually appear* at the settlement hearing – in New Jersey, good God! -- in order to have his or her objection considered.[7] The Notice, in other words, nowhere clearly states that an Objection may be filed and considered *without the Class Member also appearing personally (or through counsel)*. Whether intentional or not, I believe this failure to clearly apprise members of their rights -- a deficiency one would not normally expect experienced class counsel to overlook -- is very troublesome.[8]

---

[6] The funds can readily be cypred to legitimate charitable organizations, *e.g,* aiding the medically indigent.

[7] While the Notice first states on page 1, that one may object by "writ[ing] to the Court", the Notice later states, at page 5, as here relevant:

> Any Settlement Class Member who objects to the Settlement, the
> Settlement Agreement, the application for attorneys' fees and expenses,
> or the other matters to be considered at the Final Settlement Hearing
> may [1] appear and present such objections. [2] You may also appear
> by counsel, if you wish.

As highlighted, the Notice seems to present two options only: "appear and present such objections" or "appear by counsel." The "Order Preliminarily...Approving Class Notice" (8/30/13), at pp. 7-9, on the other hand, clearly distinguishes between one "filing a written objection," Paragraph 16(a), and one who "*may* also appear at the Fairness Hearing." Paragraph 16(b) (Emphasis added.)

[8] I am obviously aware of the fact that the Court approved the form of Notice. The fundamental responsibility, however, I believe is squarely on counsel, and not the Court, to address this type of issue, especially counsel who purport to represent consumers.

5

III.     Finally, unless and until the foregoing deficiencies are addressed, I do not consider class counsel to have earned their attorneys' fees by diligently serving my segment of the class, and thus for that reason object to the fee application being considered until that deficiency is first dealt with.

Harvey S. Shapiro, *pro se*

Harvey S. Shapiro, Esq.[9]
BBO No. 454120
50 Congress Street, Suite 1000
Boston, MA  02109
(617) 482-7250

Dated:  January 21, 2014

Hss/aetna/objection

---

[9] I am admitted to practice in the Commonwealth of Massachusetts, where I have practiced for almost forty (40) years. During the early part of my career I was responsible for a number of consumer class actions. See, *e.g.,* Leardi v. Brown, 394 Mass. 151 (1985); Scofield v. Berman & Sons, Inc., 393 Mass. 95 (1984).

6

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

In re: Aetna UCR LITIGATION                MDL NO. 2020
                                           MASTER DOCKET NO. 07-3541

## CERTIFICATE OF SERVICE

I, Harvey S. Shapiro, hereby certify that on this 21st day of January 2014, I served copies of the following documents by first-class mail, postage prepaid:

(a) Objection to Proposed Settlement; and

(b) Certificate of Service.

to:

James E. Cecchi
CARELLA, BYRNE, CECCHI,
  OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, NY 07068

Joe R. Whately, Jr.
Edith M. Kallas
WHATLEY KALLAS, LLP
380 Madison Avenue, 23rd Fl.
New York, NY 10017

D. Brian Hufford
Robert J. Axelrod
POMERANTZ GROSSMAN HUFFORD
  DAHLSTROM & GROSS LLP
600 Third Avenue
New York, NY 10016

Stephen A. Weiss
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, NY 10005

Christopher M. Burke
Joseph P. Guglielmo
SCOTT + SCOTT LLP
405 Lexington Ave., 40th Fl.
New York, NY 10174

Richard J. Doren
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071

Geoffrey M. Sigler
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, DC 20036

_____
Harvey S. Shapiro, Esq.
Mass. BBO No. 454120
50 Congress Street, Suite 1000
Boston, MA 02109
harveysshapiro@inspiredlaw.net
(617) 482-7250

Dated: January 21, 2014
Hss/aetna/cos



Harvey S. Shapiro, Esq
50 Congress St, Suite 1000
Boston, MA 02109