**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**IN RE: AETNA UCR LITIGATION**

**Master File No. 07-3541(SCR)(PS)**

**MDL NO. 2020**

**OBJECTION TO SETTLEMENT by TODD SPANN**

**JUDGE KATHARINE HAYDEN**

**THIS DOCUMENT RELATES TO:**

*All Cases*

COMES NOW Todd Spann, by and through his attorneys and hereby file his OBJECTION TO SETTLEMENT, for the reasons below. Objector Spann's consent to filing and the first page of the Notice he received is attached hereto.

**The Proposed Settlement**

The value of this settlement is unknown. If it can be ascertained, it is far less than class counsel purports. Class Counsel alleges the settlement value shall be up to $120 million dollars. (Document 839-1 Paragraph B Page 5). However, the alleged value is misleading. The General Settlement Fund shall be no more than $60 million including the award for attorneys' fees, costs reimbursed to special class counsel, incentive awards to the Plaintiffs, the costs of notice and administration of the settlement agreement, and costs

to the settlement administrator. (Document 839-2 Exhibit A Settlement Agreement Paragraph 9.2 Page 24-25 of Notice of Proposed Settlement Page 29-30 of 115 of Exhibit A). These unknown fees and cost could all but wipe out the General Settlement Fund.

Analysis of the true value of this settlement is impossible when class counsel has not yet moved the court for an award of fees and costs except to suggest that they will seek fees upwards of 33 1/3% of the total $120 million settlement, costs of no more than $3 million, and Plaintiff incentive award of no more than $20,000 for each of the sixteen plaintiffs.(Document 839-2 Exhibit A Settlement Agreement Paragraph, Exhibit F Notice of Proposed Settlement, Paragraph XII Page 7 of Notice of Proposed Settlement, Page 111 of 115 of Exhibit A). Strategically, as of February 26, the date that objections are due in this case, class counsel has failed to move this court for fees and costs thereby attempting to eliminate numerous points of objection. Said motion is not due to this court until March 11, 2014, a week before the fairness hearing leaving this Objector little time to amend his brief should additional points of objection become relevant. (Table of Deadlines http://berdonclaims.com/case_files/Aetna%20Table%20of%20Deadlines.pdf)

In addition to the $60 million to be paid in the General Settlement Fund (less fees and costs) up to an additional $60 million ***may*** be paid to subscribers and providers called the Prove-up Fund, $40 million and $20 million respectively. Should one of these exhaust their $40/20 million and the other have excess funds, up to $5 million can be reallocated from subscriber to provider and vice versa. (Document 839-2 Exhibit A Settlement Agreement Paragraph 10 Page 27-38). The confusing language used to describe just how much a member could receive under the Prove-up Fund is irrelevant because the steps necessary to submit a claim is overly burdensome to the member. Even

to determine if the member is eligible for Prove-up funds, let alone how much requires the member to search out cancel checks, receipts and explanation of benefit forms that could be over 10 years old. The fact of the matter is that very few if any of the members and providers will be able to qualify for Prove-up funds. Eliminating this mythical "$60 million" from the value equation creates a much clearer picture as to the true value of this settlement. Moreover, class counsels' fees up to 33 1/3% of $120 million, plus $3 million in costs and $320,000 in plaintiff incentive awards, actually equates to an astonishing 72.2% of the actual value of this $60 million settlement fund.

**I. The proposed settlement is unfair to the class members as it requires unnecessary criteria to be submitted by the class members in order to prove entitlement to benefits under the Settlement thereby resorting in a reversion.**

Class members are required to provide specific records of out of network claims that they paid out of pocket before they can be paid under the Prove-up Fund. Members are entitled to the lesser of the amount the member paid the health care provider for the Covered Service or 5% of the Allowed Amount for the Partial Allowed Claim for services from March 1, 2001 through August 19, 2011 or 3% for services from August 20, 2011 through the Preliminary Approval Date. (Document 839-2 Exhibit A Settlement Agreement Paragraph e Page 32).

"Allowed Amount" 1.4 is the amount determined by Aetna, according to the members' health plan, to be eligible for reimbursement.

"Partially Allowed Claim" 1.28 is the amount of the claim for a Covered Service provided to a member for which the Allowed Amount is less than the amount billed by the provider.

"Covered Service" 1.14 is the health service the member is entitled to receive under his plan.

(Document 839-2 Exhibit A Settlement Agreement Page 4, 5, and 8).

Who determines the Allowed Amount for the Partially Allowed Claim for the Covered Service? Aetna. The same company whom class counsel alleges used crocked numbers to calculate the usual and customary rate for services to begin with. (Document 1 Complaint Paragraph 13 and 18 Page 5-6 and Document 319 Second Joint Consolidated Amended Complaint Paragraphs 6 and 7 Page 4).

In order for a member to determine if they are eligible to receive an award from the Prove-up Fund they must present their explanation of benefits (EOB) or a report that they can request from the case administrator. Spann has neither. Not only does he not have EOBs in his possession for 13 years of medical claims, he (through his wife Kelly Spann) has requested the report from the administrator. Although the request was submitted via email on January 15, 2014, it was flagged as Low Importance and she was even told not to contact the claims administrator regarding requested reports. (Exhibit B). Whether this report will be available to Spann before the claims submission deadline remains to be seen.

Rather than suggest that members request old EOBs from Aetna (who obviously has all EOBs because they generated them) class counsel tells members to review their own records or request the EOBs from their providers to determine if they paid for services for out of network providers that otherwise should have been paid at a higher rate. (See Answers to Frequently Asked Questions Paragraph 32 Page 6 http://berdonclaims.com/case_files/Aetna%20UCR%20Litigation%20FAQs.pdf) Even if a report is received, the claims that the member is eligible to receive payment for may not have all the necessary information that would allowed the member to actual submit an

eligible claim. If this happens the member is directed to provide all of the information necessary, which can only be determined from the actual EOB. (See Answers to Frequently Asked Questions Paragraph 27 and 32 http://aetnaucrsettlement.com/attorneys.html).

Here, not only does Spann not have the EOBs, the report from the class administrator, but he also does not have a list of every provider that he and his family treated with for thirteen years so that he can request EOBs from them in order to review every claim submitted to Aetna for all the medical services they received to determine which claims he is eligible to make a claim for. Even if he was able to request and receive all of these EOBs from all of the providers that he and his family treated with, is it possible to receive them and review them for eligibility in enough time to submit claims?

In addition to the EOBs, the member is required to submit proof of payment with his claim form. Not only is this impractical, it is impossible. People, including Spann, do not keep receipts and cancelled checks for 13 years. They are not even required by the IRS to keep records for this long. What if you do not have your cancelled checks, receipts or credit card statements from thirteen years ago, go to your providers and get proof. (See Answers to Frequently Asked Questions Paragraph 34 http://aetnaucrsettlement.com/attorneys.html). Again, this circular logic makes payment to Spann and feasibly every member impossible under Prove-up Fund. Without the EOBs Spann cannot know which claims he may be entitled to payment under. Without the EOB's Spann cannot determine who his providers out of network were. Without the receipts, Spann cannot determine how much of the bill he paid. So when it comes to the Prove-up Fund, Spann cannot prove-up.

Because Aetna has in its possession every EOB for every member that treated with an out of network provider, Aetna is well within its means to recalculate EOBs with the correct UCR and determine just how much benefit they shorted their members. All they have to do is determine how much each subscriber member is entitled to and cut a check *pro rata* out of the $100 million available to members. To require the member to provide a receipt or cancelled check is preposterous. This is about disgorging Aetna of profits that they wrongfully kept. Maybe the member has not paid the provider yet. Maybe the bill is in collections and is marking up their credit report. Giving the member the actual benefit and funds that they were entitled to would allow the member to pay the provider the outstanding bill.

What happens to the funds in the Prove-up Fund? Well reverted of course. Instead of benefitting the class members, the Defendants are helping themselves to the funds that were purportedly earmarked for use by the class members. (Document 839-2Exhibit A Settlement Agreement Paragraph g Page 23 and 38). While Class Counsel would like us to believe that up to $5 million in funds from the subscriber Prove-up will be made available to the provider Prove-up if it has excess funds and vice versa, neither fund will need the extra $5 million from the other because no one is going to qualify for these funds. Aetna will retain any and all funds in the Prove-up fund. Moreover, the Notice to members gives the illusion that $120 million is being paid and does not inform the members of the reversion.

Reversions are disfavored by the courts, and rightly so, and according to the *Class Action Pocket Guide*, "create perverse incentives for a defendant to impose restrictive eligibility conditions and for class counsel and defendants to use the artificially inflated

settlement amount as a basis for attorney fees." *(Managing Class Action Litigation: A Pocket Guide for Judges, Rothstein, Barbara J, & Willging, Thomas E., (2010, 3d ed., p. 20) (referred to herein as "Pocket Guide").* Indeed, the parties' reversion should be scrutinized by this Court.

Federal Rule of Civil Procedure 23(e), states that "the claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "A class action cannot be settled without the approval of the court and a determination that the proposed settlement is 'fair, reasonable and adequate.'"*In re Prudential*, 148 F.3d at 316 (quoting *In re G.M. Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,55 F.3d 768, 785 (3d Cir.1995)).

The settlement agreed to by class counsel and the defendant have made the Prove-up Fund recovery participation so difficult, that all otherwise eligible class members, including the Objector will not be able to receive any Prove-up benefits. The Settlement Agreement is far from "fair, reasonable and adequate". The Settlement Agreement provides that the member provide proof of who the provider was that they treated with that was out of network, when they treated with him, what was the allowed amount on the EOB and how much the member paid the provider, including receipts, invoices, credit card statements, cancelled checks etc. However, Class Counsel and Defendants know quite well that no one keeps receipts for thirteen years.

This Court should require Class Counsel and Defendant to create a claims process that is designed to be simple to access and utilize with the goal of providing recovery to the class members in the least restrictive manner available.

**II. The Settlement is unfair and not reasonable, as Class Counsels' attorneys fees through the percentage-of-recovery method cannot survive reasonable analysis.**

Class Counsel has not yet moved this court for fees and expenses but has indicated that they seek fees upwards of 33 1/3% of the total $120 million settlement, costs of no more than $3 million, and Plaintiff incentive award of no more than $20,000 for each of the sixteen plaintiffs. (Document 839-2 Exhibit A Settlement Agreement Paragraph, Exhibit F Notice of Proposed Settlement, Paragraph XII Page 7 of Notice of Proposed Settlement, Page 111 of 115 of Exhibit A). Once Class Counsel has moved the court for fees, further analysis may be necessary in a supplemental objection.

The district court must consider ten factors when reviewing percentage-of-recovery fee requests: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative settlement terms. *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir.2009). One particular factor is not given more weight over another as each case is different. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000).

Here, item number one "the size of the fund created and the number of beneficiaries" is of significant importance. First, neither the Joint Motion for Preliminary

Approval of Settlement, the Settlement Agreement, the Notice of Proposed Settlement, declaration of any claims administrator, nor the frequently asked questions on both websites give any indication as to the class size. Second, the size of the general fund created here has been grossly exaggerated. As up to 72.2% of the general fund will likely go to fees and costs, only $16.68 million will actually be available to class members. Third, the size of the Prove-up funds is actually non-existent. According to the settlement, Aetna does not have to pay the $60 million to the claims administrator for the administrator to distribute. The funds shall not be segregated and shall be under the control of Aetna. Why is that? As the criteria to receive these funds are impossible to meet no members will ever qualify for distribution. The funds will surely revert back to Aetna. Why have the claims administrator hold these funds when Aetna will just be getting them back anyway?

It is clear that this settlement is unfair and unreasonable when analyzing factor one of the percentage-of-recovery fee factors defined by the Third Circuit. Analysis shows that this is a $60 million case with only $16.68 million actually going to an unknown number of members.

The Pocket Guide advises the court that a “hot button indicator” that a settlement is unfair exists when there is “an imbalance between the cash value of the settlement to the class as a whole and the agreed amount of attorney’s fees is a prime indicator of collusion by settling attorneys.” (Pocket Guide “Reverse Auctions” and the like” 2010 ed. p. 20. Collusion:). This case appears to be nothing more than one of collusion between Class Counsel and Defendant to pay an exorbitant fee in exchange for leaving class members with nothing more than the promise of some remuneration, meager that it will be, while

protecting the Defendants from suit and damages.

The Pocket Guide warns judges to be vigilant regarding Class Counsel who seek fees for what is nothing more than settlement of the case at hand, evidencing collusion or a "Reverse Auction" among the parties:

> A typical element of a reverse auction is a promise to pay attorneys more than a reasonable value for the time they invested in negotiating the settlement. Generally, the overpayment of the attorneys originates in an underpayment of what the class should receive based on an objective assessment of the merits of the class claims. (Pocket Guide, p. 21).

**III. The release of claims by the class members is overly broad and lacks consideration as it releases claims of class members without providing any benefits to such persons.**

The release in this settlement is the relinquishment of all claims that class members have against Defendants, despite the fact that they do not have EOBs, cancelled checks or receipts that would entitle them to receiving a benefit under the settlement. The minuscule amount of money that members would receive under the General Fund is not even calculable but to say that Class Counsel is looking for a windfall in taking 72.2% of the fund for fees and costs. While the Notice to members' claims that they are entitled to $40 per year for each year that they have out of network claims, this too is impractical. Not only is $40 an unsubstantiated figure, but the member must first know the years that they had out of network claims. Again, members need their EOBs to determine what years they had out of network claims. Go to the claims administrator for this info? Hardly. In fact, under the frequently asked questions, one of the questions the administrator cannot answer is what years the member even had Aetna! Answers to Frequently Asked Questions Numbers 47.

http://berdonclaims.com/case_files/Aetna%20UCR%20Litigation%20FAQs.pdf

Here, "plaintiffs in a class action may release claims that were or could have been pled <u>in exchange for settlement relief.</u>" *<u>Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 106 (2nd Cir. 2005)* (emphasis added). The problem is the only people receiving "settlement relief" are those that have EOBs and receipts. Once all the members get rejected from the Prove-up fund, everyone will be dumped into the General Fund which has already been reduced to practically nothing if fees and costs come out of it. The General Fund will be so over saturated with members seeking claims refund and so underfunded having been drained to feed Class Counsel, members will receive an insignificant pittance of a claim. Therefore, should this Court deny relief, then only parties that should be released are those persons submitting a claim under the current criteria subject to approval of the court. Rule 23(e) provides that "trial judges bear the important responsibility of protecting absent class members," and must be "assured that the settlement represents adequate compensation for the release of the class claims." *<u>Sullivan v. DB Invs., Inc.</u>, 667 F.3d 273, 319 (3rd Cir., 2010).* Here, the parties wish for this Court to approve settlement that does not compensate the majority of the class members, but still eviscerates their rights by releasing all their claims against Defendants.

A release of claims without consideration results in a settlement that is not fair, reasonable or adequate, and is a settlement that a trial court cannot approve. *Reynolds v. Beneficial Natl. Bank, et al., 288 F.3d 277, 282-284 (7th Cir., 2002).* Further the broad scope of the release should preclude the settlement from being approved. *Zimmerman v. Zwicker*2011 U.S. Dist. LEXIS 2161 (D.N.J. Jan. 10, 2011) (rejecting proposed FDCPA settlement because “[i]t is unlikely that a class member who has a presently pending claim

would agree that trading this settlement for his or her own filed claim is fair and reasonable.")

The Pocket Guide also warns the judiciary to be leery of settlements that are presented without corresponding claims data, and advises that the recovery of class counsel should be based upon a percentage of the claims actually made:

> Your appraisal of the settlement should focus on the value actually distributed to the class-based on the number and percentage of class members who have filed a claim. . . Because there is no clear standard for predicting class response rates, consider calculating any attorney fee award as a percentage of the amount of the settlement fund that has already been distributed to claimants-even if that means deferring final determination of all or part of the fee award until the claims process is complete. (*Pocket Guide,* p. 16, 2010 ed).

In essence, this Court should not rubber stamp a fee application once it is submitted by class counsel, but instead force class counsel to disclose how many class members will actually benefit, and the amount of money those class members will receive- and then determine the appropriateness of the fee application. It is proper for courts to review the actual claims made and the amount paid before calculating an attorney's fee award. *Schwartz v. Dallas Cowboys Football Club*, Ltd., 157 F. Supp. 2d 561 (E.D. Pa. 2001); accord, *Sylvester v. CIGNA Corp.*, 369 F.Supp. 2d 34, 50-53 (D. Me. 2005). Not surprisingly, the claims administrator is not under any obligation to provide this Court with any claims data. This is suspect according to the Pocket Guide, as the best manner of determining the appropriateness of the attorneys' fee sought is to review the actual relief provided to the class members. And since at this stage of the proceedings that actual relief provided is unknown, this Court should withhold its review of the attorneys' fee application until the claims data is provided to this Court.

Therefore, if this Court should review the claims data and conclude that a

percentage of the fund should be awarded to the Plaintiffs' attorneys, then such amount should not exceed 25% of the amount awarded to the class members- after subtracting any amounts paid back to the Defendant as a reverter, in the event this Court allows such event to occur.

**IV. The settlement fails to enjoin Aetna from continuing the same illegal and fraudulent behavior by failing to provide for injunctive relief contrary to Plaintiffs' prayer.**

Plaintiffs asked for and are entitled to injunctive relief to protect themselves and all class members and future plan subscribers from Aetna continuing to falsify UCRs. (Document 1 Complaint Paragraph I Page 27 Document 319Second Joint Consolidated Amended Complaint Paragraphs n Page 199). Class counsel has yet again put their windfall of attorneys' fees before the class members by failing to provide any short term or long term guarantees that Aetna will discontinue these practices.

"The Court is cognizant of the fact that the value of injunctive relief cannot be precisely and mathematical ascertained… Nevertheless, class members reap a sizable financial benefit from the injunctive relief… Class members will receive a very real and very important financial benefit…"*McCoy v, Health Net, Inc.* 569 F.Supp.2d 448, 478 (D. N. J. (Aug. 8 2008)

Here, class members could also receive significant value as the Plaintiffs in McCoy if Class Counsel had just insisted on protecting the members.

WHEREFORE, objector Todd Spann prays that this Court enter its Order with the following:

1) Requiring the parties to propose a different means of processing claims for class members that does not require EOBs, receipts, or invoices;
2) Deny any forthcoming application for Class Counsels' attorneys fees and require Class Counsel to submit claims data showing the number of claims made and basing their attorney's fee on the percentage of claimants who receive the benefit and the value of such claims made with an evidentiary hearing at an amount no higher than 25% ;
3) That the parties agree to injunctive relief that ends the wrongful practices that led to the filing of this litigation against the Defendant, and
4) Any other relief this Court deems necessary within the premises.

**OBJECTOR SIGNATURE ATTACHED AS EXHIBIT A**

Dated: February 25, 2014

Respectfully submitted,

s/Maureen Connors
Maureen Connors Co., L.P.A.
6625 Pearl Road
Parma Heights, Ohio 44130
Ph# (216) 640-9860
Fax: (216) 504-4049
maureenconnors@maureenconnorslaw.com
Attorney for Objector

Steve A. Miller (08758)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

Attorney for Objector

Jonathan E. Fortman (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 Saint Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax: (314) 524-1519
Email: jef@fortmanlaw.com
Attorney for Objector

John C. Kress (53396MO)
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO 63111
Ph.#: (314) 631-3883
Fax: (314) 332-1534
Email: jckress@thekresslawfirm.com
Attorney for Objector

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of February, I have filed and served via ECF Filing using the USDC NJ ECF Electronic Filing System a true and correct copy of the foregoing and in addition have mailed a copy via the United States mail, First Class Postage Prepaid to the following:

Class Counsel:
James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, NJ 07068

D. Brian Hufford
Robert J. Axelrod
POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP
600 Third Avenue
New York, NY 10016

Joe R. Whatley, Jr.
Edith M. Kallas
WHATLEY KALLAS, LLP
380 Madison Avenue, 23rd Floor
New York, NY 10017

Stephen A. Weiss
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, NY 10005

Christopher M. Burke
Joseph P. Guglielmo
SCOTT + SCOTT LLP
405 Lexington Ave, 40th Floor
New York, NY 10174

Defense Counsel:
Richard J. Doren
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071

Geoffrey M. Sigler
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

s/Maureen Connors
Maureen Connors