# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: AETNA UCR LITIGATION | MDL No. 2020 <br> No. 07-3541 |

## OBJECTION TO SETTLEMENT AND REQUEST FOR ATTORNEYS' FEES AND NOTICE OF INTENTION TO APPEAR AT FAIRNESS HEARING

Class members John S. Keating[1], 84 Franklin Street, Marshfield, MA 02050, tel. # 781-536-8640, Mark and Krystal Nykaza, 1760 Gorge Park Blvd., Stow, Ohio 44224, tel. # 330-687-1379, Thomas Pecok, 23213 Greenlawn Ave., Beachwood, Ohio 44122, tel. # 216-297-9940, Carolyn McLemore, 47 W. Bellmeade Pl., The Woodlands, TX 77382, Tel. # 201-419-4058, and Leah Fontenot, 4505 Cherry Hill Rd., Kountze, TX 77625, hereby object to the settlement and request for attorneys' fees in this action, and give notice of their intention to appear and be heard at the fairness hearing scheduled for March 18, 2014 through their undersigned counsel. Each of the objectors was a Subscriber covered by an Aetna plan between March 1, 2001 and August 30, 2013, and received services from an Out-of-Network Health Care Provider, and the resulting claim was only partially allowed. Each of the objectors also received individual mailed notice of the proposed settlement.

---

[1] Mr. Keating was an Aetna insured between 2008 and 2011, Member ID # 0000164960601, Group ID # 0800106, and Patient Acct. # 201785.

I.  **The Intraclass Conflict Is Exacerbated By The Providers' Lack of Article III Standing.**

In its 2009 Order establishing a leadership structure for Plaintiffs' counsel, this Court recognized that "subclasses may be appropriate at a later date." *In re Aetna UCR Litig.*, 2009 U.S. Dist. LEXIS 66853 at *9 (D.N.J. July 31, 2009). Despite this observation, subclasses were never established. Now, the inadequately represented Subscribers have agreed to a settlement that gives the Providers $20 million, despite the fact that the Providers lack Article III standing to allege any claims against Aetna. *See Franco v. Connecticut Gen. Life Ins. Co.*, 818 F. Supp. 792, 808-810 (D.N.J. 2011).

The Providers' claims are entirely derivative of, and duplicate, the Subscribers' claims. The Providers' claims are based on the assignments given to them by Subscribers who received treatment from ONET Providers. But those assignments were not comprehensive assignments of all rights, including the right to bring ERISA and RICO claims, but were instead the more limited assignment of the right to receive reimbursement for the services provided. *Id.* The Subscribers at all times remained responsible for the entire charge, and therefore retained the exclusive right to allege ERISA and RICO claims against Aetna.

No one pressed this argument here on behalf of the Subscribers. Instead, the Subscribers and their counsel agreed to a settlement that provides to a subclass that lacks Article III standing $20 million, and potentially far more. This is *per se* inadequacy of representation. The interests of the Subscribers and Providers are in conflict. The $20 million set aside for the Provider Settlement Fund could be added to the General Settlement Fund, and Subscribers who file a Simplified Claim Form could receive $80 for each year of covered services, rather than $40.

2

The Court may not approve this settlement that pays benefits to entities without Article III standing, and that fails to provide adequate representation to the Subscriber subclass. *See Rodriguez v. National City Bank*, 726 F.3d 372, 381 (3rd Cir. 2013)(settlement class may not include persons who lack Article III standing). The Court should appoint counsel to represent the interests of the Subscriber subclass exclusively, and permit that counsel to renegotiate the settlement for the benefit of those Plaintiffs with Article III standing.

**II.     Class Counsel Violated Rule 23(h) and Class Members' Due Process Rights By Failing to File Their Motion for Attorneys' Fees Before The Objection Deadline.**

Fed. R. Civ. P. 23(h) provides:

(1) *Motion for Award of Attorney Fees.* A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) *Objections to Motion.* A class member, or a party from whom payment is sought, may object to the motion.

(3) *Hearing and Findings.* The court hay hold a hearing and must find the facts and state its conclusions of law on the motion under Rule 52(a).

This rule requires reasonable service of "*the motion*" on all class members, as established by federal courts of appeal. *See, e.g., In re: Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-994 (9th Cir. 2010).

> The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed.... The plain text of the rule requires that any class member be allowed an opportunity to object to the fee "motion" itself, not merely to the preliminary notice that such a motion will be filed. In this case, although notice of the motion was provided to the class, class members were deprived of an adequate opportunity to object to the motion itself because, by the time they were served with the

3

motion, the time within which they were required to file their objections had already expired.

*Id.*

All that class members were told in the notice is that Class Counsel would seek 33 1/3 % of the $120 million fund, a percentage almost twice the average for settlements of this magnitude, without any basis for such a request. Class members were not informed of any of the pertinent information, such as the amount of class counsel's lodestar or the requested multiplier.

Because Class Counsel did not file their motion until weeks after fee objections were due, and never directed reasonable notice of their fee motion to all class members, this Court is without authority to approve any fee award, and will be without any such authority until and unless Rule 23(h) is complied with. This is apparently a case of first impression in the Third Circuit, as the Court of Appeals has yet to apply *In re Mercury Interactive, supra* to a similar fact pattern within this Circuit.

### III. Class Counsel Should Receive A Fee Of No More Than $15 Million In This Reversionary Megafund Settlement.

Class Counsel have requested a fee of 33-1/3% of a phantom fund that will in all likelihood revert in large part to Aetna. Because of the requirement that Subscribers file claims, for a class period extending back 11 years, most Subscribers will lack documentation to file an Option 2 claim, and will not have an adequate incentive to file an Option 1 claim that is capped at $40 per year. This means that most of the General Settlement Fund will remain unclaimed, and will revert to Aetna. Likewise, almost all of the Subscriber Settlement Fund will be unclaimed and revert to Aetna.

4

Federal courts value claims-made settlements like this one based upon the value of benefits actually claimed by class members. *See e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189-90 (D. Me. 2003) (Hornby, J.) ("Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney fees only if I know the total value of the settlement... I have determined to delay award of attorney fees **until experience shows how many vouchers are exercised and thus how valuable the settlement really is.**"); *In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (same).

In valuing a settlement, the Court should look to the actual claims rate. *See Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist LEXIS 5040 (N.D. Cal. January 18, 2008) (referring to parties' valuation based on assumed 100% claims rate as "fiction" and "fantasy," and awarding fee of 25% of claimed benefits). *See also Managing Class Action Litigation: A Pocket Guide for Judges*, Federal Judicial Center (3rd Ed. 2010) (attached hereto as *Exhibit B*):

### A. Evaluating monetary and nonmonetary results achieved

The 2003 Committee Note to Rule 23(h) gives the following guidance for determining attorney fees based on the creation of a monetary fund for the common benefit of the class: the "fundamental focus is the result actually achieved for class members."

In cases involving monetary benefits, do not be misled by party valuations of the settlement that presume a 100% claims rate by class members. Insist on actual information on claims filed to determine the benefit to class members and use that information both to place a value on the settlement and to award attorney fees, as the district judge did in *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 50–53 (D. Me. 2005). That value—plus the value of any nonmonetary relief—serves as the starting point for applying the percentage-of-value method in determining appropriate attorney fees (discussed below).

5

> Likewise, in cases in which the benefit to the class is nonmonetary (coupons, discounts, warrants, and the like), determining the actual value to the class requires looking beyond the face value of nonmonetary or contingent benefits. **Redemption data or other evidence of class use is essential.** In some cases, particularly settlements involving injunctive or declaratory relief, you might use expert valuations based on reliable, objective standards. In other cases, perhaps a majority, the only reliable test of the benefit to the class will be evidence of class members' use or redemption of the coupons, warrants, or other nonmonetary scrip. *See* MCL 4th § 21.71; *see also* Class Action Fairness Act, 28 U.S.C. § 1712(a) (2008) (coupon settlements). **In such cases, it is especially important to link the amount of any attorney fees with the actual benefit to the class.**
>
> A direct way to ensure that you have sufficient information to determine attorney fees in cases with nonmonetary benefits is simply to hold back the portion of any attorney fee awards that is linked with coupons, discounts, or other nonmonetary benefits until after the redemption period has ended and the value of the benefits can be established by calculating class members' actual use. For example, the court expressly reserved the determination of any attorney fees to be paid to plaintiffs' counsel until after the parties had provided the court with information concerning the distribution of benefits in *Strong v. BellSouth Telecommunications, Inc.*, 173 F.R.D. 167 (W.D. La. 1997), *aff'd,* 137 F.3d 844, 848 (5th Cir. 1998). Note that redemption of a coupon does not automatically mean the member received a benefit. If similar discounts are provided to consumers outside of the class, the benefit to the class might be less than the face amount of the coupon—or perhaps no benefit at all.
>
> To align plaintiff counsel's interests with those of the class, to discourage the use of a reversion clause, and to negate the effect of a clear sailing agreement, consider linking the award of attorney fees to the value of the funds distributed to the class or the coupons redeemed by the class (see section V.B, below).

*See* Pocket Guide, attached hereto as *Exhibit B*, at pp. 33-34 (emphasis added).

In *Boeing v. Van Gemert*, 444 U.S. 472 (1980), a case that Class Counsel may try to rely on, the district court entered judgment in a sum certain, and all each class member had to do to in order to claim his or her share was to submit proof of identity.

> In this case, the named respondents have recovered a determinate fund for the benefit of every member of the class whom they represent... Nor does Boeing contend that any class member was uninjured by the company's

6

> failure adequately to inform him of his conversion rights. Thus, the damage to each class member is simply the difference between the redemption price of his debentures and the value of the common stock into which they could have been converted. To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class.

*Id.* at 479-480.

Therefore, the *Boeing* holding is hardly "black letter law" for this case. Instead, this is the kind of case addressed at footnote 5 of the *Boeing* opinion -- "a class-action judgment that simply requires the defendant to give security against all potential claims" – which means that it is governed by those cases that index fees to the value of the settlement benefits actually claimed by the class.

Finally, as this Court noted in its 2009 case management order, "when evaluating any application for court-awarded attorneys' fees, the Court will consider the lower risk involved in pursuing this litigation in light of the government's investigation." *In re Aetna UCR Litig.*, 2009 U.S. Dist. LEXIS 66853 at *11-12 (D.N.J. July 31, 2009)(citing *In re Cendant*, 243 F.3d 722, 736 (3rd Cir. 2001)). The New York Attorney General obtained a $20 million payment from Aetna in 2009, and determined that the Ingenix database represents an inherent conflict of interest, and could not be used as the basis for setting UCR rates. After that payment and determination, this case was relatively easy as the heavy lifting had already been performed by the NYAG.

It is premature to make any fee award to class counsel at this time based upon a percentage of the fund. As Judge Hornby wrote in *Compact Disc, supra*, the value of this settlement will be known only after all claims have been paid, and experience shows how valuable this settlement really is. In such cases, federal law dictates that an award of fees be contingent upon the amount of benefits actually claimed.

7

In addition, the percentage requested for a settlement alleged to be worth $120 million is grossly excessive. According to a widely cited study, the mean fee for cases that settle for between $100 million and $250 million is 17.9%. *See Fitzpatrick, an Empirical Study of Class Action Settlements and Their Fee Awards* attached hereto as *Exhibit B,* at p. 839. If this case were a true megafund, in that it really delivered $120 million in value to the class, Class Counsel would be entitled to no more than the 18% market rate for settlements of that magnitude.

This settlement is likely to deliver far less than the theoretical maximum sum that Aetna has agreed to provide security for. Because much of the risk of this lawsuit was removed by the prior work of government investigations, Class Counsel should receive a percentage that is lower than the average for all cases. If the settlement delivers no more than $80 million in benefits to claimants, for example, Class Counsel should receive no more than $16 million, or 20% of that amount.

## CONCLUSION

For the foregoing reasons, this Court should DENY approval to the proposed Settlement, and should award an reasonable attorneys' fee based upon the amount of settlement benefits actually claimed by Subscriber class members.

>
> Respectfully submitted,
> Objectors,
> By their attorneys,
>
> /s/ Vincent S. Verdiramo
> VINCENT S. VERDIRAMO
> VERDIRAMO & VERDIRAMO ESQS, PA
> 3163 Kennedy Blvd.
> Jersey City NJ 07306
> (201) 798-7082
> (201) 798-4627
> mmf036@aol.com
>
> John J. Pentz,
> 19 Widow Rites Lane
> Sudbury, MA 01776
> Phone: (978) 261-5725
> Fax: (978) 405-5161
> jjpentz3@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the ECF filing system on February 26, 2014, and that as a result electronic notice of the filing was served upon all attorneys of record.

> /s/ Vincent S. Verdiramo
> Vincent S. Verdiramo