Patrick M. Megaro, Esq.
NJ Bar # 3634-2002
DNJ Bar ID # PM4285
Sam A. Miorelli, E.I., Esq.
Florida Bar # 99886 (*pro hac vice* application pending)
Law Office of Sam Miorelli, P.A.
17 N Forest Avenue
Orlando, FL 32803
(352) 458-4092
Attorneys for Objectors Luke Miorelli,
Jan Liacopoulos Miorelli, and Mitchell George Miorelli.

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: AETNA UCR LITIGATION | Case No. 2:07-cv-03541-KSH-CLW |

**OBJECTION OF LUKE MIORELLI, JAN LIACOPOULOS MIORELLI, AND MITCHELL GEORGE MIORELLI TO PROPSED SETTLEMENT OF CLASS ACTION**

Luke Miorelli, Jan Liacopoulos Miorelli, and Mitchell George Miorelli, members of the class heretofore preliminarily determined by the Court in this action, appear herein by the undersigned, Sam A. Miorelli, E.I., Esq. and Patrick M. Megaro, Esq., their attorneys, and object, pursuant to Federal Rule of Civil Procedure 23(e), to the proposed settlement of this action and to its approval by the court on the following grounds:

**INTRODUCTION**

Plaintiffs filed a complaint alleging at least hundreds of millions of dollars of direct damages to subscribers, providers, and healthcare associations due to a scheme employed by Aetna to defraud essentially every angle of the healthcare payment system for "out of network" healthcare that Aetna administered. Additionally, due to the nature of Plaintiffs' claims, they

1

seek treble damages and costs which makes the total value of the claim crest well above a billion dollars.

Nevertheless, Plaintiffs propose to settle with Aetna for as little as $60 million, two-thirds of which would go to class counsel in their $40 million proposed fee, plus $3 million of administrative costs, plus $140,000 to class representatives, and still more in settlement administration costs. From the remaining less-than-$17 million, Plaintiffs propose to pay the hundreds of thousands of class members $40 each per year of their losses which, according to Plaintiffs, actually may be hundreds or thousands of dollars each.

The second $60 million from the settlement, upon which class counsel benchmark their fees, is illusory. Class members must produce onerous prove-up documentation and, in the case of subscriber class members, unless their provable losses to Aetna's illegal activities are at least 5 times the automatic payment amount, will have their proven claim denied. There is little reason to believe anything close to the full amount of this second tranche will ever be paid to class members.

Consequently, the class counsel's fee should be compared only to the amount of money which can reasonably be expected to actually be received by the class members: $56,860,000 minus settlement administration costs. There is no basis in law for a settlement where the attorneys settle for a small fraction of their claimed damages and are rewarded with a majority of the recovery in attorneys' fees for their efforts.

I.      **The objectors are members of the class.**

Objectors Luke Miorelli, Jan Liacopoulos Miorelli, and Mitchell George Miorelli are Florida residents who were subscribers to Aetna policies affected by this settlement and received mailed notice of this settlement. They are therefore members of the settlement class with standing to object to the settlement. Fed. R. Civ. Proc. 23(e)(5).

Luke Miorelli and Jan Liacopoulos Miorelli reside and receive their mail at 4715 N Harbor City Blvd., Melbourne, FL 32935. Their e-mail addresses are luke@meconstruction.com and jmiorelli@abceastflorida.com, respectively.

Mitchell George Miorelli resides and receives his mail at 9390 Lake Hickory Nut Drive, Winter Garden, FL 34787. Mitchell's e-mail address is mitchmiorelli@gmail.com.

Attorneys Sam A. Miorelli, E.I., Esq. and Patrick M. Megaro, Esq. represent the objectors and give notice of their intent to appear at the fairness hearing in this case, where they will discuss matters raised in this Objection. Objectors do not intend to call any witnesses at the fairness hearing, but reserve the right to make use of all documents entered on to the docket by any settling party or objector. Objectors reserve the right to cross-examine any witnesses who testify at the hearing in support of final approval or to supplement this objection if the parties introduce new arguments for settlement approval or valuation after the objection deadline. Objectors join the objections of any other objectors or *amici* to the extent those objections are not inconsistent with this one.  Undersigned counsel may be contacted at 17 N Forest Avenue, Orlando, FL 32803, by telephone at 352-458-4092, or by e-mail to sam.miorelli@gmail.com or kc2qbn@yahoo.com.

## II.   The court has a fiduciary duty to the unnamed members of this class.

A district court must act as a "fiduciary for the class who must serve as a guardian of the rights of absent class members. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). "Both the United States Supreme Court and the Courts of Appeals have repeatedly emphasized the important duties and responsibilities that devolve upon a district court pursuant to Rule 23(e) prior to final adjudication and settlement of a class action suit." *In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166, 192-94 (D. Mass. 2005) (*citing, inter alia, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 623 (1997) ("Rule 23(e) protects unnamed class

3

members from 'unjust or unfair settlements' agreed to by 'fainthearted' or self-interested class 'representatives.'")); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002) ("district judges [are] to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions").

"Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members . . . [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d. Cir. 1995) (internal quotation and citation omitted). "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." Herbert Newberg & Alba Conte, Newberg on Class Actions § 13:20 (4th ed. 2002). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). *Accord Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

There should be no presumption in favor of settlement approval: "[t]he proponents of a settlement bear the burden of proving its fairness." *True v. American Honda Co.*, 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010) (*citing* 4 Newberg on Class Actions § 11:42 (4th ed. 2009)). *Accord* American Law Institute, *Principles of the Law of Aggregate Litig.*, § 3.05(c) (2010) ("*ALI Principles*").

"Where the court is '[c]onfronted with a request for settlement-only class certification,' the court must look to the factors 'designed to protect absentees.'" *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (*quoting Amchem*, 521 U.S. at 620). "[S]ettlements that take place prior

to formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953. "[P]re-certification settlement agreements require that we carefully review the entire settlement, paying special attention to 'terms of the agreement contain[ing] convincing indications that the incentives favoring pursuit of self-interest rather than the class's interest in fact influenced the outcome of the negotiations.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (*quoting Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003)). "These concerns warrant special attention where the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

It is insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties. *Bluetooth*, 654 F.3d at 948 (*quoting Staton v. Boeing*, 327 F.3d at 960). Because of the danger of conflicts of interest, third parties must monitor the reasonableness of the settlement as well. *Id.* "Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (*quoting In Re Washington Public Power Supply Syst. Lit.*, 19 F.3d 1291 (9th Cir. 1994)). "Accordingly, fee applications must be closely scrutinized." *Vizcaino*, 290 F.3d at 1052.

### III. The 70% fee request is excessive under Third Circuit law; appropriate reduction will augment class recovery.

The settlement creates a fund of $60 million, with an additional $60 million to be paid on a contingent basis depending on class members meeting onerous obligations and proving damages many times the automatic class settlement amount. The guaranteed $60 million is immediately reduced by $3 million in costs, then raided by class counsel for more than 70% of

the remainder, with an additional $140,000 paid to class representatives and untold thousands or millions more in settlement administration fees. It is only *after* all those reductions that the settlement administrator even begins to determine whether class members will receive the full $40 per year of Aetna coverage. In the likely event that the costs and fees result in there being insufficient funds for the class members to receive their full amounts, the class members lose.

As the Third Circuit has noted, class members are "not indifferent" whether settlement funds go to class members or to *cy pres* recipients. *In re Baby Products Antitrust Lit.*, 708 F.3d 163, 178 (3d Cir. 2013). If class members prefer cash in their pockets to cash to charity, they surely prefer cash in their pockets to cash provided to settlement administrators, paid for costs, incentive payments, and class counsel fees. *See, e.g., In re Wells Fargo Sec. Litig.*, 157 F.R.D. 467, 470-72 (N.D. Cal. 1994) (class cares about minimizing expenses).

The percentage-of-recovery approach is supposed to be percentage of *recovery*, not the percentage of a *fund*. The proper evaluation of the settlement is what the class *actually receives*. *See* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("it may be appropriate to defer some portion of the fee award until *actual payouts* to class members are known" (emphasis added)); *id.* ("fundamental focus is the result *actually achieved* for class members" (emphasis added)). *See also ALI Principles* § 3.13; Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.71 (2004) ("the fee awards should be based only on the benefits *actually delivered*."). "[N]umerous courts have concluded that the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed." *In re Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283, 338 (3d Cir. 1998). The "key consideration in determining a fee award is reasonableness in light of the benefit *actually conferred*." *Create-A-Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA, 2009

WL 3073920, at *3 (N.D. Cal. Sept. 22, 2009) (emphasis in original) (internal citation and quotation omitted). Here, at least until the second tranche of money is determined by the claims administrator, that amount to properly be used as the denominator is $56,860,000 minus whatever settlement administration fees this Court awards.

Class counsel seek an award of $40 million in fees. This is more than 70% of the first and only guaranteed tranche of money to be paid to the class once costs are deducted. The favored method for awarding fees in the Third Circuit for cases involving a common fund is using the percentage of recovery method. *In re Cendant Corp. PRIDES Litig.*, 243 R.3d 722, 732 (*quoting In re Prudential*, 148 F.3d 283, 333 (3d Cir. 1998)). "The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Prudential*, 148 F.3d at 333. The relevant factors to consider in setting a fee award in common-fund settlements are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n1 (3d Cir. 2000). Recent Third Circuit cases addressing fee awards in common fund cases such as this have called even a 30% fee "admittedly large," let alone a percentage more than double that. *See In re Veritas Software Corp. Securities Litig.*, 396 Fed.Appx. 815, 818 (3d Cir. 2010). Additionally, using Plaintiffs' own estimation of damages caused by Aetna, this settlement, even if both tranches are fully subscribed, only provides the class member a small fraction of the damages they would be entitled to if the case were successfully litigated to a jury trial. Certainly a fractional, hand-slap

settlement of an enormous claim does not entitle class counsel to a legal fee bonanza consuming the vast majority of the only guaranteed funds in the already-meager settlement.

Additionally, a lodestar calculation would not be an appropriate measure of fees in this case. "The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *In re Prudential*, 148 F.3d at 333. Certainly this case is no such case. Aetna has paid millions to government authorities related to the activities at question in this litigation and their willingness to enter into a tens-of-millions settlement with Plaintiffs' shows the lucrative nature of this litigation. This Court should reduce the attorneys fee award significantly and base its percentage-of-recovery analysis on the amount of money guaranteed to be received by the class *at the time* any attorney fee is paid, not the amount of money theoretically available to the class.

### IV. A class should not be certified when the primary beneficiaries are the class representatives and class counsel.

While class members are entitled to, at most, $40 per year of Aetna subscribership (presuming the attorney's fees, costs, incentive payments, and administration fees leave anything for class members at all), the seven class representatives will each be paid $20,000 – equivalent to 500 years of maximum theoretical subscriber payments from the first tranche of payments under the settlement.

Courts of the Third Circuit routinely approve incentive awards of a few thousand dollars to named plaintiffs who actively participate in the litigation as a compensation for their time. *See Nichols v. SmithKline Beecham Corp.*, No. Civ.A.00-6222, 2005 WL 950616, at *24 (E.D. Penn. April 22, 2005) (evaluating several cases in Federal District Courts in Pennsylvania and Ohio

approving incentive awards). However, when the incentive award is many times the award that other members of the class can receive, the Ninth Circuit has recently rejected such a disparity in *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). The Ninth Circuit reasoned that "the significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest caused by the conditional incentive awards." *Id.* "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 in incentive awards." *Id.*

The Sixth Circuit has also recently rejected a large disparity between named and unnamed class members' treatment under a settlement in *Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013). In *Vassalle*, the settlement provided for unnamed plaintiffs to receive $17.38 each while the named plaintiffs would be paid $2,000 each plus, in the case of one named plaintiff, have $4,516.57 in debt forgiven. *Id.* at 755-56. In total, this resulted in named plaintiffs receiving approximately 374 times as much benefit from the settlement as unnamed class members. Consequently, the Sixth Circuit found the settlement was unfair and that the district court abused its discretion by approving it. *Id.* at 756.

The Second Circuit also is skeptical of the fairness of incentive payments. In *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982), the court affirmed the district court's judgment that a settlement where unnamed class members received $1,000 each while the four named plaintiffs received between $8,500 and $17,500 each. The district court held that "where representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to

the class." *Plummer v. Chemical Bank*, 91 F.R.D. 434, 441-42 (S.D.N.Y. 1981), *aff'd*, 668 F.2d 654 (2d Cir. 1982).

The Eleventh Circuit directly cited that same district court language in *Plummer* when it rejected a class settlement which allocated approximately 6.25% of a lump sum settlement to the eight named plaintiffs, while the unnamed plaintiffs each received, on average, approximately 0.42% of the settlement. *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1146, 1148 (11th Cir. 1983). The court found this 14.75 times disparity between named and unnamed plaintiff recovery was facially unfair and reversed the district court's approval of the settlement. *Id.* at 1151.

In *Radcliffe* the disparity between the class representatives and the members of the class was about 6 to 192 times, in *Vassalle* it was 374 times, in *Plummer* it was 8.5 to 17.5 times, and in *Holmes* the disparity was 14.75 times. In each of those cases, the appellate court rejected the settlement as unfair. In this case the disparity is, to use the settlement notice example of $120 for three years of coverage, about 167 times, within the range which troubled the Ninth Circuit and vastly above the levels which the Second and Eleventh Circuits have rejected. Class certification is not appropriate under Rule 23(a)(4) when the class representative and class counsel bring a lawsuit to benefit not the class, but themselves. *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) (Easterbrook, J.). This settlement appears to be just such a case and should be rejected.

## CONCLUSION

This settlement cannot be approved because the attorney fee request is disproportionate to the class relief and must be substantially reduced. Additionally, the class representative incentive payment is unreasonably large when compared to the class member payments from the first tranche from which it is drawn. That unreasonable disparity, if left undisturbed, would make

certification of the class improper under Rule 23(a)(4). As a result, the settlement, as proposed, cannot be approved.

Dated: February 26, 2014

                                                                               */s/ Patrick Michael Megaro*
Patrick Michael Megaro, Esq.
NJ Bar # 3634-2002
DNJ Bar # PM4285
kc2qbn@yahoo.com
Sam A. Miorelli, E.I., Esq.
Florida Bar # 99886 (*pro hac vice* app. pending)
sam.miorelli@gmail.com
Law Offices of Sam Miorelli, P.A.
17 N Forest Avenue
Orlando, FL 32803
352-458-4092

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of New Jersey by using the CM/ECF system on February 26, 2014. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                                               */s/ Patrick Michael Megaro*
Patrick Michael Megaro, Esq.