# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: AETNA UCR LITIGATION, | Master File No. 07-3541(KSH)(CLW) |
| | MDL NO. 2020 |
| This Document Relates To: ALL CASES | |

-------------------------------------------------------------------------------------------------------------
### BRIEF IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT
-------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
*Settlement Class Counsel*

Robert J. Axelrod
POMERANTZ LLP
600 Third Avenue
New York, NY 10016

*Chair of Plaintiffs' Executive Committee*

Joe R. Whatley, Jr.
Edith Kallas
WHATLEY KALLAS LLC
1180 Avenue of the Americas
20th Floor
New York, NY 10036
(212) 447-7060

*Attorneys for Provider Class*

Stephen A. Weiss
Diogenes P. Kekatos
James E. O'Brien III
SEEGER WEISS LLP
77 Water St., 26h Fl.
New York, NY 10005
(212) 584-0700

Christopher Burke
Joseph P. Guglielmo
Amanda Lawrence
SCOTT+SCOTT, ATTORNEYS AT LAW
LLP
The Chrysler Building
405 Lexington Ave., 40th Floor
New York, NY 10174
(212) 223-6444

Lynne Kizis
Kevin P. Roddy
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
(732) 636-8000

*Attorneys for Subscriber Class*

## TABLE OF CONTENTS

Table Of Authorities ......................................................................................................ii

Preliminary Statement....................................................................................................1

Factual And Procedural Background .............................................................................2

I.     Status Of This Litigation......................................................................................2

II.    The Settlement Agreement .................................................................................3

      A.     The Proposed Settlement Classes ...........................................................3

      B.     The Settlement Terms ............................................................................5

            1.     The General Settlement Fund .....................................................6

            2.     The Subscriber Prove-Up Fund .................................................6

            3.     The Provider Prove-Up Fund.....................................................6

            4.     Treatment of Balances Remaining in Funds...............................7

            5.     Dismissal and Release of Claims................................................8

Legal Argument ............................................................................................................9

I      The Proposed Settlement Classes Satisfy The Requirements Of Rule 23 ...........................9

      A.     The Settlement Classes Are Sufficiently Numerous................................9

      B.     There Are Common Questions of Law and Fact ......................................9

      C.     The Representative Plaintiffs' Claims Are Typical ................................10

      D.     The Representative Plaintiffs Have Fairly and Adequately Protected the ..............11

      E.     The Proposed Class Satisfies the Predominance and Superiority ...........................12

II     This Court Should Grant Final Approval To The Proposed Settlement................................14

      A.     The Proposed Settlement Is Fair, Reasonable, And Adequate .................................14

            1.     The Complexity, Expense, and Likely Duration of the Litigation ..............15

i

2.      Reaction of the Class to the Settlement ...........................................16

3.      Stage of the Proceedings and Amount of Discovery ....................................18

4.      The Significant Obstacles And Risks To A Recovery..................................19

5.      Ability of Plaintiffs to Maintain Class Certification.....................................20

6.      Ability Of Defendants To Withstand A Greater Judgment ..........................21

7.      The Range Of Reasonableness Of The Settlement Fund In Light
        Of The Best Possible Recovery And The Attendant Risks Of Litigation......22

8.      Additional Considerations ..............................................................23

III     The Notices To The Class Satisfied Both
        The Preliminary Approval Order And Applicable Law ........................................25

Conclusion ...........................................................................................27

# TABLE OF AUTHORITIES

## Cases

*Alves v. Main,* 2012 WL 6043272 (D.N.J. Dec. 4, 2012) .......................................... 16, 18, 23, 24

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) ...................................................... 9

*Austin v. Pa. Dep't of Corr.,* 876 F. Supp. 1437 (E.D.Pa. 1995) ................................... 23

*Beck v. Maximus, Inc.,* 457 F.3d 291 (3d Cir. 2006) ....................................................... 11

*Bredbenner v. Liberty Travel, Inc.,* 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ........................... 24

*Colon v. Passaic Cnty.,* 2012 WL 1457764 (D.N.J. Apr. 24, 2012) ...................................... 19, 24

*Dewey v. Volkswagen,* 728 F. Supp. 2d 546 (D.N.J. 2010) .......................................... 17

*District 1199P Health and Welfare Plan v. Janssen, L.P.,*
  2008 WL 5413105 (D.N.J. Dec. 23, 2008) ..................................................................... 20

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) ....................................................... 25

*F.C.V. Inc. v. Sterling National Bank,* 2006 WL 1319822 (D.N.J. May 12, 2006) ................. 20, 23

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975) .............................................................. 14

*Henderson v. Volvo Cars of N. Am., LLC.,* 2013 WL 1192479 (D.N.J. Mar. 22, 2013) ....... passim

*In re AT&T Corp. Sec. Litig.,* 455 F.3d 160 (3d Cir. 2006) ........................................ 14, 22

*In re Cendant Corp. Litig.,* 264 F.3d 201 (3d Cir. 2001) ........................................... 15, 21

*In re Cmty. Bank of N. Va.,* 418 F.3d 277 (3d Cir. 2005) ................................................ 9

*In re Diet Drugs Prod. Liab. Litig.,* 431 F.3d 141 (3d Cir. 2005) ................................. 25

*In re Epogen and Aranesp Off-Label Mktg. and Sales Pract. Litig.,*
  2009 WL 1703285 (C.D. Cal. June 17, 2009) ............................................................... 19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ................................................................................ 18, 19

*In re Initial Public Offering Securities Litigation,* 728 F. Supp. 2d 289 (S.D.N.Y. 2010) ........... 17

*In re Ins. Brokerage Antitrust Litig.,* 282 F.R.D. 92 (D.N.J. 2012) ................................. 22

*In re Johnson & Johnson Derivative Litig.,* 900 F. Supp. 2d 467 (D.N.J. 2012) .................. 21, 22

*In re Merck & Co., Inc. Vytorin ERISA Litigation,* 2010 WL 547613 (D.N.J. Feb. 9, 2010) 18, 21

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998) ............................................................................... 18, 25

*In re Schering-Plough Enhance ERISA Litigation,*
  2012 WL 1964451 (D.N.J. May 31, 2012) ................................................................. 15, 19

*In re Schering-Plough/Merck Merger Litigation,*
  2010 WL 1257722 (D.N.J. March 26, 2012) .............................................................. 22, 23

*In re The Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283 (3d Cir. 1998) ...... 12, 19

*In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004) ....................... 9, 10, 15, 22

*Ironworkers Local Union No 68 v. AstraZeneca Pharm. LP,*
  585 F.Supp.2d 1339 (M.D. Fla. 2008) ...................................................................... 20

*Jones v. Commerce Bancorp, Inc.,* No. 05-5600, 2007 WL 2085357 (D.N.J. July 16, 2007) ..... 10

*O'Brien v. Brain Research Labs, LLC,* No. 12-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) . 12

*Plymouth County Contributory Ret. Sys. v. Hassan,*
  2012 WL 664827 (D.N.J. Feb. 28, 2012) ................................................................. 14, 24

*Serio v. Wachovia Securities,* 2009 WL 900167 (D.N.J. March 31, 2009) ................................. 23

*Stewart v. Abraham,* 275 F.3d 220 (3d Cir. 2001) ........................................................ 9, 10

*Stoetzner v. U. S. Steel Corp.,* 897 F.2d 115 (3d Cir. 1990) ......................................... 17

*United Nat'l Ret. Fund v. Watts,* 2005 WL 2877899 (D.N.J. Oct. 28, 2005) ........................... 22

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................ 9, 10, 11

Fed. R. Civ. P. 23(b) ................................................................................................ 12

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 25

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 25

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 14

## PRELIMINARY STATEMENT

Settling Plaintiffs respectfully submit this Brief in support of their application for final approval of the Settlement.[1]

The Proposed Settlement is the culmination of more than seven years of litigation and extensive settlement negotiations regarding wide-ranging claims asserted by subscribers, providers, and association plaintiffs against Defendant Aetna in the Actions.  Plaintiffs, on behalf of putative nationwide classes of Aetna subscribers and out-of-network providers, have challenged Aetna's use of the Ingenix databases, as well as other reimbursement practices. Aetna has denied, and has vigorously defended against, all of these claims and allegations.

The Settlement resulted from arm's-length negotiations by experienced counsel, including more than thirteen in-person sessions with the Honorable Nicholas Politan, U.S.D.J. (ret), as well as numerous telephone sessions..  This Settlement is the product of protracted litigation by counsel committed to achieving the best possible result for their clients and the Classes; it is not a product of collusion.  If approved, the Settlement will provide significant benefits to members of both Settlement Classes – Subscriber Class Members and Provider Class Members – in exchange for dismissal of the Actions with prejudice and broad releases of claims. As described below, the proposed Settlement Classes satisfy the requirements of Rule 23 and the terms of the Settlement Agreement are fair, reasonable, and adequate.  In addition, the form and manner of notice to the Settlement Class Members are adequate to apprise them of their rights and obligations under the Settlement Agreement.

---

[1]     Capitalized terms in this Memorandum are defined in the Settlement Agreement, and those definitions are adopted and applied herein.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.      STATUS OF THIS LITIGATION**

The Actions include multiple class actions filed against Aetna by subscribers, providers, and association plaintiffs, beginning in July 2007.  In 2009, those Actions were centralized in this Court by the Judicial Panel on Multidistrict Litigation, and thereafter several additional Actions were transferred to this Court.  The Court has presided over the consolidated MDL proceeding, captioned *In re Aetna UCR Litigation*, Civil Action No. 07-3541 (MDL 2020). Plaintiffs allege generally that Aetna (and various alleged co-conspirators) improperly used third-party databases – specifically, the Ingenix databases – to systematically and uniformly underpay claims involving services and supplies provided to Aetna plan members by out-of-network providers.  The Actions also challenge other methods by which Aetna calculated out-of-network reimbursement rates, and they claim that Aetna failed to properly disclose its methods for calculating out-of-network reimbursement rates.  According to Plaintiffs, Aetna's practices violated the Employee Retirement Income Security Act ("ERISA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Sherman Antitrust Act, as well as state law.

This Court has presided over extensive proceedings in the Actions.  One need only peruse the over 800 entries on the docket to conclude that this case was vigorously litigated – and defended – by highly experienced and competent counsel committed to representing their clients to the fullest extent.  From the commencement of these Actions, the parties briefed multiple rounds of motions to dismiss and multiple rounds of class certification applications.  Both fact discovery and expert discovery in these Actions have been completed.  Discovery included the production of over five million pages of documents and multiple terabytes of claims data, 60 depositions of fact witnesses, and multiple reports and depositions by six different experts.

Through these proceedings, the Parties have had ample opportunity to explore the merits of their claims and defenses in the Actions.

Also of particular note were the extraordinary efforts by Plaintiffs' counsel, and defense counsel, under the guidance of the Judge Nicholas H. Politan, to resolve the Actions by way of settlement. This Court is no doubt aware that for more than 18 months until his untimely passing in February 2012, Judge Politan worked with the parties to forge a workable agreement. Judge Politan's efforts included not only 13 in-person mediation sessions, but also countless telephone calls and other direct meetings with the parties. His efforts were unprecedented and resulted in the settlement framework and an outline of an agreement that both sides could live with.

It is also critical to note that after the settlement framework was reached in December 2012, the parties continued to negotiate heavily contested points within the agreement, including the scope of the release and the allocation of funds between the Provider Class and the Subscriber Class. The final negotiations and agreements on these points were held in the Newark Federal Courthouse on November 20, 2012 under the guidance of the Honorable Stanley R. Chesler.

## II.   THE SETTLEMENT AGREEMENT

The Settlement is the product of multiple mediation sessions involving an independent mediator, as discussed above, as well as extensive negotiations involving experienced counsel. Key components are discussed below.

### A.   The Proposed Settlement Classes

The Settlement Agreement covers two Settlement Classes: the Subscriber Settlement Class and the Provider Settlement Class. The Provider Settlement Class is defined as Persons

who, at any time from June 3, 2003 through the Preliminary Approval Date,[2] (i) were Out-of-Network Health Care Providers[3] or Out-of-Network Health Care Provider Groups[4]; (ii) provided Covered Services or Supplies[5] to Plan Members[6]; and (iii) whose resulting claims for reimbursement included Partially Allowed Claims[7].  *See* Settlement Agreement § 1.37.  The Subscriber Class is defined as Persons who, at any time from March 1, 2001, through the

---

[2]     "Preliminary Approval Date" means the date the Preliminary Approval Order is entered by the Court.  *See* Settlement Agreement § 1.33.

[3]     "Out-Of-Network Health Care Provider" means any health care provider who did not have a valid written contract with the Company to provide Covered Services or Supplies to Plan Members when the health care provider provided Covered Services or Supplies to a Plan Member.  Without limiting the foregoing, "provider" includes any and all of the following: physician, podiatrist, chiropractor, orthodontist, psychologist, psychiatrist, physical or occupational therapist, acupuncturist, laboratory technician, optometrist, social worker, physician assistant, nurse, midwife, nurse practitioner, nurse anesthetist, nutritionist, orthotist, prosthetist, audiologist, dentist, dental hygienist, oral surgeon, counselor, therapist, durable medical equipment provider, laboratories, pharmacist, pharmacy, respiratory therapist, surgical assistant, speech or hearing specialist, or speech pathologist.  *See id.* § 1.26.

[4]     "Out-Of-Network Health Care Provider Group" means a corporation, partnership, or other distinct legal entity that did not have a valid written contract with Company to provide Covered Services or Supplies to Plan Members when it provided or billed for Covered Services or Supplies to a Plan Member.  An Out-Of-Network Facility is also an Out-Of-Network Health Care Provider Group, but only to the extent that: (a) bills submitted by the Out-Of-Network Facility for Covered Services or Supplies provided by an Out-Of-Network Health Care Provider; or (b) (i) the Allowed Amount for the Out-Of-Network Facility's fees or charges for Covered Services or Supplies was based on the Ingenix Databases and (ii) those Covered Services or Supplies were provided to a Plan Member whose Plan was sitused or based in the State of New Jersey.  *See id.* § 1.27.

[5]     "Covered Services or Supplies" means those health care services and supplies for which a Plan Member is entitled to receive coverage under the terms and conditions of his or her Plan.  *See id.* § 1.14.

[6]     "Plan Member" means an individual enrolled in or covered by a Plan insured or administered by the Company.  *See id.* § 1.32.

[7]     "Partially Allowed Claim" means any claim line for a Covered Service or Supply provided to a Plan Member that is not a Denied Claim and for which the Allowed Amount is less than the amount billed by the provider.  Partially Allowed Claims must relate to services

4

Preliminary Approval Date, (i) were Plan Members; (ii) received a Covered Service or Supply from an Out-of-Network Health Care Provider or Out-of-Network Health Care Provider Group; and (iii) whose resulting claims for reimbursement included Partially Allowed Claims.  *See id.* § 1.50.

### B.    The Settlement Terms

The proposed Settlement has a value of $120 million.  That total includes a guaranteed payment by Aetna of $60 million to a General Settlement Fund and $60 million in additional monies, to be paid by Aetna to two prove-up funds.  In exchange for these significant benefits to Settlement Class Members, all claims against Aetna in the Actions are being dismissed with prejudice, and the Settlement Classes will provide a broad release of Released Claims against Aetna and all other Released Persons.[8]

---

provided to a Plan Member by an Out-Of-Network Provider or an Out-Of-Network Provider Group.  *See id.* § 1.28.

[8]    "Released Claims" means any and all manner of claims, actions, causes of action, arbitrations, damages, debts, demands, duties, judgments, liabilities, losses, obligations, penalties, liquidated damages, proceedings, agreements, promises, controversies, costs, expenses, attorneys' fees, and suits of every nature and description whatsoever, whether based on federal, state, provincial, local, foreign, statutory, or common law or any other law, rule, or regulation, in the United States, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, known or unknown, foreseen or unforeseen, whether class or individual in nature, that each Settling Plaintiff and each Settlement Class Member, or any of them, have now or ever had against any Released Person that have been or could have been asserted by Settling Plaintiffs or Settlement Class Members, directly or derivatively, in the Actions, or any other forum, through and including the date of the entry of the Preliminary Approval Order, and based on, or in any way relating to the conduct, events, facts, transactions, occurrences, acts, representations, omissions, or other matters set forth, alleged, embraced, or otherwise referred to or alleged in the Complaint up to and including the date of the entry of the Preliminary Approval Order.  Released Claims include, without limitation of the foregoing, any claims by Releasors challenging use of the Ingenix Databases, a percentage of Medicare, Fair Health, Average Wholesale Price ("AWP"), adjustments for assistant surgeon charges, adjustments for co-surgeon charges, adjustments based on multiple surgical procedures, and behavioral health tiering policies.  *See id.* § 1.42.

### 1.      The General Settlement Fund

The Settlement establishes a General Settlement Fund of $60 million.  Members of the Subscriber and Provider Settlement Classes will be entitled to a pre-determined reimbursement amount from the General Settlement Fund – up to $40 per year that they are eligible, subject to a *pro rata* reduction, as explained in the Settlement – if they timely submit a Claim Form to the Settlement Administrator.   In addition, attorneys' fees, administration costs, and service payments to the Representative Plaintiffs will be paid out of the General Settlement Fund.  *See* Settlement Agreement § 9.

### 2.      The Subscriber Prove-Up Fund

The Settlement also establishes a Subscriber Prove-Up Fund of up to $40 million to be paid to Subscriber Class Members who submit timely and valid prove-up claims for reimbursement.  To receive a payment under this fund, a Subscriber Class Member needs to submit a completed Claim Form, as well as supporting documentation showing receipt and payment of specific Balance Bills, for each eligible claim under the Settlement.  Payments under this fund will be calculated based on 5% of the Allowed Amount on eligible claims (or 3% for certain claims) with valid supporting documents, subject to a possible *pro rata* reduction discussed in the Agreement.  Other information about these funds, as well as the eligibility and documentation requirements, is reflected in Section 10.1 of the Settlement.

### 3.      The Provider Prove-Up Fund

The Settlement also establishes a Provider Prove-Up Fund of up to $20 million to be paid to Provider Class Members who submit timely and valid prove-up claims for reimbursement.  To receive a payment under this fund, a Provider Class Member needs to submit a completed Claim Form, as well as supporting documentation showing that Balance Bills were sent to Plan

Members, and remain unpaid, for each eligible claim under the Settlement.  Provider Class Members also need to demonstrate Assignments.  Payments under this fund will be calculated based on 5% of the Allowed Amount on eligible claims (or 3% for certain claims) with valid supporting documents, subject to a possible *pro rata* reduction discussed in the Agreement. Other information about these funds, as well as the eligibility and documentation requirements, is reflected in Section 10.2 of the Settlement.

### 4.   Treatment of Balances Remaining in Funds

If the General Settlement Fund is not exhausted after the payment of all claims for reimbursement, fees, and expenses, its remaining funds will be allocated equally to the Subscriber and Provider Prove-Up Funds.  However, if one Prove-Up Fund is exhausted and the other is not, the remaining funds from the General Settlement Fund will be allocated to the exhausted Prove-Up Fund.  *See* Settlement Agreement § 9.7.

Aetna's obligation to pay out monies under the two Prove-Up Funds will be limited, as is appropriate, to eligible claims, up to the amounts established for these funds under the Settlement.  If the Subscriber Prove-Up Fund is not exhausted after all claims have been paid, and if the eligible claims submitted to the Provider Prove-Up Fund exceed the amount allocated to it, up to $5 million from the Subscriber Prove-Up Fund will be allocated to the Provider Prove-Up Fund.  *See id.* § 10.1(g).  If the Provider Prove-Up Fund is not exhausted after all claims have been paid, and if the eligible claims submitted to the Subscriber Prove-Up Fund exceed the amount allocated to it, up to $5 million from the Provider Prove-Up Fund will be allocated to the Subscriber Prove-Up Fund.  *See id.* § 10.2(g).  Subject to the foregoing, if either Prove-Up Fund is not exhausted after any allocations discussed above, any remainder shall remain with Aetna and will not be paid out under the Settlement.

### 5.    Dismissal and Release of Claims

The Settlement Agreement also provides that all Settlement Class Members who have not made valid and timely elections to exclude themselves from the Settlement Class will fully and finally release and discharge forever the Released Persons[9] from the Released Claims.  *See id.* § 13.  Released Claims include, without limitation, any claims challenging use of the Ingenix Databases, a percentage of Medicare, Fair Health, Inc., Average Wholesale Price ("AWP"), adjustments for assistant surgeon charges, adjustments for co-surgeon charges, adjustments based on multiple surgical procedures, and behavioral health tiering policies. *See id.* §§ 1.42, 13.1.  If this Court approves the Settlement Agreement, the Parties will jointly apply for orders dismissing any actions against the Company related to the Released Claims.  *See id.* § 16.

---

[9]     "Released Persons" means: (a) the Company and each of its present and former parents, present and former Subsidiaries, present and former divisions and Affiliates and each of their respective current or former officers, directors, employees, and attorneys (and the predecessors, heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing); (b) any third-party administrators or other third parties contracted to provide services or products to the Company in connection with the processing of Released Claims or the administration of any Plan under which reimbursement for Released Claims was sought; and (c) any third-party health benefit plans or their plan sponsors (including, without limitation, any self-funded plans and any employers sponsoring them), whether sponsored by employers or other organizations, for which benefits were insured or administered by the Company.  *See* Settlement Agreement § 1.41.

## LEGAL ARGUMENT

### I

### THE PROPOSED SETTLEMENT CLASSES
### SATISFY THE REQUIREMENTS OF RULE 23

The Court should certify the Subscriber Settlement Class and the Provider Settlement Class for settlement purposes because both settlement classes meet all applicable requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial. But other specifications of the rule . . . demand undiluted . . . attention in the settlement context."). In analyzing Rule 23's elements, this Court "may take the terms of the proposed settlement into consideration. The central inquiry . . . is the adequacy of representation." *In re Community Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005).

### A.      The Settlement Classes Are Sufficiently Numerous

The proposed Settlement Classes satisfy Rule 23(a)'s numerosity requirement. "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, class notices were sent to over 20 million potential class members. Thus, the numerosity requirement is clearly satisfied.

### B.      There Are Common Questions of Law and Fact

The proposed Settlement Classes also satisfy Rule 23(a)'s commonality requirement for settlement purposes only. "[A] finding of commonality does not require that all class members share identical claims." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004)

9

(quotation marks omitted). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227 (quotation marks and emphasis omitted).

Here, several common questions of fact and law exist. They include whether reimbursements paid to the Settlement Classes were fixed at levels below those that would prevail in a competitive market and whether Aetna's use of the Ingenix data or any other data to calculate usual, customary, or reasonable rates violated ERISA, RICO, or the Sherman Antitrust Act. Thus, the proposed Settlement Classes satisfy the commonality requirement.

**C.     The Representative Plaintiffs' Claims Are Typical**

Rule 23(a)(3)'s "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Warfarin Sodium*, 391 F.3d at 531 (quotation marks omitted). "A named Plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, at *3 (D.N.J. July 16, 2007).

The Representative Plaintiffs for the Subscriber Class – John Seney, Jeffrey M. Weintraub, and Alan John Silver – are typical of the members of the Subscriber Class. They challenge Aetna's use of the Ingenix database and a number of other methodologies to calculate reimbursements for services by Out-Of-Network Health Care Providers and Provider Groups, as well as the Company's disclosures and related practices concerning those reimbursements.

Likewise, the claims of the Representative Plaintiffs for the Provider Class – Dr. Alan B. Schorr, M.D., Dr. Frank G. Tonrey, M.D., Dr. Carmen M. Kavali, M.D., and Brian Mullins, M.S., P.T – are typical of all Provider Class members' claims. Both the Representative Plaintiffs

and the absent class members challenge Aetna's methods for calculating reimbursements owed to Out-Of-Network Health Care Providers or Out-Of-Network Health Care Provider Groups for medical care rendered to members of the Subscriber Class.  These similarities satisfy the typicality requirement.

**D.     The Representative Plaintiffs Have Fairly and Adequately Protected the Interests of the Settlement Classes**

The Representative Plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted).  Here, the Representative Plaintiffs and the Classes they represent share common interests with respect to their challenges to Aetna's reimbursement practices.  Further, Class Counsel are experienced class action litigators familiar with the legal and factual issues involved.

While this brief is not intended to fully respond to the few objections filed by class members, it is important to briefly comment here on Mr. Epstein's arguments on adequacy. Undeterred by the Court's Opinion regarding preliminary approval of the Settlement, Mr. Epstein simply regurgitates the very same arguments he previously made and which were already correctly rejected. (*See* 8/30/13 Opinion at 14-21.)  Several of the other objectors argue that the class representatives and class counsel are inadequate because the interests of health care providers and subscribers supposedly conflict, and there are no subclasses, no separate class representatives and no separate counsel for those subclasses to protect those interests.  These contentions are simply false.

First, there *are* two Settlement Classes, a Subscriber Class and a Provider Class. Moreover, there are separate subscriber class representatives and provider class representatives. As in the litigation, the Subscriber and the Provider Classes were represented by two groups of Plaintiffs.  Of the "Representative Plaintiffs", Messrs. Seney, Weintraub, and Silver are subscribers and Dr. Schorr, Dr. Tonrey, Dr. Kavali and Mr. Mullins are providers.  Likewise, while Judge Hochberg appointed a single Executive Committee to manage this litigation, she appointed *both* Subscriber Counsel *and* Provider Counsel to that committee.  Whatley Kallas and Pomeranz represent the providers and Scott + Scott and Seeger Weiss represent the subscribers. Thus, to the extent that there are any antagonistic interests between providers and subscribers, they are in separate classes, have separate representatives and have separate counsel, all of which adequately represent the respective Settlement Class' interest.  The accompanying declarations of Mr. Whatley, Mr. Weiss, and Mr. Cecchi amply support this conclusion.

**E.    The Proposed Class Satisfies the Predominance and Superiority Requirements**

The proposed Settlement Classes also satisfy Rule 23(b)'s two requirements.  First, the common questions discussed above predominate over individual questions.  *See In re The Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 314 (3d Cir. 1998).

Second, class action adjudication of Plaintiffs' claims would also be superior to individual trials.  The class action mechanism is superior to its alternatives, particularly with respect to settlements, because it ensures that the claims of the absent class members will be resolved efficiently.  *O'Brien v. Brain Research Labs, LLC*, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012) (finding superiority because, *inter alia*, "denying certification would require each consumer to file suit individually at the expense of judicial economy").  Absent class certification, many members of the Settlement Classes would go uncompensated because they

would lack adequate monetary incentives to pursue their claims individually.  *See id.* (finding superiority because, *inter alia*, it was "not apparent that the money potentially recoverable by an individual class member as compared to the cost to pursue recovery through a lawsuit [wa]s sufficient to make individual litigation a realistic possibility").  Because the proposed Settlement Classes meet the requirements of Rule 23(a) and 23(b)(3), they should be certified.

For all these reasons, the Settlement Classes meet all applicable requirements of Rule 23(a) and (b).

## II

## THIS COURT SHOULD GRANT FINAL APPROVAL
## TO THE PROPOSED SETTLEMENT

**A.      The Proposed Settlement Is Fair, Reasonable, And Adequate**

The Court may only approve a settlement of a class action if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Third Circuit has adopted a nine-factor test to make this determination, that was first propounded in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), and has been applied by this Court on numerous occasions.  The elements of this test – known as the "*Girsh* factors" – are:

> (1) [T]he complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id. See also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006).  As this Court has noted, applying *Girsh* is not a mechanical exercise:

> These factors are a guide and the absence of one or more does not automatically render the settlement unfair . . . .   Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*.  . . .  In sum, the Court's assessment of whether the settlement is fair, adequate and reasonable is guided by the *Girsh* factors, but the Court is in no way limited to considering only those enumerated factors and is free to consider other relevant circumstances and facts involved in [the] settlement.

*Plymouth County Contributory Ret. Sys. v. Hassan*, 2012 WL 664827, at *2 (D.N.J. Feb. 28, 2012) (emphasis added)

In addition, the Third Circuit has directed the district courts to apply an "initial presumption of fairness" to a settlement if they find:

(1) the settlement negotiations occurred at arms' length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.

*Warfarin Sodium.*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001) (*Cendant I*)); *Henderson v. Volvo Cars of N. Am., LLC.*, 2013 WL 1192479, at *7 (D.N.J. Mar. 22, 2013) (same).

Because these elements are met here the proposed Settlement is presumptively fair. First, the record is clear that the settlement was negotiated at "arms' length" and in an adversarial context, with assistance of an independent mediator, by counsel with vast experience in consumer class actions. As we discuss below, the settlement also satisfies the *Girsh* factors and should be approved.

### 1.     The Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor is whether the Settlement avoids a lengthy, complex and expensive continuation of the litigation. "This factor is concerned with assessing the 'probable costs, in both time and money, of continued litigation.'" *In re Schering-Plough Enhance ERISA Litigation*, 2012 WL 1964451, at *4 (D.N.J. May 31, 2012) (quoting *Cendant I*, 264 F.3d at 234).

These actions were originally filed in July 2007 and were consolidated here in 2009 by the MDL panel. The cases have been consistently heavily litigated by both sides, both as to discovery issues and the merits. Discovery involved the examination of over five million pages of pages of documents, numerous depositions, and experts. The Declaration of James E. Cecchi dated March 12, 2013 ("Cecchi Dec.) provides a detailed chronology of some of the major case milestones.

As of the time that the settlement was initially agreed to, in November 2012, the Actions had been pending for nearly seven years.  Defendants' motions to dismiss the Complaint were fully briefed, but not decided.  Moreover, while the Plaintiffs had filed two motions for class certification, class certification had not yet been ruled upon as of the time of the settlement. Motions to strike Plaintiffs' experts were also pending.  Assuming that class certification were granted, Aetna would certainly have appealed, which would have likely added at least an additional year (and additional expense) to the litigation.  If the case had to be tried, the trial is likely to have lasted several weeks, if not months, with extensive documentary evidence and expert testimony.

Settlement at this juncture results in a substantial and tangible present recovery without the attendant risks and delays of trial and post-trial proceedings.  Thus, the complexity, expense and likely duration of continued litigation all weigh heavily in favor of approving the proposed Settlement.

2.     **Reaction of the Class to the Settlement**

The second *Girsh* "factor evaluates whether members of the class generally support or object to the settlement." *Alves v. Main,* 2012 WL 6043272, at *10 (D.N.J. Dec. 4, 2012).  This factor weighs in favor of approval of the Settlement.  With classes consisting of literally millions of class members, there will inevitably be a few class members who are dissatisfied in some way with a settlement. While several objections to the settlement have been filed, many of those objections were filed by the usual cast of professional objectors, which is hardly representative of the support of the Classes generally.   Other objectors either misconstrued the Settlement benefits or objected to the process, including having to file a claim form.

Moreover, there has been only a *single* objection filed by a Provider Class member, and that member is also represented by a well-known professional objector, Mr. Tomlinson. Considering the low number of objections, there is no doubt that the Classes overwhelmingly support the Settlement.  *See Bell Atl.*, 2 F.3d at 1314 n.15 (silence is "tacit consent" to settlement); *Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *Prudential*, 962 F.Supp. at 537 (small amount of negative responses to settlement favors approval); *Weiss,* 899 F.Supp. at 1301 (100 objections out of 30,000 class members weighs in favor of settlement).

In the instant case, notices were sent to over 20 million class members.  By Class Counsel's count, there have been 22 objections filed on behalf of 31 class members.  Based upon the foregoing cases, this fact clearly indicates an overwhelmingly favorable response to the settlement, barely 1/10,000[th] of a percent of the class objected.  However, even those statistics overstate the extent of real objections from Class members to the settlement.

Five of the 31 objectors are represented by Mr. Epstein, who was co-counsel for Plaintiffs and would prefer to continue litigating or obtain nothing for his clients and the Classes. Fourteen other objectors are represented by known professional or would-be professional objectors.[10]  *See, e.g., Dewey v. Volkswagen*, 728 F. Supp. 2d 546, 574-75, n.19 (D.N.J. 2010) (citing cases faulting Pentz and Frank objections); *In re Initial Public Offering Securities Litigation*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (imposing appeal bond on objectors'

---

[10]     Objector Hull, Docket Entry 933, is ostensibly *pro se*, but, in fact, is represented by Christopher Bandas, a noted professional objector. *See* Hull Objection at 6.  It has been Mr. Bandas' *modus operandi* to have clients file "*pro se*" objections in this District, then to enter an appearance himself in the Third Circuit.  *See Rossi v. Procter & Gamble*, Civil Action No. 11-7238 (JLL) (MAH), Docket Entry 89.  To the best of Class Counsel's knowledge, Sam Miorelli, the Miorelli Objectors' counsel, Docket Entry 938, has not previously objected to a class action settlement, but did request a settlement offer in return for not filing his objection.

counsel Weinstein and Pentz, among others:  "I concur with numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients.")

### 3.    Stage of the Proceedings and Amount of Discovery

The third *Girsh* factor requires the Court to "consider the 'degree of case development that Class Counsel have accomplished prior to Settlement,' including the type and amount of discovery already undertaken." *In re Merck & Co., Inc. Vytorin ERISA Litigation,* 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995) ("*GM Truck*").  "In short, under this factor the Court considers whether the of amount of discovery completed in the case has permitted 'counsel [to have] an adequate appreciation of the merits of the case before negotiating.'" *Merck ERISA*, 2010 WL 547613, at *7 (alteration in original) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)).

Here, the Settlement was reached after over seven years of litigation, the completion of fact and expert discovery (involving the review of millions of documents) and with briefing on motions to dismiss, and further briefing on class certification. Further, Class Counsel had been involved in other similar UCR litigation for years before that, and was simultaneously litigating a substantially similar case against CIGNA.  *See Henderson*, 2013 WL 1192479, at *9 (approving settlement reached after three years of litigation and substantial completion of discovery, noting that "'[g]enerally, post-discovery settlements are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain anappreciation of the potential liability and the likelihood of success.'") (citation omitted); *Alves*, 2012 WL 6043272, at *18 (approving

settlement and noting that "this is not a case resolved on a scant record without discovery.  Nor does class counsel lack an understanding of the facts and issues.  Quite the opposite.").

Quite clearly, Plaintiffs and their counsel "have an adequate appreciation of the facts in this matter, and this factor weighs in favor of approval."  *Schering-Plough ERISA,* 2012 WL 1964451, at *4.  *See also Colon v. Passaic Cnty.*, 2012 WL 1457764, at *4 (D.N.J. Apr. 24, 2012) ("Considering the amount of effort expended by class counsel in this matter, as well as class counsel's extensive experience litigating class actions . . . the Court is convinced that Plaintiffs have a sufficient understanding of the merits of this case.").  Accordingly, the third *Girsch* factor also supports approval of the proposed Settlement.

### 4.      The Significant Obstacles And Risks To A Recovery

In this case, the fourth and fifth of the *Girsh* factors – the risks of establishing liability and the risks of establishing damages – most convincingly demonstrate the value of the Settlement.  These two factors "are commonly analyzed together" and they "survey the 'possible risks of litigation by balancing the likelihood of success . . . against the immediate benefits offered by settlement.'"  *Prudential*, 148 F.3d at 319.  *See also G.M. Truck*, 55 F.3d at 814 (court will "examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them").

Although Plaintiffs were confident in the merits of their case, the outcome of the litigation was clearly uncertain, particularly because Plaintiffs would have to overcome numerous legal and factual hurdles, including motions to dismiss and opposition to class certificatin, which could have prevented them from recovering anything.  *See, e.g., In re Epogen and Aranesp Off-Label Mktg. and Sales Pract. Litig.*, 2009 WL 1703285 (C.D. Cal. June 17, 2009) (dismissing with prejudice MDL litigation involving RICO and consumer fraud claims

involving promotion of prescription drugs); *District 1199P Health and Welfare Plan v. Janssen, L.P.*, 2008 WL 5413105 (D.N.J. Dec. 23, 2008) (RICO); *Ironworkers Local Union No 68 v. AstraZeneca Pharm. LP*, 585 F.Supp.2d 1339 (M.D. Fla. 2008) (RICO and consumer fraud). Plaintiffs believe that they had a strong case on liability.  The flaws of the Ingenix database have been well documented and show that it significantly understated the Usual and Customary charge for medical procedures, the benchmark by which Aetna calculated Out-of-etwork reimbursement.

Plaintiffs also believe that they had a strong case on damages, but the proof of potential damages on both sides would have involved complicated expert testimony.  In *Warfarin Sodium*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D.Del. 2002).  The same risk is clearly present here.

### 5.    Ability of Plaintiffs to Maintain Class Certification

The sixth *Girsh* factor "evaluates the risks of maintaining the class throughout the trial." *F.C.V. Inc. v. Sterling National Bank*, 2006 WL 1319822, at *6 (D.N.J. May 12, 2006).  There was a considerable risk here that the Classes might not have been certified, or that class certification may have been reversed by the Third Circuit.  While the Settlement was being negotiated with Aetna, substantially similar litigation was going forward against CIGNA, also before Judge Chesler (and being watched closely by both parties).  After the Settlement was agreed to, Judge Chesler *denied* class certification in CIGNA finding, *inter alia*, individual issues rather than common issues predominated. Among the issues Judge Chesler identified was that

CIGNA did not have, either in fact or practically, a uniform definition of "Usual and Customary" in its various health plans or a uniform manner in which health claims were reviewed, and that plaintiffs had not presented a common damages theory.  Plaintiffs in CIGNA are again seeking class certification.  However, given the similarity between the two cases and the fact that they were before the same judge, the Classes here may have suffered a similar fate.

### 6.    Ability Of Defendants To Withstand A Greater Judgment

In addressing the seventh *Girsh* factor, "the Court must evaluate whether Defendants could withstand a judgment much greater than the amount of the settlement."  *Merck ERISA*, 2010 WL 547613, at *9.  *See also Cendant I*, 264 F.3d at 240.  While Aetna is a huge insurance company with billions of dollars in assets and could potentially withstand a greater judgment, that fact alone does not militate against approval of the Settlement.  *See Henderson,* 2013 WL 1192479, at *11 ("Plaintiffs acknowledge that 'there is currently no indication that Volvo here would be unable to withstand a more significant judgment,' but 'to withhold approval of a settlement of this size because it could withstand a greater judgment would make little sense where the [settlement agreement] is within the range of reasonableness and provides substantial benefits to the Class.'") (citing cases where settlement was approved despite defendants' ability to withstand a greater judgment); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484 (D.N.J. 2012) ("But even assuming there are sufficient funds to pay a greater judgment, the Third Circuit has found that a defendant's ability to pay a larger settlement sum is not particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement") (internal quotations and citations omitted).  Indeed, this factor would only seem to come into play when a impecunious defendant agrees to a settlement that might otherwise appear to be unreasonably low.  Otherwise, a settlement is judged by the claims involved, the potential

recovery and the risks, time and expense involved in obtaining that recovery.  In light of the substantial risks to any recovery and the substantial benefits to the Class under the Settlement, this factor does not weigh against approval.

### 7.    The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation

The final two *Girsh* factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538.  As this Court has often explained, "according to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth factor)."  *In re Schering-Plough/Merck Merger Litigation*, 2010 WL 1257722, at *12 (D.N.J. March 26, 2012).   Additionally, in conducting this evaluation, the Court should keep in mind "that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation."  *Johnson & Johnson*, 900 F.Supp.2d at 484-85 (alteration in original) (internal quotations and citations omitted).   "The best possible recovery, while arguably more than the settlement, is tempered by the risks of further litigation."  *United Nat'l Ret. Fund v. Watts*, 2005 WL 2877899, at *4 (D.N.J. Oct. 28, 2005).  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 105 (D.N.J. 2012) (internal quotation and citation omitted).  *See also In re AT&T Corp.*, 455 F.3d at 170(same).  Rather, the percentage recovery "must represent a material percentage recovery to [the] plaintiff in light of all the risks considered under *Girsh*."  *Ins. Brokerage*, 282 F.R.D. at 105 (internal quotations omitted).

After over seven years of litigation, settling at this juncture provides an immediate and substantial monetary benefit for Class Members, and obviously represents a "much better option than little or no recovery at all." *F.C.V. Inc.*, 2006 WL 1319822, at *7. *See also In re AT&T Corp.,* 455 F.3d at 170 (approving settlement "in light of the risks of establishing liability and damages"); *Henderson*, 2013 WL 1192479, at *12 (final two factors weighed in favor of approval "given the size of the Settlement Class, the potential benefits available to Class Members, and the risks in proving liability and damages"); *Schering-Plough/Merck Merger*, 2010 WL 1257722, at *12 ("The value of the benefit conferred is commensurate with the projected success of this case and potential relief available"); *Serio v. Wachovia Securities*, 2009 WL 900167, at *10 (D.N.J. March 31, 2009) ("In light of such risks, there is a strong indication that the Settlement represents the best possible recovery for the Class."). Given the difficulties in either certifying a class or keeping a class certified, there was a significant risk that class members could have ended up with no recovery at all. In short, the last two *Girsh* factors weigh in favor of approval of the proposed Settlement.

### 8. Additional Considerations

"In addition to the *Girsh* factors, courts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'" *Alves*, 2012 WL 6043272, at *22 (quoting *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D.Pa. 1995)). Here, Class Counsel, experienced class action and trial attorneys, with experience in this type of litigation, believe that the Settlement is in the best interests of the Class as a whole. Their "recommendation provides further support for approving the settlement." *Alves*, 2012 WL 6043272, at *22. We also believe that, had he survived to see this day, Judge

Politan would have agreed with our assessment and would have submitted a declaration in support of final approval.

In addition, "[t]he participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'" *Alves*, 2012 WL 6043272, at *12 (quoting *Bredbenner v. Liberty Travel, Inc.,* 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011)).  *See also Henderson*, 2013 WL 1192479, at *10 (approving settlement "reached after extensive arm's length negotiations and all-day mediation sessions"); *Plymouth County Contributory Retirement System v. Hassan*, 2012 WL 664827, at *3 (D.N.J. Feb. 28, 2012) (approving settlement reached after parties "engaged in mediation"); *Colon*, 2012 WL 1457764, at *5 (approving settlement, noting the efforts of a magistrate judge in bringing the matter to "an appropriate resolution").

In sum, all of the *Girsh* factors, and additional considerations, support approval of the proposed Settlement.

## III

### THE NOTICES TO THE CLASS SATISFIED
### BOTH THE PRELIMINARY APPROVAL ORDER AND APPLICABLE LAW

In order to comport with the Due Process Clause of the Constitution, notice must be reasonably calculated to reach potential Class Members. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974); *In re Diet Drugs Prod. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005) (class members must "have certain due process protections in order to be bound by a class settlement agreement"). Additionally, as this Court has certified the Class under Fed. R. Civ. P. 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In its Preliminary Approval Order, the Court approved the form and content of the Settlement Notice and the proposed plan for providing notice to potential Class Members.

In accordance with the Court's Preliminary Approval Order, D.E. 898, the Court-approved Claims Administrator, Berdon Claims, caused the approved Settlement Notice and Proof of Claim form to be mailed by first-class mail, postage prepaid, to potential Class Members. *See* Aff. of Michael Rosenbaum, ¶¶ 4-7. The notice program, which combines an individual, mailed notice to all potential Class Members who could be reasonably identified with a summary notice published in *USA Today* and over the internet, meets the requirements of Fed. R. Civ. P. 23, which calls for the "best notice practicable" under the circumstances, including individual notice to all members who can be identified through reasonable effort. *See Eisen,* 417 U.S. at 173 (internal quotation omitted); *Prudential*, 148 F.3d at 326-27.

As these cases require, the Classes have been given notice of the proposed Settlement and as well as the rights of Class Members, and the method and dates by which they may object to

the Settlement and proposed Plan.  Additionally, the Classes have been advised of the date of the final fairness hearing at which they will have an opportunity to be heard with respect to any objection raised.

## CONCLUSION

For the reasons set forth above, the Court should grant final approval to the Settlement.

> CARELLA, BYRNE, CECCHI,
> OLSTEIN, BRODY & AGNELLO
> *Settlement Class Counsel*
>
>
> By:___/s/ James E. Cecchi_____
>       JAMES E. CECCHI

Dated:  March 11, 2014


Robert J. Axelrod
POMERANTZ LLP
600 Third Avenue
New York, NY 10016

*Chair of Plaintiffs' Executive Committee*

Joe R. Whatley, Jr.
Edith Kallas
WHATLEY KALLAS, LLC
1180 Avenue of the Americas
20th Floor
New York, NY 10036
(212) 447-7060

*Attorneys for Proposed Provider Class*


Stephen A. Weiss
Diogenes P. Kekatos
James E. O'Brien III
SEEGER WEISS LLP
77 Water St., 26h Fl.
New York, NY 10005
(212) 584-0700

Christopher Burke
Joseph P. Guglielmo
Amanda Lawrence
SCOTT+SCOTT, ATTORNEYS AT LAW LLP
The Chrysler Building
405 Lexington Ave., 40th Floor
New York, NY 10174
(212) 223-6444

Lynne Kizis
Kevin P. Roddy
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
(732) 636-8000

*Attorneys for Proposed Subscriber Class*