# EXHIBIT 41

4/14/2005 Justo, Deborah

```
                UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY


RENEE MCCOY, individually and    )
on behalf of all others          )
similarly situated,              )
                                 )
            Plaintiff,           ) Civil Action No.
                                 ) 2:03-cv-1801(FSH)(PS)
     vs.                         )
                                 ) CONFIDENTIAL
HEALTH NET, INC., HEALTH NET     )
OF THE Northeast, INC., and      )
HEALTH NET OF NEW JERSEY,        ) EXAMINATION
INC.,)                           ) BEFORE TRIAL
                                 )     OF
                                 )
Defendants.                      ) DEBORAH JUSTO
---------------------------------X
ZEV AND LINDA WACHTEL,           )
individually and on behalf of    )
their children, TORY, JESSE      )
and BRETT WACHTEL, and on        )
behalf of all others similarly  )
situated,                        )
                                 )
            Plaintiffs,          )
                                 )
     vs.                         )
                                 )
GUARDIAN LIFE INSURANCE          )
COMPANY OF AMERICA, HEALTH NET,  )
INC., and HEALTH NET OF NEW      )
JERSEY, INC.,                    )
                                 )
            Defendants.          )
---------------------------------X


        REPORTING SERVICES ARRANGED THROUGH:
        VERITEXT/NEW JERSEY REPORTING COMPANY, L.L.C.
     Kabot Battaglia & Hammer    -    Suburban Shorthand
     Waga & Spinelli             -    Arthur J. Frannicola CSR
                   25B Vreeland Road, Suite 301
                    Florham Park, New Jersey 07932
         Tel: (973) 410-4040     Fax: (973) 410-1313
```

4/13/2010 4:46 PM

DEFENDANTS EXHIBIT

Cooper AET 04053

1

4/14/2005 Justo, Deborah

```
1    not sending to Ingenix because of Aetna's profiling
2    rules?
3         A.   No.
4         Q.   Okay. And I don't believe it was your
5    testimony, but I just want to make sure I understood,
6    that Ingenix has never asked Aetna to provide that
7    information to Ingenix; correct?
8         A.   I don't believe so.
9         Q.   Okay.
10             MS. QUACKENBOS: Excuse me.
11             (A discussion is held off the record.)
12        Q.   Ms. Justo, do you still have a copy of
13   Plaintiffs' 1?
14        A.   Yes.
15        Q.   Could you please turn to the second page of
16   that, which for the record is McCoy/Aetna-002.
17             Oh, by the way, just actually one question
18   first about what we were covering before. And then
19   we'll go on to this.
20             Did Ingenix ever audit Aetna's data
21   contribution at any time from 1998 through December
22   31st, 2004?
23        A.   Not that I'm aware of.
24        Q.   Okay. Looking at McCoy/Aetna-002, there's a
25   heading "Per TOLR ACAS Automated Profiling
```

4/14/2005 Justo, Deborah

1  Guidelines." Do you see that?
2      A. Yes, I do.
3      Q. The first line reads, "Charges that exceed
4  prevailing will be reduced and not profiled with
5  Action Codes 617 or 657." Do you see that?
6      A. Yes, I do.
7      Q. Do you have an understanding as to how Aetna
8  has applied that rule at any time between 1998 and
9  December 31st, 2004?
10     A. I believe that to just be a terminology error
11 in a manual. That is not what is happening in the
12 system.
13     Q. And have you looked -- What is the basis for
14 your understanding that that is a terminology error,
15 as you put it?
16     A. We check, I checked with someone involved
17 with the systems and they looked at claim activity and
18 told me that that is not what is happening.
19     Q. And who is the person that you say you
20 checked with?
21     A. Her name is Anna Chavez, C-h-a-v-e-z.
22     Q. What is it that made you go check with Anna
23 Chavez about the automated profiling guidelines
24 appearing on McCoy/Aetna-002?
25     A. That it's not been our practice to not

4/14/2005 Justo, Deborah

```
 1    profile charges that exceed prevailing.  And so I was
 2    concerned.  I wanted to make sure that that wasn't
 3    what was happening in the system.
 4        Q.   What was your understanding of Aetna's
 5    practice based on?
 6             MS. O'REILLY: Objection to the form.
 7        A.   We would not want to do that.  That --
 8        Q.   Okay.  I don't think you are understanding my
 9    question.  If I understood your testimony correctly,
10    you are saying that something caused you to look at
11    this rule and say to yourself, "Oh, I don't think
12    that's exactly how we are applying it.  Let me go back
13    to Anna Chavez about that."
14        A.   Yes.
15        Q.   Okay.  First of all, when did you say to
16    yourself, "I don't think this rule accurately reflects
17    what Aetna is actually doing"?
18        A.   I saw it in preparation for this, when we
19    were collecting documents.
20        Q.   And when, when if you can supply a date, when
21    did that occur?
22             MS. O'REILLY: Objection to the form.
23        A.   I don't recall the date.
24        Q.   Within the last two weeks?
25             MS. O'REILLY: The date of the collection of
```