UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE: AETNA UCR LITIGATION,

This Document Relates To: ALL CASES

*FILED ELECTRONICALLY*

MDL NO. 2020

MASTER FILE NO. 2:07-CV-3541 (FSH)

**REDACTED**

DECLARATION OF MARIANNE E. HAYES

I, Marianne E. Hayes, declare as follows:

1. I make this declaration in connection with the above-captioned litigation. If called as a witness I could and would testify competently to the following.

2. I am employed by Aetna and work at its offices in Hartford, Connecticut. I have worked for Aetna for 15 years. For approximately ten years, I was a developer for Aetna's Automated Claim Adjudication System ("ACAS"), which is Aetna's primary non-HMO claim adjudication system. As a developer, I focused on the main adjudication logic in ACAS.

3. In approximately 2004, I assumed my current position as a Senior Application Technical Specialist in the Application Delivery and Architecture (ADA) section of Aetna Information Services (AIS). In my current role, I am involved in the oversight and design of Aetna's non-HMO applications (specifically ACAS), and I provide high-level design and support.

4.  During my tenure working with ACAS, I have worked on a wide range of projects relating to various portions of the claim adjudication logic. I am familiar with the ACAS claim adjudication logic, including the portions discussed below.

5.  I understand that the Plaintiffs have alleged in this case that Aetna excludes claims with valid high charges from data contributed to Ingenix, which Aetna uses to price out of network claims. I have conducted a review of the operating code in ACAS to determine whether any such instructions currently exist or have existed at any time since 2000.

6.  Aetna's profiling guidelines, based upon which Aetna gathers claims to send to Ingenix, are implemented through certain "do not profile" action codes that are assigned during the claim adjudication process. Therefore, these action codes have been the focal point of my review.

7.  Over the past several weeks, I have reviewed the claim adjudication logic in ACAS in search of any claim adjudication logic consistent with Plaintiffs' allegations. Specifically, I have reviewed the relevant logic for those parts of the ACAS system code addressing claim pricing, which is where action codes related to billed charge levels, if they exist, would be triggered or otherwise indicated. I also looked at other specific parts of the ACAS code that trigger the specific "do not profile" action codes that I understand Plaintiffs have asserted are applied based on the billed charge of the claim. As described below, after reviewing the portions of the claim adjudication logic that have to do with pricing a claim and the other areas implicated by Plaintiffs' assertions, I did not find any logic within ACAS that assigns a "do not profile" action code based on the fact that a claim has a billed charge in excess of the prevailing fee or Aetna's allowed amount.

8. In fact, I found no code that assigns "do not profile" codes based on billed charge amounts at all. Based on my review, "do not profile" action codes are assigned within ACAS for reasons completely unrelated to whether the claim has a high billed charge. I provided complete copies of all computer code discussed in this declaration to counsel, and I understand the code was also provided to Plaintiffs.

9. ACAS is a highly sophisticated system containing a variety of coding programs and logic. There are many different steps in the process, and many different factors that impact how a particular claim is adjudicated.

10. To help keep track of the final disposition of a particular claim and to help generate communications to members and providers about that claim, ACAS typically assigns three-digit "action codes," or message codes to claims.

11. There are hundreds of different action codes, and even those hundreds of action codes do not always capture everything that affects the reimbursement amount on a particular claim. For example, action code 204 is assigned when the maximum allowed for the member's plan has been paid for the type of service for the benefit year, and code 060 is used to designate payments made by Medicare.

12. It is my understanding that claims with action codes beginning with a 6 are not profiled for contribution to Ingenix, and that these codes are referred to as "do not profile" codes.

13. An action code can be assigned to a claim line manually by a claims processor or automatically based on the coding underlying the auto-adjudication logic in ACAS. Although the percentages of "auto-adjudicated" claims have varied over time, for many years a large majority of claims submitted to Aetna have been auto-adjudicated, meaning that they are processed automatically without a human processor. In my review, I focused on portions of the

ACAS claim adjudication logic that assign action codes to auto-adjudicated claims and, in particular, any code that assigns a "do not profile" action code beginning with a 6.

14. The first step in my review was an examination of the M289RATE logic, which is part of the pricing logic. The document attached as Exhibit A is a true and correct copy of a collection of excerpts from the current version of the code (AET-04281334-532).

15. In general, the excerpted claim adjudication logic in the M289RATE program assigns a "do not profile" action code if the claim has been reimbursed at a different amount due to a "pay percent" reduction, which has to do with applications referred to as ClaimCheck and ClaimsXten solutions. Claims meeting certain criteria are routed to these applications, and as part of the applications' processes, a pay percent amount may be generated. For purposes of this declaration, the phrase "pay percent does not apply" means that the claim is not routed through ClaimCheck or ClaimsXten, or that the applications did not yield a pay percent value.

16. ClaimCheck and ClaimsXten may generate a pay percent of 100%, or it may be a different percentage based on claim adjudication rules, such as application of modifiers or multiple surgical procedure logic. For example, a claim submitted by a single provider with two surgical procedures for the same member with the same date of service would be routed to these applications. The pay percent value for the second procedure would be 50% because secondary surgical procedures are reimbursed at 50% of the fee schedule amount. Where a claim receives a pay percent different than 100%—in other words, when there is something unusual about the service—it typically receives a "do not profile" action code.

17. Based on my review, claims are assigned a 500-series action code in the M289RATE program if pay percent does not apply or if the pay percent for the claim is 100%.

Claim lines assigned a 500-series action code are profiled for contribution to Ingenix. If the pay percent value is something other than 100%, the claim is assigned a 600-series action code.

18. There are six sections of the M289RATE program that involve assignment of "do not profile" action codes 605, 607, 616, 656, 666, and 668 because a claim involves a pay percent of something other than 100%. There is no logic in the M289RATE program that would assign one of these action codes based on the billed charge.

19. I understand that Plaintiffs have also asked about certain specific 600-series action codes, such as 617 and 657. These codes are not assigned in M289RATE module. I therefore conducted a thorough review of other portions of the code and tested claims to determine how action codes 617 and 657 are assigned by ACAS's auto-adjudication logic.

20. Based on my review, these codes are assigned during ACAS processes to validate the provider's service location zip code.

21. The code applicable to the assignment of these codes is housed in modules M289CPBP, which applies to medical, vision, and hearing claims, and M289DCBP, which applies to dental claims. Attached hereto as Exhibit B is a true and correct copy of excerpts from the current version of the M289CPBP module (AET-04298790-947). Attached hereto as Exhibit C is a true and correct copy of excerpts from the current version of the M289DCBP module (AET-04298962-9045). Both modules operate identically for purposes of the description provided in this declaration. Attached hereto as Exhibit D is a true and correct copy of system documentation related to the excerpts in Exhibits B and C (AET-04299057-94).

22. The excerpted portions of the code and system documentation describe how the Electronic Workflow Management (EWM) application looks to EPDB, the database which maintains information about providers, to see if various data points are consistent between both

applications. The EWM application is the first application to receive the claim, and, among other functions, it populates information about the claim, member, and provider.

23. In particular, the logic compares the first three digits of the provider's service location zip code that is submitted on the claim to the first three digits of the provider's service location zip code housed in EPDB. This comparison results in a profile indicator. This process is described in the system documentation in Exhibit D at AET-04299093.

24. If the indicator determines that the information matches between the applications, there is no change to the claim. However, if the service location zip code information does not match, the code changes the first digit of the action code from a 5 to a 6. For claims that reach this step and do not yet have an action code, if the indicator shows no match, action code 607 is assigned.

25. As an example, a claim may move through the adjudication process and first receive a 517 action code. Then, the claim travels through the M289CPBP module and the results of the provider comparison between EWM and EPDB are checked. If the information in the EPDB database is not consistent with the information in EWM, and the provider's accurate service location address cannot be determined, the indicator would cause the first digit of the action code to change from a 5 to a 6. The action code assigned to the claim would then be 617.

26. Therefore, this section of the code modifies the first digit of the action code assigned to a claim based on whether the first three digits of the provider's service location zip code can be verified.

27. In connection with my review of how certain action codes are assigned, I also searched for code related to edits based on the amount of the billed charge in comparison to the prevailing fee.

6

28.     I reviewed code for two pricing applications used by Aetna during the past several years—the M174FEE1 code module and the M289RATE module. Attached as Exhibit E is a true and correct copy of excerpts from the M174FEE1 code, including changes over time.[1] As described above, Exhibit A contains excerpts from the M289RATE module.

29.     Prior to April 2000, one of the modules, the M174FEE1 program, contained an edit that was generated when the submitted amount was equal to or greater than 150% of the prevailing fee. This edit was removed by May 2000; there has never been such an edit in the M289RATE module.

30.     Both modules have an edit for claims with a submitted amount equal to or less than 50% of the prevailing fee. The edit is designed to alert the processor if the submitted amount is in error or invalid, and the edit does not require any action to resolve it. The edit does not result in assignment of an action code. My understanding is that the processor may choose to investigate the claim further or may continue through the processing screens to continue adjudication of the claim.

## SUMMARY OF CODE REVIEW

31.     Based on my review of the code for this project, <u>ACAS logic does not assign a no-profile action code (beginning with a 6) based on the billed charge of the claim</u>. The only

---

[1] Pages 2 and 3 of Exhibit E are excerpts from the February 2000 version of the M174FEE1 module produced at AET-04298692-731, and page 4 of Exhibit E is excerpts from the May 2000 version of the M174FEE1 module produced at AET-04298732. The M174FEE1 module is no longer in use. Also, attached hereto is a true and correct copy of the ACAS System Release Facilitator Guide describing system changes made on April 29, 2000 and made available to ACAS users on May 1, 2000 (AET-00566536-67).

code logic related to the charge of the claim at any time from 2001 to the present was designed to notify processors of claims with abnormally <u>low</u> charges.

32.     As I have described, logic in the M289RATE module assigns a 600-series action code in situations where the pay percent is a value other than 100%. The pay percent value is independent of the submitted amount of the claim and a value other than 100% indicates that the claim involves idiosyncratic factors, such as multiple procedures.

33.     In addition, logic in the M289CPBP and M289DCBP modules modifies the first digit of an action code from a 5 to a 6 in situations where provider service location zip code information cannot be confirmed. Similarly, this process is unrelated to the provider's billed charge for the claim.

34.     From 2000 to the present, there have been no edits generated by ACAS logic based on a high charge billed by a provider. The code has included edits for processors to alert them of billed charges less than half of the prevailing fee.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2010

/s/ Marianne E. Hayes
Marianne E. Hayes