# EXHIBIT L

**From:**  Justo, Deborah
**Sent:**  Tue, 15 Oct 2002 13:50:48 GMT
**To:**  Yorgey, Brian; Emeigh-Alessandro, Mary K
**Subject:** FW: R&C question/Strategic Pricer

---

Good Morning, I was concerned after reading Mary's note of 10/1 to Claim Policy.  CMM has confirmed that when reviewing R&C or prevailing fees the existence of 9 or greater charges does not eliminate the need to review the credibility of the prevailing fee data when a review has been requested.

Please let me know if you have any questions.

   -----Original Message-----
**From:**   Bomgardner, Judith K
**Sent:**   Wednesday, October 09, 2002 10:10 AM
**To:**   Justo, Deborah
**Cc:**   Lawrence, Caroline G
**Subject:**   RE: R&C question/Strategic Pricer

Deb,
This is not the information we released to CCR.  I think you reviewed that information already.  If you need to look at it again, please access on our MP&NT web site under CMM>Clinical Review Procedures.

Judy
_____
Judy Bomgardner
Head of Program Delivery
Medical Policy & National Transplant
Phone:  601-992-0764
Fax:    601-992-6905
Pager:   888-786-2486

   -----Original Message-----
**From:**   Justo, Deborah
**Sent:**   Thursday, October 03, 2002 8:59 PM
**To:**   Bomgardner, Judith K
**Subject:**   FW: R&C question/Strategic Pricer

Hi Judy, I got the question below wondering if credibility code was available on Pricer.  Can you please clarify what the guidelines issued to CCR were . . . based on the notes below it sounds to me like the interpretation is that  if it is determined that the prevailing fee used was based on 9 or greater charges accept it as being valid without further review.  If this is the case I am very concerned.  When a review of the data has been requested, either by someone internally or externally, a diligent review should be done.  There certainly have been instances where questionable data has been loaded based on greater than 9 charges.

Thanks for any clarification you can provide.

CONFIDENTIAL                                                                      AET-00852480

-----Original Message-----
**From:** Yorgey, Brian
**Sent:** Tuesday, October 01, 2002 3:47 PM
**To:** Justo, Deborah
**Subject:** FW: R&C question/Strategic Pricer

Question: If CCR is reviewing an appeal of an R&C cut, and their internal guides indicate that the denial is upheld if there are at least nine claims that comprise the profile data, does Strategic Pricer have that data available, or do the manual reports still have to be reviewed for that info.  Is it different for AEPR than it is for HIAA80?

Brian Yorgey, NCO Policy and Procedures
**Confidential: The above information is confidential and should be read only by the addressee or the addressee's specific designees in accordance with the Aetna Code of Conduct and applicable law.**

-----Original Message-----
**From:** Claim Policies (TC/OC/MC)
**Sent:** Tuesday, October 01, 2002 3:33 PM
**To:** Yorgey, Brian
**Subject:** R&C question/Strategic Pricer

-----Original Message-----
**From:** Emeigh-Alessandro, Mary K
**Sent:** Tuesday, October 01, 2002 10:32 AM
**To:** Claim Policies (TC/OC/MC)
**Cc:** Caynor, Julie A
**Subject:** R&C question/Strategic Pricer

I just trained CCU folks how to look up R&C on strategic pricer.  I had a question from the appeals person.

Background...
when doing an appeal for R&C, the analyst has to know how many claims comprise the profiling data.  There has to be at least 9 claims to uphold the cut.  Is there anyway to tell how many claims make up the R&C data in strategic pricer?  Is there already a minimum of X claims loaded?  Meaning, if R&C is in the pricer then there is at least 10 claims loaded.

I believe they obtain this information today from the WSF82R R&C report.  Since the pricer can pull R&C by the date of service, it pretty much eliminates the need to go to the report.... **as long as** we can safely say there is at least 9 claims that make up that information in pricer.

Julie-I don't know if there is any pertinent information that I am leaving out.  Please add anything I may have missed that would assist.

*__Mary K. Emeigh-Alessandro__*
*Quality Analyst*
*E-Pay Coordinator*

AET-00852481

*Training and Quality Department*
*Dover Service Center*
*(302) 857-4800 ex. 64280*

Disclaimer:  This e-mail contains information some or all of which may be
proprietary or legally privileged.  It is for the intended recipient only.   If an
addressing or transmission error has misdirected this e-mail, please notify the
author by replying to this e-mail.   If you are not the intended recipient you must
not use, disclose, distribute, copy, or print this e-mail.

CONFIDENTIAL

AET-00852482

# EXHIBIT M

### # $ K @ Reasonable and Customary - Claim Processing - Profiling Rules

| Released Online: | | Updated 11/14/05 | |
|---|---|---|---|
| **Applies to** Traditional Choice (Indemnity), Elect Choice (EPO), ASC, Insured, National Account, Key/Select Accounts, Small Group Business, Open Choice (PPO), Managed Choice (POS), Open Access Elect Choice, Open Access Managed Choice (POS), Healthfund, Affordable HealthChoices | | | |
| | | | |
| **Systems**: Aecclaims, ACAS | | | |
| | | | |
| PolicyPolicy_Dept_Labor_Opinion_Reasonable_Customary_Disclosure | Contact Servicing Reasonable_and_Customary_Contact_Servicing_Administrative | Related Information Reasonable_and_Customary_Related_Information_Administrative | Claim ProcessingReasonable_and_Customary_Claim_Processing_Profiling_Rules |

{bmc Blttria2.bmp}ACAS Reasonable_Customary_Claim_Processing_ACAS
{bmc Blttria2.bmp}Aecclaims Reasonable_Customary_Claim_Processing_Aecclaims
{bmc Blttria2.bmp}MCS Reasonable_Customary_Claim_Processing_MCS
{bmc Blttria2.bmp}Profiling Instructions Reasonable_Customary_Claim_Processing_Profiling_Instructions

#### [#]ACAS
(11/14/05)!JumpID(`TradArchive03.hlp',`AT_ACAS_JH_111405')
**System Assigned Action Codes**
Charges submitted on claims that are auto-adjudicated in ACAS are assigned no-profile action codes in the following situations:

Providers in EPDB with a No Profile indicator are processed with action code 607.

Claims that involve submissions where the provider API does not a have a zip code that matches the first 3 digits of the Servicing Provider Zip are processed with action code 607.

Claims that pass through ClaimCheck can be processed with action codes 616, 626, 676, 696.

Medicare Direct claims are processed with action code 607.

---

[#] Reasonable_and_Customary_Claim_Processing_Profiling_Rules
[s] Reasonable and Customary - Claim Processing - Profiling Rules
[K] Reasonable and Customary - Claim Processing - Profiling Rules;profile - profiling - Profiling Rules
[@] Status|0|||0||||||
[#] Reasonable_Customary_Claim_Processing_ACAS

**Processor Instructions**
ACAS processors, handling claims that are not auto-adjudicated, are responsible for application of the profile and no-profile rules in this policy and other various policies in TOLR.

ACAS may automatically assign a profile or no-profile action code on claims handled by a processor, or auto-adjudicated, when R&C, ClaimCheck, or other logic is invoked.  It may be necessary to alter system generated action codes for the purpose of following profile and no-profile rules.  Altering these action codes based on documented ACAS procedures/workarounds, or based on CCR instruction, is still necessary.

Note that it is not necessary to enter no-profile action codes on Medicare primary submissions; however, doing so is not considered incorrect.

#**Aecclaims**
Follow the Profiling
    InstructionsReasonable_Customary_Claim_Processing_Profiling_Instructions.

Always key the charges and hit enter to get the prevailing fee information.  Then go back up and add the appropriate action code.  Failure to do so will stop the prevailing fee editing.

The following are the more common edits you will encounter, please
refer to the Coding Guide manual in CHPL for instructions on handling.

NO PREV FEE - REFER TO CCU

EXC PREV $999/999%-C/L

SUBM GREATER THAN 150% PREV FEE

SUBM LESS THAN HALF PREV FEE

#**MCS**
The MCS system does not send data to the profile system.  The profiling rules in this policy do not apply to claims processed in he MCS system.

#**Profiling Instructions**
{bmc Blttria2.bmp}OverviewProfiling_Instructions_Overview
{bmc Blttria2.bmp}Do Not ProfileProfiling_Instructions_DoNot_Profile
{bmc Blttria2.bmp}Modifier 26 Profiling
InstructionsProfiling_Instructions_Modifier_26_Profiling_Instructions

#**Overview**
(03/15/05)!JumpID(`TradArchive03.hlp',`AT_Profiling_Instructions_Overview_EO_031505')
Aetna primarily uses data from Ingenix PHCS formerly HIAA to determine R&C. To increase the range of fees being captured, Aetna also captures data as well. The data captured by Aetna is contributed to PHCS (HIAA).

Aetna R&C is used for the following:

---

# Reasonable_Customary_Claim_Processing_Aecclaims
# Reasonable_Customary_Claim_Processing_MCS
# Reasonable_Customary_Claim_Processing_Profiling_Instructions
# Profiling_Instructions_Overview

CONFIDENTIAL                                                                                              AET-01346084

- PHCS (HIAA) has no profile for a procedure
- Anesthesia procedures
- Aetna Home grown codes (e.g., private duty nursing)

Profiling is the capturing of data based on the provider's service location (geographical area), the procedure performed, and the amount being charged.  Capturing this data determines future reimbursement amounts.  For this reason it is critical that expenses be profiled or not profiled appropriately.

All fees are automatically captured in the system each time a transaction is finalized (this does not include charges that are pended).  The system profiles each individual expense unless directed otherwise by the processor; or if the entire submitted amount is being denied.  The system will profile the submitted dollars, not the R&C amount or the negotiated fee amounts.

Refer to 500 and 600 Series Cost Containment Action Code Chart!JumpID(`Helpfile.hlp>second',`500_and_600_Series_Quick_Reference_Action_Code _Chart') in the Codes Online Reference for an explanation of the 500 and 600 series action codes.

The 5XX and 6XX series of action codes control profiling.
- Action codes beginning with a 5 allow profiling of the expense, even if part of the expense is being denied (over R&C).
- Action codes that begin with a 6 will withhold the expense from being profiled.

Profiling instructions apply to all codes, this includes:
- CPT 4 codes (medical, surgical, x-ray, and lab)
- HCPC codes (services and supplies)
- CDT codes (dental) and internally created codes (often referred to as "homegrown" or "dummy" codes).

There are many reasons why a provider may charge other than his or her normal fee for a service.  Do not profile any expenses containing these situations, as this would result in distorted data.

**Example:**
Claim Edit message  "SUBMITTED LESS THAN HALF THE PREVAILING FEE"
Billed amount        $ 40.00
R & C                $100.00

Do not profile the above scenario because this information negatively affects the data already captured for the procedure.  Action code 600 is used.

[#]**Do Not Profile**
(11/14/05)!JumpID(`TradArchive03.hlp',`AT_Do_Not_Profile_JH_111405')
Do not profile the following (unless indicated), as the profile data obtained would not be meaningful.  Use a 6xx series action code.

1. Intra-office COB (Aetna is both primary and secondary payer) – follow profile guidelines for the primary claim consideration.  Do not profile the secondary claim consideration (including when the primary claim consideration was processed on MCS).
2. Do not profile billing address, only service address.
3. Edit 'EXP LN XX – SUBM LESS THAN HALF PREV FEE LN XX' *(Added 04/26/05)*

---

[#] Profiling_Instructions_DoNot_Profile

4.  Codes re-bundled into one CPT 4 code.

5.  Code submitted is incorrect and changed or altered by processor, analyst or designated reviewer.

6.  Any valid secondary procedures on surgical multiple procedure code submissions; code may or may not have modifier 51 attached.  **Note**: This does not include add on codes. These should be profiled.

7.  Procedures performed one year prior to the date that they are being processed.

8.  Arbitrary breakdown of fees by processor or reviewer.

9.  Reconsidered (reworked) expenses when the expense was partially or totally covered (this includes payment made or monies applied toward deductible).  **Note**: This does not include processing of a previously pended transaction.  Once a pended transaction is processed the charges are to be profiled, unless do not profile criteria is met.

10.      Unlisted service codes, e.g., 30999 unlisted procedure, nose.

11.      Generic codes, e.g., 99070.

12.      CCR instructs the use of a no-profile code due to unusual circumstances or complications.

13.      **(Updated 08/03/04)** Codes listed with modifiers: 22, 51, 50 (as described above), 20, 21, 23, 52, 54, 66, 76, 77, 78, 99 AB, AC, QK or QY.

14.      Prenatal visits benefited prior to the termination of pregnancy.

15.      Surgical procedures that include the cost of the facility/surgical suite (that has not been recognized as a Physician's Office-Based Surgical Facility) -i.e., facility charges are re-bundled into the surgery.

16.      Co-surgeon's (identified with modifier 62) fees, if acting in the capacity of an assistant surgeon rather than a true co-surgeon.

17.      Surgical procedures involving the use of an operating microscope when not described by a distinct CPT code. This is not the same as micro-dissection codes, e.g., 61712.

18.      . When using the default MEA text (001) for Foreign claims.

*19.*      Do not profile P.O. Box addresses *(Added 04/26/05)*

*20.*      Do not profile when the provider is manually selected or re-selected during processing and the first three digits (MEA) of the service address billed do not match the first three digits (MEA) of the service address for the provider selected. *(Added 04/26/05)*

**Note**: When the provider is selected by the automated provider matching logic for electronic claims and the service address MEAs do not match, an indicator is passed to ACAS in the Provider API and ACAS automates entry of the no-profile action codes.  No action is required unless the provider is re-selected.  When the provider is re-selected, the system generated no-profile action codes may need to be:

•  removed when the newly selected provider's service address MEA matches the MEA for the billed service address, or

•  added when the newly selected provider's service address MEA does not match the MEA for the billed service address.


#**Modifier 26 Profiling Instructions**

1.  If bills are received with a modifier 26, and the system accepts the modifier, profile the charge.  Example - TOS 05, CPT code and modifier 26.  If the system accepts, profile if the bill has the PC, states professional fee, or modifier 26.

2.  If bills are received with a modifier 26, and the system does not accept the modifier, do not profile the charge.  The amount will go toward the global fee code.  There could be a negotiated fee for the Professional Component (modifier 26) even though the system doesn't take the modifier in the processing field. This amount displays to the processor when the code is entered without the modifier - the global fee/prof component fee displays. There

---

# Profiling_Instructions_Modifier_26_Profiling_Instructions

shouldn't be any R&C data because the system can't profile under a modifier it doesn't accept.

3.  For independent labs that bill with a place of service of inpatient or outpatient, and do not identify on the bill as TC or global, treat as a PC (26) type of service.  Usually these bills have "professional fee" or "PC" typed on the bill itself.

This Document is for internal use only except as expressly authorized and is not for redistribution.

**CONFIDENTIAL**

**AET-01346087**

# EXHIBIT N

Profiling Job Aid

# Profiling Job Aid

The action codes used to profile or not profile consists of three digits, one from each column below:

- Digit 1 - Indicates profile action
- Digit 2 - Cost Containment Action; Drives the type of message to print on the EOB
- Digit 3 - Who determined to profile the fee

Following is a quick reference for making choices of each digit.

| 1st Digit<br>Profile Indication | 2nd Digit<br>Cost Containment Action | 3rd Digit<br>By Whom |
|---|---|---|
| 5 – Profile required (surgical, dental and other medical charges only) | 0 – Accepted in full (no EOB message prints) | 0 – Processor |
| 6 – No Profile | 1 – Excessive charge, all or part denied (non par provider/patient responsible) | 1 – CCR |
| | 2 – Medical Necessity – all or part denied (Non par provider/patient responsible) | 2 – Consultant |
| | 3 – Alternate course of treatment – all or part denied (not a pre-determination/actual services) | 3 – Review Committee |
| | 4 – Alternate course of treatment – all or part denied (Pre-determination) | 4 – Home Office |
| | 5 – Recognized charge – alternate percentile level reduction | 5 – Special Policy Holder/Plan Sponsor (used only with "accepted in full" action codes) |
| | 6 – Excessive charge – all or part denied (Par provider/patient is not responsible) | 6 – ClaimCheck Action Codes: equivalent to 077, 076 |
| | 7 – Excessive charge – all or part denied (Denying INC & ME charges/Par provider and patient is not responsible) | 7 – System made cut |
| | 8 – Medical Necessity – all or part denied (Medical Director/CCR advises to use) | 8 – ClaimCheck Action Codes: equivalent to 078, 074 |
| | 9 – Medical Necessity – all or part denied (Medical Director/CCR advises to use) | 9 – Other |

Examples:
- Profile Required:  511 – Excessive charge, all or part denied by CCR
- Do Not Profile:   610 – Excessive charge, all or part denied by processor

***Note:*** *Only use the middle digits of 2, 8 or 9 when a Medical Director or CCR has directed to deny an expense as not medically necessary.  Otherwise another more appropriate action code should be used.*

CONFIDENTIAL                                                                AET-00487035

# EXHIBIT O

# <sup># $ ᴷ @</sup> Reasonable and Customary - Claim Processing - Profiling Rules

| Released Online: | Updated 04/04/03 | | |
|---|---|---|---|
| | | | |
| Applies to Traditional Choice (Indemnity), Elect Choice (EPO), ASC, Insured, National Account, Key/Select Accounts, Small Group Business, Open Choice (PPO), Managed Choice (POS), Open Access Elect Choice, Open Access Managed Choice (POS), Healthfund, Affordable HealthChoices | | | |
| | | | |
| Systems: Aecclaims, ACAS | | | |
| PolicyPolicy_Dept_Labor_Opinion_Reasonable_Customary_Disclosure | Contact Servicing Reasonable_and_Customary_Contact_Servicing_Administrative | Related Information Reasonable_and_Customary_Related_Information_Administrative | Claim ProcessingReasonable_and_Customary_Claim_Processing_Profiling_Rules |

{bmc Blttria2.bmp}ACASReasonable_Customary_Claim_Processing_ACAS
{bmc Blttria2.bmp}AecclaimsReasonable_Customary_Claim_Processing_Aecclaims
{bmc Blttria2.bmp}MCSReasonable_Customary_Claim_Processing_MCS
{bmc Blttria2.bmp}Profiling
InstructionsReasonable_Customary_Claim_Processing_Profiling_Instructions

**"ACAS**
System Assigned Action Codes

---

<sup>#</sup> Reasonable_and_Customary_Claim_Processing_Profiling_Rules
<sup>$</sup> Reasonable and Customary - Claim Processing - Profiling Rules
<sup>ᴷ</sup> Reasonable and Customary - Claim Processing - Profiling Rules;profile - profiling - Profiling Rules
<sup>@</sup> Status|0|||0|||||
<sup>#</sup> Reasonable_Customary_Claim_Processing_ACAS

AET-01339033

Charges submitted on claims that are auto-adjudicated in ACAS are assigned no-profile action codes in the following situations:

Charges that exceed prevailing will be reduced with action code 617, 657.

Charges that exceed prevailing but are within plan prevailing fee liberalization will be accepted with 605.

Providers in EPDB with a No Profile indicator are processed with action code 607.

Claims that involve submissions where the provider API does not a have a zip code that matches the first 3 digits of the Servicing Provider Zip are processed with action code 607.

Claims that pass through ClaimCheck can be processed with action codes 616, 626, 676, 696.

Medicare Direct claims are processed with action code 607.

Processor Instructions
ACAS processors, handling claims that are not auto-adjudicated, are responsible for application of the profile and no-profile rules in this policy and other various policies in TOLR.

ACAS may automatically assign a profile or no-profile action code on claims handled by a processor, or auto-adjudicated, when R&C, ClaimCheck, or other logic is invoked.  It is not necessary to alter system generated action codes for the purpose of following profile and no-profile rules.  Altering these action codes based on documented ACAS procedures/workarounds, or based on CCR instruction, is still necessary.

Note that it is not necessary to enter no-profile action codes on Medicare primary submissions; however, doing so is not considered incorrect.

#**Aecclaims**
Follow the <u>Profiling Instructions</u>Reasonable_Customary_Claim_Processing_Profiling_Instructions.

Always key the charges and hit enter to get the prevailing fee information.  Then go back up and add the appropriate action code.  Failure to do so will stop the prevailing fee editing.

The following are the more common edits you will encounter, please refer to the Coding Guide manual in CHPL for instructions on handling.

NO PREV FEE - REFER TO CCU

EXC PREV $999/999%-C/L

SUBM GREATER THAN 150% PREV FEE

SUBM LESS THAN HALF PREV FEE

#**MCS**
The MCS system does not send data to the profile system.  The profiling rules in this policy do not apply to claims processed in he MCS system.

#**Profiling Instructions**
_____

# Reasonable_Customary_Claim_Processing_Aecclaims
# Reasonable_Customary_Claim_Processing_MCS

AET-01339034

{bmc Blttria2.bmp}OverviewProfiling_Instructions_Overview
{bmc Blttria2.bmp}Do Not ProfileProfiling_Instructions_DoNot_Profile
{bmc Blttria2.bmp}Modifier 26 Profiling
InstructionsProfiling_Instructions_Modifier_26_Profiling_Instructions

# Overview

Aetna primarily uses data from Igenex PHCS formerly HIAA to determine R&C. To increase the range of fees being captured, Aetna also captures data as well. The data captured by Aetna is contributed to PHCS (HIAA).

Aetna R&C is used for the following:

- PHCS (HIAA) has no profile for a procedure
- Anesthesia procedures
- Aetna Home grown codes (e.g., private duty nursing)

Profiling is the capturing of data based on the provider's service location (geographical area), the procedure performed, and the amount being charged.  Capturing this data determines future reimbursement amounts.  For this reason it is critical that expenses be profiled or not profiled appropriately.

All fees are automatically captured in the system each time a claim is processed. The system profiles each individual expense unless directed otherwise by the processor (6XX series action code); or if the entire submitted amount is being denied or externally pended.  The system will profile the submitted dollars, not the R&C amount or the negotiated fee amounts.

Refer to 500 and 600 Series Cost Containment Action Code Chart!JumpID(`Helpfile.hlp>second',`500_and_600_Series_Quick_Reference_Action_Code_Chart') in the Codes Online Reference for an explanation of the 500 and 600 series action codes.

The 5XX and 6XX series of action codes control profiling.
- Action codes beginning with a 5 allow profiling of the expense, even if part of the expense is being denied (over R&C).
- Action codes that begin with a 6 will withhold the expense from being profiled.

Profiling instructions apply to all codes, this includes:
- CPT 4 codes (medical, surgical, x-ray, and lab)
- HCPC codes (services and supplies)
- CDT codes (dental) and internally created codes (often referred to as "homegrown" or "dummy" codes).

There are many reasons why a provider may charge other than his or her normal fee for a service.  Do not profile any expenses containing these situations, as this would result in distorted data.

Example:

Claim Edit message  "SUBMITTED LESS THAN HALF THE PREVAILING FEE"
Billed amount        $ 40.00
R & C                $100.00

Do not profile the above scenario because this information negatively

---

# Reasonable_Customary_Claim_Processing_Profiling_Instructions
# Profiling_Instructions_Overview

CONFIDENTIAL

affects the data already captured for the procedure.  Action code 600 is used.

**#Do Not Profile**
Do not profile the following (unless indicated), as the profile data obtained would not be meaningful.  Use a 6xx series action code.

- Intra-office COB (Aetna is both primary and secondary payer) – follow profile guidelines for the primary claim consideration.  Do not profile the secondary claim consideration (including when the primary claim consideration was processed on MCS).
- Do not profile billing address, only service address.
- Edit 410-less than half prevailing fee.
- Edit 407-150% over prevailing fee.
- Codes re-bundled into one CPT 4 code.
- Code submitted is incorrect and changed or altered by processor, analyst or designated reviewer.
- Any valid secondary procedures on surgical multiple procedure code submissions; code may or may not have modifier 51 attached.  **Note**: This does not include add on codes.  These should be profiled.
- Procedures performed one year prior to the date that they are being processed.
- Arbitrary breakdown of fees by processor or reviewer.
- Reconsidered expenses when the original expense was partially or totally covered (this includes payment made or monies applied toward deductible).  **Note**: Fully denied charges are not passed to the profile system.
- Unlisted service codes, e.g., 30999 unlisted procedure, nose.
- Generic codes, e.g., 99070.
- CCR instructs the use of a no-profile code due to unusual circumstances or complications.
- Bilaterals - if provider bills with one CPT4 code and modifier 50.  Bilaterals submitted on two lines should be profiled see Communication letter S 93-35 for instructions.
- Codes listed with modifiers: 22, 51, 50 (as described above), 20, 21, 23, 52, 54, 66, 76, 77, 78, 99 AB, AC, AD, QK or QY.
- Procedures that require referral to CCR for a scheduled benefit allowance.
- Prenatal visits benefited prior to the termination of pregnancy.
- Surgical procedures that include the cost of the facility/surgical suite (that has not been recognized as a Physician's Office-Based Surgical Facility) -i.e., facility charges are re-bundled into the surgery.
- Co-surgeon's (identified with modifier 62) fees, if acting in the capacity of an assistant surgeon rather than a true co-surgeon.
- Surgical procedures involving the use of an operating microscope when not described by a distinct CPT code. This is not the same as micro-dissection codes, e.g., 61712.

**#Modifier 26 Profiling Instructions**
- If bills are received with a 26, and the system accepts the modifier, profile the charge.  Example - TOS 05, CPT code and modifier 26.  If the system accepts, profile if the bill has the PC, states professional fee, or modifier 26.

- If bills are received with a modifier 26, and the system does not accept the modifier, do not profile the charge.  The amount will go toward the global fee code.  There could be a negotiated fee for the Professional Component (modifier 26) even though the system doesn't take the modifier in the processing field. This amount displays to the processor when the code is entered without the modifier - the global fee/prof component fee displays. There shouldn't be any R&C data because the system can't profile under a modifier it doesn't accept.

---

# Profiling_Instructions_DoNot_Profile
# Profiling_Instructions_Modifier_26_Profiling_Instructions

- For independent labs that bill with a place of service of inpatient or outpatient, and do not identify on the bill as TC or global, treat as a PC (26) type of service.  Usually these bills have "professional fee" or "PC" typed on the bill itself.

This Document is for internal use only except as expressly authorized and is not for redistribution.

CONFIDENTIAL

**# $ K @ Contact Does Not Have a CPT Code**
Released Online 08/05/03

Call the provider to request the CPT when the caller is a member and doesn't have the CPT code.

If the provider:

- Is not sure what procedure they are going to perform. Tell the provider we are unable to make a determination without the exact service code or description.
- Is not sure what the CPT code is but has an exact description of the service to be rendered.  Use autocoderAutocoder_PF_Key_Functions_Aecclaims_Topics to determine the code.   If you are unable to determine a code – follow the workflow outlined in Clinical Claim Review - Claim ProcessingClinical_Claim_Review_Claim_Processing coding services section.

See: PHCS (HIAA) Rates - Strategic Pricer - Systems for information on how to locate R&C in the system.HIAA_Rates_Strategic_Pricer

---

# Contact_does_not_have_a_CPT_code
$ Contact Does Not Have a CPT Code
K Contact Does Not Have a CPT Code
@ Status|0|||0|||||||

# [#] [$] [K] [@] Prevailing Fee Liberalization Example

Released Online 08/05/03

Example:

|              |                 |
|--------------|-----------------|
| ALT FEE SURG | 90TH PERCENTILE |
| ALT FEE MED  | 90TH PERCENTILE |
| ALT FEE DXL  | 90TH PERCENTILE |

This CCI wording indicates that the plan has the 90th percentile for surgical, medical and diagnostic x-ray and lab.

---

[#] Prevailing_Fee_Liberalization_Example
[$] Prevailing Fee Liberalization Example
[K] Prevailing Fee Liberalization Example
[@] Status|0|||0||||||

AET-01339039

# EXHIBIT P

Trial Transcript of Deborah Justo_ 04.14.05.txt

1

1          UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
2

3    RENEE MCCOY, individually and  )
     on behalf of all others        )
     similarly situated,            )
4                                    )
               Plaintiff,           )   Civil Action No.
5                                    )   2:03-cv-1801(FSH)(PS)
               vs.                   )
6                                    )      CONFIDENTIAL
     HEALTH NET, INC., HEALTH NET    )
7    OF THE Northeast, INC., and     )
     HEALTH NET OF NEW JERSEY,       )      EXAMINATION
8    INC.,)                          )      BEFORE TRIAL
                                     )          OF
9                                    )
     Defendants.                     )   DEBORAH JUSTO
10   ----------------------------X

11   ZEV AND LINDA WACHTEL,          )
     individually and on behalf of  )
12   their children, TORY, JESSE     )
     and BRETT WACHTEL, and on       )
13   behalf of all others similarly )
     situated,                       )
14                                    )
               Plaintiffs,          )
15                                    )
               vs.                   )
16                                    )
     GUARDIAN LIFE INSURANCE         )
17   COMPANY OF AMERICA, HEALTH NET,)
     INC., and HEALTH NET OF NEW     )
18   JERSEY, INC.,                   )
                                     )
19             Defendants.           )
     ----------------------------X

20

21

22        REPORTING SERVICES ARRANGED THROUGH:
         VERITEXT/NEW JERSEY REPORTING COMPANY, L.L.C.
23   Kabot Battaglia & Hammer    -    Suburban Shorthand
     Waga & Spinelli    -    Arthur J. Frannicola CSR
24            25B Vreeland Road, Suite 301
             Florham Park, New Jersey 07932
25   Tel:  (973) 410-4040         Fax: (973) 410-1313

2

1          Transcript of the Examination Before

2    Trial of DEBORAH JUSTO in regard to the above entitled

Trial Transcript of Deborah Justo_ 04.14.05.txt

3    A.   No.

4    Q.   Okay. And I don't believe it was your

5  testimony, but I just want to make sure I understood,

6  that Ingenix has never asked Aetna to provide that

7  information to Ingenix; correct?

8    A.   I don't believe so.

9    Q.   Okay.

10        MS. QUACKENBOS: Excuse me.

11        (A discussion is held off the record.)

12    Q.   Ms. Justo, do you still have a copy of

13  Plaintiffs' 1?

14    A.   Yes.

15    Q.   Could you please turn to the second page of

16  that, which for the record is McCoy/Aetna-002.

17        Oh, by the way, just actually one question

18  first about what we were covering before.  And then

19  we'll go on to this.

20        Did Ingenix ever audit Aetna's data

21  contribution at any time from 1998 through December

22  31st, 2004?

23    A.   Not that I'm aware of.

24    Q.   Okay. Looking at McCoy/Aetna-002, there's a

25  heading "Per TOLR ACAS Automated Profiling

D. Justo - Direct - Confidential        45

1  Guidelines."  Do you see that?

2    A.   Yes, I do.

3    Q.   The first line reads, "Charges that exceed

4  prevailing will be reduced and not profiled with

5  Action Codes 617 or 657."  Do you see that?

6    A.   Yes, I do.

7    Q.   Do you have an understanding as to how Aetna

Trial Transcript of Deborah Justo_ 04.14.05.txt

8   has applied that rule at any time between 1998 and

9   December 31st, 2004?

10      A.   I believe that to just be a terminology error

11  in a manual.  That is not what is happening in the

12  system.

13      Q.   And have you looked -- what is the basis for

14  your understanding that that is a terminology error,

15  as you put it?

16      A.   We check, I checked with someone involved

17  with the systems and they looked at claim activity and

18  told me that that is not what is happening.

19      Q.   And who is the person that you say you

20  checked with?

21      A.   Her name is Anna Chavez, C-h-a-v-e-z.

22      Q.   What is it that made you go check with Anna

23  Chavez about the automated profiling guidelines

24  appearing on McCoy/Aetna-002?

25      A.   That it's not been our practice to not

D. Justo - Direct - Confidential                    46


1   profile charges that exceed prevailing.  And so I was

2   concerned.  I wanted to make sure that that wasn't

3   what was happening in the system.

4       Q.   What was your understanding of Aetna's

5   practice based on?

6            MS. O'REILLY: Objection to the form.

7       A.   We would not want to do that.  That --

8       Q.   Okay. I don't think you are understanding my

9   question.  If I understood your testimony correctly,

10  you are saying that something caused you to look at

11  this rule and say to yourself, "Oh, I don't think

Page 39

# EXHIBIT Q

1

1          UNITED STATES DISTRICT COURT
                DISTRICT OF NEW JERSEY
2

3    --------------------------------
     IN RE:  AETNA UCR LITIGATION        MDL. No. 2020
4

5    This Document Relates To:          Master Case No.
     ALL CASES                          2:07-3541(FSH)(PS)
6    --------------------------------

7

8

9          30(B)(6) DEPOSITION OF AETNA BY:

10              DEBORAH S. JUSTO

11         DATE:  MARCH 25, 2010

12              HELD AT:

13         SHIPMAN & GOODWIN, LLP
           ONE CONSTITUTION PLAZA
14         HARTFORD, CONNECTICUT

15              - - -

16

17

18

19   Reporter:  Sandra V. Semevolos, RMR, CRR, LSR #74

20

21

22

23

24

25   Job No. NJ247695

155

1    A.    Well, at this point, the ball is back in

2  Ingenix's court.  If they wanted to change the

3  language, I do not have any recollection of them

4  coming back with revised language.

5    Q.    And given that you didn't have any

6  recollection that there had been any response until I

7  showed you the response, how would you know with

8  certainty whether there was follow-up conversation

9  with Ingenix after this e-mail string?

10          MR. SIGLER:  Object to form.

11   A.    I do not believe there to be any subsequent

12  communication or change from where we were at that

13  point.

14  BY MS. QUACKENBOS:

15   Q.    Did you have any further conversations with

16  anyone internally at Aetna about this subject, such as

17  with Ms. Joy or Mr. Palmunen or anyone else?

18          MR. SIGLER:  Objection and caution the

19  witness not to get into the substance of any

20  communications with counsel.

21   A.    There was no return of revised language to

22  be reviewed.  This is where I would -- it was left.

23          MR. SIGLER:  Time for break?

24          MS. QUACKENBOS:  Time for break.

25          MR. SIGLER:  Before we go off the

156

1   record, Barbara, we wanted to mention that you've made

2   reference a couple of times to categories of documents

3   that you are not sure you received, and while

4   obviously we don't have all the documents with us, we

5   were able to identify the Bates numbers for the first

6   document that you mentioned earlier today that you

7   thought you didn't have.  The Bates number is

8   AET-00914080 to 081, and then it was produced again at

9   AET-00839458 to 39459, and that's the

10  September 30, '04 communication.

11              MR. AXELROD:  Obviously that's why she

12  couldn't find it because it was produced more than

13  once.

14              MR. SIGLER:  AET-00914080 to 914081 and

15  the second one is AET-00839458 to 459.

16      (Recess taken from 3:12 p.m. to 3:26 p.m.)

17              MS. QUACKENBOS:  I'd just like to make

18  a housekeeping note.  The Bates range provided by

19  Ms. Richardson prior to the break as relating to the

20  9/30/04 Wendy Larsen letter, we've printed out the

21  Bates ranges that she provided and both of the Bates

22  ranges are the identical document.  That document is

23  the Dear Contributor letter dated October 5, 2004 that

24  is already a Justo Exhibit.  I believe it's Justo 2 --

25  it is Justo 3.  So there is no Wendy Larsen letter

157

1    with the traditional date at the top of the letter

2    dated September 30th, '04.  Anyway, just for

3    housekeeping purposes.

4                    Why don't we mark this one.

5                    (Exhibit 10, Document Nos.

6                    AET-00905405 and AET-00905406, marked

7                    for identification.)

8                    MR. SIGLER:  Did you mean to add

9    several documents that appear to be stapled together

10   that are not consecutively Bates numbered?

11                   MS. QUACKENBOS:  Just the top two, 405

12   and 406.

13                    (Pause.)

14   BY MS. QUACKENBOS:

15       Q.      Ms. Justo, an exhibit has been placed

16   before you and marked as Justo Exhibit 10, Bates

17   stamped AET-00905405 through 406.

18           Have you seen this document in preparing for

19   your deposition?

20       A.      No.

21       Q.      It is dated April 14, 2005, and it is -- am

22   I correct that it is written by you as the organizer?

23       A.      Yes.

24       Q.      And it is written to Jim Cross, Susan

25   Jensen, Susan Johnson, Caroline Lawrence and Stacie

158

1  Watson.  Correct?

2      A.    Yes.

3      Q.    Are those members of the reimbursement

4  policy unit that you were referring to?

5      A.    Yes.

6      Q.    And is it your testimony that that unit is

7  responsible for the profiling rules?

8                    MR. SIGLER:  Object to form.

9      A.    Yes.

10  BY MS. QUACKENBOS:

11      Q.    So on April 14th, you are suggesting a phone

12  conference about the profiling and Ingenix issues;

13  correct?

14      A.    Yes.

15      Q.    And paragraph 2 is about the changes that

16  Ingenix is requesting to the data submission form.

17          Do you see that?

18      A.    Yes.

19      Q.    And you are referring to the three new

20  attestations D, E and F that Ingenix is requesting.

21          Do you see that?

22      A.    Yes.

23      Q.    And then you state "Compliance with these

24  requests would require changes to existing profiling

25  guidelines."  Correct?

159

1      A.    Yes.

2      Q.    What changes to the existing profiling

3    guidelines would have been necessary in order for

4    Aetna to comply with items D, E and F on this second

5    page of Justo Exhibit 10?

6      A.    We would need to eliminate, for D, where it

7    says that all claims received be submitted, we would

8    need to eliminate not profiling completely.

9      Q.    Anything else?

10     A.    That that would require manual and automated

11   changes to the systems.

12          Bullet E, "All data fields being provided

13   match the definitions listed in the record layout,"

14   for the fields that we were providing, we were

15   matching the definition.  It was more an issue of

16   would we move to the expanded record layout.

17          F, that the data submitted reflects the

18   entire universe.  Again, that's very similar to D.

19   And the second portion where it talks about

20   manipulated, supplemented or scrubbed, again, it would

21   be a matter of not profiling any longer.

22     Q.    Did Aetna ever make the changes to the

23   profiling guidelines that would have allowed Aetna to

24   comply with D, E and F?

25          MR. SIGLER:  Object to form.

160

1      A.    No.

2   BY MS. QUACKENBOS:

3      Q.    How much data, either as a number or as a

4   percentage of the total, did Aetna not send to Ingenix

5   because of the do not profile guidelines?

6                MR. SIGLER:   Object to form and

7   foundation.

8      A.    I don't have that information.

9   BY MS. QUACKENBOS:

10     Q.    Who at Aetna would be able to tell us how

11  much data did not get submitted to Ingenix by virtue

12  of the profiling guidelines?

13               MR. SIGLER:   Same objection and scope.

14     A.    I'm not aware of that being checked.

15  BY MS. QUACKENBOS:

16     Q.    If for some reason Aetna was required to

17  provide that information, who do you expect, by virtue

18  of your experience, to be the person or unit who would

19  be able to extract that information?

20               MR. SIGLER:   Same objections, scope,

21  form, foundation.

22     A.    I would imagine that reimbursement policy

23  would have to work with an IT area.

24  BY MS. QUACKENBOS:

25     Q.    Who, if anyone, at Aetna has analyzed the

161

1   impact on the final Ingenix data caused by Aetna's

2   profiling guidelines?

3                   MR. SIGLER:  Same objections.

4       A.    I'm not aware of any analysis.

5                       (Exhibit 11, Document titled "Action

6                       Codes/Cryptic List Codes," Nos. AET-C

7                       0101256 through AET-C 0101284, marked

8                       for identification.)

9   BY MS. QUACKENBOS:

10      Q.    Ms. Justo, a document has been placed before

11  you and identified as Justo Exhibit 11.  It is Bates

12  stamped AET-C 0101256 through 284.  The title is

13  "Action Codes/Cryptic List Codes."

14            Do you see that?

15      A.    Yes.

16      Q.    What does "Cryptic List Codes" refer to?

17                  MR. SIGLER:  Objection, form,

18  foundation, scope.

19      A.    It appears to be the descriptions in the

20  right-hand column.

21  BY MS. QUACKENBOS:

22      Q.    And how about "Action Codes," what does that

23  refer to?

24                  MR. SIGLER:  Same objections.

25      A.    The numeric associated to the written

162

1    description.

2    BY MS. QUACKENBOS:

3        Q.    And what about the EX codes, what are they?

4              MR. SIGLER:   Same objections.

5        A.    I'm not familiar with EX codes.

6    BY MS. QUACKENBOS:

7        Q.    Okay.  Is it fair to say that in your tenure

8    at Aetna, you are familiar with action codes?

9        A.    Some of the action codes.

10       Q.    Which action codes are you familiar with?

11       A.    Those that relate to profiling.

12       Q.    And which action codes relate to profiling?

13       A.    The 500 and 600 series.

14       Q.    And if you go to the page ending in 269, you

15   see references to action codes 501 through 550.

16             Do you see that?

17       A.    Yes.

18       Q.    And the cryptic corresponds to profiling

19   actions that you are familiar with in the 500 series;

20   correct?

21       A.    I am familiar with some of these.

22       Q.    If you turn to the next page, you will see

23   that there is a listing for action code 601 through

24   650.

25             Do you see that?

163

1       A.      Yes.

2       Q.      And do you see that most of them on this

3    page, not all of them, but many of them, the cryptic

4    reads EXP exceeds prevailing.

5            Do you see that?

6       A.      Yes.

7       Q.      And in your experience, does EXP refer to

8    expense?

9       A.      Yes.

10      Q.      So when it says expense exceeds prevailing,

11   and it's a 600 series action code, that means that if

12   that action code were used on a claim, that claim

13   would not get submitted to Ingenix; correct?

14      A.      Yes.

15      Q.      And that claim would also not get collected

16   by Aetna for use in Aetna's internal fee profile data

17   pool; correct?

18      A.      Correct.

19      Q.      This document does not appear to have a

20   date.

21           Do you know for what period of time these

22   cryptic and action codes were in effect at Aetna?

23              MR. SIGLER:  Objection, form,

24   foundation, scope.

25      A.      I do not.  I'm not familiar with this

164

1    document.

2    BY MS. QUACKENBOS:

3       Q.    Okay.  Let's try a different document then.

4                        (Exhibit 12, Document titled

5                        "Explanation of Payment Code," Nos.

6                        AET-C 0006672 through AET-C 0006692,

7                        marked for identification.)

8    BY MS. QUACKENBOS:

9       Q.    Ms. Justo, an exhibit has been placed before

10   you.  It's identified as Justo Exhibit 12.  It's Bates

11   stamped AET-C 0006672 through 92.

12              Do you see that?

13      A.    I do.

14      Q.    And the title is "Explanation of Payment

15   Code."

16              Do you see that?

17      A.    I do.

18      Q.    At the top right-hand corner, it states

19   "Aetna Integrated Informatics Data Warehouse."

20              Do you see that?

21      A.    Yes.

22      Q.    In your experience, have you had

23   professional dealings with The Aetna Integrated

24   Informatics Data Warehouse?

25      A.    Occasionally.

165

1      Q.     What is that data warehouse?

2             MR. SIGLER:  Objection, scope.

3      A.     The data warehouse is a repository of a

4   variety of, I believe, claim-related information and

5   they can do reporting off of that.

6   BY MS. QUACKENBOS:

7      Q.     Does the data warehouse retain claims data

8   reflecting the codes listed here on Justo Exhibit 12?

9             MR. SIGLER:  Object to scope.

10     A.     I'm not all that familiar with the data

11  warehouse.  I would imagine, seeing this is printed,

12  but --

13  BY MS. QUACKENBOS:

14     Q.     Have you ever seen data generated by the

15  data warehouse that has references to action codes,

16  such as appearing on Justo Exhibit 12?

17            MR. SIGLER:  Objection, foundation and

18  scope.

19     A.     Again, the action codes that I'm familiar

20  with would relate to profiling.

21  BY MS. QUACKENBOS:

22     Q.     By the way, I wanted to alert your -- alert

23  you to the date of this document.  On the lower

24  right-hand, the first page, it says that it's updated

25  on May 12, 2008.

166

1      A.     Okay.

2      Q.     Do you have any understanding as to what

3  Aetinfo BMO as the owner means?

4      A.     I've never heard of the BMO reference.

5  Aetinfo is part of, I believe it's tied to data

6  warehouse, just a body of -- an area that handles

7  informational requests.

8      Q.     Okay.  Let's go to the profiling action

9  codes which start at the page ending in 683.

10         Do you see that?

11     A.     I do.

12     Q.     So the action codes which you refer to as

13 profiling codes, go from 500 on the page ending in 683

14 and go through action code 698 appearing on the page

15 ending in 686.

16         Do you see that?

17     A.     Yes.

18     Q.     Now, directing your attention to page 685,

19 do you see that code 610, 611, 612, 613, 614, 615,

20 616, 617, 618 and 619 all have the same cryptic, which

21 is expense exceeds prevailing?

22         Do you see that?

23     A.     Yes.

24              MR. SIGLER:  Object to form and

25 foundation.

167

1    BY MS. QUACKENBOS:

2         Q.    Have you ever seen reports or other

3    information generated by the data warehouse that would

4    reflect use of these profile codes on any claims data?

5                     MR. SIGLER:   Objection, scope, form,

6    foundation.

7         A.    As we just spoke of earlier, years ago there

8    was a claim department cost containment report that

9    was action code driven.   I have not seen that in

10   years, many years.   I don't know if it's still in

11   existence or not.   That's the only report I'm familiar

12   with.

13   BY MS. QUACKENBOS:

14        Q.    Is it safe to say that we would need to ask

15   somebody from the data warehouse whether their current

16   reports reflect action codes such as what I just read,

17   610 through 619?

18                    MR. SIGLER:   Objection, form,

19   foundation, scope.

20        A.    Yes.

21   BY MS. QUACKENBOS:

22        Q.    If you turn to the next page, you will see

23   that action code 650 through 659 all have the same

24   cryptic, and that cryptic is EXP for expense; right?

25        A.    Uh-huh.

168

1      Q.    EXC for exceeds; right?

2      A.    Yes.

3      Q.    And RECOG for recognized; right?

4      A.    Yes.

5      Q.    And CHG for charge; right?

6      A.    Correct.

7      Q.    So using these acronyms with your

8  permission, these nine action codes all mean expense

9  exceeds recognized charge; correct?

10              MR. SIGLER:  Objection, form,

11  foundation, scope.

12     A.    That is the description here, yes.

13  BY MS. QUACKENBOS:

14     Q.    And recognized charge refers to a usual,

15  customary and reasonable amount other than the 80th

16  percentile amount of Ingenix with a $10 liberalization

17  corridor; correct?

18              MR. SIGLER:  Objection, form,

19  foundation, scope.

20     A.    Recognized charge is other than standard

21  R&C.

22  BY MS. QUACKENBOS:

23     Q.    And Aetna standard R&C is the 80th

24  percentile Ingenix with a $10 liberalization; right?

25              MR. SIGLER:  Objection, form,

169

1    foundation, scope.

2        A.    The benchmark used is the 80th percentile

3    currently of the Ingenix PHCS data, and there is a $10

4    by administration corridor on medical and surgical

5    benefits.

6    BY MS. QUACKENBOS:

7        Q.    So, for example, if a claim -- if a plan had

8    a 90th percentile of Ingenix rather than the 80th

9    percentile standard, then the -- then Aetna would

10   refer to that UCR as a recognized charge rather than

11   as UCR; right?

12               MR. SIGLER:   Same objections.

13       A.    Correct.

14   BY MS. QUACKENBOS:

15       Q.    If action code 650 through 659 were

16   designated on a claim, then that claims information

17   would not go into the pool of Aetna internal data and

18   would not -- would also not be contributed to Ingenix;

19   correct?

20               MR. SIGLER:   Object to form.

21       A.    Correct.   An action code leading with a 6 is

22   do not profile.

23   BY MS. QUACKENBOS:

24       Q.    And I should have actually mentioned that

25   action code 660 is the same as the action codes for

170

1  650 through 659.  Do you see that?  In other words,

2  it's also expense exceeds recognized charge.

3          Do you see that?

4    A.    I do.

5    Q.    And then action code 666 states, as well as

6  668, 676 and 678 all state, no profile, excessive

7  charge.

8          Do you see that?

9    A.    I do.

10   Q.    What is the difference between when action

11 code 656 for no profile, excessive charge would be

12 used as opposed to one of the action codes for expense

13 exceeds recognized charge?

14               MR. SIGLER:  Objection, form,

15 foundation, scope.

16   A.    I'm not familiar with this document.  When I

17 look at this 5 and 600 series action code, there is

18 another chart, and each digit in that number has a

19 definition.  5 says profile.  6 says don't profile.

20 The middle column for each number, there is a variety

21 of explanations.  The third digit, again, there is a

22 variety of explanations describing who took the

23 action.  So without seeing it in that sort of a

24 format, I'm having a very difficult time telling you

25 what each of these means, because there is a

171

1    difference.  These descriptions are, you need

2    additional information to understand what each of

3    these are.

4    BY MS. QUACKENBOS:

5        Q.    Okay.  Fair enough.

6              Is it your understanding, though, that any

7    action code where the first digit is a 6, the result

8    of that is a do not profile designation?

9                   MR. SIGLER:  Object to form.

10       A.    Yes.  6 means do not profile.

11   BY MS. QUACKENBOS:

12       Q.    So all of the codes starting on page 684,

13   starting with 600 and going up through action code 698

14   on 686 would all result in do not profile

15   instructions, meaning that the corresponding claim

16   would not be incorporated into Aetna's internal fee

17   profiling database and would also not be submitted to

18   Ingenix; correct?

19                   MR. SIGLER:  Object to form and

20   foundation.

21       A.    Yes, because a do not profile criteria was

22   met.

23   BY MS. QUACKENBOS:

24       Q.    Right.  Who at Aetna has the ability to

25   explain how these 600 series do not profile codes are

172

1    interpreted by Aetna's automated claims processing

2    system?

3                    MR. SIGLER:   Object to form and scope.

4         A.    If it has a 5 as the leading digit, it goes

5    into the collection repository.   If it has a 6, it

6    does not go into the collection repository.

7    BY MS. QUACKENBOS:

8         Q.    Right.   It's the claim -- for an automated

9    claim, the claims processing system is evaluating the

10   claims data and determining whether it should profile

11   and therefore have a 500 series action code, or

12   whether that claim should not profile, meaning it has

13   a 600 series action code, but the computer has to be

14   instructed as to how to evaluate that incoming claim

15   in order to assign a profile or do not profile code.

16                   Who at Aetna can explain how the computer

17   system is making that evaluation in order to assign a

18   profile code or a do not profile code?

19                   MR. SIGLER:   Objection to form.

20        A.    The profiling guidelines detail the

21   instructions that have been programmed into the

22   system.

23   BY MS. QUACKENBOS:

24        Q.    Which profiling guidelines are you referring

25   to?

173

1      A.      There is documentation in TOLR, there are

2  system release communications detailing system

3  instructions, logic.

4      Q.      The TOLR documentation does not explain how

5  the claim system is analyzing the incoming claims data

6  in order to evaluate whether to assign a 500 series

7  action code or a 600 series action code; right?

8      A.      For example, on zip code, there is system

9  logic that reads the zip code, and it interprets

10  whether it has a service zip code.  If it does, then

11  it could profile.  If it doesn't, then it is issued a

12  no profiling action code.

13      Q.      Looking at page 685, in what circumstances

14  does a claim receive a do not profile flag under any

15  of these numbers, take 610 through 619, based on the

16  programming instructions?

17              MR. SIGLER:  Objection, form and

18  foundation.

19      A.      The third character tells who rendered the

20  decision, a 7 indicates that it was done via the

21  system.

22  BY MS. QUACKENBOS:

23      Q.      So in what circumstances does a claim going

24  through the automated system receive a do not profile

25  instruction with a 617 action code?

174

1        MR. SIGLER:  Object to form,

2   foundation.  Asked and answered.

3        A.    In my example, the zip code, for instance,

4   there is a database of provider zip codes.  There is

5   information on the claim.  If the system cannot

6   establish a service location zip code match, then the

7   system issues a do not profile action code.

8   BY MS. QUACKENBOS:

9        Q.    I'm talking about action code 617, expense

10  exceeds prevailing.  That has nothing to do with zip

11  codes; right?

12       A.    As I tried to explain to you before, this

13  description, this cryptic doesn't give you the

14  information you need to understand what this action

15  code is.  As I explained to you, there is a chart that

16  exists that breaks out the 5 and 600 series action --

17  the 5 and 600 series action codes, and it shows column

18  1 being -- the options being 5 or 6 and it describes

19  the 5 equals profile, 6 equals do not profile.  The

20  middle column talks about the action taken, and the

21  third column talks about who took that action.

22       Q.    I want you to assume that action code 617 is

23  an automated -- means that the system has adjudicated

24  a claim in the automated setting and has determined

25  that the expense exceeds the prevailing.

# EXHIBIT R

| | |
|---|---|
| **From:** | Justo, Deborah |
| **Sent:** | Fri, 15 Apr 2005 13:12:30 GMT |
| **To:** | Chavez, Ana B |
| **Subject:** | RE: Profiling questions |

---

Thank you!

-----Original Message-----
**From:**   Chavez, Ana B
**Sent:**   Thursday, April 14, 2005 3:44 PM
**To:**     Justo, Deborah
**Subject:**      RE: Profiling questions

Yes, I sent you the report.  There are many auto adjudicated claims on the report that indicate the provider's fee was reduced to R&C and profiled (517, 557).

-----Original Message-----
**From:**   Justo, Deborah
**Sent:**   Thursday, April 14, 2005 12:53 PM
**To:**     Chavez, Ana B
**Subject:**      RE: Profiling questions
**Importance:**   High

HI Ana, can you confirm for me my recollection of our phone conversation after you sent this note.  That you did see instances within the report referenced below where the providers charge exceeded prevailing and the system generated a 5xx series action code.  Thank you!

-----Original Message-----
**From:**   Chavez, Ana B
**Sent:**   Friday, April 08, 2005 11:58 AM
**To:**     Justo, Deborah
**Subject:**      RE: Profiling questions

Deb, I had a week's worth of auto adjudicated claims pulled.  I only checked a hand-ful of those that AA'd with an action code 6XX.  But in looking at those, what I found is that no profile action code was used because

- we applied ClaimCheck (action codes 6X6) and because expenses may have been rebundled, no profile was used.

- there is no service address on the claim submission OR the service address submitted is not in EPDB

Do you want the report I got?

-----Original Message-----
**From:**   Justo, Deborah
**Sent:**   Wednesday, April 06, 2005 12:30 PM
**To:**     Chavez, Ana B
**Subject:**      RE: Profiling questions

Again, thank you for all of your help with this -  I really appreciate it!!!!!

-----Original Message-----
**From:**   Chavez, Ana B
**Sent:**   Wednesday, April 06, 2005 1:26 PM

AET-03592606

**To:**      Justo, Deborah
**Subject:**      RE: Profiling questions

I'll request a report of a couple weeks claim that have AA'd.

I'm not aware of anything documented for this but can check with others on our team to find out.  With so many enhancements over the years, documentation gets outdated very quickly.

-----Original Message-----
**From:**   Justo, Deborah
**Sent:**   Wednesday, April 06, 2005 12:23 PM
**To:**      Chavez, Ana B
**Subject:**      RE: Profiling questions

Yes Ana, if you could I would appreciate it.  We need to get this clarified once and for all.

Would there be written system documentation somewhere that would have this information?  Thanks

-----Original Message-----
**From:**   Chavez, Ana B
**Sent:**   Wednesday, April 06, 2005 11:34 AM
**To:**      Justo, Deborah
**Subject:**      RE: Profiling questions

The information I provided is for claims that are keyed in (not auto adjudicated).  As I stated, there is different logic for AA vs manual claims.  The only way I can confirm what action codes are used on electronic/AA'd claims is to request a report to see what action code was used (5XX/6XX action codes).

That will take some time.  Do you want me to request one?
-----Original Message-----
**From:**   Justo, Deborah
**Sent:**   Tuesday, April 05, 2005 9:10 PM
**To:**      Chavez, Ana B
**Subject:**      RE: Profiling questions

Ana, thank you so much for your immediate attention to this, I do apologize for the short notice.

So it sounds like auto-adjudicated claims where the submitted is significantly less than prevailing are being profiled.  Likewise, charges significantly over are also profiling.

That is actually very good news.  I just wonder where the language in TOLR came from?  Thank you again for your help, you are a lifesaver!!!!!

-----Original Message-----
**From:**   Chavez, Ana B
**Sent:**   Tuesday, April 05, 2005 4:18 PM
**To:**      Justo, Deborah
**Subject:**      RE: Profiling questions
**Importance:**   High

There's different logic between electronic claims and manual claims.  There's additional logic built into electronic claims based on service location as well as no profile indicators that can be set such as for Medicare claims.

But I keyed in a test claim to see what generates on claims with submitted less than half of the prevailing fee.  The edit EXP LN 01 (this reflects the expense line#) -SUBM LESS THAN HALF PREV FEE LN 01 generates.  Processors have to price the expense and use the appropriate action code (600 to not profile such charges).  On electronic claims, this edit is bypassed and the claim is priced with the submitted (no no-profile action code is used).

I also keyed in a test claim and increased the submitted to $5000.00.  The R&C is $85.00.  The system priced the expense with $85.00 and entered action code 517.  Nothing generates to alert the processor of excessive over R&C.  It could be that logic was taken out to increase AA rates.

AET-03592607

One last thing I want to mention is that we have an SR (hoping to get it into the Aug release) to address a problem with anesthesia claims subject to R&C that are going out with no action code.  The patient responsibility on EOBs (member & provider) is incorrect as it does not reflect the difference between submitted and R&C.

Let me know if you need anything else.

-----Original Message-----
**From:** Justo, Deborah
**Sent:** Tuesday, April 05, 2005 1:55 PM
**To:** Chavez, Ana B
**Subject:** RE: Profiling questions
**Importance:** High

Hi, thought it might be helpful if I provided the TOLR reference that we need to rebut.  I recall Brian Yorgey doing some testing and indicating that the system was not working as described below.  I need to be able to say how the system is actually operating.   Unfortunately we need to provide this information to the court tomorrow.   Thanks again for any assistance/direction that you may be able to provide.

Reasonable and Customary - Claim Processing - Profiling Rules

Released Online:      Updated 03/15/05
Applies to Traditional Choice (Indemnity), Elect Choice (EPO), ASC, Insured, National Account, Key/Select Accounts, Small Group Business, Open Choice (PPO), Managed Choice (POS), Open Access Elect Choice, Open Access Managed Choice (POS), Healthfund, Affordable HealthChoices

Systems:  Aecclaims, ACAS
Policy  Contact Servicing       Related Information     Claim Processing

ACAS
(03/15/05)
System Assigned Action Codes
Charges submitted on claims that are auto-adjudicated in ACAS are assigned no-profile action codes in the following situations:

Charges that exceed prevailing will be reduced with action code 617, 657.

Charges that exceed prevailing but are within plan prevailing fee liberalization will be accepted with 605.

-----Original Message-----
**From:** Justo, Deborah
**Sent:** Tuesday, April 05, 2005 2:15 PM
**To:** Chavez, Ana B
**Subject:** RE: Profiling questions
**Importance:** High

Hi Ana, I am wondering if you can help me.  I am working a response to a subpoena.  Would it be possible to quickly  find out what the current ACAS system logic says for charges exceeding prevailing / charges significantly less than prevailing.  If you will recall there have been discrepancies between TOLR and the system logic on this.  Any assistance you can offer would be greatly appreciated.  If I should be asking someone else please let me know.  Thank you!!!!!

-----Original Message-----
**From:** Chavez, Ana B
**Sent:** Thursday, May 27, 2004 10:25 AM
**To:** Justo, Deborah; Yorgey, Brian
**Subject:** RE: Profiling questions

We do have SR049463 to address the problem reported with ClaimCheck rebundle of expenses that should not be profiled.  No ETA for implementation on that SR.

AET-03592608

There were system changes made a couple of year ago that if charges exceed R&C by 150% or more, a no profile action code is used.  This was done according to what's in the Profiling Rules in TOLR.  And it appears to be working correctly based on Brian's testing.

As for the profiling of allowed/payed less than $1.00, my understanding is that we profile the submitted amount.  So I don't see what the priced/allowed/payment has to do with this.  Perhaps the intent is that we don't reduce expenses that are above R&C but less than $1.00?  Deb, I'm not sure who can verify that claims with a payment or allowed of less than $1.00 are not profiled.  I can key in a test claim but who do I contact to find out if this was captured on the file or report for R&C data?  I don't think this information is stored within ACAS.

-----Original Message-----
**From:**   Justo, Deborah
**Sent:**   Tuesday, May 25, 2004 12:05 PM
**To:**     Yorgey, Brian
**Cc:**     Chavez, Ana B
**Subject:**        RE: Profiling questions

Thanks Brian.  I will confirm the specifics of our obligation to Ingenix and send that to you.  I am relieved to hear that what is automated in ACAS may not be working as is stated in TOLR.  Ana, any more detail you can offer regarding how the system is actually functioning would be greatly appreciated.  Once we know what it is doing then Brian I would appreciate your assistance in getting the TOLR verbiage clarified.

I am not certain that the following statement is accurate, can some testing be done to see if this is really how the system is working?

 Expenses are profiled automatically except in three situations:
   (1) less than $1 is payable for the expense line although the expense is partially or total covered. (This includes monies applied to the deductible)

What does the second sentence mean (intent)?
4) add to Do Not Profile list: When the MEA (first three digits of the zip code) in the provider address display area on your processing screen does not match the location (MEA) on the claim.  **The processor is not required to review the image specifically for this item,.**

Thank You!
-----Original Message-----
**From:**   Yorgey, Brian
**Sent:**   Tuesday, May 25, 2004 8:12 AM
**To:**     Justo, Deborah
**Cc:**     Chavez, Ana B; Yorgey, Brian
**Subject:**        RE: Profiling questions

Below are the revisions requested, if you are interested.  The requests were generated via unclear policy call, which is supposed to deal with clarifying the policy, not changing it.  But I do have to take into account what the system is doing and what profiling captures and does not capture.  You would be the appropriate party for what the system captures and what should not be profiled based on what we should be sending to the vendor based on our agreement, right?  I know Dr. Cross has previously stated that we shouldn't have to scrub the data, but what does our agreement with Ingenix state?

I tested a claim for non-par provider in ACAS with an office visit and allergy injection and the claim lines rebundle with the amount over prevailing denied with action code 557.  I also tested a regular over prevailing and it used 557.  When the submitted amount was much greater, the system assigned 657, so the statements about 617/657 and 605 may be in certain circumstances.  I also saw 505 generated.  Ana, can you double-check the TOLR list of system assigned action codes and advise if it is still accurate and also whether the 6XX series generates for prev fee cuts only when the submitted is greater than 150% over prevailing?  Also, has ClaimCheck rebundling not using 6XX been reported as a problem?

All fees are automatically captured in the system each time a transaction ~~claim~~ is finalized ~~processed.~~  The exception is Pended claims. Pended claims are not profiled.  Once the claim is actually processed the charges should be profiled unless a do not profile criteria is met.

AET-03592609

[new line]
~~The system profiles each individual expense unless directed otherwise by the processor; or if the entire submitted amount is being denied.~~  The system will profile the submitted dollars, not the R&C amount or the negotiated fee amounts.

In general, the payline is profiled by default.  Expenses are profiled automatically except in three situations:
   (1) less than $1 is payable for the expense line although the expense is partially or total covered. (This includes monies applied to the deductible)

   (2) a charge is Fully Denied (this includes Pended claims)
   (3) an action code which prevents profiling is used (click here for the ***500 and 600 Series Cost Containment Action Code Chart***)

## Please update Do Not Profile *as indicated below in pink*
(1)  Please change from bullets to numbers.  This will allow reference to which portion of the Do Not Profile list applies in a claim situation.

(2) ·  Reconsidered/reworked/recalled expenses when the ~~original expense was profiled on the original transaction partially or totally covered (this includes payment made or monies applied toward deductible).  Note: Fully denied charges are not passed to the profile system~~. This does not include processing of a previously Pended transaction.   If paying out 'less than $1' because of an overpayment, the claim is still a rework and therefore should not be profiled.  When a charge is reconsidered due to selecting the incorrect provider and the MEA is different, do not profile the expense line.

3) add to the Do Not Profile list:  When using the default MEA Text for Foreign claims.  For additional information, [click here] refer to **Foreign Provider Procedures - General – Provider.**

4) add to Do Not Profile list: When the MEA (first three digits of the zip code) in the provider address display area on your processing screen does not match the location (MEA) on the claim.  The processor is not required to review the image specifically for this item,.

## *Please update the 500 and 600 Series Cost Containment Action Code Chart as indicated below in pink.*

Reasonable and Customary - Claim Processing - Profiling Rules -> Profiling Instructions - > 500 and 600 Series Cost Containment Action Code Chart

The following chart shows all possible Action Codes that can be used to describe Cost Containment activity for 500 and 600 series Action Codes.

1st  Digit (Profile Action Indicator)
Indicates the profile action
     5 – Profile required (surgical, dental and other medical charges only)
     6 – Do Not Profile

2nd  Digit (Cost Containment Action)
Drives the message included on the EOB
   0 – Accepted in full (no EOB message generated)
   1 – Excessive charge, all or part denied  (patient responsible for balance, ie non-par provider)
   2 – Medical necessity - all or part denied (patient responsible for balance, ie non-par provider)
       (use only if instructed by CCR or Medical Director ~~medical~~ as it applies to assistant surgeon guidelines)        Use 2 only when 3rd digit is 1 or 2

   3 – Alternate course of treatment – all or part denied (No predetermination)
   4 – Alternate courses of treatment – all or part denied (predetermination)
   5 – Recognized Charge Alternate Percentile Level Reduction
   6 – Excessive charge – All or part denied  (patient not responsible for balance, ie par provider)
   7 – Excessive charge – All or part denied  (denying INC & ME charges ; patient not responsible for balance; ie par provider)

AET-03592610

8 – Medical Necessity – all or part denied  (when instructed to use by nurse/CCU/CCR/medical director)
9 – Medical Necessity – all or part denied  (when instructed to use by nurse/CCU/CCR/medical director)
  Use 9 only when 3rd digit is 1 or 2

3rd  Digit (By Whom)
Who determined or approved the action represented by the 2nd digit
  0 – Processor
  1 – CCU/CCR
  2 – Consultant/Medical Director
  3 – Review Committee
  4 – Home Office
  5 – Special PH (Used only with "accepted in full" action)
  6 – ClaimCheck Action Codes 077, 076
  7 – System (action determined by system)
  8 – ClaimCheck Action Codes 078, 0749 – Other

Examples:     Profile Required:   511 - Excessive charge/part denied by CCU
              Do Not Profile:     610 – Excessive charge/all or part denied by processor
              Do Not Profile:     617 = Processor changes submitted code, system cuts fee to R&C
              Do Not Profile:     632 = UM applies ABP to a service and the processor had to also change the
submitted code

              Do Not Profile:     600 = transaction is reprocessed without R&C or ClaimCheck or Medical Nec cutback

Note:  Only use the middle digits of 2, 8 or 9 when a Medical Director or CCU has directed to deny an expense as not medically necessary.  Otherwise, another more appropriate Action code should be used.

_____

Reasonable and Customary - Claim Processing - Profiling Rules

Please add to the 'Do Not Profile List' that the line should not be profiled when LI# is missing to connect that a line was changed or bundled.

-----Original Message-----
**From:**  Justo, Deborah
**Sent:**  Tuesday, May 25, 2004 7:06 AM
**To:**  Yorgey, Brian
**Cc:**  Chavez, Ana B
**Subject:**     RE: Profiling questions

Hello - what exactly is QAP looking to have updated?  Also, I think that MP & NT will want some say in profiling guidelines, have you already passed these questions along to anyone?  Here are my initial thoughts:

When the benefit paid is less than $1.  Only fully denied expenses are automatically **not** profiled.  It is my understanding that if any portion of the line item is considered allowable it would profile.  Even if plan provisions kick in and result in little or no payment the charge will still be profiled unless there is intervention and a 6xx series action code is used.

Reprocessing under a different MEA and profiling - my concern here is that we have no means for backing out the originally profiled charge.  We are only supposed to count each claim once.  It is still only one service even if we are handling the claim for that service more than once.  By profiling the claim twice we are double counting.  Do you have any sense how frequently this is occurring?

Foreign claims - is use of MEA 001 equivalent to MEA Text?  MEA 001 is currently unassigned.  Yes, if a 6xx series action code is not used charges would profile.  From an Aetna Fee Profile System perspective it shouldn't pose a problem if charges were to be profiled because you can not load fees to an unsupported expense area.  But from an Ingenix data submission perspective it would count negatively against us.  There is a SSP project currently underway to address the

AET-03592611

collection of profile data from claim records.  I can talk to them about the potential of excluding data with MEA of 001 from the collection process.

Processor comparison of MEA on processing screen vs claim.  For both payment and profiling accuracy we should only be using the actual service location zip code.  For manually processed claims there is the longstanding profile guideline that states only profile service address.  There is also an ACAS automated profiling guideline that is described as follows:  Claims that involve submissions where the provider API does not have a zip code that matches the first three digits of the Servicing Provider Zip are processed with do not profile action code 607.

I had not heard that codes rebundled by ClaimCheck were profiling - this is contrary to the longstanding guideline of do not profile rebundled claims.

Seeing as this can of worms has been opened I have two additional issues that I would like to add to the list for review.  I have recently discovered two ACAS Automated Profiling Guidelines that are of great concern to me.

   *Charges that exceed prevailing will be reduced and not profiled with action codes 617, 657.*
   *Charges that exceed prevailing but are within plan prevailing fee liberalization will be accepted but not profiled with action code 605.*

We absolutely can not continue to do this - this artificially holds down prevailing fees, any ideas how we correct these?

I would be happy to discuss any of these items further, please let me know how I can be of assistance.


   -----Original Message-----
   **From:**   Yorgey, Brian
   **Sent:**   Monday, May 24, 2004 3:45 PM
   **To:**   Justo, Deborah
   **Cc:**   Chavez, Ana B
   **Subject:**      Profiling questions

I have a request from QAP to update policies regarding profiling.  The updates requested are prompting the following questions;

When the benefit paid is less than a dollar, does the charge automatically get excluded from profiling without having to enter a 6XX series action code? (For example, $100 charge, $99.00 goes to deductible and the plan pays 80% of the balance, or 80 cents.)

When we have already processed a claim and it is resubmitted and reprocessed under a different, but correct, MEA (where the original MEA was incorrect), do we profile or do we enter 6XX series action code (do we want to capture the charges under the correct MEA, even though we already captured under the incorrect MEA?

Our current foreign provider instructions indicate to use default MEA 001 on unassigned claims.  This does not appear to be a valid MEA.  If we do not use a 6XX action code, do we capture data on MEA 001.  If so, is it used to update anything or send data to Ingenix/PHCS?  Do we have any R&C data stored under this MEA that may generate in processing?  Bottom line question is whether anything would be negatively impacted if took out the instruction to the processor to use action code 600 on every claim line when MEA 001 is used.

Also have a request to have processors compare the MEA on the processing screen to MEA on the claim and do not profile if they are not the same…this could have AA impact where we have a mismatch in provider selection logic that may default to a non-matching MEA, and I will look into that separately.  I agree with the concept, but do not want to cause AA errors by adding this.

Ana, why does ClaimCheck rebundling apply a 5XX series action code instead of 6xx?  Is this documented anywhere as a known issue?

AET-03592612

Brian Yorgey, NCO Policy and Procedures
**Confidential: The above information is confidential and should be read only by the addressee or the addressee's specific designees in accordance with the Aetna Code of Conduct and applicable law.**

**AET-03592613**

# EXHIBIT S

### Edits Eliminated

The following edits no longer generate for electronic or manual claims:
"EX FIRM PREV $XXX/XXX%/X"
"EX RECOG CHG $XXX/XXX%/X"


■ **SUBMITTED GREATER THAN 150% PREVAILING**

**Previously**

This edit caused claims to be dropped from Auto Adjudication and internally pended for processor review. The processor checked for validity of code, units, charge, and priced manually with appropriate action codes.

**New**

This edit no longer blocks Auto Adjudication from making the appropriate cut. The policy for not profiling has been eliminated.


■ **SUBMITTED LESS HALF PREVAILING**

**Previously**

This edit blocked auto adjudication and caused claims to pend internally for processor review. The processor checked for validity of code, units, charge, and priced manually with appropriate action codes.

**New**

This edit will no longer block auto adjudication and the system will price the claim as submitted. The edit is no longer a "hard" edit, but rather a "soft" edit permitting the processor to go to the "Y" display.   The policy for not profiling has been eliminated.


■ **Liberalizations**

**Previously**

For unprocessable customer R&C liberalizations, the system generated an EXC PREVAILING or EXC RECOGNIZED edit with a "zero" (Aecclaims value) as the last character of the edit.

CONFIDENTIAL                                                                                    AET-00566550

**New**

A new edit UNPROCESSABLE LIBERALIZATION – SEE CCI will generate when CCI shows a unique prevailing fee liberalization that cannot be automated.

■ **Processor Action Required:**

Be familiar with new edits given above.

Remember that the "no profile" policy on this edit has been eliminated: SUBMITTED AMOUNT IS LESS THAN HALF OF THE PREVAILING FEE.

CONFIDENTIAL                                                                                AET-00566551

# EXHIBIT T

# # $ ᴷ @ Reasonable and Customary - Claim Processing - Profiling Rules

| Released Online: | Updated 04/26/05 | | |
|---|---|---|---|
| **Applies to** Traditional Choice (Indemnity), Elect Choice (EPO), ASC, Insured, National Account, Key/Select Accounts, Small Group Business, Open Choice (PPO), Managed Choice (POS), Open Access Elect Choice, Open Access Managed Choice (POS), Healthfund, Affordable HealthChoices | | | |
| | | | |
| **Systems**: Aecclaims, ACAS | | | |
| | | | |
| <u>PolicyPol icy_D ept_L abor _Opi nion_ Reas onabl e_Cu stom ary_ Discl osure</u> | <u>Contact Servi cing</u> Reas onabl e_an d_Cu stom ary_ Cont act_ Servi cing_ Admi nistra tive | <u>Related Infor matio nRea</u> sona ble_a nd_C usto mary _Rel ated_ Infor matio n_Ad minis trativ e | <u>Claim Proc essin gRea</u> sona ble_a nd_C usto mary _Clai m_Pr oces sing_ Profili ng_R ules |

{bmc Blttria2.bmp}ACASReasonable_Customary_Claim_Processing_ACAS
{bmc Blttria2.bmp}AecclaimsReasonable_Customary_Claim_Processing_Aecclaims
{bmc Blttria2.bmp}MCSReasonable_Customary_Claim_Processing_MCS
{bmc Blttria2.bmp}Profiling
   InstructionsReasonable_Customary_Claim_Processing_Profiling_Instructions

# #ACAS
(03/15/05)!JumpID(`TradArchive03.hlp',`AT_ACAS_System_Assigned_Action_Codes_EO_031505')
**System Assigned Action Codes**
Charges submitted on claims that are auto-adjudicated in ACAS are assigned no-profile action codes in the following situations:

Charges that exceed prevailing will be reduced with action code 617, 657.

Charges that exceed prevailing but are within plan prevailing fee liberalization will be accepted with 605.

Providers in EPDB with a No Profile indicator are processed with action code 607.

Claims that involve submissions where the provider API does not a have a zip code that matches the first 3 digits of the Servicing Provider Zip are processed with action code 607.

---

# Reasonable_and_Customary_Claim_Processing_Profiling_Rules
$ Reasonable and Customary - Claim Processing - Profiling Rules
ᴷ Reasonable and Customary - Claim Processing - Profiling Rules;profile - profiling - Profiling Rules
@ Status|0|||0||||||
# Reasonable_Customary_Claim_Processing_ACAS

AET-01342135

Claims that pass through ClaimCheck can be processed with action codes 616, 626, 676, 696.

Medicare Direct claims are processed with action code 607.

**Processor Instructions**
ACAS processors, handling claims that are not auto-adjudicated, are responsible for application of the profile and no-profile rules in this policy and other various policies in TOLR.

ACAS may automatically assign a profile or no-profile action code on claims handled by a processor, or auto-adjudicated, when R&C, ClaimCheck, or other logic is invoked.  It may be necessary to alter system generated action codes for the purpose of following profile and no-profile rules.  Altering these action codes based on documented ACAS procedures/workarounds, or based on CCR instruction, is still necessary.

Note that it is not necessary to enter no-profile action codes on Medicare primary submissions; however, doing so is not considered incorrect.

**#Aecclaims**
Follow the Profiling InstructionsReasonable_Customary_Claim_Processing_Profiling_Instructions.

Always key the charges and hit enter to get the prevailing fee information.  Then go back up and add the appropriate action code.  Failure to do so will stop the prevailing fee editing.

The following are the more common edits you will encounter, please
refer to the Coding Guide manual in CHPL for instructions on handling.

NO PREV FEE - REFER TO CCU

EXC PREV $999/999%-C/L

SUBM GREATER THAN 150% PREV FEE

SUBM LESS THAN HALF PREV FEE

**#MCS**
The MCS system does not send data to the profile system.  The profiling rules in this policy do not apply to claims processed in he MCS system.

**#Profiling Instructions**
{bmc Blttria2.bmp}OverviewProfiling_Instructions_Overview
{bmc Blttria2.bmp}Do Not ProfileProfiling_Instructions_DoNot_Profile
{bmc Blttria2.bmp}Modifier 26 Profiling InstructionsProfiling_Instructions_Modifier_26_Profiling_Instructions

**#Overview**
(03/15/05)!JumpID(`TradArchive03.hlp',`AT_Profiling_Instructions_Overview_EO_031505')
Aetna primarily uses data from Ingenix PHCS formerly HIAA to determine R&C. To increase the range of fees being captured, Aetna also captures data as well. The data captured by Aetna is contributed to PHCS (HIAA).

---

# Reasonable_Customary_Claim_Processing_Aecclaims
# Reasonable_Customary_Claim_Processing_MCS
# Reasonable_Customary_Claim_Processing_Profiling_Instructions
# Profiling_Instructions_Overview

 AET-01342136

Aetna R&C is used for the following:

- PHCS (HIAA) has no profile for a procedure
- Anesthesia procedures
- Aetna Home grown codes (e.g., private duty nursing)

Profiling is the capturing of data based on the provider's service location (geographical area), the procedure performed, and the amount being charged.  Capturing this data determines future reimbursement amounts.  For this reason it is critical that expenses be profiled or not profiled appropriately.

All fees are automatically captured in the system each time a transaction is finalized (this does not include charges that are pended). The system profiles each individual expense unless directed otherwise by the processor; or if the entire submitted amount is being denied.  The system will profile the submitted dollars, not the R&C
amount or the negotiated fee amounts.

Refer to 500 and 600 Series Cost Containment Action Code
   Chart!JumpID(`Helpfile.hlp>second',`500_and_600_Series_Quick_Reference_Action_Code_
   Chart') in the Codes Online Reference for an explanation of the 500 and 600 series action codes.

The 5XX and 6XX series of action codes control profiling.
- Action codes beginning with a 5 allow profiling of the expense, even if part of the expense is being denied (over R&C).
- Action codes that begin with a 6 will withhold the expense from being profiled.

Profiling instructions apply to all codes, this includes:
- CPT 4 codes (medical, surgical, x-ray, and lab)
- HCPC codes (services and supplies)
- CDT codes (dental) and internally created codes (often referred to as "homegrown" or "dummy" codes).

There are many reasons why a provider may charge other than his or her normal fee for a service.  Do not profile any expenses containing these situations, as this would result in distorted data.

**Example:**
Claim Edit message  "SUBMITTED LESS THAN HALF THE PREVAILING FEE"
Billed amount        $ 40.00
R & C              $100.00

Do not profile the above scenario because this information negatively affects the data already captured for the procedure.  Action code 600 is used.

**#Do Not Profile**
(04/26/05)!JumpID(`TradArchive03.hlp',`AT_Do_Not_Profile_CW_042605')
Do not profile the following (unless indicated), as the profile data obtained would not be meaningful.  Use a 6xx series action code.

1. Intra-office COB (Aetna is both primary and secondary payer) – follow profile guidelines for the primary claim consideration.  Do not profile the secondary claim consideration (including when the primary claim consideration was processed on MCS).

------------------------

# Profiling_Instructions_DoNot_Profile

CONFIDENTIAL                                                                    AET-01342137

2.  Do not profile billing address, only service address.
3.  Edit 'EXP LN XX – SUBM LESS THAN HALF PREV FEE LN XX' *(Added 04/26/05)*
4.  Codes re-bundled into one CPT 4 code.
5.  Code submitted is incorrect and changed or altered by processor, analyst or designated reviewer.
6.  Any valid secondary procedures on surgical multiple procedure code submissions; code may or may not have modifier 51 attached.  **Note**: This does not include add on codes.  These should be profiled.
7.  Procedures performed one year prior to the date that they are being processed.
8.  Arbitrary breakdown of fees by processor or reviewer.
9.  Reconsidered (reworked) expenses when the expense was partially or totally covered (this includes payment made or monies applied toward deductible).  **Note**: This does not include processing of a previously pended transaction.  Once a pended transaction is processed the charges are to be profiled, unless do not profile criteria is met.
10. Unlisted service codes, e.g., 30999 unlisted procedure, nose.
11. Generic codes, e.g., 99070.
12. CCR instructs the use of a no-profile code due to unusual circumstances or complications.
13. Bilateral procedures - if provider bills with one CPT4 code and modifier 50.  Bilateral procedures submitted on two lines should be profiled.  Refer to <u>Multiple Surgery Procedures - Claim - Surgery</u>Multiple_Surgical_Procedures_Claim_Surgery for handling instructions. *(added 04/26/05)*
14. *(Updated 08/03/04)* Codes listed with modifiers: 22, 51, 50 (as described above), 20, 21, 23, 52, 54, 66, 76, 77, 78, 99 AB, AC, QK or QY.
15. Prenatal visits benefited prior to the termination of pregnancy.
16. Surgical procedures that include the cost of the facility/surgical suite (that has not been recognized as a Physician's Office-Based Surgical Facility) -i.e., facility charges are re-bundled into the surgery.
17. Co-surgeon's (identified with modifier 62) fees, if acting in the capacity of an assistant surgeon rather than a true co-surgeon.
18. Surgical procedures involving the use of an operating microscope when not described by a distinct CPT code. This is not the same as micro-dissection codes, e.g., 61712.
19. . When using the default MEA text (001) for Foreign claims.
20. *Do not profile P.O. Box addresses (Added 04/26/05)*
21. *Do not profile when the provider is manually selected or re-selected during processing and the first three digits (MEA) of the service address billed do not match the first three digits (MEA) of the service address for the provider selected. (Added 04/26/05)*
    **Note**: When the provider is selected by the automated provider matching logic for electronic claims and the service address MEAs do not match, an indicator is passed to ACAS in the Provider API and ACAS automates entry of the no-profile action codes.  No action is required unless the provider is re-selected.  When the provider is re-selected, the system generated no-profile action codes may need to be:
    - removed when the newly selected provider's service address MEA matches the MEA for the billed service address, or
    - added when the newly selected provider's service address MEA does not match the MEA for the billed service address.

[#]**Modifier 26 Profiling Instructions**

1.  If bills are received with a modifier 26, and the system accepts the modifier, profile the charge.  Example - TOS 05, CPT code and modifier 26.  If the system accepts, profile if the bill has the PC, states professional fee, or modifier 26.

2.  If bills are received with a modifier 26, and the system does not accept the modifier, do not profile the charge.  The amount will go toward the global fee code.  There could be a

---

[#] Profiling_Instructions_Modifier_26_Profiling_Instructions

negotiated fee for the Professional Component (modifier 26) even though the system doesn't take the modifier in the processing field. This amount displays to the processor when the code is entered without the modifier - the global fee/prof component fee displays. There shouldn't be any R&C data because the system can't profile under a modifier it doesn't accept.

3.  For independent labs that bill with a place of service of inpatient or outpatient, and do not identify on the bill as TC or global, treat as a PC (26) type of service.  Usually these bills have "professional fee" or "PC" typed on the bill itself.

This Document is for internal use only except as expressly authorized and is not for redistribution.

CONFIDENTIAL

# [#] [$] [K] [@] Contact Does Not Have a CPT Code
Released Online 08/05/03

Call the provider to request the CPT when the caller is a member and doesn't have the CPT code.

If the provider:

- Is not sure what procedure they are going to perform. Tell the provider we are unable to make a determination without the exact service code or description.
- Is not sure what the CPT code is but has an exact description of the service to be rendered.  Use autocoderAutocoder_PF_Key_Functions_Aecclaims_Topics to determine the code.   If you are unable to determine a code – follow the workflow outlined in Clinical Claim Review - Claim ProcessingClinical_Claim_Review_Claim_Processing coding services section.

See: PHCS (HIAA) Rates - Strategic Pricer - Systems for information on how to locate R&C in the system.HIAA_Rates_Strategic_Pricer

---

[#] Contact_does_not_have_a_CPT_code
[$] Contact Does Not Have a CPT Code
[K] Contact Does Not Have a CPT Code
[@] Status|0|||0||||||

AET-01342140

# [#] [$] [K] [@] Prevailing Fee Liberalization Example
Released Online 08/05/03

Example:

| | |
|---|---|
| ALT FEE SURG | 90TH PERCENTILE |
| ALT FEE MED | 90TH PERCENTILE |
| ALT FEE DXL | 90TH PERCENTILE |

This CCI wording indicates that the plan has the 90th percentile for surgical, medical and diagnostic x-ray and lab.

---

[#] Prevailing_Fee_Liberalization_Example
[$] Prevailing Fee Liberalization Example
[K] Prevailing Fee Liberalization Example
[@] Status|0|||0|||||||

# EXHIBIT U



# DATA SUBMISSION INFORMATION FORM

### (Page 1 of 3)

DATE OF SUBMISSION: _____ MONTH  08  DAY _____ 29  YEAR  2004 _____

These forms **must** be completed in full and submitted with each data submission. **Submissions received without this information cannot be processed. Please submit form and data to:**

Data Contribution Coordinator
Ingenix, Inc.
2525 Lake Park Blvd.
Salt Lake City, UT 84120
Phone: (800) 765-6088
Fax: (801) 982-3443
**data.contribution@ingenix.com**

Enclosed is the claim input data for Ingenix Client Number _____ 149908 _____

Contribution is for:

[X]  All Lines of Business

[ ] Anesthesia    [ ] Dental    [ ] HCPCS    [ ] Medical /Surgical    [ ] Inpatient    [ ] Outpatient

**Client certifies that the data provided in charge field (example: field #28 on the new Data Contribution 423 byte Record Layout) are non-discounted fee for service charges:**    [X] Yes    [ ] No

**Client certifies there is no duplication of claims data across submissions:**    [X] Yes    [ ] No

**Client certifies that service zip code provided in service zip field (example: field #20 on the Data Contribution 423 byte Record Layout) is populated with the zip code where services were rendered and not the billing provider zip code:**    [X] Yes    [ ] No

Ingenix inquiries regarding this data should be directed to:

| | |
|---|---|
| Name: | Deborah Justo |
| Title: | |
| Company: | Aetna, Inc |
| Address: | 151 Farmington Ave  (MA12) |
| | Hartford, CT 06156 |
| Telephone: | 860-636-7127 |
| Fax number: | 860-636-0257 |
| E-mail address: | JustoDS@aetna.com |

CONFIDENTIAL

# Data Submission Information Form
(Page 2 of 3){ XE "Data Submission Information Form" }

## Media Requirements and File Specifications

**NOTE:**   There are various input file standards for tapes and cartridges and for the regular, expanded and extended record layouts.  These pertain to (1) file organization, (2) logical record length, (3) block size, (4) tape density,  (5) tape format and (6) labeling.

## Media Types & Descriptions of Acceptable Formats (Please Check Submission Format)

| | | |
|---|---|---|
| ☐ | SSH (Secure Shell) | Submission should be in ASCII fixed record length or (X)base compatible database file. **Preferred. Contact us for instructions on the use of SSH.** |
| ☐ | CD ROM | ASCII fixed record length or (X)base compatible database file. |
| ☐ | 3490 cartridge | |
| ☒ | 3480 cartridge | CPIO, TAR, ASCII or EBCDIC file, unpacked data, fixed record lengths, uncompressed. |
| ☐ | 4 mm Exabyte tape | |
| ☐ | 8 mm Exabyte tape | TAR, CPIO, or single ASCII or EBCDIC file, unpacked data, fixed record lengths. |
| ☐ | Floppy disk | 3.5" (1.44Mb), standard MS-DOS formatted disk, ASCII fixed record length. |

## Submission is in:

☐ 423 byte record length          ☒ Other (please include a copy of layout detail)

☐ Created on an AS400

☒ Labeled          ☐ Unlabeled

☐ ASCII          ☒ EBCDIC

| | |
|---|---|
| Data set (file) name: | F145.P45HN101 |
| Number of records in file: | 84,559,014 |
| Number of volumes: | 32 |
| | 997295 997297 997302 997303 997308 996699 996501 996444 |
| | 996686 996892 997166 999711 999565 999687 997619 999624 |
| | 999676 999682 997629 999086 999111 999138 997618 997433 |
| Volume serial number(s): | 997442 997445 997466 997483 997566 997609 997612 997432. |
| (If necessary attach sheet with detail) | |

**CONFIDENTIAL**                                                                 **AET-00879827**

# Data Submission Information Form

## (Page 3 of 3){ XE "Data Submission Information Form" }

If your input file deviates from these standards in any way, please indicate here how it differs:

If not using CMS standard codes for place of service, type of service and provider specialty, you must include crosswalk information with your submission unless previously provided to Ingenix. If crosswalk information has changed, please provide Ingenix with new crosswalks.

If submitting anesthesia data, please define your anesthesia time unit methodology. For example, does a time unit reflect actual anesthesia time or does 1 unit = a 15 minute time unit?

If submitting multiple units per line, please define your submission methodology. For example, if the line item reflects 3 units billed, does the charge field reflect total charges for three units or charge per unit.

Please be sure that media is free of all extraneous labeling and adhesive tape. Excessive labeling may be removed.  Ingenix will store all data submissions in a locked and restricted area.

**I verify that all completed information is correct**

Signature:

Contact Telephone Number

Print Name

Date  09/01/04

Title

CONFIDENTIAL

AET-00879828