# Exhibit 31

```
                                                               1
 1              UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
 2

 3     ---------------------------------
       IN RE:  AETNA UCR LITIGATION        MDL. No. 2020
 4

 5     This Document Relates To:        Master Case No.
       ALL CASES                        2:07-3541(FSH)(PS)
 6     ---------------------------------

 7

 8

 9           30(B)(6) DEPOSITION OF AETNA BY:

10                  DEBORAH S. JUSTO

11                DATE:  MARCH 25, 2010

12                       HELD AT:

13              SHIPMAN & GOODWIN, LLP
                ONE CONSTITUTION PLAZA
14              HARTFORD, CONNECTICUT

15                        - - -

16

17

18

19   Reporter:  Sandra V. Semevolos, RMR, CRR, LSR #74

20

21

22

23

24

25   Job No. NJ247695
```

7

1             (Deposition commenced at 10:13 a.m.)
2                 DEBORAH S. JUSTO of Aetna, 151
3           Farmington Avenue, Hartford, Connecticut,
4           being first duly sworn, deposes and states
5           as follows:
6        DIRECT EXAMINATION BY MS. QUACKENBOS:
7        Q.    Good morning, Ms. Justo.  I'm Barbara
8   Quackenbos.  I'm one of the plaintiffs' counsel in the
9   Cooper versus Aetna case in which you are appearing.
10  We have other plaintiffs' counsel here, and we
11  appreciate your coming.
12       A.    Thank you.
13       Q.    As you probably recall, we met back in April
14  of 2005 because you were deposed in the McCoy versus
15  Health Net case.
16             Do you recall that?
17       A.    Yes.
18       Q.    Do you have the same job title today that
19  you had on April 14th, 2005 when you were deposed in
20  the McCoy case?
21       A.    I'm an analyst in the Provider Data Services
22  organization.
23       Q.    Would you mind keeping your voice up?  I'm
24  five years older so I'm getting, I guess, a little
25  hard of hearing.

201

1        Do you see that?
2    A.  I do.
3    Q.  For what period of time did Aetna apply this
4   ACAS Automated Profiling Guideline?
5            MR. SIGLER:  Objection, scope.
6    A.  That profile guideline as written was never
7   applied.  We determined that there was -- it was in
8   error.  It was -- in writing here, it was confirmed
9   that it was never in the system logic.
10  BY MS. QUACKENBOS:
11   Q.  You are under oath, Ms. Justo.
12   A.  I understand.
13   Q.  Is it your sworn testimony that there are
14  no -- that if we looked at all of Aetna's claims data
15  that we would not find action code 617 or 657; is that
16  your testimony?
17           MR. SIGLER:  Objection, argumentative,
18  and objection to mischaracterizing her testimony.
19   A.  No.  What I'm saying is, there was never
20  system logic that said any charge that exceeded
21  prevailing fee by any amount.
22  BY MS. QUACKENBOS:
23   Q.  Have you reviewed the system logic to see
24  how this profile -- automated profiling guideline,
25  which appears on an Aetna document, was in fact

1  applied?

2      A.   This instruction is miswritten.  It was
3  never applied as it is written here.

4      Q.   How was it applied?  If you are saying it
5  wasn't applied the way it's written, how was it
6  applied?

7      A.   For a period of time, there was, as you
8  mentioned, that is 407 and 410, where there was the
9  comparison against prevailing fee to determine if it
10 was less than -- the submitted charge was less than 50
11 percent or greater than 150 percent of prevailing fee.

12     Q.   Ms. Justo, I mentioned that if you turn to
13 page 1 of Exhibit 15, those guidelines which appear as
14 3 and 4, "Do not profile situations where Edit 410
15 displays submitted charge is less than half the
16 prevailing fee," and number 4 says "Do not profile
17 situations where Edit 407 displays submitted charge
18 exceeds prevailing fee by 150 percent.

19          Those appear under the heading "Per TOLR the
20 following guidelines have been published for manual
21 nondental claims."

22          There is no indication on this sheet that
23 those two profiling rules would apply under the TOLR
24 ACAS Automated Profiling Guidelines which appear on
25 page 2; correct?

```
                                                             240
 1              C E R T I F I C A T E

 2   STATE OF CONNECTICUT

 3           I, SANDRA V. SEMEVOLOS, a Registered Merit
     Reporter/Notary Public within and for the State of
 4   Connecticut, do hereby certify that I reported the
     deposition of DEBORAH S. JUSTO on MARCH 25, 2010, at
 5   the offices of SHIPMAN & GOODWIN, LLP, ONE
     CONSTITUTION PLAZA, HARTFORD, CONNECTICUT.
 6
             I further certify that the above-named
 7   deponent was by me first duly sworn to testify to the
     truth, the whole truth and nothing but the truth
 8   concerning his/her knowledge in the matter of the case
     IN RE:  AETNA UCR LITIGATION, This Document Relates
 9   To:  ALL CASES, now pending in the UNITED STATES
     DISTRICT COURT, for the DISTRICT OF NEW JERSEY.
10
             I further certify that the within testimony
11   was taken by me stenographically and reduced to
     typewritten form under my direction by means of
12   COMPUTER ASSISTED TRANSCRIPTION; and I further certify
     that said deposition is a true record of the testimony
13   given by said witness.

14           I further certify that I am neither counsel
     for, related to, nor employed by any of the parties to
15   the action in which this deposition was taken; and
     further, that I am not a relative or employee of any
16   attorney or counsel employed by the parties hereto,
     nor financially or otherwise interested in the outcome
17   of the action.

18
             WITNESS my hand and seal this 5th day of
19   April, 2010.

20

21   _____
     Sandra V. Semevolos, RMR/CRR
22   Notary Public
     My Commission Expires:  September 30, 2010
23   License Registration Number:  74

24

25
```

# Exhibit 32

```
                                                                  264
 1

 2              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
 3     -----------------------------------------X
       DARLERY FRANCO, et al.,
 4
                         Plaintiffs,
 5
              - against -      CASE NO. 07-CV-6039(SRC)(PS)
 6
       CONNECTICUT GENERAL LIFE
 7     INSURANCE CO., et al.,

 8                Defendants.
       -----------------------------------------X
 9     In Re:

10     AETNA UCR LITIGATION
       MDL NO. 2020
11
       Master File No.
12     2:07-CV-3541
       -----------------------------------------X
13
                      Volume II
14                 TRANSCRIPT OF
           DEPOSITION OF CATHERINE HANSON
15

16          TRANSCRIPT of the stenographic

17      notes of the proceedings in the

18      above-entitled matter, as taken by and

19      before TAB PREWETT, a Registered

20      Professional Reporter, a Certified

21      Shorthand Reporter, a Certified LiveNote

22      Reporter, and Notary Public, held at the

23      offices of WHATLEY DRAKE & KALLAS, LLC,

24      1540 Broadway, New York, New York, on

25      Tuesday, June 22, 2010, commencing at 9:10 a.m
```

271

1            Catherine Hanson
2            MR. DOREN:  On the record.
3    C A T H E R I N E    H A N S O N,
4    having been previously sworn by the notary
5    public to testify to the truth, testified
6    as follows:
7    CONTINUED DIRECT EXAMINATION BY MR. DOREN:
8         Q    Good morning, Ms. Hanson.
9         A    Good morning.
10        Q    Do you understand you are still
11   under oath today?
12        A    Yes, I do.
13        Q    Did the AMA develop AMA Path as
14   part of its initiative to create tools for
15   providers to establish defensible fee
16   schedules?
17        A    It created it for physicians to
18   create the defensible fee schedules.  Yes.
19        Q    And was AMA Path developed by
20   the AMA with the assistance of Frank Cohen?
21        A    No.  AMA Path was developed by
22   Frank Cohen.
23        Q    Did the AMA have -- excuse
24   me -- did the AMA request that he develop
25   it?

341

1              Catherine Hanson
2        Q     To find out whether patient
3  financial responsibility has been waived in
4  the context of a particular claim, would
5  one have to discuss that with either the
6  patient or the physician?
7              MS. KALLAS:  Objection as to
8        form.
9        A     I believe that that information
10 would typically be available in the
11 physician's practice management system
12 because it would be indicated in their
13 accounts receivable as to whether they --
14 what happened to the claim.
15       Q     So in other words you could
16 find out whether a patient's financial
17 responsibility had been waived by looking
18 at an individual physician's practice
19 management system?
20             MS. KALLAS:  Objection as to
21       form.
22       A     Yes, I believe you would be
23 able to see whether the claim had been
24 referred for collection, whether it had
25 been written off for some reason.  It

342

1            Catherine Hanson
2    should all be in there, yes.
3        Q    And you would have to go look
4    to the individual physician's practice
5    management system in order to determine
6    whether a patient's financial
7    responsibility had been written off,
8    correct?
9            MS. KALLAS:  Objection as to
10       form.
11       A    Well, I'm not sure what this is
12   about.  But, I mean, you could go to the
13   patient and find out if they had -- if they
14   had paid.  I am trying to think of what
15   other thing you could do.
16           But, generally speaking, I
17   would think that the best source of the
18   information would be the physician's
19   practice management system.
20       Q    Other than the patient or the
21   doctor, can you think of any place else you
22   would go to find out whether the patient's
23   financial responsibility had been excused?
24           MS. KALLAS:  Objection as to
25       form.

343

Catherine Hanson

A    Well, I guess the collection agency, if they had decided at some point that the collection effort was not worth -- wasn't worthwhile pursuing it.

Q    Does the AMA have any information regarding the number of physicians who balance-bill their patients for care provided on an out-of-network basis?

A    I believe that the California Medical Association did a survey of that. And I am not certain whether the California Medical Association forwarded that information to the AMA.

        As I recall, the California Medical Association survey was anecdotal, as you like to phrase it.  It was not a statistically -- it was not a statistically valid survey in that nobody -- it wasn't a, you know, calling some random sample of doctors and getting information.  It was a self-reported piece of information.

Q    When you say "anecdotal" in that response, what do you mean?

357

```
 1
 2                    CERTIFICATE
 3         I, TAB PREWETT, A Registered
 4   Professional Reporter, Notary Public,
 5   Certified LiveNote Reporter, and Certified
 6   Shorthand Reporter, do hereby certify that
 7   prior to the commencement of the
 8   examination CATHERINE HANSON was sworn by a
 9   notary public to testify the truth, the
10   whole truth and nothing but the truth.  I
11   DO FURTHER CERTIFY that the foregoing is a
12   true and accurate transcript of the
13   testimony as taken stenographically by and
14   before me at the time, place and on the
15   date hereinbefore set forth.  I DO FURTHER
16   CERTIFY that I am neither a relative nor
17   employee nor attorney nor counsel of any of
18   the parties to this action, and that I am
19   neither a relative nor employee of such
20   attorney or counsel, and that I am not
21   financially interested in the action.
22   _____
     Notary Public
23   My Commission expires February 9, 2014
     Dated:  June 23, 2010
24
25
```