# Exhibit 34

**From:** Justo, Deborah
**Sent:** Fri, 15 Apr 2005 13:12:30 GMT
**To:** Chavez, Ana B
**Subject:** RE: Profiling questions

---

Thank you!

-----Original Message-----
**From:** Chavez, Ana B
**Sent:** Thursday, April 14, 2005 3:44 PM
**To:** Justo, Deborah
**Subject:**     RE: Profiling questions

Yes, I sent you the report. There are many auto adjudicated claims on the report that indicate the provider's fee was reduced to R&C and profiled (517, 557).

-----Original Message-----
**From:** Justo, Deborah
**Sent:** Thursday, April 14, 2005 12:53 PM
**To:** Chavez, Ana B
**Subject:**     RE: Profiling questions
**Importance:**   High

HI Ana, can you confirm for me my recollection of our phone conversation after you sent this note. That you did see instances within the report referenced below where the providers charge exceeded prevailing and the system generated a 5xx series action code. Thank you!

-----Original Message-----
**From:** Chavez, Ana B
**Sent:** Friday, April 08, 2005 11:58 AM
**To:** Justo, Deborah
**Subject:**     RE: Profiling questions

Deb, I had a week's worth of auto adjudicated claims pulled. I only checked a hand-ful of those that AA'd with an action code 6XX. But in looking at those, what I found is that no profile action code was used because

- we applied ClaimCheck (action codes 6X6) and because expenses may have been rebundled, no profile was used.

- there is no service address on the claim submission OR the service address submitted is not in EPDB

Do you want the report I got?

-----Original Message-----
**From:** Justo, Deborah
**Sent:** Wednesday, April 06, 2005 12:30 PM
**To:** Chavez, Ana B
**Subject:**     RE: Profiling questions

Again, thank you for all of your help with this - I really appreciate it!!!!!

-----Original Message-----
**From:** Chavez, Ana B
**Sent:** Wednesday, April 06, 2005 1:26 PM

AET-03592606

**To:** Justo, Deborah
**Subject:** RE: Profiling questions

I'll request a report of a couple weeks claim that have AA'd.

I'm not aware of anything documented for this but can check with others on our team to find out. With so many enhancements over the years, documentation gets outdated very quickly.

-----Original Message-----
**From:** Justo, Deborah
**Sent:** Wednesday, April 06, 2005 12:23 PM
**To:** Chavez, Ana B
**Subject:** RE: Profiling questions

Yes Ana, if you could I would appreciate it. We need to get this clarified once and for all.

Would there be written system documentation somewhere that would have this information? Thanks

-----Original Message-----
**From:** Chavez, Ana B
**Sent:** Wednesday, April 06, 2005 11:34 AM
**To:** Justo, Deborah
**Subject:** RE: Profiling questions

The information I provided is for claims that are keyed in (not auto adjudicated). As I stated, there is different logic for AA vs manual claims. The only way I can confirm what action codes are used on electronic/AA'd claims is to request a report to see what action code was used (5XX/6XX action codes).

That will take some time. Do you want me to request one?

-----Original Message-----
**From:** Justo, Deborah
**Sent:** Tuesday, April 05, 2005 9:10 PM
**To:** Chavez, Ana B
**Subject:** RE: Profiling questions

Ana, thank you so much for your immediate attention to this, I do apologize for the short notice.

So it sounds like auto-adjudicated claims where the submitted is significantly less than prevailing are being profiled. Likewise, charges significantly over are also profiling.

That is actually very good news. I just wonder where the language in TOLR came from? Thank you again for your help, you are a lifesaver!!!!!

-----Original Message-----
**From:** Chavez, Ana B
**Sent:** Tuesday, April 05, 2005 4:18 PM
**To:** Justo, Deborah
**Subject:** RE: Profiling questions
**Importance:** High

There's different logic between electronic claims and manual claims. There's additional logic built into electronic claims based on service location as well as no profile indicators that can be set such as for Medicare claims.

But I keyed in a test claim to see what generates on claims with submitted less than half of the prevailing fee. The edit EXP LN 01 (this reflects the expense line#) -SUBM LESS THAN HALF PREV FEE LN 01 generates. Processors have to price the expense and use the appropriate action code (600 to not profile such charges). On electronic claims, this edit is bypassed and the claim is priced with the submitted (no no-profile action code is used).

I also keyed in a test claim and increased the submitted to $5000.00. The R&C is $85.00. The system priced the expense with $85.00 and entered action code 517. Nothing generates to alert the processor of excessive over R&C. It could be that logic was taken out to increase AA rates.

AET-03592607

One last thing I want to mention is that we have an SR (hoping to get it into the Aug release) to address a problem with anesthesia claims subject to R&C that are going out with no action code. The patient responsibility on EOBs (member & provider) is incorrect as it does not reflect the difference between submitted and R&C.

Let me know if you need anything else.

-----Original Message-----
**From:** Justo, Deborah
**Sent:** Tuesday, April 05, 2005 1:55 PM
**To:** Chavez, Ana B
**Subject:** RE: Profiling questions
**Importance:** High

Hi, thought it might be helpful if I provided the TOLR reference that we need to rebut. I recall Brian Yorgey doing some testing and indicating that the system was not working as described below. I need to be able to say how the system is actually operating. Unfortunately we need to provide this information to the court tomorrow. Thanks again for any assistance/direction that you may be able to provide.

Reasonable and Customary - Claim Processing - Profiling Rules

Released Online:    Updated 03/15/05
Applies to Traditional Choice (Indemnity), Elect Choice (EPO), ASC, Insured, National Account, Key/Select Accounts, Small Group Business, Open Choice (PPO), Managed Choice (POS), Open Access Elect Choice, Open Access Managed Choice (POS), Healthfund, Affordable HealthChoices

Systems: Aecclaims, ACAS
Policy   Contact Servicing      Related Information      Claim Processing

ACAS
(03/15/05)
System Assigned Action Codes
Charges submitted on claims that are auto-adjudicated in ACAS are assigned no-profile action codes in the following situations:

Charges that exceed prevailing will be reduced with action code 617, 657.

Charges that exceed prevailing but are within plan prevailing fee liberalization will be accepted with 605.


-----Original Message-----
**From:** Justo, Deborah
**Sent:** Tuesday, April 05, 2005 2:15 PM
**To:** Chavez, Ana B
**Subject:** RE: Profiling questions
**Importance:** High

Hi Ana, I am wondering if you can help me. I am working a response to a subpoena. Would it be possible to quickly find out what the current ACAS system logic says for charges exceeding prevailing / charges significantly less than prevailing. If you will recall there have been discrepancies between TOLR and the system logic on this. Any assistance you can offer would be greatly appreciated. If I should be asking someone else please let me know. Thank you!!!!!

-----Original Message-----
**From:** Chavez, Ana B
**Sent:** Thursday, May 27, 2004 10:25 AM
**To:** Justo, Deborah; Yorgey, Brian
**Subject:** RE: Profiling questions

We do have SR049463 to address the problem reported with ClaimCheck rebundle of expenses that should not be profiled. No ETA for implementation on that SR.

AET-03592608

There were system changes made a couple of year ago that if charges exceed R&C by 150% or more, a no profile action code is used. This was done according to what's in the Profiling Rules in TOLR. And it appears to be working correctly based on Brian's testing.

As for the profiling of allowed/payed less than $1.00, my understanding is that we profile the submitted amount. So I don't see what the priced/allowed/payment has to do with this. Perhaps the intent is that we don't reduce expenses that are above R&C but less than $1.00? Deb, I'm not sure who can verify that claims with a payment or allowed of less than $1.00 are not profiled. I can key in a test claim but who do I contact to find out if this was captured on the file or report for R&C data? I don't think this information is stored within ACAS.

-----Original Message-----
**From:** Justo, Deborah
**Sent:** Tuesday, May 25, 2004 12:05 PM
**To:** Yorgey, Brian
**Cc:** Chavez, Ana B
**Subject:** RE: Profiling questions

Thanks Brian. I will confirm the specifics of our obligation to Ingenix and send that to you. I am relieved to hear that what is automated in ACAS may not be working as is stated in TOLR. Ana, any more detail you can offer regarding how the system is actually functioning would be greatly appreciated. Once we know what it is doing then Brian I would appreciate your assistance in getting the TOLR verbiage clarified.

I am not certain that the following statement is accurate, can some testing be done to see if this is really how the system is working?

Expenses are profiled automatically except in three situations:
(1) less than $1 is payable for the expense line although the expense is partially or total covered. (This includes monies applied to the deductible)

What does the second sentence mean (intent)?
4) add to Do Not Profile list: When the MEA (first three digits of the zip code) in the provider address display area on your processing screen does not match the location (MEA) on the claim. **The processor is not required to review the image specifically for this item,.**

Thank You!

-----Original Message-----
**From:** Yorgey, Brian
**Sent:** Tuesday, May 25, 2004 8:12 AM
**To:** Justo, Deborah
**Cc:** Chavez, Ana B; Yorgey, Brian
**Subject:** RE: Profiling questions

Below are the revisions requested, if you are interested. The requests were generated via unclear policy call, which is supposed to deal with clarifying the policy, not changing it. But I do have to take into account what the system is doing and what profiling captures and does not capture. You would be the appropriate party for what the system captures and what should not be profiled based on what we should be sending to the vendor based on our agreement, right? I know Dr. Cross has previously stated that we shouldn't have to scrub the data, but what does our agreement with Ingenix state?

I tested a claim for non-par provider in ACAS with an office visit and allergy injection and the claim lines rebundle with the anount over prevailing denied with action code 557. I also tested a regular over prevailing and it used 557. When the submitted amount was much greater, the system assigned 657, so the statements about 617/657 and 605 may be in certain circumstances. I also saw 505 generated. Ana, can you double-check the TOLR list of system assigned action codes and advise if it is still accurate and also whether the 6XX series generates for prev fee cuts only when the submitted is greater than 150% over prevailing? Also, has ClaimCheck rebundling not using 6XX been reported as a problem?

All fees are automatically captured in the system each time a transaction claim is finalized processed. The exception is Pended claims. Pended claims are not profiled. Once the claim is actually processed the charges should be profiled unless a do not profile criteria is met.

AET-03592609

[new line]
~~The system profiles each individual expense unless directed otherwise by the processor; or if the entire submitted amount is being denied.~~ The system will profile the submitted dollars, not the R&C amount or the negotiated fee amounts.

In general, the payline is profiled by default. Expenses are profiled automatically except in three situations:
  (1) less than $1 is payable for the expense line although the expense is partially or total covered. (This includes monies applied to the deductible)

  (2) a charge is Fully Denied (this includes Pended claims)
  (3) an action code which prevents profiling is used (click here for the **500 and 600 Series Cost Containment Action Code Chart**)

## Please update Do Not Profile *as indicated below in pink*

(1) Please change from bullets to numbers. This will allow reference to which portion of the Do Not Profile list applies in a claim situation.

(2) · Reconsidered/reworked/recalled expenses when the ~~original~~ expense was profiled on the original transaction ~~partially or totally covered (this includes payment made or monies applied toward deductible). Note: Fully denied charges are not passed to the profile system~~. This does not include processing of a previously Pended transaction. If paying out 'less than $1" because of an overpayment, the claim is still a rework and therefore should not be profiled. When a charge is reconsidered due to selecting the incorrect provider and the MEA is different, do not profile the expense line.

3) add to the Do Not Profile list: When using the default MEA Text for Foreign claims. For additional information, [click here] refer to **Foreign Provider Procedures - General – Provider.**

4) add to Do Not Profile list: When the MEA (first three digits of the zip code) in the provider address display area on your processing screen does not match the location (MEA) on the claim. The processor is not required to review the image specifically for this item,.

## Please update the 500 and 600 Series Cost Containment Action Code Chart *as indicated below in pink.*

Reasonable and Customary - Claim Processing - Profiling Rules -> Profiling Instructions - > 500 and 600 Series Cost Containment Action Code Chart

The following chart shows all possible Action Codes that can be used to describe Cost Containment activity for 500 and 600 series Action Codes.

1st Digit (Profile Action Indicator)
Indicates the profile action
    5 – Profile required (surgical, dental and other medical charges only)
    6 – Do Not Profile

2nd Digit (Cost Containment Action)
Drives the message included on the EOB
   0 – Accepted in full (no EOB message generated)
   1 – Excessive charge, all or part denied  (patient responsible for balance, ie non-par provider)
   2 – Medical necessity - all or part denied (patient responsible for balance, ie non-par provider)
       (use only if instructed by CCR or Medical Director ~~medical~~ as it applies to assistant surgeon guidelines)        Use 2 only when 3rd digit is 1 or 2

   3 – Alternate course of treatment – all or part denied (No predetermination)
   4 – Alternate courses of treatment – all or part denied (predetermination)
   5 – Recognized Charge Alternate Percentile Level Reduction
   6 – Excessive charge – All or part denied  (patient not responsible for balance, ie par provider)
   7 – Excessive charge – All or part denied  (denying INC & ME charges ; patient not responsible for balance; ie par provider)

AET-03592610

8 – Medical Necessity – all or part denied  (when instructed to use by nurse/CCU/CCR/medical director)
9 – Medical Necessity – all or part denied  (when instructed to use by nurse/CCU/CCR/medical director)
   Use 9 only when 3rd digit is 1 or 2

3rd  Digit (By Whom)
Who determined or approved the action represented by the 2nd digit
   0 – Processor
   1 – CCU/CCR
   2 – Consultant/Medical Director
   3 – Review Committee
   4 – Home Office
   5 – Special PH (Used only with "accepted in full" action)
   6 – ClaimCheck Action Codes 077, 076
   7 – System (action determined by system)
   8 – ClaimCheck Action Codes 078, 0749 – Other

Examples:   Profile Required:   511 - Excessive charge/part denied by CCU
            Do Not Profile:     610 – Excessive charge/all or part denied by processor
            Do Not Profile:     617 = Processor changes submitted code, system cuts fee to R&C
            Do Not Profile:     632 = UM applies ABP to a service and the processor had to also change the submitted code

            Do Not Profile:     600 = transaction is reprocessed without R&C or ClaimCheck or Medical Nec cutback

Note:  Only use the middle digits of 2, 8 or 9 when a Medical Director or CCU has directed to deny an expense as not medically necessary.  Otherwise, another more appropriate Action code should be used.

---

Reasonable and Customary - Claim Processing - Profiling Rules

Please add to the 'Do Not Profile List' that the line should not be profiled when LI# is missing to connect that a line was changed or bundled.


-----Original Message-----
**From:**  Justo, Deborah
**Sent:**  Tuesday, May 25, 2004 7:06 AM
**To:**    Yorgey, Brian
**Cc:**    Chavez, Ana B
**Subject:**     RE: Profiling questions

Hello - what exactly is QAP looking to have updated?  Also, I think that MP & NT will want some say in profiling guidelines, have you already passed these questions along to anyone?  Here are my initial thoughts:

When the benefit paid is less than $1.  Only fully denied expenses are automatically **not** profiled.  It is my understanding that if any portion of the line item is considered allowable it would profile.  Even if plan provisions kick in and result in little or no payment the charge will still be profiled unless there is intervention and a 6xx series action code is used.

Reprocessing under a different MEA and profiling - my concern here is that we have no means for backing out the originally profiled charge.  We are only supposed to count each claim once.  It is still only one service even if we are handling the claim for that service more than once.  By profiling the claim twice we are double counting.  Do you have any sense how frequently this is occurring?

Foreign claims - is use of MEA 001 equivalent to MEA Text?  MEA 001 is currently unassigned.  Yes, if a 6xx series action code is not used charges would profile.  From an Aetna Fee Profile System perspective it shouldn't pose a problem if charges were to be profiled because you can not load fees to an unsupported expense area.  But from an Ingenix data submission perspective it would count negatively against us.  There is a SSP project currently underway to address the

AET-03592611

collection of profile data from claim records. I can talk to them about the potential of excluding data with MEA of 001 from the collection process.

Processor comparison of MEA on processing screen vs claim. For both payment and profiling accuracy we should only be using the actual service location zip code. For manually processed claims there is the longstanding profile guideline that states only profile service address. There is also an ACAS automated profiling guideline that is described as follows: Claims that involve submissions where the provider API does not have a zip code that matches the first three digits of the Servicing Provider Zip are processed with do not profile action code 607.

I had not heard that codes rebundled by ClaimCheck were profiling - this is contrary to the longstanding guideline of do not profile rebundled claims.

Seeing as this can of worms has been opened I have two additional issues that I would like to add to the list for review. I have recently discovered two ACAS Automated Profiling Guidelines that are of great concern to me.

*Charges that exceed prevailing will be reduced and not profiled with action codes 617, 657.*
*Charges that exceed prevailing but are within plan prevailing fee liberalization will be accepted but not profiled with action code 605.*

We absolutely can not continue to do this - this artificially holds down prevailing fees, any ideas how we correct these?

I would be happy to discuss any of these items further, please let me know how I can be of assistance.

-----Original Message-----
**From:** Yorgey, Brian
**Sent:** Monday, May 24, 2004 3:45 PM
**To:** Justo, Deborah
**Cc:** Chavez, Ana B
**Subject:** Profiling questions

I have a request from QAP to update policies regarding profiling. The updates requested are prompting the following questions;

When the benefit paid is less than a dollar, does the charge automatically get excluded from profiling without having to enter a 6XX series action code? (For example, $100 charge, $99.00 goes to deductible and the plan pays 80% of the balance, or 80 cents.)

When we have already processed a claim and it is resubmitted and reprocessed under a different, but correct, MEA (where the original MEA was incorrect), do we profile or do we enter 6XX series action code (do we want to capture the charges under the correct MEA, even though we already captured under the incorrect MEA?

Our current foreign provider instructions indicate to use default MEA 001 on unassigned claims. This does not appear to be a valid MEA. If we do not use a 6XX action code, do we capture data on MEA 001. If so, is it used to update anything or send data to Ingenix/PHCS? Do we have any R&C data stored under this MEA that may generate in processing? Bottom line question is whether anything would be negatively impacted if took out the instruction to the processor to use action code 600 on every claim line when MEA 001 is used.

Also have a request to have processors compare the MEA on the processing screen to MEA on the claim and do not profile if they are not the same...this could have AA impact where we have a mismatch in provider selection logic that may default to a non-matching MEA, and I will look into that separately. I agree with the concept, but do not want to cause AA errors by adding this.

Ana, why does ClaimCheck rebundling apply a 5XX series action code instead of 6xx? Is this documented anywhere as a known issue?

AET-03592612

Brian Yorgey, NCO Policy and Procedures
**Confidential: The above information is confidential and should be read only by the addressee or the addressee's specific designees in accordance with the Aetna Code of Conduct and applicable law.**

AET-03592613

# Exhibit 35

```
                                                        Page 1

 1   UNITED STATES DISTRICT COURT

 2   FOR THE DISTRICT OF NEW JERSEY

 3   ------------------------------X

 4   IN RE:   AETNA UCR LITIGATION

 5   ------------------------------X

 6

 7

 8                  ORAL DEPOSITION OF

 9                    ANA B. CHAVEZ

10                    July 13, 2010

11                      VOLUME 1

12

13

14         ANSWERS AND DEPOSITION OF ANA B. CHAVEZ,

15   produced as a witness at the instance of the Plaintiffs,

16   taken in the above-styled and -numbered cause on the

17   13th day of July, 2010, from 8:12 a.m. to 2:39 p.m.,

18   before Jamie K. Israelow, a Certified Shorthand Reporter

19   in and for the State of Texas, Registered Professional

20   Reporter, Certified Realtime Reporter and Certified

21   LiveNote Reporter, reported in machine shorthand at the

22   offices of Gibson, Dunn & Crutcher, LLP, located at 2100

23   McKinney Avenue, Suite 1100, in the City of Dallas,

24   County of Dallas and State of Texas.

25        Job No. NJ260739
```

```
                                                         Page 91
 1       A.    I don't know what she had said specifically,    10:36:53
 2   no.                                                       10:36:57
 3       Q.    (By Ms. Quackenbos)  Well, I'm representing to  10:36:57
 4   you that that was her testimony.                          10:36:59
 5       A.    Uh-huh.                                         10:36:59
 6       Q.    You did not tell her that that would be         10:37:01
 7   correct -- a correct statement, true?                     10:37:03
 8             MR. SIGLER:  Same objections.                   10:37:07
 9       A.    I only told her what I found.                   10:37:09
10       Q.    (By Ms. Quackenbos)  And what you found did not 10:37:11
11   support saying that the guideline charges that exceeded  10:37:13
12   prevailing will be reduced with Action Codes 617 or 657  10:37:17
13   had been -- had been inoperative, true?                   10:37:21
14             MR. SIGLER:  Objection, form; foundation;       10:37:27
15   mischaracterizes her testimony.                           10:37:29
16       Q.    (By Ms. Quackenbos)  True?                      10:37:31
17       A.    What I told her did not confirm?                10:37:33
18       Q.    You never told Ms. Justo that the guideline     10:37:57
19   that we've looked at now several times, which states:    10:37:59
20   Charges that exceed prevailing will be reduced with      10:38:03
21   Action Code 617 or 657, was not being used?              10:38:07
22       A.    I never -- that is not in my e-mail.           10:38:13
23       Q.    And you did --                                  10:38:17
24             THE REPORTER:  I'm sorry.  That is not in       10:38:17
25   my?                                                       10:38:17
```

```
                                                              Page 92
 1              THE WITNESS:  E-mail.                         10:38:17
 2       Q.   (By Ms. Quackenbos)  And you did not tell her   10:38:19
 3   that -- that that would be correct in any kind of oral   10:38:19
 4   communication, true?                                     10:38:23
 5              MR. SIGLER:  Objection, foundation.           10:38:25
 6       A.   I don't recollect talking to her about that,    10:38:27
 7   no.                                                      10:38:29
 8       Q.   (By Ms. Quackenbos)  Did you speak to Ms. Justo 10:38:39
 9   about her desire to rebut that guideline?                10:38:43
10       A.   No.  I don't recall talking to her specifically 10:38:51
11   about rebut, no.                                         10:38:53
12       Q.   That's the word she used, correct?              10:38:57
13       A.   Right.  It's a common word.                     10:38:59
14       Q.   Maybe at Aetna it is.                           10:39:01
15       A.   Yes, yeah.                                      10:39:03
16       Q.   You knew you had pulled this report, and you    10:39:19
17   knew that there were a lot of 617 and 657 action codes,  10:39:21
18   as well as 605, 600, and other action codes.  If you     10:39:29
19   need to check back --                                    10:39:35
20              MR. SIGLER:  Object to form; foundation.      10:39:41
21       A.   I would need to check to refresh my memory of   10:39:45
22   the action codes.  I would expect all -- the bulk of     10:39:47
23   them to end in a 7.  I don't think any of them should    10:39:51
24   end in a zero.  I could be wrong.  These are all auto    10:39:59
25   adjudicated claims.                                      10:40:01
```

# Exhibit 36

```
                                                          264
                         CONFIDENTIAL

   UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF NEW JERSEY
                                     Case No: 2:07CV6039
   ---------------------------------

   DARLERY FRANCO, individually and
   On Behalf of All Others Similarly
   Situated,

             Plaintiffs,

        -against-

   CONNECTICUT GENERAL LIFE INSURANCE
   CO., CIGNA CORPORATION, and
   CIGNA HEALTH CORPORATION,

             Defendants.
   - - - - - - - - - - - - - - - - - -


                  DATE:  May 18, 2010

                  TIME:  8:35 a.m.


                  VOLUME II

           Videotape deposition of STEPHEN FOREMAN,
   taken by and before JOYCE SILVER, a Certified
   Shorthand Reporter and Notary Public of the State of
   New York, held at the office of WHATLEY, DRAKE &
   KALLAS, LLC, 1540 Broadway Avenue, New York, New
   York.
      Job No. NJ258467
```

Confidential

275

1  Foreman - direct
2  using Medicare and not paid claims.
3      Q.   Do you have any reason to believe that
4  the database you analyzed in the New Jersey matter
5  from Ingenix was the database relating to charged
6  data?
7      A.   It seemed to me that that database had
8  been developed from Medicare and not from charged
9  data.
10     Q.   Okay. Thank you.
11          Before being retained by the New York
12 Attorney General in April of 2008, did you conduct
13 any research or analysis relating to the Ingenix PHCS
14 or MDR databases that are at issue in this case?
15     A.   No, I did not.
16     Q.   And did you ever encounter those
17 databases in any way before being retained by the New
18 York Attorney General in April of 2008?
19     A.   I may have been generally aware of them,
20 but I had not investigated them or used them
21 specifically in connection with any of my work.
22     Q.   And when you say you may have been aware
23 of them, do you have something specific in mind?
24     A.   Yes. At -- I -- at one point I purchased
25 some Ingenix fee cards on -- that had suggested fee

Confidential

276

1  Foreman - direct
2  schedule amounts for physicians.  And I think it may
3  have been in connection with the New Jersey matter,
4  but my memory is hazy on the exact matter that I
5  might have purchased that in connection with.
6        Q.    And you don't recall whether those fee
7  cards related to the MDR or PHCS databases.  Correct?
8        A.    That's correct.  In fact, my sense is it
9  may have related to the CFA product, the Customized
10 Fee Analyzer product that Ingenix provides.
11       Q.    That's the product that Ingenix provides
12 to physicians.  Correct?
13       A.    That's correct.
14       Q.    Have you ever used the Ingenix PHCS or
15 MDR databases in any academic research?
16       A.    No, I have not.
17       Q.    Have you ever used the Ingenix PHCS or
18 MDR databases in connection with any work for medical
19 societies?
20       A.    I don't believe so.  I don't think so.
21       Q.    How was it that you came to be retained
22 by the New York Attorney General in April of 2008?
23       A.    I received a call from Linda Lacewell at
24 the New York Attorney General's office, and we had a
25 preliminary conversation.  Basically she discussed

# Exhibit 37

```
 1

 2    IN THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF NEW JERSEY
 3    MDL NO. 2020
      MASTER FILE NO. 2-07-CV-3541
 4

 5

 6    IN RE:   AETNA UCR LITIGATION

 7

 8
      ---------------------------------------------
 9

10

11                    Volume I
                   TRANSCRIPT OF
12          DEPOSITION OF STEPHEN FOREMAN

13

14          TRANSCRIPT of the stenographic

15    notes of the proceedings in the

16    above-entitled matter, as taken by and

17    before TAB PREWETT, a Registered

18    Professional Reporter, a Certified

19    Shorthand Reporter, a Certified LiveNote

20    Reporter, and Notary Public, held at the

21    offices of WHATLEY DRAKE & KALLAS, LLC,

22    1540 Broadway, New York, New York, on

23    Monday, November 1, 2010, commencing at

24    8:41 a.m.

25
```

1    Dr. Stephen Foreman
2    350 -- the 350 CPT study to the Ingenix
3    product file, you see a substantial
4    difference.
5            And so, in comparison, this is
6    the same kind of roll-up average.  So it is
7    the totality basis that's reflected here
8    that forms the basis for that, yes.
9        Q    And this is a comparison table
10   27 of the same CPT geo zips, correct?
11       A    That's correct.
12       Q    So wouldn't you expect the
13   values from the 300 CPT study and the
14   values from the 350 CPT study to be
15   identical?
16       A    Not necessarily.  Basically,
17   again, it's running the same kind of
18   analysis.  I mean, there are 50 more CPT
19   codes to begin with.  In the 350 CPT
20   studies there are more geo zips.
21           So if -- I guess the more
22   appropriate response to your question is,
23   you know, there are more in mine; but, now,
24   the comparisons would drop out.  So it
25   should be close, is not necessarily