

Connell Foley LLP
56 Livingston Avenue
Roseland, NJ 07068
P 973.535.0500   F 973.535.9217

**Patricia A. Lee**
Partner
Direct Dial 973.840.2444
PLee@connellfoley.com

November 16, 2018

**VIA ECF**

Honorable Katharine S. Hayden
United States District Court
District of New Jersey
Frank R. Lautenberg U.S.P.O. & Courthouse
2 Federal Square, Room 311
Newark, NJ 07102

Re:   *In re Aetna UCR Litigation*
      *Orthopedic Specialists of S. Cal. v. Aetna Life Ins. Co.*, **Civ. No. 11-3203**

Dear Judge Hayden:

This firm, together with Gibson Dunn & Crutcher LLP, represents Defendant Aetna Life Insurance Company ("Aetna") in the above-referenced matter. Gary Tysch, Esq. of the Law Offices of Gary L. Tysch represents Plaintiff Orthopedic Specialists of Southern California in the matter. Pursuant to the Court's November 2, 2018 Order (D.E. 22), the parties jointly submit the following letter:

**I. The procedural posture of the action, including their respective positions on why it should/should not be dismissed for lack of prosecution.**

*Procedural History (Joint)*

Orthopedic Specialists of Southern California ("Orthopedic Specialists") originally filed this action in Los Angeles County Superior Court on December 29, 2010, serving Aetna on February 22, 2011. D.E. 1 at 1. On March 24, 2011, Aetna timely removed to the U.S. District Court for the Central District of California. *Id.* On May 4, 2011, Aetna filed a notice of potential tag-along with the Judicial Panel on Multidistrict Litigation (JPML). It explained that the suit was "fundamentally based on the same premise as [the] 'numerous lawsuits and class action suits'" already consolidated into MDL 2020. JPML D.E. 40 (quoting complaint). On May 10, 2011, the JPML issued a conditional transfer order. D.E. 15. Orthopedic Specialists did not file an objection, and the JPML finalized the transfer on May 18, 2011. *Id.* On June 6, 2011, this Court established docket No. 11-cv-3203, and notified counsel. D.E. 18. Following transfer, Orthopedic Specialists made no filings on any docket in this MDL, including either the individual docket or the master docket, nor did it join in any filings by other plaintiffs. Following the transfer of the case, the motion for leave to file a Third Consolidated Amended Complaint was filed on July 11, 2011, and the Fourth Consolidated Amended Complaint was filed on February 8, 2017. Ortho-

Honorable Katharine S. Hayden, U.S.D.J.
November 16, 2018
Page 2

pedic Specialists did not join either complaint as a named plaintiff.

### *Aetna: The action should be dismissed for lack of prosecution.*

From the outset, this Court has worked diligently to impose a common framework on all of the litigants in MDL 2020. This is plain from the first paragraph of CMO-1:

> <u>Single Litigation Track</u>: To allow this action to proceed in an efficient, manageable, and streamlined fashion, there shall be one litigation track for all actions consolidated pursuant to this Order. These actions shall be governed by a single Consolidated Amended Complaint, which shall be filed by Plaintiffs by July 1, 2009.

CMO No. 1 ¶ 1(a) (Master D.E. 212). Consistent with this mandate, the Court ordered consolidated discovery in *all* cases, including any tag-along cases. *See id.* ¶¶ 6(b), (f), (g).

After Orthopedic Specialists' case was transferred to this Court in May 2011, it had the opportunity to join both the Third and Fourth Consolidated Amended Complaints, but elected not to participate in either. Nor did it approach this Court and ask for dispensation from the requirements of CMO No. 1 to pursue its case separately. Instead, it did nothing at all.

Orthopedic Specialists' election not to participate in the litigation also stands in sharp contrast to decisions of other tag-along plaintiffs to pursue their claims. For example, Mary Ellen Silver and Alan Silver, whose case was transferred as a tag-along action, joined the Third and Fourth Consolidated Complaints; and Jeffrey Weintraub, whose case was the subject of the original MDL transfer order, joined every Consolidated Amended Complaint.

Under the Court's order mandating a single discovery period for all matters, Aetna pursued discovery of those plaintiffs who had joined the consolidated complaints and otherwise indicated they intended to pursue their claims. As to those plaintiffs, Aetna propounded document demands and interrogatories, and it noticed and conducted depositions. Apart from discovery, Aetna filed motions to dismiss the consolidated complaints (including dispositive motions addressing certain individual named plaintiffs who joined those complaints), and it generally developed its defenses as to each plaintiff actively litigating their claims against Aetna in MDL 2020. And throughout the years consumed by this protracted effort coordinated among all parties actively participating in MDL 2020, Orthopedic Specialists remained inert and silent.

Not only did Orthopedic Specialists fail to participate in the extensive proceedings, it did not object to their progressing without it. Additionally, it never requested its own schedule, sought remand, nor took any other steps to suggest that it intended to pursue its claims. But now, seven-and-a-half years later – and nearly seven years to the day from Judge Chesler's October 31, 2011 Order stating that "no further discovery may be conducted" (Master D.E. 801 at 3), Orthopedic Specialists has announced it would like to litigate after all. But the time has passed for Orthopedic Specialists to make this election; instead, the time has come for its case to be dismissed. Had Orthopedic Specialists joined the consolidated complaints (or announced its intention to advance its claims in any other way), Aetna would have taken discovery, brought dispositive motions against it, and prepared to address its claims at summary judgment or trial. But Orthopedic Specialists did nothing for over seven years. It cannot now be permitted to reignite litigation that has finally been resolved after 11 years, and in which it had every opportunity to fully participate under the schedules and protocols mandated by this Court.

Orthopedic Specialists offers two reasons for its many years of inaction, both of which fall flat. First, it argues, without citation, that someone told it that it "could not individually prosecute its own claims" and that it was "essentially precluded from prosecuting its action itself." But CMO-1 and CMO-2, both readily available on the public docket, state exactly the opposite. As noted above, CMO-1 required all consolidated cases to be included in the consolidated com-

plaints. In addition, CMO-2 expressly states that "[t]he Court expects that counsel who brought actions on behalf of certain groups of plaintiffs . . . will be vigilant about protecting their clients' individual interests, and will timely alert the Court to issues that uniquely impact their clients" (Master D.E. 236 ¶ 4); it provides that "counsel for Plaintiffs who have such individual interests may conduct examinations of deponents **and otherwise act separately on behalf of their clients as appropriate**" (¶ 4(a) (emphasis added)); and that counsel for plaintiffs who disagree with the Plaintiffs' Executive Committee had an opportunity to "present their position to the Court" (¶ 4(b)).

Second, Orthopedic Specialists argues that it was "never added to the service list for electronic filings" and "had no ability to join in the Consolidated Amended Complaints or other filings of the plaintiffs." But Orthopedic Specialists' counsel merely had to register as an ECF user – as was required by CMO-1 (¶ 3) – to receive every filing. Or it could have looked up any order or filing on the docket. Or it could have called this Court at any time to seek the assistance of the Court's clerks. Orthopedic Specialists' failure to monitor the docket is obviously no excuse for its inaction. *See Kaplan v. Gruber*, 2011 WL 4901347, at *6 (D.N.J. Oct. 13, 2011) ("courts have uniformly held that litigants . . . have a responsibility to monitor the docket"). Moreover, if Orthopedic Specialists indicated an interest at any time in pursuing its case, the Plaintiffs' Executive Committee was required to permit its participation. *See* CMO-2 ¶ 2(c) ("all attorneys shall be given the opportunity to contribute their work to the common good"). If Orthopedic Specialists actually tried to pursue its claims but was somehow foreclosed from doing so, it should have raised the issue years ago. The reality, however, is that it sat on the sidelines and did nothing.

Accordingly, Orthopedic Specialists' claims should be dismissed for lack of prosecution under Fed. R. Civ. P. 41(b) and L.R. 41.1(a). As the Third Circuit has observed, "Rule 41(b) is intended to allow judges to enforce orders pertaining to the progress of their cases. Nowhere is this more important, in terms of the degree of difficulty and the impact, than in multidistrict litigation cases, where the very purpose of the centralization before the transferee judge is the efficient progress of the cases in preparation for trial." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 248 (3d Cir. 2013); *see also In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig. (MDL 1718)*, 664 F. Supp. 2d 752, 770 (E.D. Mich. 2009) ("Allowing plaintiffs to silently pursue claims and parties not included in the [master complaint] poses substantial uncertainty in these proceedings . . . contrary to the purpose of the MDL process."). Allowing Orthopedic Specialists to resume its case now, after years of neglect and to the prejudice of Aetna and the Court, would be antithetical to these well-established principles.

Similarly, dismissal is appropriate under the Third Circuit's *Poulis* framework, which considers, among other factors, a plaintiff's "personal responsibility" for its non-action, prejudice to the defendant, and the "history" of the delay. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984); *see Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) ("[N]ot all of the *Poulis* factors need be satisfied in order to dismiss a complaint" (quotation omitted)). Dismissal is a long-recognized "peri[l] from extended inaction in the conduct of a lawsuit." *Spering v. Texas Butadiene & Chem. Corp.*, 434 F.2d 677, 680 (3d Cir. 1970). Orthopedic Specialists has not only failed to prosecute its claims in any way for over seven years, but it has violated this Court's orders in a manner that would prejudice Aetna and the Court if it were permitted to resurrect its case at this late stage.

***Orthopedic Specialists:***
At the time that Orthopedic Specialists' action was involuntarily transferred to this honorable court, on May 18, 2011, Orthopedic Specialists was advised that all of its claims were being consolidated into the MDL; that the plaintiff's steering committee had already been appointed, precluding counsel for Orthopedic Specialists from prosecuting Orthopedic Specialists' claims; that the plaintiffs' steering committee would prosecute Orthopedic Specialists claims and take all

4784447-1

Case 2:11-cv-03543-KSH-CLW Document 116-2 Filed 11/16/18 Page 4 of 7 PageID: 1996
Case 2:07-cv-05541-KSH-CLW Document 832 Filed 11/16/18 Page 44 of 77 PageID: 26796
Honorable Katharine S. Hayden, U.S.D.J.
November 16, 2018
Page 4

measures to represent and defend Orthopedic Specialists' interests; that Orthopedic Specialists could not individually prosecute its own claims or have its own attorneys represent its interests; and that the Plaintiffs' steering committee would litigate the case as to all common issues of all of the MDL claims, including the pleadings and discovery. Orthopedic Specialists' claims were not unique or distinct from the claims being litigated in the multidistrict litigation and there were no obvious issues which were uncommon to the issues pending in the MDL. Additionally, the MDL case had already been litigated by the Plaintiffs' steering committee for over two years before Orthopedic Specialists' case was transferred, such that the litigation had already been prosecuted without it.

More importantly, counsel for Orthopedic Specialists was **never** added to the service list for electronic filings and so never received any notice of any of the filings or transactions in this MDL litigation. Although on June 6, 2011, this Court established docket No. 11-cv-3203, Orthopedic Specialists received no notice of this docket entry (D.E. 18). It did not receive any notification from this court until September 13, 2011, when it received a copy of the Order Reassigning Litigation for Coordinated or Consolidated Pre-trial Proceedings. D.E. 45. Thereafter, no notifcations were published to Orthopedic Specialists. Orthopedic Specialists, therefore, did not know about and had no ability to join in the Consolidated Amended Complaints or other filings of the Plaintiffs which occurred after its claims were transferred to the MDL. Moreover, Orthopedic Specialists, to this day, has no ability to ascertain how, why or on what basis its claims were severed, excluded or remained unconsolidated from the single track of the main action and were therefore "unlitigated" in the MDL. Orthopedic Specialists had always presumed that the purpose of the MDL was to aggregate and consolidate the claims based upon their commonalities, to promote efficiency and judicial economy and to avoid duplication of litigation. Yet, there is no explanation offered by Aetna as to why Orthopedic Specialists' claims were transferred to the MDL, but never aggregated, consolidated or incorporated into the MDL.

Yet, Orthopedic Specialists now finds itself in the absurd and perverse position of having to defend itself from allegations that it sat on its hands and failed to prosecute an action, when its hands were tied by the rules of MDL and it was essentially precluded from prosecuting the action itself, since its interests were to have been prosecuted by the Plaintiffs' steering committee. Orthopedic Specialists reasonably assumed that its claims were consolidated and were being prosecuted with all other claims in the MDL by and through the Plaintiffs' steering committee.

Similarly, Orthopedic Specialists has never been advised of the reasons or rationale why the Plaintiffs' steering committee has chosen to dismiss their claims and abandon this litigation. By letter of October 12, 2018, Lindsey Taylor of Carella, Byrne, Cecchi, Olstein, Brody and Agnello, P.C., advised counsel for Orthopedic Specialists that the "main case" was being dismissed and queried: "Would you consent to dismissing the claims of Orthopedic Specialists of Southern California?" No information was imparted in that letter to give Orthopedic Specialists any ability to intelligently determine whether its claims should be dismissed, let alone did that letter apprise Orthopedic Specialists why its claims had been singled out for separate treatment and were not consolidated in the "main action." In subsequent phone conversations with Mr. Taylor and counsel for Orthopedic Specialists, Mr. Taylor's comments were no more elucidating or enlightening regarding the rationale for dismissal. He could not or would not state any reason for the dismissal other than that class action status had been denied and the plaintiffs' executive committee had recommended dismissal.

Although Aetna claims that it will be prejudiced if this action is not dismissed and/or if the case is remanded to the Central District of California (the transferor court), it offers no evidence of any prejudice other than delay itself. Its complaints of prejudice are truly hollow and unavailing, since Orthopedic Specialists presumably will be bound by all rulings of the MDL court and is subject to the law of the case in any further litigation either in the MDL court or in the Central

District of California. Further any of the common issues that were not resolved in the MDL, would always have been resolved in the transferor court after remand, in any event.

Likewise, contrary to the assertions of Aetna, Orthopedic Specialists does not seek a do-over of litigation or a second bite of the apple. The law of the case would preclude Orthopedic Specialists from re-litigating any of the issues which have been disposed of in the MDL and would make those rulings binding on the parties and the transferor court, upon remand. Presumably, the only issues left upon remand to the Central District of California would be discovery of the damages claimed by Orthopedic Specialists, which issues would never have been appropriately tried in the MDL to begin with.

Because of all of these factors, dismissal in this instance would be entirely inappropriate and draconian. The law favors disposition of an action on its merits. Dismissal, as the harshest of all sanctions, is to be allowed only in the most extreme cases. See, *Meeker v. Rizley* (10th Cir.1963) 324 F.2d 269 and *Becker v. Safelite Glass Corp.* (D.C. Kan. 1965) 244 F.Supp. 625. In this case, there are absolutely no facts which justify dismissal of Orthopedic Specialists', since Orthopedic Specialists has never failed to prosecute this action. Its claims should have been prosecuted with all of the other claims in MDL as a tag along claim, not as a stand-alone action. The very reason that compelled inclusion of Orthopedic Specialists claims in the MDL is the same reason which required the plaintiffs' steering committee to have included those claims in the main case and to have prosecuted those claims in common with all of the other claims. For the same reasons, counsel for Orthopedic Specialists was precluded from independently asserting or prosecuting those claims on behalf of Orthopedic Specialists. Orthopedic Specialists should not be penalized or sanctioned for following the rules that were imposed upon it by the MDL process.

**II. The factual and legal basis for Aetna's position as expressed in the Letter that the action should be dismissed or, alternatively, that further pretrial proceedings, if any, should take place in this Court, along with Orthopedic Specialists's response to that position.**

***Aetna: Further proceedings, if any, should take place in this court.***

If the Court were to determine that additional pretrial proceedings are appropriate, they should be conducted in this Court, pursuant to the transfer order of the JPML. *See* JPML Conditional Transfer Order (D.E. 15) (transfer for "coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407"). Notably, Orthopedic Specialists did not oppose that order.

It is an understatement to say that this Court has devoted extensive time and resources to the voluminous and complex issues in these consolidated cases. The Court has taken care and issued orders with the express purpose of avoiding duplicative and inefficient discovery and other proceedings. To the extent Orthopedic Specialists now seeks a do-over in another court, this Court's administration of these consolidated proceedings would be frustrated, and Aetna would be severely prejudiced.

Orthopedic Specialists appears to presume that there will be no further pretrial proceedings that are appropriate for this MDL because discovery is closed. But that is mistaken. If these claims are not dismissed for failure to prosecute, Aetna should be given an opportunity, at a minimum, to seek (i) dismissal for failure to state a claim, and/or (ii) summary judgment. This Court is best positioned to address these or any other pretrial proceedings. For example, this Court is well-suited to address a motion to dismiss, given its exhaustive analysis of the motions to dismiss the consolidated complaints. And, should any claims survive dismissal, this Court is well-suited to address a motion for summary judgment, given its familiarity with the record through its consideration of the class certification motions. As a result, transferring these cases

4784447-1

to another court would result in severe inefficiencies.

The result is no different simply because the claims of every plaintiff who prosecuted his or her case in these consolidated proceedings has been dismissed. It would be a perverse result if a plaintiff who sat on the sidelines for years of consolidated proceedings were given a fresh start in another court once the consolidated proceedings reached the concluding stages. To say the least, that would be an invitation to gamesmanship and inefficiency. Thus, not surprisingly, the JPML has expressly rejected the argument that a case "should be remanded simply because all other consolidated cases in the transferee court have been dismissed or terminated in some way." *In re CBS Color Tube Patent Litig.*, 342 F. Supp. 1403, 1405 (J.P.M.L. 1972).

***Orthopedic Specialists:***

In the MDL, discovery was completed (as noted by Aetna) in 2011, by Order of Judge Chesler. Presumably all common pre-trial preparation issues have also been resolved and the individual claims are ready for disposition upon disaggregation. Further, a global settlement is not possible and does not justify deferral of remand, since the cases in the main action are being dismissed, without dismissal of the separated claims of Orthopedic Specialists and others. Thus, it appears that all of the common issues and discovery that could have been conducted has been conducted in the MDL and Orthopedic Specialists claims are ready to be remanded to the transferor court.

Further, remand is appropriate where the completion of pretrial proceedings has concluded. Here, Aetna forcefully asserts that all of the pretrial proceedings which took years to accomplish have been completed (other than those pretrial proceedings which specifically relate to Orthopedic Specialists' own, separate claims). Therefore, all further litigation between Orthopedic Specialists and Aetna should take place in the Central District of California, in the transferor court, in order to respect the choice of venue selection of Orthopedic Specialists.

Finally, *In re CBS Color Tube Patent Litig.*, 342 F. Supp. 1403, 1405 (J.P.M.L. 1972) is completely distinguishable from the case at bar. In that case, the court refused to remand the case, finding that, since discovery had not yet been completed and therefore pretrial litigation had not been concluded, remand was premature. In contrast, discovery has been concluded in the case at bar and has been since late 2011. Therefore, there is no bar and no good reason to refuse remand as to Orthopedic Specialists' claims. Due process requires that Orthopedic Specialists be allowed to continue this action upon remand.

### III. The factual and legal basis for Orthopedic Specialists's position in the Letter that this Court should issue a suggestion of remand of the case to the transferor court, along with Aetna's response to that position.

***Orthopedic Specialists:***

Upon the completion of pretrial proceedings in MDL, the individual action is to be disaggregated or separated from the MDL and remanded to the court from where it was transferred. 28 U.S.C. § 1407(a). See, also *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). In this case, venue is appropriately laid in the Central District of California, based upon the residence of Orthopedic Specialists, the presence of witnesses, and the location of the breaches which occurred in that district. There is absolutely no nexus to New Jersey, since none of the parties reside in nor did any of the transactions between the parties occur in New Jersey. Moreover, Orthopedic Specialists could not have filed its action in New Jersey.

Orthopedic Specialists claims should be remanded to the Central District of California (the transferring court), since Orthopedic Specialists; choice of venue should be respected and rec-

Honorable Katharine S. Hayden, U.S.D.J.
November 16, 2018
Page 7

ognized. There is absolutely no reason to ignore or overrule Orthopedic Specialists' choice of forum, just because MDL was accomplished in this Court. Moreover, disaggregation through remand to the transferor court is required in all MDL cases in order to assure the right to individual trials and to preserve the judicial and jurisdictional integrity of the transferor courts. Additionally, Orthopedic Specialists is located in Southern California as would be numerous third party witnesses.

As noted above, there is no pretrial litigation left to be disposed of in the MDL. Therefore, in accordance with statute and the U.S Supreme Court decision of *Lexecon, supra*, this action must be remanded.

***Aetna: There is no basis for remand.***
It is remarkable that Orthopedic Specialists sat silently on the sidelines for seven years, failing to participate in any way in these consolidated proceedings, failing to join any consolidated complaint (as it was required to do), and failing to alert Aetna or the Court that it intended to pursue its claim, **and then, after seven years of voluntary inactivity**, declares unilaterally that "there is no pretrial litigation left to be disposed of" by this Court.

As discussed above, this Court is clearly best-suited to address any motion-to-dismiss and summary judgment pretrial proceedings, as contemplated by the transfer order. Consistent with this obvious efficiency, MDL courts routinely keep transferred cases even when most or all of the other cases in the MDL have been resolved. *See In re Maxim Integrated Prod., Inc. MDL No. 2354*, No. 12-244, 2015 WL 1757779, at *4 (W.D. Pa. Apr. 17, 2015) (citing cases and refusing remand due to "accrual of judicial expertise"); *see also In re Heparin Prod. Liab. Litig.*, No. 1:10HC60098, 2016 WL 489449, at *1 (N.D. Ohio Jan. 27, 2016) (rejecting reasoning advanced by Orthopedic Specialists).

Neither *Lexecon* nor any other case provides otherwise. *Lexecon* held that a transferee court may not "assign a transferred case to itself <u>for trial</u>." 523 U.S. at 28 (emphasis added). But this case is not ready for trial. Indeed, *Lexecon* itself recognizes that summary judgment is a "pretrial proceeding" for the transferee court. 523 U.S. at 37.

                Respectfully submitted,

                *s/ Patricia A. Lee*

cc: All Counsel of Record (via ECF)

Case 2:11-cv-03542-KSH-CLW Document 1632 Filed 11/16/18 Page 7 of 7 PageID: 27099

4784447-1